Irrigation and M&I
Contract No. 14-06-200-495A-IR1-P

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT BETWEEN THE UNITED STATES
AND
WESTLANDS WATER DISTRICT
PROVIDING FOR PROJECT WATER SERVICE
SAN LUIS UNIT AND DELTA DIVISION AND FACILITIES REPAYMENT

TABLE OF CONTENTS

| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 2 |
| 1. | Definitions | 8 |
| 2. | Term of Contract – Right to use of Water | 12 |
| 3. | Water to be Made Available and Delivered to the Contractor | 14 |
| 4. | Time for Delivery of Water | 19 |
| 5. | Point of Diversion and Responsibility for Distribution of Water | 20 |
| 6. | Measurement of Water Within the Contractor's Service Area | 22 |
| 7. | Rates, Method of Payment for Water and Accelerated Repayment of Facilities | 24 |
| 8. | Non-Interest Bearing O&M Deficits | 33 |
| 9. | Sales, Transfers, or Exchanges of Water | 34 |
| 10. | Application of Payments and Adjustments | 35 |
| 11. | Temporary Reductions – Return Flows | 36 |
| 12. | Constraints on the Availability of Water | 37 |
| 13. | Unavoidable Groundwater Percolation | 39 |
| 14. | Compliance with Federal Reclamation Laws | 40 |
| 15. | Protection of Water and Air Quality | 40 |
| 16. | Water Acquired by the Contractor other than from the United States | 41 |
| 17. | Opinions and Determinations | 44 |
| 18. | Coordination and Cooperation | 44 |
| 19. | Charges for Delinquent Payments | 46 |
| 20. | Equal Employment Opportunity | 47 |
| 21. | General Obligation – Benefits Conditioned Upon Payment | 48 |
| 22. | Compliance with Civil Rights Laws and Regulations | 48 |
| 23. | Privacy Act Compliance | 49 |
| 24. | Contractor to Pay Certain Miscellaneous Costs | 50 |

Contract No. 14-06-200-495A-IR1-P

Table of Contents – continued

| Article No. | Title | Page No. |
|---|---|---|
| 25. | Water Conservation | 51 |
| 26. | Existing or Acquired Water or Water Rights | 52 |
| 27. | Operation and Maintenance of Transferred Works | 53 |
| 28. | O&M by the San Luis & Delta – Mendota Water Authority | 54 |
| 28.1 | O&M by the California Department of Water Resources | 56 |
| 28.2 | O&M by the Contractor | 58 |
| 28.3 | Pumping Plants, Power for Pumping Plants | 60 |
| 29. | Examination, Inspection, and Audit of Project Works, Records, and Reports for Determining Adequacy of Operation and Maintenance | 61 |
| 30. | Contingent on Appropriation or Allotment of Funds | 63 |
| 31. | Books, Records, and Reports | 63 |
| 32. | Assignment Limited – Successors and Assigns Obligated | 64 |
| 33. | Severability | 64 |
| 34. | Resolution of Disputes | 65 |
| 35. | Officials not to Benefit | 65 |
| 36. | Changes in Contractor's Organization and/or Service Area | 65 |
| 37. | Federal Laws | 66 |
| 38. | Notices | 66 |
| 39. | Emergency Reserve Fund | 66 |
| 40. | Administration of Federal Project Lands | 67 |
| 41. | Contamination or Pollution of Federal Property | 68 |
| 42. | Reclamation Reform Act of 1982 | 69 |
| 43. | Certification of Nonsegregated Facilities | 69 |
| 44. | Pest Management | 70 |
| 45. | Medium for Transmitting Payment | 71 |
| 46. | Contract Drafting Considerations | 71 |
| 47. | Confirmation of Contract | 71 |
| | Signature Page | 72 |

Exhibit A – Contractor's Service Area
Exhibit B – Rates and Charges
Exhibit C – Project Water Needs Assessments Purpose and Methodology
Exhibit D – Repayment Obligation

Contract No. 14-06-200-495A-IR1-P

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT BETWEEN THE UNITED STATES
AND
WESTLANDS WATER DISTRICT
PROVIDING FOR PROJECT WATER SERVICE
SAN LUIS UNIT AND DELTA DIVISION AND FACILITIES REPAYMENT

1    THIS CONTRACT, made this 28ᵀᴴ day of FEBRUARY_____, 2020, in

2    pursuance generally of the Act of June 17, 1902, (32 Stat. 388), and acts amendatory thereof or

3    supplementary thereto, including but not limited to, the Acts of August 26, 1937 (50 Stat. 844),

4    as amended and supplemented, August 4, 1939 (53 Stat. 1187), as amended and supplemented,

5    July 2, 1956 (70 Stat. 483), June 3 1960 (74 Stat. 156), June 21, 1963 (77 Stat. 68), October 12,

6    1982 (96 Stat. 1263), October 27, 1986 (100 Stat. 3050), as amended, Title XXXIV of the Act of

7    October 30, 1992 (106 Stat. 4706), as amended, and the Water Infrastructure Improvements for

8    the Nation Act (Public Law (Pub. L.) 114-322, 130 Stat. 1628), Section 4011 (a-d) and (f)

9    ("WIIN Act"), all collectively hereinafter referred to as Federal Reclamation law, between the

10   UNITED STATES OF AMERICA, hereinafter referred to as the United States, represented by

11   the officer executing this Contract, hereinafter referred to as the Contracting Officer, and

12   WESTLANDS WATER DISTRICT, hereinafter referred to as the Contractor, a public agency of

13   the State of California, duly organized, existing, and acting pursuant to the laws thereof;

14        WITNESSETH, That:

Contract No. 14-06-200-495A-IR1-P

15                                     EXPLANATORY RECITALS

16               [1st]     WHEREAS, the United States has constructed and is operating the

17 California Central Valley Project (Project), for diversion, storage, carriage, distribution, and

18 beneficial use, for flood control, irrigation, municipal, domestic, industrial, fish and

19 wildlife mitigation, protection and restoration, generation and distribution of electric energy,

20 salinity control, navigation, and other beneficial uses, of waters of the Sacramento River,

21 the American River, the Trinity River, and the San Joaquin River and their tributaries;

22 and

23               [2nd]     WHEREAS, the United States constructed the Delta Division Facilities,

24 including the San Luis Unit facilities (which include the San Luis Canal, the Coalinga

25 Canal, the Pleasant Valley Pumping Plant, and the Dos Amigos Pumping Plant), which

26 will be used in part for the furnishing of water to the Contractor pursuant to the terms of

27 this Contract; and

28               [3rd]     WHEREAS, the rights to Project Water were acquired by the United

29 States pursuant to California law for operation of the Project; and

30               [4th]     WHEREAS, the Contractor assigned to the United States, California State

31 Water Resources Control Board (previously California State Water Rights Board) application

32 number 15764 on October 17, 1960, following receipt of a letter, dated September 29, 1960,

33 from the then–Acting Regional Director of the Bureau of Reclamation that, "A permanent water

34 supply for your district will, of course, be assured and made available pursuant to a long term

35 contract, renewable in accordance with current provisions of Federal Reclamation law."; and

36               [5th]     WHEREAS, the terms and conditions pursuant to which Project Water is

37 to be delivered to the Contractor through December 31, 2007, are addressed in the

Contract No. 14-06-200-495A-IR1-P

38   Contract Between the United States and Westlands Water District Providing for Water

39   Service, dated June 5, 1963, and the Stipulated Judgment in the lawsuit entitled Barcellos and

40   Wolfsen, Inc., v. Westlands Water District, Civ. No. F-79-106-EDP (E.D. Cal.), as consolidated

41   with Westlands Water District v. United States of America, Civ. No. F-81-245-EDP (E.D.

42   Cal.), entered on December 30, 1986; and

43          [6th]   WHEREAS, the United States and the Contractor have pursuant to

44   Subsection 3404(c)(3) of the Central Valley Project Improvement Act (CVPIA),

45   subsequently entered into binding agreements identified as Binding Agreement No. 14-

46   06-200-495A-BA, and Binding Agreement No. CV 79-106-EDP-BA, which sets out the

47   terms pursuant to which the Contractor agreed to renew its contract before the

48   expiration date after completion of the Programmatic Environmental Impact Statement

49   (PEIS) and other appropriate environmental documentation and negotiation of a renewal

50   contract; and which also sets out the consequences of a subsequent decision not to

51   renew; and

52          [7th]   WHEREAS, the United States and the Contractor entered into Delta

53   Division and San Luis Unit Contract Number 14-06-200-495A-IR1 and subsequent Interim

54   Renewal Contracts 14-06-200-495A-IR2 through 14-06-200-495A-IR6, the last of which is

55   hereinafter referred to as the "Existing Contract", which established terms for the delivery of

56   Project Water to the Contractor from the Delta Division and San Luis Unit, and which was in

57   effect the date the WIIN Act was enacted; and

58          [8th]   WHEREAS, on December 16, 2016, the 114th Congress of the United

59   States of America enacted the WIIN Act; and

3

60          [9th]    WHEREAS, Section 4011(a)(1) provides that "upon request of the

61   contractor, the Secretary of the Interior shall convert any water service contract in effect on the

62   date of enactment of this subtitle and between the United States and a water users' association

63   [Contractor] to allow for prepayment of the repayment contract pursuant to paragraph (2) under

64   mutually agreeable terms and conditions."; and

65          [10th]    WHEREAS, Section 4011(a)(1) further provides that "the manner of

66   conversion under this paragraph shall be as follows:  (A) Water service contracts that were

67   entered into under section (e) of the Act of August 4, 1939 (53 Stat. 1196), to be converted under

68   this section shall be converted to repayment contracts under section 9(d) of that Act (53 Stat.

69   1195)"; and "(B) Water service contracts that were entered under subsection (c)(2) of section 9

70   of the Act of August 4, 1939 (53 Stat. 1194), to be converted under this section shall be

71   converted to a contract under subsection (c)(1) of section 9 of that Act (53 Stat. 1195)."; and

72          [11th]    WHEREAS, Section 4011(a)(4)(C) further provides all contracts entered

73   into pursuant to Section 4011(a)(1), (2), and (3) shall "not modify other water service,

74   repayment, exchange and transfer contractual rights between the water users' association

75   [Contractor], and the Bureau of Reclamation, or any rights, obligations, or relationships of the

76   water users' association [Contractor] and their landowners as provided under State law."; and

77          [12th]    WHEREAS, Section 4011(d)(3) and (4) of the WIIN Act provides that

78   "implementation of the provisions of this subtitle shall not alter…(3) the priority of a water

79   service or repayment contractor to receive water; or (4) except as expressly provided in this

80   section, any obligations under the Federal Reclamation law, including the continuation of

81   Restoration Fund charges pursuant to section 3407(d) (Pub. L. 102-575), of the water service and

82   repayment contractors making prepayments pursuant to this section."; and

Contract No. 14-06-200-495A-IR1-P

83      [13th]   WHEREAS, upon the request of the Contractor, the WIIN Act directs the

84   Secretary to convert irrigation water service contracts and municipal and industrial (M&I) water

85   service contracts into repayment contracts, amend existing repayment contracts, and allow

86   contractors to prepay their construction cost obligations pursuant to applicable Federal

87   Reclamation law; and

88      [14th]   WHEREAS, the United States has determined that the Contractor

89   has fulfilled all of its obligations under the Existing Contract; and

90      [15th]   WHEREAS, the Contractor has demonstrated to the satisfaction of the

91   Contracting Officer that the Contractor has utilized the Project Water supplies available

92   to it for reasonable and beneficial use and expects to utilize fully for reasonable and

93   beneficial use the quantity of Project Water to be made available to it pursuant to this

94   Contract; and

95      [16th]   WHEREAS, water obtained from the Project has been relied upon by

96   urban and agricultural areas within California for more than 50 years, and is considered

97   by the Contractor as an essential portion of its water supply; and

98      [17th]   WHEREAS, the economies of regions within the Project, including the

99   Contractor's, depend upon the continued availability of water, including water service

100   from the Project; and

101      [18th]   WHEREAS, the United States Court of Appeals for the Ninth Circuit has

102   held that Section 1(a) of the San Luis Act, Pub. L. 86-488 (74 Stat. 156) imposes on the

103   Secretary of the Interior a duty to provide drainage service to the San Luis Unit; and

Contract No. 14-06-200-495A-IR1-P

104       [19th]   WHEREAS, the Contractor and the Contracting Officer recognize that

105   adequate drainage service is required to maintain agricultural production within certain

106   areas served with Project Water made available under this Contract; and

107       [20th]   WHEREAS, the Contracting Officer intends, to the extent appropriated

108   funds are available, to develop and implement effective solutions to drainage problems in

109   the San Luis Unit; and

110       [21st]   WHEREAS, the Contracting Officer and the Contractor

111   acknowledge that such drainage solutions may involve actions not originally

112   contemplated and/or the construction or use of facilities, other than the San Luis Drain;

113   that the Contractor is investing in drainage solutions for lands within its boundaries that

114   should be considered by the Contracting Officer in determining drainage solutions; and that the

115   existing ratesetting policy as it relates to the allocation and collection of drainage costs may

116   require amendment to recognize those investments by the Contractor and other relevant

117   circumstances; and

118       [22nd]   WHEREAS, the Department of the Interior, Bureau of Reclamation

119   published in June 2006 the San Luis Drainage Feature Re-evaluation Final

120   Environmental Impact Statement, which considers alternatives to provide agricultural

121   drainage service to the San Luis Unit; and

122       [23rd]   WHEREAS, on March 9, 2007, the Record of Decision was signed for the

123   San Luis Drainage Feature Re-evaluation Final Environmental Impact Statement

124   identifying the retirement of up to 194,000 acres of land from irrigated agricultural

125   productions as the selected alternative; and

126         [24th] WHEREAS, the Secretary intends through coordination, cooperation, and

127   partnerships to pursue measures to improve water supply, water quality, and reliability of the

128   Project for all Project purposes; and

129         [25th] WHEREAS, the mutual goals of the United States and the Contractor

130   include: to provide for reliable Project Water supplies; to control costs of those supplies;

131   to achieve repayment of the Project as required by law; to guard reasonably against Project

132   Water shortages; to achieve a reasonable balance among competing demands for use of

133   Project Water; and to comply with all applicable environmental statutes, all consistent with

134   the legal obligations of the United States relative to the Project; and

135         [26th] WHEREAS, the parties intend by this Contract to maintain a cooperative

136   relationship in order to achieve their mutual goals; and

137         [27th] WHEREAS, the Contractor has utilized or may utilize transfers, contract

138   assignments, rescheduling, and conveyance of Project Water and non-Project water under this

139   Contract as tools to minimize the impacts of a Condition of Shortage and to maximize the

140   beneficial use of water; and

141         [28th] WHEREAS, the parties desire and intend that this Contract not provide a

142   disincentive to the Contractor in continuing to carry out the beneficial activities set out in

143   the Explanatory Recital immediately above; and

144         [29th] WHEREAS, the Contracting Officer and the Contractor agree that this

145   Contract complies with Section 4011 of the WIIN Act; and

146         [30th] WHEREAS, the Contracting Officer and the Contractor agree to amend

147   and convert the Existing Contract pursuant to section 4011 of the WIIN Act and other Federal

148   Reclamation law on the terms and conditions set forth below.

Contract No. 14-06-200-495A-IR1-P

149          NOW, THEREFORE, in consideration of the mutual and dependent covenants

150   herein contained, it is hereby mutually agreed by the parties hereto as follows:

151                    <u>DEFINITIONS</u>

152      1.     When used herein unless otherwise distinctly expressed, or manifestly

153   incompatible with the intent of the parties as expressed in this Contract, the term:

154         (a)    "Additional Capital Obligation" shall mean construction costs or other

155   capitalized costs incurred after the Effective Date of Contract or not reflected in the Existing

156   Capital Obligation as defined herein and in accordance with Section 4011, subsection (a)(2)(B)

157   and (a)(3)(B) of the Water Infrastructure Improvements for the Nation Act (Pub. L. 114-322, 130

158   Stat. 1628) ("WIIN Act");

159         (b)    "Calendar Year" shall mean the period January 1 through December 31,

160   both dates inclusive;

161         (c)    "Charges" shall mean the payments required by Federal Reclamation law

162   in addition to the Rates and Tiered Pricing Component specified in this Contract as

163   determined annually by the Contracting Officer pursuant to this Contract;

164         (d)    "Condition of Shortage" shall mean a condition respecting the Project

165   during any Year such that the Contracting Officer is unable to deliver sufficient water to meet the

166   Contract;

167         (e)    "Contracting Officer" shall mean the Secretary of the Interior's duly

168   authorized representative acting pursuant to this Contract or applicable Federal Reclamation law

169   or regulation;

170         (f)    "Contract Total" shall mean the maximum amount of water to which the

171   Contractor is entitled under subdivision (a) of Article 3 of this Contract;

172  (g)  "Contractor's Service Area" shall mean the area to which the Contractor is

173  permitted to provide Project Water under this Contract as described in Exhibit "A"

174  attached hereto, which may be modified from time to time in accordance with Article 36

175  of this Contract without amendment of this Contract;

176  (h)  "CVPIA" shall mean the Central Valley Project Improvement Act, Title

177  XXXIV of the Act of October 30, 1992 (106 Stat. 4706);

178  (i)  "Delta Division Facilities" shall mean those existing and future Project

179  facilities in and south of the Sacramento-San Joaquin Rivers Delta, including, but not

180  limited to, the C.W. "Bill" Jones Pumping Plant, the O'Neill Forebay, the O'Neill

181  Pumping/Generating Plant, and the San Luis Reservoir, used to divert, store, and convey

182  water to those Project Contractors entitled to receive water conveyed through the Delta-

183  Mendota Canal;

184  (j)  "Eligible Lands" shall mean all lands to which Irrigation Water may be

185  delivered in accordance with Section 204 of the Reclamation Reform Act of 1982 (96 Stat.

186  1263), as amended;

187  (k)  "Excess Lands" shall mean all lands in excess of the limitations

188  contained in Section 204 of the Reclamation Reform Act of 1982, other than those lands

189  exempt from acreage limitation under Federal Reclamation law;

190  (l)  "Existing Capital Obligation" shall mean the remaining amount of

191  construction costs or other capitalized costs allocable to the Contractor as described in section

192  4011, subsections (a)(2)(A) and (a)(3)(A) of the WIIN Act, and as identified in the Central

193  Valley Project Irrigation Water Rates and/or Municipal and Industrial Water Rates, respectively,

194  in the Final 2020 Ratebooks, as adjusted to reflect payments not reflected in such schedule.  The

195  Contracting Officer has computed the Existing Capital Obligation and such amount is set forth in

196  Exhibit D, which is incorporated herein by reference;

197        (m)    Omitted

198        (n)    "Ineligible Lands" shall mean all lands to which Irrigation Water may

199  not be delivered in accordance with Section 204 of the Reclamation Reform Act of 1982;

200        (o)    Omitted

201        (p)    "Irrigation Water" shall mean the use of Project Water to irrigate
202  lands primarily for the production of commercial agricultural crops or livestock, and
203  domestic and other uses that are incidental thereto;

204        (q)    "Landholder" shall mean a party that directly or indirectly owns or

205  leases nonexempt land, as provided in 43 CFR 426.2;

206        (r)    "Municipal and Industrial (M&I) Water" shall mean the use of Project
207  Water for municipal, industrial, and miscellaneous other purposes not falling under the
208  definition of "Irrigation Water" or within another category of water use under an
209  applicable Federal authority;

210        (s)    Omitted

211        (t)    "Operation and Maintenance" or "O&M" shall mean normal and

212  reasonable care, control, operation, repair, replacement (other than capital replacement),

213  and maintenance of Project facilities;

214        (u)    "Operating Non-Federal Entity" shall mean the entity(ies), its (their)

215  successors or assigns, which has (have) the obligation to operate and maintain all or a

216  portion of the Delta Division Facilities pursuant to written agreement(s) with the United

217  States.  When this Contract was entered into, the Operating Non-Federal Entities were the

218  San Luis & Delta-Mendota Water Authority and, with respect to San Luis Unit facilities,

219  the California Department of Water Resources, and the Contractor;

Contract No. 14-06-200-495A-IR1-P

220          (v)     "Project" shall mean the Central Valley Project owned by the United

221   States and managed by the Department of the Interior, Bureau of Reclamation;

222          (w)     "Project Contractors" shall mean all parties who have contracts for

223   water service for Project Water from the Project with the United States pursuant to Federal

224   Reclamation law;

225          (x)     "Project Water" shall mean all water that is developed, diverted,

226   stored, or delivered by the Secretary in accordance with the statutes authorizing the

227   Project and in accordance with the terms and conditions of water rights acquired

228   pursuant to California law;

229          (y)     "Rates" shall mean the payments determined annually by the

230   Contracting Officer in accordance with the then-current applicable water ratesetting

231   policies for the Project, as described in subdivision (a) of Article 7 of this Contract;

232          (z)     Omitted

233          (aa)    "Repayment Obligation" for Water Delivered as Irrigation Water shall

234   mean the Existing Capital Obligation discounted by ½ of the Treasury rate, which shall be the

235   amount due and payable to the United States, pursuant to section 4011(a)(2)(A) of the WIIN Act;

236   and for Water Delivered as M&I Water shall mean the amount due and payable to the United

237   States, pursuant to  section 4011(a)(3)(A) of the WIIN Act;

238          (bb)    "Secretary" shall mean the Secretary of the Interior, a duly appointed

239   successor, or an authorized representative acting pursuant to any authority of the

240   Secretary and through any agency of the Department of the Interior;

11

241          (cc)   "Tiered Pricing Component" shall be the incremental amount to be

242   paid for each acre-foot of Water Delivered as described in Article 7 of this Contract and

243   as provided for in Exhibit B;

244          (dd)   "Water Delivered" or "Delivered Water" shall mean Project Water

245   diverted for use by the Contractor at the point(s) of delivery approved by the Contracting

246   Officer;

247          (ee)   "Water Made Available" shall mean the estimated amount of

248   Project Water that can be delivered to the Contractor for the upcoming Year as declared

249   by the Contracting Officer, pursuant to subdivision (a) of Article 4 of this Contract;

250          (ff)   "Water Scheduled" shall mean Project Water made available to the

251   Contractor for which times and quantities for delivery have been established by the

252   Contractor and Contracting Officer, pursuant to subdivision (b) of Article 4 of this Contract;

253   and

254          (gg)   "Year" shall mean the period from and including March 1 of each

255   Calendar Year through the last day of February of the following Calendar Year.

256          <u>TERM OF CONTRACT -- RIGHT TO USE OF WATER</u>

257   2.     (a)     This Contract shall be effective June 1, 2020, hereinafter known as the

258   "Effective Date", and shall continue so long as the Contractor pays applicable Rates and Charges

259   under this Contract, consistent with Section 9(d) or 9(e)(1) of the Act of August 4, 1939 (53 Stat.

260   1195) as applicable, and applicable law;

261          (1)     <u>*Provided, That*</u> the Contracting Officer shall not seek to terminate

262   this Contract for failure to fully or timely pay applicable Rates and Charges by the Contactor,

263   unless the Contracting Officer has first provided at least sixty (60) calendar days written notice

264    to the Contractor of such failure to pay and the Contractor has failed to cure such failure to pay,

265    or to diligently commence and maintain full curative payments satisfactory to the Contracting

266    Officer within the sixty (60) calendar days' notice period;

267                (2)    *Provided, further, That* the Contracting Officer shall not seek to

268    suspend making water available or declaring Water Made Available pursuant to this Contract for

269    non-compliance by the Contractor with the terms of this Contract or Federal law, unless the

270    Contracting Officer has first provided at least thirty (30) calendar days written notice to the

271    Contractor and the Contractor has failed to cure such non-compliance, or to diligently commence

272    curative actions satisfactory to the Contracting Officer for a non-compliance that cannot be fully

273    cured within the thirty (30) calendar days' notice period. If the Contracting Officer has

274    suspended making water available pursuant to this paragraph, upon cure of such non-compliance

275    satisfactory to the to the Contracting Officer, the Contracting Officer shall resume making water

276    available and declaring Water Made Available pursuant to this Contract;

277                (3)    *Provided, further, That* this Contract may be terminated at any

278    time by mutual consent of the parties hereto.

279          (b)    Upon complete payment of the Repayment Obligation by the Contractor,

280    and notwithstanding any Additional Capital Obligation that may later be established, the acreage

281    limitations, reporting, and Full Cost pricing provisions of the Reclamation Reform Act of 1982,

282    and subdivisions (j) Eligible Lands, (k) Excess Lands, and (n) Ineligible Lands of Article 1 of

283    this Contract shall no longer be applicable.

284          (c)    Notwithstanding any provision of this Contract, the Contractor reserves

285    and shall have all rights and benefits under the Act of July 2, 1956 (70 Stat. 483), to the extent

286    allowed by law.

287          (d)      Notwithstanding any provision of this Contract, the Contractor reserves

288  and shall have all rights and benefits under the Act of June 21, 1963 (77 Stat. 68), to the extent

289  allowed by law.

290          <u>WATER TO BE MADE AVAILABLE AND DELIVERED TO THE CONTRACTOR</u>

291  3.      (a)      During each Year, consistent with all applicable State water rights

292  permits, and licenses, Federal law, and subject to the provisions set forth in Articles 11 and

293  12 of this Contract, the Contracting Officer shall make available for delivery to the

294  Contractor 1,150,000 acre-feet of Project Water for irrigation and M&I purposes.  Water

295  Delivered to the Contractor in accordance with this subdivision shall be scheduled and

296  paid for pursuant to the provisions of Articles 4 and 7 of this Contract.

297          (a)      (1)      Notwithstanding any other provisions of this Contract, in the

298  event the Secretary implements a program to retire land from irrigated agricultural

299  production within the Contractor's Service Area as a means of addressing drainage in the

300  San Luis Unit, the Contracting Officer shall conduct a water needs assessment to

301  determine whether the Contract Total will be reduced.  An initial water needs

302  assessment shall be conducted upon the retirement of 25 percent of the land projected to

303  be retired under such land retirement program.  Subsequent assessments shall be conducted

304  upon the retirement of 50 percent and 75 percent of the land projected to be retired and a

305  final assessment will be conducted at the conclusion of the land retirement program.  Any water

306  needs assessment performed pursuant to this paragraph (1) shall update the water needs

307  assessment used to compute the quantity of Project Water to be made available under

308  this Contract, which was submitted to the Contractor on November 2, 2000, and shall be

309  conducted pursuant to the methodology attached to this Contract as Exhibit "C."  The

14

310 Contractor may request the Contracting Officer update the methodology employed

311 based upon Contractor-specific information made available to the Contracting Officer

312 by the Contractor.  Upon completion of any water needs assessment performed

313 pursuant to this paragraph, the Contracting Officer may make a determination to reduce

314 the quantity of water to be made available under this Contract, and the Contract Total shall be

315 reduced according to that determination; *Provided, That* so long as the then-existing

316 Contract Total can be put to reasonable and beneficial use as determined by the water

317 needs assessment on Eligible Lands within the Contractor's Service Area that are not

318 retired, the retirement of land shall not affect the quantity of Project Water to be made

319 available pursuant to this Contract.

320       (b)    Because the capacity of the Project to deliver Project Water has been

321 constrained in recent years and may be constrained in the future due to many factors

322 including hydrologic conditions and implementation of Federal and State laws, the

323 likelihood of the Contractor actually receiving the amount of Project Water set out in

324 subdivision (a) of this Article in any given Year is uncertain.  The Contracting Officer's

325 modeling referenced in the PEIS projected that the Contract Total set forth in this Contract

326 will not be available to the Contractor in many years.  Nothing in this subdivision (b) of this

327 Article shall affect the rights and obligations of the parties under any provision of this Contract.

328       (c)    The Contractor shall utilize the Project Water in accordance with all

329 applicable legal requirements.

330       (c)    (1)    In the event any Project Contractor (other than a Cross Valley

331 Contractor) that receives Project Water through the Delta Division Facilities obtains a

332 contractual agreement that the Contracting Officer shall make Project Water available at

15

Contract No. 14-06-200-495A-IR1-P

333   a point or points of delivery in or north of the Delta, at the request of the Contractor and

334   upon completion of any required environmental documentation, this Contract shall be

335   amended to provide for deliveries in or north of the Delta on mutually agreeable terms.

336   Such amendments to this Contract shall be limited solely to those changes made necessary by

337   the addition of such alternate points of delivery in or north of the Delta; *Provided, That*

338   the Contracting Officer's use of the Harvey O. Banks Pumping Plant to deliver Project

339   Water does not trigger this right of amendment.

340         (d)    The Contractor shall make reasonable and beneficial use of all water

341   furnished pursuant to this Contract.  Groundwater recharge programs (direct, indirect, or

342   in lieu), groundwater banking programs, surface water storage programs, and other

343   similar programs utilizing Project Water or other water furnished pursuant to this

344   Contract conducted within the Contractor's Service Area which are consistent with

345   applicable State law and result in use consistent with Federal Reclamation law will be

346   allowed; *Provided, That* any direct recharge program(s) is (are) described in the

347   Contractor's water conservation plan submitted pursuant to Article 25 of this Contract;

348   *Provided, further, That* such water conservation plan demonstrates sufficient lawful uses

349   exist in the Contractor's Service Area so that using a long-term average, the quantity of

350   Delivered Water is demonstrated to be reasonable for such uses and in compliance with

351   Federal Reclamation law.  Groundwater recharge programs, groundwater banking

352   programs, surface water storage programs, and other similar programs utilizing Project

353   Water or other water furnished pursuant to this Contract conducted outside the

354   Contractor's Service Area may be permitted upon written approval of the Contracting

355   Officer, which approval will be based upon environmental documentation, Project Water

356  rights, and Project operational concerns.  The Contracting Officer will address such

357  concerns in regulations, policies, or guidelines.

358        (e)    The Contractor shall comply with requirements applicable to the

359  Contractor in biological opinion(s) prepared as a result of a consultation regarding the execution

360  of any water service contract between the Contracting Officer and the Contractor in effect

361  immediately prior to the Effective Date of this Contract undertaken pursuant to Section 7 of the

362  Endangered Species Act of 1973 (ESA), as amended, that are within the Contractor's legal

363  authority to implement.  The Existing Contract, which evidences in excess of 40 years of

364  diversions for irrigation and/or M&I purposes of the quantities of Project Water provided in

365  subdivision (a) of Article 3 of this Contract, will be considered in developing an appropriate

366  baseline for any required biological assessment(s) prepared pursuant to the ESA, and any other

367  needed environmental review.  Nothing herein shall be construed to prevent the Contractor from

368  challenging or seeking judicial relief in a court of competent jurisdiction with respect to any

369  biological opinion or other environmental documentation referred to in this Article.

370        (f)    Following the declaration of Water Made Available under Article 4 of

371  this Contract, the Contracting Officer will make a determination whether Project Water, or

372  other water available to the Project, can be made available to the Contractor in addition to

373  the Contract Total under this Article during the Year without adversely impacting other

374  Project Contractors.  At the request of the Contractor, the Contracting Officer will

375  consult with the Contractor prior to making such a determination.  If the Contracting

376  Officer determines that Project Water, or other water available to the Project, can be

377  made available to the Contractor, the Contracting Officer will announce the availability of

378  such water and shall so notify the Contractor as soon as practical.  The Contracting

379    Officer will thereafter meet with the Contractor and other Project Contractors capable of

380    taking such water to determine the most equitable and efficient allocation of such water.

381    If the Contractor requests the delivery of any quantity of such water, the Contracting

382    Officer shall make such water available to the Contractor in accordance with applicable

383    statutes, regulations, guidelines, and policies.  Subject to existing  interim renewal,

384    repayment, and other long-term contractual commitments, water rights and operational

385    constraints, interim renewal, repayment, and other long-term Project Contractors shall have a

386    first right to acquire such water, including Project Water made available pursuant to

387    Section 215 of the Reclamation Reform Act of 1982.

388           (g)      The Contractor may request permission to reschedule for use during

389    the subsequent Year some or all of the Water Made Available to the Contractor during

390    the current Year, referred to as "rescheduled water." The Contractor may request

391    permission to use during the current Year a quantity of Project Water which may be

392    made available by the United States to the Contractor during the subsequent Year referred

393    to as "preuse." The Contracting Officer's written approval may permit such uses in

394    accordance with applicable statutes, regulations, guidelines, and policies.

395           (h)      The Contractor's right pursuant to Federal Reclamation law and

396    applicable State law to the reasonable and beneficial use of the Water Delivered pursuant to

397    this Contract shall not be disturbed, and this Contract shall continue so long as the

398    Contractor pays applicable Rates and Charges under this Contract consistent with Section

399    9(d) or 9(c)(1) of the Act of August 4, 1939 (53 Stat. 1195) as applicable, and applicable

400    law.  Nothing in the preceding sentence shall affect the Contracting Officer's ability to impose

401    shortages under Article 11 or subdivision (b) of Article 12 of this Contract.

402          (i)      Project Water furnished to the Contractor pursuant to this Contract

403   may be delivered for purposes other than those described in subdivisions (p) and (r) of

404   Article 1 of this Contract upon written approval by the Contracting Officer in

405   accordance with the terms and conditions of such approval.

406          (j)      The Contracting Officer shall make reasonable efforts to protect the

407   water rights necessary for the Project and to provide the water available under this Contract.

408   The Contracting Officer shall not object to participation by the Contractor, in the capacity

409   and to the extent permitted by law, in administrative proceedings related to the Project

410   Water rights; *Provided, That* the Contracting Officer retains the right to object to the

411   substance of the Contractor's position in such a proceeding; *Provided, further, That* in

412   such proceedings the Contracting Officer shall recognize the Contractor has a legal right

413   under the terms of this Contract to use Project Water.

### TIME FOR DELIVERY OF WATER

415   4.    (a)      On or about February 20 each Calendar Year, the Contracting Officer

416   shall announce the Contracting Officer's expected declaration of the Water Made

417   Available.  Such declaration will be expressed in terms of Water Made Available and

418   will be updated monthly, and more frequently if necessary, based on the then-current

419   operational and hydrologic conditions and a new declaration with changes, if any, to the

420   Water Made Available will be made.  The Contracting Officer shall provide forecasts of

421   Project operations and the basis of the estimate, with relevant supporting information,

422   upon the written request of the Contractor.

423          (b)      On or before each March 1 and at such other times as necessary, the

424   Contractor shall submit to the Contracting Officer a written schedule, satisfactory to the

425   Contracting Officer, showing the monthly quantities of Project Water to be delivered by

426   the United States to the Contractor pursuant to this Contract for the Year commencing

427   on such March 1.  The Contracting Officer shall use all reasonable means to deliver

428   Project Water according to the approved schedule for the Year commencing on such

429   March 1.

430           (c)    The Contractor shall not schedule Project Water in excess of the

431   quantity of Project Water the Contractor intends to put to reasonable and beneficial use

432   within the Contractor's Service Area or to sell, transfer, or exchange pursuant to Article

433   9 of this Contract during any Year.

434           (d)    Subject to the conditions set forth in subdivision (a) of Article 3 of this

435   Contract, the United States shall deliver Project Water to the Contractor in accordance

436   with the initial schedule submitted by the Contractor pursuant to subdivision (b) of this

437   Article, or any written revision(s) thereto satisfactory to the Contracting Officer, submitted

438   within a reasonable time prior to the date(s) on which the requested change(s) is (are) to

439   be implemented.

440   <u>POINT OF DIVERSION AND RESPONSIBILITY FOR DISTRIBUTION OF WATER</u>

441   5.    (a)    Project Water scheduled pursuant to subdivision (b) of Article 4 of this

442   Contract shall be delivered to the Contractor at Project facilities and any additional point or

443   points of delivery either on Project facilities or another location or locations mutually

444   agreed to in writing by the Contracting Officer and the Contractor.

445           (b)    The Contracting Officer, either directly or indirectly through its

446   written agreements(s) with the Operating Non-Federal Entity(ies), shall make all

447   reasonable efforts to maintain sufficient flows and levels of water in the Project facilities

448  to deliver Project Water to the Contractor at the point or points of delivery established

449  pursuant to subdivision (a) of this Article.

450        (c)    The Contractor shall deliver Irrigation Water in accordance with any

451  applicable land classification provisions of Federal Reclamation law and the associated

452  regulations. The Contractor shall not deliver Project Water to land outside the

453  Contractor's Service Area unless approved in advance by the Contracting Officer.

454        (d)    All Water Delivered to the Contractor pursuant to this Contract shall

455  be measured and recorded with equipment furnished, installed, operated, and maintained

456  by the Contracting Officer either directly or indirectly through its written agreements(s)

457  with the Operating Non-Federal Entity(ies), unless undertaken by the Contractor with

458  the consent of the Contracting Officer at the point or points of delivery established

459  pursuant to subdivision (a) of this Article. Upon the request of either party to this

460  Contract, the Contracting Officer shall investigate, or cause to be investigated by the

461  appropriate Operating Non-Federal Entity(ies), the accuracy of such measurements and

462  shall take any necessary steps to adjust any errors appearing therein. For any period of

463  time when accurate measurements have not been made, the Contracting Officer shall

464  consult with the Contractor and the appropriate Operating Non-Federal Entity(ies), if any,

465  prior to making a final determination of the quantity delivered for that period of time.

466        (e)    Absent a separate contrary written agreement with the Contractor,

467  neither the Contracting Officer nor any Operating Non-Federal Entity(ies) shall be

468  responsible for the control, carriage, handling, use, disposal, or distribution of Water

469  Delivered to the Contractor pursuant to this Contract beyond the point or points of

470  delivery established pursuant to subdivision (a) of this Article. The Contractor shall

471  indemnify the United States, its officers, employees, agents, and assigns on account of

472  damage or claim of damage of any nature whatsoever for which there is legal

473  responsibility, including property damage, personal injury, or death arising out of or

474  connected with  the control, carriage, handling, use, disposal, or distribution of such Water

475  Delivered beyond such point or points of delivery except for any damage or claim arising

476  out of:  (i) acts or omissions of the Contracting Officer or any of its officers, employees,

477  agents, and assigns, including the Operating Non-Federal Entity(ies) with the intent of

478  creating the situation resulting in any damage or claim; (ii) willful misconduct of the

479  Contracting Officer or any of its officers, employees, agents, and assigns, including the

480  Operating Non-Federal Entity(ies); (iii) negligence of the Contracting Officer or any of its

481  officers, employees, agents, and assigns, including the Operating Non-Federal Entity(ies);

482  (iv) a malfunction of facilities owned and/or operated by the United States or the Operating

483  Non-Federal Entity(ies); or (v) failure of the United States, its officers, employees, agents,

484  and assigns, including the Operating Non-Federal Entity(ies), to provide drainage service.

485  <u>MEASUREMENT OF WATER WITHIN THE CONTRACTOR'S SERVICE AREA</u>

486  6.     (a)     The Contractor has established a measuring program satisfactory to

487  the Contracting Officer.  The Contractor shall ensure that all surface water delivered for

488  irrigation purposes within the Contractor's Service Area is measured at each agricultural

489  turnout and such water delivered for M&I purposes is measured at each M&I service

490  connection.  The water measuring devices or water measuring methods of comparable

491  effectiveness must be acceptable to the Contracting Officer.  The Contractor shall be

492  responsible for installing, operating, maintaining, and repairing all such measuring devices

493  and implementing all such water measuring methods at no cost to the United States.  The

22

494   Contractor shall use the information obtained from such water measuring devices or

495   water measuring methods to ensure its proper management of the water; to bill water users for

496   water delivered by the Contractor; and, if applicable, to record water delivered for M&I

497   purposes by customer class as defined in the Contractor's water conservation plan

498   provided for in Article 25 of this Contract.  Nothing herein contained, however, shall

499   preclude the Contractor from establishing and collecting any charges, assessments, or

500   other revenues authorized by California law.  The Contractor shall include a summary of

501   all its annual surface water deliveries in the annual report described in subdivision (c) of

502   Article 25 of this Contract.

503            (b)       To the extent the information has not otherwise been provided, upon

504   execution of this Contract, the Contractor shall provide to the Contracting Officer a written

505   report describing the measurement devices or water measuring methods being used or to

506   be used to implement subdivision (a) of this Article and identifying the agricultural

507   turnouts and the M&I service connections or alternative measurement programs

508   approved by the Contracting Officer, at which such measurement devices or water

509   measuring methods are being used, and, if applicable, identifying the locations at which

510   such devices and/or methods are not yet being used including a time schedule for

511   implementation at such locations.  The Contracting Officer shall advise the Contractor

512   in writing within 60 days as to the adequacy and necessary modifications, if any, of the

513   measuring devices or water measuring methods identified in the Contractor's report and

514   if the Contracting Officer does not respond in such time, they shall be deemed adequate.

515   If the Contracting Officer notifies the Contractor that the measuring devices or methods

516   are inadequate, the parties shall within 60 days following the Contracting Officer's

Contract No. 14-06-200-495A-IR1-P

517 response, negotiate in good faith the earliest practicable date by which the Contractor shall

518 modify said measuring devices and/or measuring methods as required by the Contracting

519 Officer to ensure compliance with subdivision (a) of this Article.

520      (c)    All new surface water delivery systems installed within the Contractor's

521 Service Area after the Effective Date of this Contract shall also comply with the

522 measurement provisions described in subdivision (a) of this Article.

523      (d)    The Contractor shall inform the Contracting Officer and the State of

524 California in writing by April 30 of each Year of the monthly volume of surface water

525 delivered within the Contractor's Service Area during the previous Year.

526      (e)    The Contractor shall inform the Contracting Officer and the Operating

527 Non-Federal Entity(ies) on or before the 20th calendar day of each month of the quantity

528 of Irrigation Water and M&I Water taken during the preceding month.

529                 RATES, METHOD OF PAYMENT FOR WATER AND ACCELERATED
530                             REPAYMENT OF FACILITIES

531     7.    (a)    Notwithstanding the Contractor's full prepayment of the

532 Repayment Obligation pursuant to section 4011, subsection (a)(2)(A) and subsection

533 (a)(3)(A) of the WIIN Act, as set forth in Exhibit D, and any payments required

534 pursuant to section 4011, subsection (b) of the WIIN Act, to reflect the adjustment for

535 the final cost allocation as described in this Article, subsection (b), the Contractor's

536 Project construction and other obligations shall be determined in accordance with:  (i)

537 the Secretary's ratesetting policy for Irrigation Water adopted in 1988 and the Secretary's

538 then-existing ratesetting policy for M&I Water, consistent with the WIIN Act; and such

539 ratesetting policies shall be amended, modified, or superseded only through a public

540 notice and comment procedure; (ii) applicable Federal Reclamation law and associated

24

541  rules and regulations, or policies, and (iii) other applicable provisions of this Contract.

542  Payments shall be made by cash transaction, electronic funds transfers, or any other

543  mechanism as may be agreed to in writing by the Contractor and the Contracting Officer.

544  The Rates, Charges, and Tiered Pricing Component applicable to the Contractor upon

545  execution of this Contract are set forth in Exhibit "B," as may be revised annually.

546       (1)     The Contractor shall pay the United States as provided for in this

547  Article of this Contract for all Delivered Water at Rates, Charges, and Tiered Pricing Component

548  in accordance with policies for Irrigation Water and M&I Water.  The Contractor's Rates shall

549  be established to recover its estimated reimbursable costs included in the operation and

550  maintenance component of the Rate and amounts established to recover deficits and other

551  charges, if any, including construction costs as identified in the following subdivisions.

552       (2)     In accordance with the WIIN Act, the Contractor's allocable share

553  of Project construction costs will be repaid pursuant to the provisions of this Contract.

554       (A)     The amount due and payable to the United States, pursuant

555  to the WIIN Act, shall be the Repayment Obligation.  The Repayment Obligation has been

556  computed by the Contracting Officer in a manner consistent with the WIIN Act and is set forth

557  as a lump sum payment (M&I and Irrigation) and as four (4) approximately equal annual

558  installments (Irrigation Only) to be repaid no later than three (3) years after the Effective Date of

559  this Contract as set forth in Exhibit D.  The Repayment Obligation is due in lump sum by July

560  31, 2020 as provided by the WIIN Act.  The Contractor must provide appropriate notice to the

561  Contracting Officer in writing no later than thirty (30) days prior to the Effective Date if electing

562  to repay the amount due using the lump sum alternative.  If such notice is not provided by such

563  date, the Contractor shall be deemed to have elected the installment payment alternative, in

564   which case, the first such payment shall be made no later than July 31, 2020. The second

565   payment shall be made no later than the first anniversary of the first payment date. The third

566   payment shall be made no later than the second anniversary of the first payment date. The final

567   payment shall be made no later than June 1, 2023. If the installment payment option is elected

568   by the Contractor, the Contractor may pre-pay the remaining portion of the Repayment

569   Obligation by giving the Contracting Officer sixty (60) days written notice, in which case, the

570   Contracting Officer shall re-compute the remaining amount due to reflect the pre-payment using

571   the same methodology as was used to compute the initial annual installment payment amount,

572   which is illustrated in Exhibit D. Notwithstanding any Additional Capital Obligation that may

573   later be established, receipt of the Contractor's payment of the Repayment Obligation to the

574   United States shall fully and permanently satisfy the Existing Capital Obligation.

575                  (B)    Additional Capital Obligations that are not reflected in, the

576   schedules referenced in Exhibit D and properly assignable to the Contractor, shall be repaid as

577   prescribed by the WIIN Act without interest except as required by law. Consistent with Federal

578   Reclamation law, interest shall continue to accrue on the M&I portion of the Additional Capital

579   Obligation assigned to the Contractor until such costs are paid. Increases or decreases in the

580   Additional Capital Obligation assigned to the Contractor caused solely by annual adjustment of

581   the Additional Capital Obligation assigned to each Project contractor by the Secretary shall not

582   be considered in determining the amounts to be paid pursuant to this subdivision (a)(2)(B),

583   however, will be considered under subdivision (b) of this Article. A separate agreement shall be

584   established by the Contractor and the Contracting Officer to accomplish repayment of the

585   Additional Capital Obligation assigned to the Contractor within the timeframe prescribed by the

586   WIIN Act, subject to the following:

587                                 (1)      If the collective Additional Capital Obligation

588 properly assignable to the contractors exercising conversion under section 4011 of the WIIN Act

589 is less than five million dollars ($5,000,000), then the portion of such costs properly assignable

590 to the Contractor shall be repaid not more than five (5)-years after the Contracting Officer

591 notifies the Contractor of the Additional Capital Obligation; *Provided, That* the reference to the

592 amount of five million dollars ($5,000,000) shall not be a precedent in any other context.

593                                 (2)      If the collective Additional Capital Obligation

594 properly assignable to the contractors exercising conversion under section 4011 of the WIIN Act

595 is equal to or greater than five million dollars ($5,000,000), then the portion of such costs

596 properly assignable to the Contractor shall be repaid as provided by applicable Federal

597 Reclamation law and Project ratesetting policy; *Provided, That* the reference to the amount of

598 five million dollars ($5,000,000) shall not be a precedent in any other context.

599                      (b)      In the event that the final cost allocation referenced in Section 4011(b) of

600 the WIIN Act determines that the costs properly assignable to the Contractor are greater than

601 what has been paid by the Contractor, the Contractor shall be obligated to pay the remaining

602 allocated costs.  The term of such additional repayment contract shall be not less than one (1)

603 year and not more than ten (10) years, however, mutually agreeable provisions regarding the rate

604 of repayment of such amount may be developed by the Contractor and Contracting Officer.  In

605 the event that the final cost allocation indicates that the costs properly assignable to the

606 Contractor are less than what the Contractor has paid, the Contracting Officer shall credit such

607 overpayment as an offset against any outstanding or future obligations of the Contractor, with the

608 exception of Restoration Fund charges pursuant to section 3407(d) of Pub. L. 102-575.

609        (c)     The Contracting Officer shall notify the Contractor of the Rates, Charges,

610 and Tiered Pricing Component as follows:

611        (1)     Prior to July 1 of each Calendar Year, the Contracting Officer shall

612 provide the Contractor an estimate of the Charges for Project Water that will be applied

613 to the period October 1, of the current Calendar Year, through September 30, of the

614 following Calendar Year, and the basis for such estimate.  The Contractor shall be

615 allowed not less than two months to review and comment on such estimates.  On or

616 before September 15 of each Calendar Year, the Contracting Officer shall notify the

617 Contractor in writing of the Charges to be in effect during the period October 1 of the current

618 Calendar Year, through September 30, of the following Calendar Year, and such

619 notification shall revise Exhibit "B."

620        (2)     Prior to October 1 of each Calendar Year, the Contracting Officer

621 shall make available to the Contractor an estimate of the Rates and Tiered Pricing Component

622 for Project Water for the following Year and the computations and cost allocations upon which

623 those Rates are based.  The Contractor shall be allowed not less than two months to review and

624 comment on such computations and cost allocations.  By December 31 of each Calendar Year,

625 the Contracting Officer shall provide the Contractor with the final Rates and Tiered Pricing

626 Component to be in effect for the upcoming Year, and such notification shall revise Exhibit

627 "B."

628        (d)     At the time the Contractor submits the initial schedule for the delivery of

629 Project Water for each Year pursuant to subdivision (b) of Article 4 of this Contract, the

630 Contractor shall make an advance payment to the United States equal to the total amount

631 payable pursuant to the applicable Rate(s) set under subdivision (a) of this Article, for the

632 Project Water scheduled to be delivered pursuant to this Contract during the first two

633 calendar months of the Year.  Before the end of the first month and before the end of

634 each calendar month thereafter, the Contractor shall make an advance payment to the

635 United States, at the Rate(s) set under subdivision (a) of this Article, for the Water

636 Scheduled to be delivered pursuant to this Contract during the second month

637 immediately following.  Adjustments between advance payments for Water Scheduled

638 and payments at Rates due for Water Delivered shall be made before the end of the

639 following month; _Provided, That_ any revised schedule submitted by the Contractor

640 pursuant to Article 4 of this Contract which increases the amount of Water Delivered

641 pursuant to this Contract during any month shall be accompanied with appropriate

642 advance payment, at the Rates then in effect, to assure that Project Water is not

643 delivered to the Contractor in advance of such payment.  In any month in which the

644 quantity of Water Delivered to the Contractor pursuant to this Contract equals the

645 quantity of Water Scheduled and paid for by the Contractor, no additional Project Water

646 shall be delivered to the Contractor unless and until an advance payment at the Rates

647 then in effect for such additional Project Water is made.  Final adjustment between the

648 advance payments for the Water Scheduled and payments for the quantities of Water

649 Delivered during each Year pursuant to this Contract shall be made as soon as

650 practicable but no later than April 30th of the following Year, or 60 days after the

651 delivery of Project Water rescheduled under subdivision (g) of Article 3 of this Contract

652 if such water is not delivered by the last day of February.

653        (e)     The Contractor shall also make a payment in addition to the Rate(s) in

654 subdivision (d) of this Article to the United States for Water Delivered, at the Charges and the

29

655 applicable Tiered Pricing Component then in effect, before the end of the month following

656 the month of delivery; *Provided, That* the Contractor may be granted an exception from

657 the Tiered Pricing Component pursuant to subdivision (k)(2) of this Article. The

658 payments shall be consistent with the quantities of Irrigation Water and M&I Water Delivered as

659 shown in the water delivery report for the subject month prepared by the Operating Non-Federal

660 Entity(ies) or, if there is no Operating Non-Federal Entity(ies), by the Contracting Officer. The

661 water delivery report shall be deemed a bill for the payment of Charges and the applicable

662 Tiered Pricing Component for Water Delivered. Adjustment for overpayment or

663 underpayment of Charges shall be made through the adjustment of payments due to the United

664 States for Charges and Tiered Pricing Component for the next month. Any amount to be paid

665 for past due payment of Charges and Tiered Pricing Component shall be computed pursuant to

666 Article 19 of this Contract.

667       (f)    The Contractor shall pay for any Water Delivered under subdivision

668 (a), (f), or (g) of Article 3 of this Contract as determined by the Contracting Officer

669 pursuant to applicable statutes, associated regulations, any applicable provisions of

670 guidelines or ratesetting policies; *Provided, That* the Rate for Water Delivered under

671 subdivision (f) of Article 3 of this Contract shall be no more than the otherwise

672 applicable Rate for Irrigation Water or M&I Water under subdivision (a) of this Article.

673       (g)    Payments to be made by the Contractor to the United States under this

674 Contract may be paid from any revenues available to the Contractor.

675       (h)    All revenues received by the United States from the Contractor

676 relating to the delivery of Project Water or the delivery of non-Project water through

677 Project facilities shall be allocated and applied in accordance with Federal Reclamation

Contract No. 14-06-200-495A-IR1-P

678    law and the associated rules or regulations, and the then-current Project ratesetting policies

679    for M&I Water or Irrigation Water.

680            (i)      The Contracting Officer shall keep its accounts pertaining to the

681    administration of the financial terms and conditions of its long-term contracts, in accordance

682    with applicable Federal standards, so as to reflect the application of Project costs and

683    revenues.  The Contracting Officer shall, each Year upon request of the Contractor,

684    provide to the Contractor a detailed accounting of all Project and Contractor expense

685    allocations, the disposition of all Project and Contractor revenues, and a summary of all

686    water delivery information.  The Contracting Officer and the Contractor shall enter into

687    good faith negotiations to resolve any discrepancies or disputes relating to accountings,

688    reports, or information.

689            (j)      The parties acknowledge and agree that the efficient administration of this

690    Contract is their mutual goal.  Recognizing that experience has demonstrated that mechanisms,

691    policies, and procedures used for establishing Rates, Charges, and Tiered Pricing Component,

692    and/or for making and allocating payments, other than those set forth in this Article may be in

693    the mutual best interest of the parties, it is expressly agreed that the parties may enter into

694    agreements to modify the mechanisms, policies, and procedures for any of those purposes while

695    this Contract is in effect without amending this Contract.

696            (k)    1.      Beginning at such time as deliveries of Project Water in a Year

697    exceed 80 percent of the Contract Total, then before the end of the month following the month of

698    delivery the Contractor shall make an additional payment to the United States equal to the

699    applicable Tiered Pricing Component.  The Tiered Pricing Component for the amount of Water

700    Delivered in excess of 80 percent of the Contract Total, but less than or equal to 90 percent of the

31

701  Contract Total, shall equal one-half of the difference between the Rate established under

702  subdivision (a) of this Article and the Irrigation Full Cost Water Rate or M&I Full Cost Water

703  Rate, whichever is applicable. The Tiered Pricing Component for the amount of Water

704  Delivered which exceeds 90 percent of the Contract Total shall equal the difference between (i)

705  the Rate established under subdivision (a) of this Article and (ii) the Irrigation Full Cost Water

706  Rate or M&I Full Cost Water Rate, whichever is applicable. For all Water Delivered pursuant to

707  subdivision (a) of Article 3 of this Contract which is in excess of 80 percent of the Contract

708  Total, this increment shall be deemed to be divided between Irrigation Water and M&I Water in

709  the same proportion as actual deliveries of each bear to the cumulative total Water Delivered.

710          2.     Subject to the Contracting Officer's written approval, the

711  Contractor may request and receive an exemption from such Tiered Pricing Component for

712  Project Water delivered to produce a crop which the Contracting Officer determines will provide

713  significant and quantifiable habitat values for waterfowl in fields where the water is used and the

714  crops are produced; *Provided, That* the exemption from the Tiered Pricing Component for

715  Irrigation Water shall apply only if such habitat values can be assured consistent with the

716  purposes of the CVPIA through binding agreements executed with or approved by the

717  Contracting Officer prior to use of such water.

718          3.     For purposes of determining the applicability of the Tiered Pricing

719  Component pursuant to this Article, Water Delivered shall include Project Water that the

720  Contractor transfers to others but shall not include Project Water transferred to the Contractor,

721  nor shall it include the additional water provided to the Contractor under the provisions of

722  subdivision (f) of Article 3 of this Contract.

723          (l)     For the term of this Contract, Rates applied under the respective

Contract No. 14-06-200-495A-IR1-P

724   ratesetting policies will be established to recover only reimbursable O&M (including any

725   deficits) and capital costs of the Project, as those terms are used in the then-current Project

726   ratesetting policies, and interest, where appropriate, except in instances where a minimum

727   Rate is applicable in accordance with the relevant Project ratesetting policy.  Changes of

728   significance in practices which implement the Contracting Officer's ratesetting policies will

729   not be implemented until the Contracting Officer has provided the Contractor an opportunity

730   to discuss the nature, need, and impact of the proposed change.

731           (m)     Except as provided in subsections 3405(a)(1)(B) and 3405(f) of the

732   CVPIA, the Rates for Project Water transferred by the Contractor shall be the

733   Contractor's Rates, in accordance with the applicable Project ratesetting policy, adjusted

734   upward or downward to reflect the changed costs, if any, incurred by the Contracting Officer

735   in the delivery of the transferred Project Water to the transferee's point of delivery.  If the

736   Contractor is receiving lower Rates and Charges because of inability to pay and is

737   transferring Project Water to another entity whose Rates and Charges are not adjusted

738   due to inability to pay, the Rates and Charges for transferred Project Water shall not be

739   adjusted to reflect the Contractor's inability to pay.

740           (n)     Pursuant to the Act of October 27, 1986 (100 Stat. 3050), the Contracting

741   Officer is authorized to adjust determinations of ability to pay every five years.

742                         <u>NON-INTEREST BEARING O&M DEFICITS</u>

743           8.      The Contractor and the Contracting Officer concur that, as of the Effective Date

744   of this Contract the Contractor has no non-interest bearing O&M deficits and shall have

745   no further liability therefore.

Contract No. 14-06-200-495A-IR1-P

746                    SALES, TRANSFERS, OR EXCHANGES OF WATER

747        9.        (a)        The right to receive Project Water provided for in this Contract may be

748    sold, transferred, or exchanged to others for reasonable and beneficial uses within the

749    State of California if such sale, transfer, or exchange is authorized by applicable Federal

750    and State laws, and applicable guidelines or regulations then in effect.  No sale, transfer,

751    or exchange of Project Water under this Contract may take place without the prior

752    written approval of the Contracting Officer, except as provided for in subdivision (b) of

753    this Article, and no such sales, transfers, or exchanges shall be approved absent all

754    appropriate environmental documentation, including, but not limited to, documents

755    prepared pursuant to the NEPA and ESA.  Such environmental documentation should

756    include, as appropriate, an analysis of groundwater impacts and economic and social

757    effects, including environmental justice, of the proposed water transfers on both the

758    transferor and transferee.

759                    (b)        In order to facilitate efficient water management by means of water

760    transfers of the type historically carried out among Project Contractors located within the

761    same geographical area and to allow the Contractor to participate in an accelerated water

762    transfer program during the term of this Contract, the Contracting Officer shall prepare, as

763    appropriate, all necessary environmental documentation, including, but not limited to,

764    documents prepared pursuant to the NEPA and ESA, analyzing annual transfers within

765    such geographical areas and the Contracting Officer shall determine whether such

766    transfers comply with applicable law.  Following the completion of the environmental

767    documentation, such transfers addressed in such documentation shall be conducted with

768    advance notice to the Contracting Officer, but shall not require prior written approval by

769 the Contracting Officer. Such environmental documentation and the Contracting

770 Officer's compliance determination shall be reviewed every five years and updated, as

771 necessary, prior to the expiration of the then existing five (5)-year period. All subsequent

772 environmental documentation shall include an alternative to evaluate not less than the quantity of

773 Project Water historically transferred within the same geographical area.

774                (c)     For a water transfer to qualify under subdivision (b) of this Article, such

775 water transfer must:  (i) be for irrigation purposes for lands irrigated within the previous three

776 years, for M&I use, groundwater recharge, groundwater banking, or similar groundwater

777 activities, surface water storage, or fish and wildlife resources; not lead to land

778 conversion; and be delivered to established cropland, wildlife refuges, groundwater basins, or

779 M&I use; (ii) occur within a single Year; (iii) occur between a willing seller and a willing

780 buyer; (iv) convey water through existing facilities with no new construction or

781 modifications to facilities and be between existing Project Contractors and/or the Contractor

782 and the United States, Department of the Interior; and (v) comply with all applicable

783 Federal, State, and local or tribal laws and requirements imposed for protection of the

784 environment and Indian Trust Assets, as defined under Federal law.

785                      APPLICATION OF PAYMENTS AND ADJUSTMENTS

786       10.    (a)    The amount of any overpayment by the Contractor of the Contractor's

787 O&M, capital, and deficit (if any) obligations for the Year shall be applied first to any current

788 liabilities of the Contractor arising out of this Contract then due and payable.

789 Overpayments of more than $1,000 shall be refunded at the Contractor's request.  In lieu of a

790 refund, any amount of such overpayment, at the option of the Contractor, may be credited

791 against amounts to become due to the United States by the Contractor.  With respect to

792   overpayment, such refund or adjustment shall constitute the sole remedy of the Contractor or

793   anyone having or claiming to have the right to the use of any of the Project Water supply

794   provided for herein.  All credits and refunds of overpayments shall be made within 30

795   days of the Contracting Officer obtaining direction as to how to credit or refund such

796   overpayment in response to the notice to the Contractor that it has finalized the accounts for the

797   Year in which the overpayment was made.

798         (b)    All advances for miscellaneous costs incurred for work requested by the

799   Contractor pursuant to Article 24 of this Contract shall be adjusted to reflect the actual

800   costs when the work has been completed.  If the advances exceed the actual costs incurred, the

801   difference will be refunded to the Contractor.  If the actual costs exceed the Contractor's

802   advances, the Contractor will be billed for the additional costs pursuant to Article 24 of this

803   Contract.

804                TEMPORARY REDUCTIONS – RETURN FLOWS

805      11.    (a)    Subject to:  (i) the authorized purposes and priorities of the Project and the

806   requirements of Federal law, and (ii) the obligations of the United States under existing

807   contracts, or renewals thereof, providing for water deliveries from the Project, the

808   Contracting Officer shall make all reasonable efforts to optimize Project Water deliveries to

809   the Contractor as provided in this Contract.

810         (b)    The Contracting Officer or Operating Non-Federal Entity(ies) may

811   temporarily discontinue or reduce the quantity of Water Delivered to the Contractor as

812   herein provided for the purposes of investigation, inspection, maintenance, repair, or

813   replacement of any of the Project facilities or any part thereof necessary for the delivery of

814   Project Water to the Contractor, but so far as feasible the Contracting Officer or Operating

Contract No. 14-06-200-495A-IR1-P

815   Non-Federal Entity(ies) will give the Contractor due notice in advance of such temporary

816   discontinuance or reduction, except in case of emergency, in which case no notice need be

817   given; *Provided, That* the United States shall use its best efforts to avoid any

818   discontinuance or reduction in such service.  Upon resumption of service after such

819   discontinuance or reduction, and if requested by the Contractor, the United States will, if

820   possible, deliver the quantity of Project Water which would have been delivered

821   hereunder in the absence of such discontinuance or reduction.

822           (c)    The United States reserves the right to all seepage and return flow

823   water derived from Water Delivered to the Contractor hereunder which escapes or is

824   discharged beyond the Contractor's Service Area; *Provided, That* this shall not be construed

825   as claiming for the United States any right to seepage or return flow being put to

826   reasonable and beneficial use pursuant to this Contract within the Contractor's Service

827   Area by the Contractor or those claiming by, through, or under the Contractor.

828           <u>CONSTRAINTS ON THE AVAILABILITY OF WATER</u>

829      12.    (a)    In its operation of the Project, the Contracting Officer will use all
830   reasonable means to guard against a Condition of Shortage in the quantity of Project
831   Water to be made available to the Contractor pursuant to this Contract.  In the event the
832   Contracting Officer determines that a Condition of Shortage appears probable, the
833   Contracting Officer will notify the Contractor of said determination as soon as practicable.

834           (b)    If there is a Condition of Shortage because of inaccurate runoff forecasting
835   or other similar operational errors affecting the Project; drought and other physical or natural
836   causes beyond the control of the Contracting Officer; or actions taken by the Contracting
837   Officer to meet current and future legal obligations, then, except as provided in subdivision (a) of
838   Article 17 of this Contract, no liability shall accrue against the United States or any of its
839   officers, agents, or employees for any damage, direct or indirect, arising therefrom.

840           (c)    In any Year in which there may occur a Condition of Shortage for any of

841   the reasons specified in subdivision (b) of this Article, and subject to subdivision (d) of this

842   Article, the Contracting Officer will first allocate the available Project Water consistent

843  with the Project M&I Water Shortage Policy in its form applicable under this Article 12(c) of

844  water service contracts in effect on the date of this Contract which provide water service

845  from Delta Division Facilities for determining the amount of Project Water Available

846  for delivery to the Project Contractors.  Subject to the foregoing allocation, in any year

847  in which there may occur a Condition of Shortage, the Contracting Officer shall then

848  apportion Project Water among the Contractor and others entitled to Project Water from

849  Delta Division Facilities under long-term water service or repayment contracts (or

850  renewals thereof or binding commitments therefore) in force on February 28, 2005, as

851  follows:

852          (1)      The Contracting Officer shall make an initial and subsequent

853  determination as necessary of the total quantity of Project Water estimated to be

854  scheduled or actually scheduled under subdivision (b) of Article 4 of this Contract and

855  under all other interim renewal, long-term water service or repayment contracts then in

856  force for the delivery of Project Water by the United States from Delta Division Facilities

857  during the relevant Year, the quantity so determined being hereinafter referred to as the

858  scheduled total;

859          (2)      A determination shall be made of the total quantity of Project

860  Water that is available for meeting the scheduled total, the quantity so determined being

861  hereinafter referred to as the available supply;

862          (3)      The total quantity of Project Water estimated to be scheduled or

863  actually scheduled by the Contractor during the relevant Year, under subdivision (b) of

864  Article 4 hereof, shall be divided by the scheduled total, the quotient thus obtained being

865  hereinafter referred to as the Contractor's proportionate share; and

866      (4)     The available supply shall be multiplied by the Contractor's

867  proportionate share and the result shall be the quantity of Project Water made available

868  by the United States to the Contractor for the relevant Year in accordance with the

869  schedule developed by the Contracting Officer under subdivision (c)(1) of this Article 12,

870  but in no event shall such amount exceed the Contract Total.  In the event the

871  Contracting Officer subsequently determines that the Contracting Officer can increase or

872  needs to decrease the available supply for delivery from Delta Division Facilities to

873  interim renewal, long-term water service, and repayment contractors during the relevant

874  Year, such additions or reductions to the available supply shall be apportioned consistent

875  with subparagraphs (1) through (4), inclusive.

876      (d)     By entering into this Contract, the Contractor does not waive any legal

877  rights or remedies it may have to file or participate in any administrative or judicial

878  proceeding contesting:  (i) the sufficiency of the Project M&I Water Shortage Policy; (ii)

879  the substance of such a policy; (iii) the applicability of such a policy; or (iv) the manner in

880  which such policy is implemented in order to allocate Project Water between M&I and

881  irrigation purposes; *Provided, That* the Contractor has commenced any such judicial

882  challenge or any administrative procedures necessary to institute any judicial challenge

883  within six months of the policy becoming final.  By agreeing to the foregoing, the

884  Contracting Officer does not waive any legal defenses or remedies that it may have to

885  assert in such a proceeding.  Nothing contained herein shall be interpreted to validate or

886  invalidate the Project M&I Water Shortage Policy.

887      (e)     Omitted

Contract No. 14-06-200-495A-IR1-P

888                UNAVOIDABLE GROUNDWATER PERCOLATION

889      13.    To the extent applicable, the Contractor shall not be deemed to have delivered

890  Irrigation Water to Excess Lands or Ineligible Lands within the meaning of this Contract if

891  such lands are irrigated with groundwater that reaches the underground strata as an

892  unavoidable result of the delivery of Irrigation Water by the Contractor to Eligible Lands.

893              COMPLIANCE WITH FEDERAL RECLAMATION LAWS

894      14.    The parties agree that the delivery of Irrigation Water or use of Federal facilities
895  pursuant to this Contract is subject to Federal Reclamation law, including but not limited
896  to, the Reclamation Reform Act of 1982 (43 U.S.C. 390aa *et seq.*), as amended and
897  supplemented, and the rules and regulations promulgated by the Secretary of the Interior
898  under Federal Reclamation law.

899                PROTECTION OF WATER AND AIR QUALITY

900      15.    (a)    The Contractor, without expense to the United States, will care for,
901  operate and maintain transferred works in a manner that preserves the quality of the water at the
902  highest feasible level as determined by the Contracting Officer.

903              (b)    The United States will care for, operate and maintain reserved works in a
904  manner that preserves the quality of the water at the highest level possible as determined by the
905  Contracting Officer.  The United States does not warrant the quality of the water delivered to the
906  Contractor and is under no obligation to furnish or construct water treatment facilities to
907  maintain or improve the quality of water delivered to the Contractor.

908              (c)    The Contractor will comply with all applicable water and air pollution
909  laws and regulations of the United States and the State of California; and will obtain all required
910  permits or licenses from the appropriate Federal, State, or local authorities necessary for the
911  delivery of water by the Contractor; and shall be responsible for compliance with all Federal,
912  State, and local water quality standards applicable to surface and subsurface drainage and/or
913  discharges generated through the use of Federal or Contractor facilities or Project Water
914  provided by the Contractor within its Service Area.

915              (d)    This Article shall not affect or alter any legal obligations of the Secretary
916  to provide drainage or other discharge services.

917              (e)    The Contracting Officer shall notify the Contractor in writing when

918  drainage service becomes available.  Thereafter, the Contracting Officer shall provide

919  drainage service to the Contractor at rates established pursuant to the then-existing

Contract No. 14-06-200-495A-IR1-P

920    ratesetting policy for Irrigation Water; *Provided, That* such ratesetting policy shall be

921    amended, modified, or superseded only through the process described in subdivision (a)

922    of Article 7 of this Contract.

923    <u>WATER ACQUIRED BY THE CONTRACTOR OTHER THAN FROM THE UNITED</u>
924    <u>STATES</u>

925    16.    (a)    Water or water rights now owned or hereafter acquired by the Contractor

926    other than from the United States and Irrigation Water furnished pursuant to the terms of

927    this Contract may be simultaneously transported through the same distribution facilities

928    of the Contractor subject to the following:  (i) if the facilities utilized for commingling

929    Irrigation Water and non-Project water were constructed without funds made available

930    pursuant to Federal Reclamation law, the provisions of Federal Reclamation law will be

931    applicable only to the Landholders of lands which receive Irrigation Water; (ii) the

932    eligibility of land to receive Irrigation Water must be established through the certification

933    requirements as specified in the Acreage Limitation Rules and Regulations (43 CFR Part

934    426); (iii) the water requirements of Eligible Lands within the Contractor's Service Area

935    can be established and the quantity of Irrigation Water to be utilized is less than or equal to

936    the quantity necessary to irrigate such Eligible Lands; and (iv) if the facilities utilized for

937    commingling Irrigation Water and non-Project water are (were) constructed with funds

938    made available pursuant to Federal Reclamation law, the non-Project water will be

939    subject to the acreage limitation provisions of Federal Reclamation law, unless the

940    Contractor pays to the United States the incremental fee described in 43 CFR 426.15.  In

941    determining the incremental fee, the Contracting Officer will calculate annually the cost

942    to the Federal Government, including interest, of storing or delivering non-Project water,

943    which for purposes of this Contract shall be determined as follows:  The quotient shall

944   be the unpaid distribution system costs divided by the total irrigable acreage within the

945   Contractor's Service Area.  The incremental fee per acre is the mathematical result of

946   such quotient times the interest rate determined using Section 202 (3) of the Act of

947   October 12, 1982 (96 Stat. 1263).  Such incremental fee will be charged to each acre of

948   excess or full-cost land within the Contractor's Service Area that receives non-Project

949   water through Federally financed or constructed facilities.  The incremental fee calculation

950   methodology will continue during the term of this Contract absent the promulgation of a

951   contrary Bureau of Reclamation-wide rule, regulation, or policy adopted after the

952   Contractor has been afforded the opportunity to review and comment on the proposed

953   rule, regulation, or policy.  If such rule, regulation, or policy is adopted, it shall supersede

954   this provision.

955            (b)      Water or water rights now owned or hereafter acquired by the

956   Contractor, other than from the United States may be stored, conveyed, and/or diverted

957   through Project facilities, subject to the completion of appropriate environmental

958   documentation, with the approval of the Contracting Officer and the execution of any

959   contract determined by the Contracting Officer to be necessary, consistent with the

960   following provisions:

961            (1)      The Contractor may introduce non-Project water into Project

962   facilities and deliver said water to lands within the Contractor's Service Area, including

963   Ineligible Lands, subject to payment to the United States and/or to any applicable

964   Operating Non-Federal Entity of an appropriate rate as determined by the applicable

965   Project ratesetting policy, the Reclamation Reform Act of 1982, and the Project use

966   power policy, if such Project use power policy is applicable, each as amended, modified, or

Contract No. 14-06-200-495A-IR1-P

967 superseded from time to time.

968         (2)    Delivery of such non-Project water in and through Project

969 facilities shall only be allowed to the extent such deliveries do not: (i) interfere with

970 other Project purposes as determined by the Contracting Officer; (ii) reduce the quantity or

971 quality of water available to other Project Contractors; (iii) interfere with the delivery of

972 contractual water entitlements to any other Project Contractors; or (iv) interfere with the

973 physical maintenance of the Project facilities.

974         (3)    Neither the United States nor the Operating Non-Federal

975 Entity(ies) shall be responsible for control, care, or distribution of the non-Project water

976 before it is introduced into or after it is delivered from the Project facilities.  The

977 Contractor hereby releases and agrees to defend and indemnify the United States and the

978 Operating Non-Federal Entity(ies), and their respective officers, agents, and employees,

979 from any claim for damage to persons or property, direct or indirect, resulting from the

980 act(s) of the Contractor, its officers, employees, agents, or assigns, in (i) extracting or

981 diverting non-Project water from any source, or (ii) diverting such non-Project water into

982 Project facilities.

983         (4)    Diversion of such non-Project water into Project facilities shall

984 be consistent with all applicable laws, and if involving groundwater, consistent with any

985 applicable groundwater management plan for the area from which it was extracted.

986         (5)    After Project purposes are met, as determined by the

987 Contracting Officer, the United States and Project Contractors entitled to Project Water

988 from Delta Division Facilities shall share priority to utilize the remaining capacity of the

989 facilities declared to be available by the Contracting Officer for conveyance and

990   transportation of non Project water prior to any such remaining capacity being made

991   available to non-Project contractors.  Other Project Contractors shall have a second priority

992   to any remaining capacity of facilities declared to be available by the Contracting Officer

993   for conveyance and transportation of non-Project water prior to any such remaining

994   capacity being made available to non-Project contractors.

995                           OPINIONS AND DETERMINATIONS

996        17.    (a)    Where the terms of this Contract provide for actions to be based upon

997   the opinion or determination of either party to this Contract, said terms shall not be

998   construed as permitting such action to be predicated upon arbitrary, capricious, or

999   unreasonable opinions or determinations.  Both parties, notwithstanding any other

1000  provisions of this Contract, expressly reserve the right to seek relief from and appropriate

1001  adjustment for any such arbitrary, capricious, or unreasonable opinion or determination.

1002  Each opinion or determination by either party shall be provided in a timely manner.

1003  Nothing in this subdivision (a) of this Article is intended to or shall affect or alter the

1004  standard of judicial review applicable under Federal law to any opinion or determination

1005  implementing a specific provision of Federal law embodied in statute or regulation.

1006               (b)    The Contracting Officer shall have the right to make determinations

1007  necessary to administer this Contract that are consistent with the provisions of this

1008  Contract, the laws of the United States and of the State of California, and the rules and

1009  regulations promulgated by the Secretary.  Such determinations shall be made in

1010  consultation with the Contractor to the extent reasonably practicable.

1011                          COORDINATION AND COOPERATION

1012       18.    (a)    In order to further their mutual goals and objectives, the Contracting

1013   Officer and the Contractor shall communicate, coordinate, and cooperate with each other,

1014   and with other affected Project Contractors, in order to improve the O&M of the

1015   Project. The communication, coordination, and cooperation regarding O&M shall

1016   include, but not be limited to, any action which will or may materially affect the quantity

1017   or quality of Project Water supply, the allocation of Project Water supply, and Project

1018   financial matters including, but not limited to, budget issues. The communication,

1019   coordination, and cooperation provided for hereunder shall extend to all provisions of

1020   this Contract. Each party shall retain exclusive decision making authority for all actions,

1021   opinions, and determinations to be made by the respective party.

1022          (b)      Within 120 days following the Effective Date of this Contract, the

1023   Contractor, other affected Project Contractors, and the Contracting Officer shall arrange to

1024   meet with interested Project Contractors to develop a mutually agreeable, written Project-

1025   wide process, which may be amended as necessary separate and apart from this Contract.

1026   The goal of this process shall be to provide, to the extent practicable, the means of

1027   mutual communication and interaction regarding significant decisions concerning

1028   Project O&M on a real-time basis.

1029          (c)      In light of the factors referred to in subdivision (b) of Article 3 of this

1030   Contract, it is the intent of the Secretary to improve water supply reliability. To carry out

1031   this intent:

1032                 (1)      The Contracting Officer will, at the request of the Contractor,

1033   assist in the development of integrated resource management plans for the Contractor.

1034   Further, the Contracting Officer will, as appropriate, seek authorizations for implementation

1035   of partnerships to improve water supply, water quality, and reliability.

1036      (2)    The Secretary will, as appropriate, pursue program and project

1037 implementation and authorization in coordination with Project Contractors to improve the

1038 water supply, water quality, and reliability of the Project for all Project purposes.

1039      (3)    The Secretary will coordinate with Project Contractors and the

1040 State of California to seek improved water resource management.

1041      (4)    The Secretary will coordinate actions of agencies within the

1042 Department of the Interior that may impact the availability of water for Project purposes.

1043      (5)    The Contracting Officer shall periodically, but not less than

1044 annually, hold division-level meetings to discuss Project operations, division-level water

1045 management activities, and other issues as appropriate.

1046      (d)    Without limiting the contractual obligations of the Contracting Officer

1047 under the other Articles of this Contract, nothing in this Article shall be construed to limit

1048 or constrain the Contracting Officer's ability to communicate, coordinate, and cooperate

1049 with the Contractor or other interested stakeholders or to make decisions in a timely fashion

1050 as needed to protect health, safety, or the physical integrity of structures or facilities.

1051 <u>CHARGES FOR DELINQUENT PAYMENTS</u>

1052    19.   (a)    The Contractor shall be subject to interest, administrative, and penalty
1053 charges on delinquent payments. If a payment is not received by the due date, the
1054 Contractor shall pay an interest charge on the delinquent payment for each day the payment
1055 is delinquent beyond the due date. If a payment becomes 60 days delinquent, the
1056 Contractor shall pay, in addition to the interest charge, an administrative charge to
1057 cover additional costs of billing and processing the delinquent payment. If a payment is
1058 delinquent 90 days or more, the Contractor shall pay, in addition to the interest and
1059 administrative charges, a penalty charge for each day the payment is delinquent beyond the
1060 due date, based on the remaining balance of the payment due at the rate of 6 percent per
1061 year. The Contractor shall also pay any fees incurred for debt collection services associated
1062 with a delinquent payment.

1063      (b)    The interest rate charged shall be the greater of either the rate prescribed
1064 quarterly in the <u>Federal Register</u> by the Department of the Treasury for application to

Contract No. 14-06-200-495A-IR1-P

1065 overdue payments, or the interest rate of 0.5 percent per month. The interest rate charged
1066 will be determined as of the due date and remain fixed for the duration of the delinquent
1067 period.

1068     (c)    When a partial payment on a delinquent account is received, the amount
1069 received shall be applied first to the penalty charges, second to the administrative charges,
1070 third to the accrued interest, and finally to the overdue payment.

1071 EQUAL EMPLOYMENT OPPORTUNITY

1072     20.    During the performance of this Contract, the Contractor agrees as follows:

1073     (a)    The Contractor will not discriminate against any employee or applicant
1074 for employment because of race, color, religion, sex, sexual orientation, gender identity, or
1075 national origin. The Contractor will take affirmative action to ensure that applicants are
1076 employed, and that employees are treated during employment, without regard to their race,
1077 color, religion, sex, sexual orientation, gender identity, or national origin. Such action shall
1078 include, but not be limited to, the following: employment, upgrading, demotion, or
1079 transfer; recruitment or recruitment advertising; layoff or termination; rates of pay or other
1080 forms of compensation; and selection for training, including apprenticeship. The Contractor
1081 agrees to post in conspicuous places, available to employees and applicants for employment,
1082 notices to be provided by the Contracting Officer setting forth the provisions of this
1083 nondiscrimination clause.

1084     (b)    The Contractor will, in all solicitations or advertisements for employees
1085 placed by or on behalf of the Contractor, state that all qualified applicants will receive
1086 consideration for employment without regard to race, color, religion, sex, sexual orientation,
1087 gender identity, or national origin.

1088     (c)    The Contractor will not discharge or in any other manner discriminate
1089 against any employee or applicant for employment because such employee or applicant has
1090 inquired about, discussed, or disclosed the compensation of the employee or applicant or
1091 another employee or applicant. This provision shall not apply to instances in which an
1092 employee who has access to the compensation information of other employees or applicants as
1093 part of such employee's essential job functions discloses the compensation of such other
1094 employees or applicants to individuals who do not otherwise have access to such information,
1095 unless such disclosure is in response to a formal complaint or charge, in furtherance of an
1096 investigation, proceeding, hearing, or action, including an investigation conducted by the
1097 employer, or is consistent with the Contractor's legal duty to furnish information.

1098     (d)    The Contractor will send to each labor union or representative of
1099 workers with which it has a collective bargaining agreement or other contract or understanding,
1100 a notice, to be provided by the Contracting Officer, advising the labor union or workers'
1101 representative of the Contractor's commitments under section 202 of Executive Order No.
1102 11246 of September 24, 1965, and shall post copies of the notice in conspicuous places
1103 available to employees and applicants for employment.

Contract No. 14-06-200-495A-IR1-P

1104    (e)  The Contractor will comply with all provisions of Executive Order No.
1105 11246 of Sept. 24, 1965, and of the rules, regulations, and relevant orders of the Secretary
1106 of Labor.

1107    (f)  The Contractor will furnish all information and reports required by
1108 Executive Order No. 11246 of Sept. 24, 1965, and by the rules, regulations, and orders of
1109 the Secretary of Labor, or pursuant thereto, and will permit access to its books, records, and
1110 accounts by the Contracting Agency and the Secretary of Labor for purposes of investigation
1111 to ascertain compliance with such rules, regulations, and orders.

1112    (g)  In the event of the Contractor's noncompliance with the
1113 nondiscrimination clauses of this Contract or with any of such rules, regulations, or orders, this
1114 Contract may be canceled, terminated, or suspended in whole or in part and the Contractor may
1115 be declared ineligible for further Government contracts in accordance with procedures
1116 authorized in Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may
1117 be imposed and remedies invoked as provided in Executive Order No. 11246 of Sept. 24,
1118 1965, or by rule, regulation, or order of the Secretary of Labor, or as otherwise provided by
1119 law.

1120    (h)  The Contractor will include the provisions of paragraphs (a) through (g)
1121 in every subcontract or purchase order unless exempted by the rules, regulations, or orders
1122 of the Secretary of Labor issued pursuant to section 204 of Executive Order No. 11246 of Sept.
1123 24, 1965, so that such provisions will be binding upon each subcontractor or vendor. The
1124 Contractor will take such action with respect to any subcontract or purchase order as may be
1125 directed by the Secretary of Labor as a means of enforcing such provisions, including
1126 sanctions for noncompliance: *Provided, however, That* in the event the Contractor
1127 becomes involved in, or is threatened with, litigation with a subcontractor or vendor as a
1128 result of such direction, the Contractor may request the United States to enter into such
1129 litigation to protect the interests of the United States.

1130   <u>GENERAL OBLIGATION – BENEFITS CONDITIONED UPON PAYMENT</u>

1131  21.  (a)  The obligation of the Contractor to pay the United States as provided in
1132 this Contract is a general obligation of the Contractor notwithstanding the manner in which the
1133 obligation may be distributed among the Contractor's water users and notwithstanding the default
1134 of individual water users in their obligation to the Contractor.

1135    (b)  The payment of charges becoming due pursuant to this Contract is a
1136 condition precedent to receiving benefits under this Contract. The United States shall not make
1137 water available to the Contractor through Project facilities during any period in which the
1138 Contractor is in arrears in the advance payment of water rates due the United States. The
1139 Contractor shall not deliver water under the terms and conditions of this Contract for lands or
1140 parties that are in arrears in the advance payment of water rates as levied or established by the
1141 Contractor.

1142           (c)     With respect to subdivision (b) of this Article, the Contractor shall have no

1143   obligation to require advance payment for water rates which it levies.

1144   <u>COMPLIANCE WITH CIVIL RIGHTS LAWS AND REGULATIONS</u>

1145         22.    (a)    The Contractor shall comply with Title VI of the Civil Rights Act of 1964
1146   (Pub. L. 88-352; 42 U.S.C. § 2000d), the Rehabilitation Act of 1973 (Pub. L. 93-112, Title V, as
1147   amended; 29 U.S.C. § 791, et seq.), the Age Discrimination Act of 1975 (Pub. L. 94-135, Title
1148   III; 42 U.S.C. 6101, et seq.), Title II of the Americans with Disabilities Act of 1990 (Pub. L. 101-
1149   336; 42 U.S.C. § 12131, et seq.), and any other applicable civil rights laws, and with the
1150   applicable implementing regulations and any guidelines imposed by the U.S.
1151   Department of the Interior and/or Bureau of Reclamation.

1152            (b)    These statutes prohibit any person in the United States from being
1153   excluded from participation in, being denied the benefits of, or being otherwise subjected to
1154   discrimination under any program or activity receiving financial assistance from the Bureau
1155   of Reclamation on the grounds of race, color, national origin, disability, or age.  By
1156   executing this Contract, the Contractor agrees to immediately take any measures necessary
1157   to implement this obligation, including permitting officials of the United States to inspect
1158   premises, programs, and documents.

1159            (c)    The Contractor makes this Contract in consideration of and for the
1160   purpose of obtaining any and all Federal grants, loans, contracts, property discounts, or other
1161   Federal financial assistance extended after the date hereof to the Contractor by the Bureau
1162   of Reclamation, including installment payments after such date on account of
1163   arrangements for Federal financial assistance which were approved before such date.
1164   The Contractor recognizes and agrees that such Federal assistance will be extended in
1165   reliance on the representations and agreements made in this Article and that the United
1166   States reserves the right to seek judicial enforcement thereof.

1167            (d)    Complaints of discrimination against the Contractor shall be investigated
1168   by the Contracting Officer's Office of Civil Rights.

1169   <u>PRIVACY ACT COMPLIANCE</u>

1170         23.    (a)    The Contractor shall comply with the Privacy Act of 1974 (Privacy Act)
1171   (5 U.S.C. § 552a) and the Department of the Interior rules and regulations under the Privacy
1172   Act (43 C.F.R. § 2.45, et seq.) in maintaining Landholder certification and reporting
1173   records required to be submitted to the Contractor for compliance with Sections 206,
1174   224(c), and 228 of the Reclamation Reform Act of 1982 (43 U.S.C. §§ 390ff, 390ww, and
1175   390zz), and pursuant to 43 C.F.R. § 426.18.

1176            (b)    With respect to the application and administration of the criminal penalty
1177   provisions of the Privacy Act (5 U.S.C. § 552a(i)), the Contractor and the Contractor's
1178   employees who are responsible for maintaining the certification and reporting records

1179  referenced in paragraph (a) above are considered to be employees of the Department of the
1180  Interior. See 5 U.S.C. § 552a(m).

1181         (c)     The Contracting Officer or a designated representative shall provide the
1182  Contractor with current copies of the Department of the Interior Privacy Act regulations
1183  and the Bureau of Reclamation Federal Register Privacy Act System of Records Notice
1184  (Interior/WBR-31, Acreage Limitation) which govern the maintenance, safeguarding,
1185  and disclosure of information contained in the Landholders' certification and reporting
1186  records.

1187         (d)     The Contracting Officer shall designate a full-time employee of the
1188  Bureau of Reclamation to be the System Manager responsible for making decisions on
1189  denials pursuant to 43 C.F.R. §§ 2.61 and 2.64 and amendment requests pursuant to 43
1190  C.F.R. § 2.72. The Contractor is authorized to grant requests by individuals for access to
1191  their own records.

1192         (e)     The Contractor shall forward promptly to the System Manager each
1193  proposed denial of access under 43 C.F.R. § 2.64 and each request for amendment of
1194  records filed under 43 C.F.R. § 2.71; notify the requester accordingly of such referral;
1195  and provide the System Manager with information and records necessary to prepare an
1196  appropriate response to the requester. These requirements do not apply to individuals
1197  seeking access to their own certification and reporting forms filed with the Contractor
1198  pursuant to 43 C.F.R. § 426.18 unless the requester elects to cite the Privacy Act as an
1199  authority for the request.

1200         (f)     Upon complete payment of the Repayment Obligation by the

1201  Contractor, this Article 23 will no longer be applicable.

1202         <u>CONTRACTOR TO PAY CERTAIN MISCELLANEOUS COSTS</u>

1203         24.    In addition to all other payments to be made by the Contractor pursuant to this

1204  Contract, the Contractor shall pay to the United States, within 60 days after receipt of a bill

1205  and detailed statement submitted by the Contracting Officer to the Contractor for such

1206  specific items of direct cost incurred by the United States for work requested by the

1207  Contractor associated with this Contract plus indirect costs in accordance with applicable

1208  Bureau of Reclamation policies and procedures. All such amounts referred to in this

1209  Article shall not exceed the amount agreed to in writing in advance by the Contractor.

1210  This Article shall not apply to costs for routine contract administration.

Contract No. 14-06-200-495A-IR1-P

## WATER CONSERVATION

1211

1212    25.    (a)    Prior to the delivery of water provided from or conveyed through
1213   Federally constructed or Federally financed facilities pursuant to this Contract, the
1214   Contractor shall develop a water conservation plan, as required by subsection 210(b) of the
1215   Reclamation Reform Act of 1982 and 43 C.F.R. 427.1 (Water Conservation Rules and
1216   Regulations).

1217   Additionally, an effective water conservation and efficiency program shall be based on the

1218   Contractor's water conservation plan that has been determined by the Contracting Officer to

1219   meet the conservation and efficiency criteria for evaluating water conservation plans

1220   established under Federal law.  The water conservation and efficiency program shall

1221   contain definite water conservation objectives, appropriate economically feasible water

1222   conservation measures, and time schedules for meeting those objectives.  Continued

1223   Project Water delivery pursuant to this Contract shall be contingent upon the

1224   Contractor's continued implementation of such water conservation program.  In the

1225   event the Contractor's water conservation plan or any revised water conservation plan

1226   completed pursuant to subdivision (d) of this Article 25 have not yet been determined by

1227   the Contracting Officer to meet such criteria, due to circumstances which the

1228   Contracting Officer determines are beyond the control of the Contractor, water deliveries

1229   shall be made under this Contract so long as the Contractor diligently works with the

1230   Contracting Officer to obtain such determination at the earliest practicable date, and

1231   thereafter the Contractor immediately begins implementing its water conservation and

1232   efficiency program in accordance with the time schedules therein.

1233           (b)    Should the amount of M&I Water delivered pursuant to subdivision

1234   (a) of Article 3 of this Contract equal or exceed two thousand (2,000) acre-feet per Year,

1235   the Contractor shall implement the Best Management Practices identified by the time

1236    frames issued by the Mid-Pacific Region's then-existing conservation and efficiency

1237    criteria for such M&I Water unless any such practice is determined by the Contracting

1238    Officer to be inappropriate for the Contractor.

1239             (c)     The Contractor shall submit to the Contracting Officer a report on the

1240    status of its implementation of the water conservation plan on the reporting dates specified in the

1241    then-existing conservation and efficiency criteria established under Federal law.

1242             (d)     At five (5)-year intervals, the Contractor shall revise its water

1243    conservation plan to reflect the then-existing conservation and efficiency criteria for evaluating

1244    water conservation plans established under Federal law and submit such revised water

1245    management plan to the Contracting Officer for review and evaluation.  The Contracting Officer

1246    will then determine if the water conservation plan meets the Bureau of Reclamation's then-

1247    existing conservation and efficiency criteria for evaluating water conservation plans established

1248    under Federal law.

1249             (e)     If the Contractor is engaged in direct groundwater recharge, such activity

1250    shall be described in the Contractor's water conservation plan.

1251             <u>EXISTING OR ACQUIRED WATER OR WATER RIGHTS</u>

1252    26.     Except as specifically provided in Article 16 of this Contract, the provisions

1253    of this Contract shall not be applicable to or affect non-Project water or water rights now owned

1254    or hereafter acquired by the Contractor or any user of such water within the Contractor's Service

1255    Area.  Any such water shall not be considered Project Water under this Contract.  In addition,

1256    this Contract shall not be construed as limiting or curtailing any rights which the Contractor or

1257    any water user within the Contractor's Service Area acquires or has available under any other

1258    contract pursuant to Federal Reclamation law.

Contract No. 14-06-200-495A-IR1-P

1259                    OPERATION AND MAINTENANCE OF TRANSFERRED WORKS

1260          27.    (a)    Upon substantial completion of the Project works, or as otherwise
1261    determined by the Contracting Officer, and following written notification, the care, operation,
1262    and maintenance of any or all of those Project works may be transferred to the Contractor.  Title
1263    to the transferred works will remain in the name of the United States, unless otherwise provided
1264    by the Congress of the United States.

1265                 (b)    The Contractor, without expense to the United States, will care for,
1266    operate, and maintain the transferred works in full compliance with the terms of this Contract
1267    and in such a manner that the transferred works remain in good and efficient condition.

1268                 (c)    Necessary repairs of the transferred works shall be made promptly by the
1269    Contractor.  In case of unusual conditions or serious deficiencies in the care, operation, and
1270    maintenance of the transferred works threatening or causing interruption of water service, the
1271    Contracting Officer may issue to the Contractor a special written notice of those necessary
1272    repairs.  Except in the case of an emergency, the Contractor will be given 60 days to either: 1)
1273    make the necessary repairs; or 2) submit a plan for accomplishing the repairs acceptable to the
1274    Contracting Officer that contains a timeframe for completing the necessary repairs.  In the case
1275    of an emergency the written notice of necessary repairs will include a timeframe for completion
1276    of the repairs.  If the Contractor fails to either: 1) make the necessary repairs within the identified
1277    timeframe; or 2) submit a plan for accomplishing the repairs acceptable to the Contracting
1278    Officer within 60 days of receipt of the notice and accomplish the repairs within the timeframe
1279    identified therein, the Contracting Officer may cause the repairs to be made, and the cost of those
1280    repairs shall be paid by the Contractor as directed by the Contracting Officer.

1281                 (d)    The Contractor shall not make any substantial changes in the transferred
1282    works without first obtaining written consent of the Contracting Officer.  The Contractor will
1283    take all reasonable measures to prevent any unauthorized encroachment on project land and
1284    rights-of-way and address any such encroachment as soon as the Contractor becomes aware of its
1285    existence.

1286                 (e)    The Contractor agrees to indemnify the United States for, and hold the
1287    United States and all of its representatives harmless from, all damages resulting from suits,
1288    actions, or claims of any character, except for intentional torts committed by employees of the
1289    United States, brought on account of any injury to any person or property arising out of any act,
1290    omission, neglect, or misconduct in the manner or method of performing any construction, care,
1291    operation, maintenance, supervision, examination, inspection, or other duties of the Contractor or
1292    the United States on transferred works required under this Contract, regardless of who performs
1293    those duties.

1294                 (f)    The Contractor will cooperate with the Contracting Officer in
1295    implementing an effective dam safety program.  The United States agrees to provide the
1296    Contractor and the appropriate agency of the State or States in which the Project facilities are
1297    located with design data, designs, and an operating plan for the dam(s) and related facilities
1298    consistent with the current memorandum of understanding between the United States and the

1299   State of California relating to the coordination of planning, design, construction, operation, and
1300   maintenance processes for dams and related facilities.

1301           (g)     In the event the Contractor is found to be operating the transferred works
1302   or any part thereof in violation of this Contract or the Contractor is found to be failing any
1303   financial commitments or other commitments to the United States under the terms and conditions
1304   of this Contract, then upon the election of the Contracting Officer, the United States may take
1305   over from the Contractor the care, operation, and maintenance of the transferred works by giving
1306   written notice to the Contractor of such election and the effective date thereof. Thereafter,
1307   during the period of operation by the United States, upon notification by the Contracting Officer
1308   the Contractor will pay to the United States, annually in advance, the cost of operation and
1309   maintenance of the works as determined by the Contracting Officer. Following written
1310   notification from the Contracting Officer the care, operation, and maintenance of the works may
1311   be transferred back to the Contractor.

1312           (h)     In addition to all other payments to be made by the Contractor under this
1313   Contract, the Contractor will reimburse to the United States, following the receipt of a statement
1314   from the Contracting Officer, all miscellaneous costs incurred by the United States for any work
1315   involved in the administration and supervision of this Contract.

1316           (i)     Nothing in this article will be deemed to waive the sovereign immunity of
1317   the United States.

1318        O&M BY THE SAN LUIS & DELTA – MENDOTA WATER AUTHORITY

1319     28.    (a)     The O&M of a portion of the Project facilities which serve the Contractor,

1320   and responsibility for funding a portion of the costs of such O&M, have been transferred to the

1321   San Luis & Delta-Mendota Water Authority, an Operating Non-Federal Entity by separate

1322   agreement (8-07-20-X0354-X) between the United States and Operating Non-Federal Entity San

1323   Luis & Delta-Mendota Water Authority. That separate agreement shall not interfere with or

1324   affect the rights or obligations of the Contractor or the United States hereunder.

1325           (b)     The Contracting Officer has previously notified the Contractor in

1326   writing that the Operation and Maintenance of a portion of the Project facilities which

1327   serve the Contractor has been transferred to the Operating Non-Federal Entity, and

1328   therefore, the Contractor shall pay directly to the Operating Non-Federal Entity, or to any

1329   successor approved by the Contracting Officer under the terms and conditions of the

Contract No. 14-06-200-495A-IR1-P

1330   separate agreement between the United States and the Operating Non-Federal Entity

1331   described in subdivision (a) of this Article, all rates, charges, or assessments of any kind,

1332   including any assessment for reserve funds, which the Operating Non-Federal Entity or such

1333   successor determines, sets, or establishes for the Operation and Maintenance of the portion of the

1334   Project facilities operated and maintained by the Operating Non-Federal Entity or such

1335   successor.  Such direct payments to Operating Non-Federal Entity or such successor shall

1336   not relieve the Contractor of its obligation to pay directly to the United States the

1337   Contractor's share of the Project Rates, Charges, and Tiered Pricing Component except to

1338   the extent the Operating Non-Federal Entity collects payments on behalf of the United

1339   States in accordance with the separate agreement identified in subdivision (a) of this

1340   Article.

1341           (c)     For so long as the O&M of any portion of the Project facilities

1342   serving the Contractor is performed by Operating Non-Federal Entity San Luis &

1343   Delta-Mendota Water Authority, or any successor thereto, the Contracting Officer

1344   shall adjust those components of the Rates for Water Delivered under this Contract

1345   representing the cost associated with the activity being performed by Operating Non-

1346   Federal Entity San Luis & Delta-Mendota Water Authority, or its successor.

1347           (d)     In the event the Operation and Maintenance of the Project facilities

1348   operated and maintained by the Operating Non-Federal Entity is re-assumed by the

1349   United States during the term of this Contract, the Contracting Officer shall so notify the

1350   Contractor, in writing, and present to the Contractor a revised Exhibit "B" which shall

1351   include the portion of the Rates to be paid by the Contractor for Project Water under this

1352   Contract representing the Operation and Maintenance costs of the portion of such Project

Contract No. 14-06-200-495A-IR1-P

1353  facilities which have been re-assumed.  The Contractor shall, thereafter, in the absence of written

1354  notification from the Contracting Officer to the contrary, pay the Rates, Charges, and Tiered

1355  Pricing Component specified in the revised Exhibit "B" directly to the United States in

1356  compliance with Article 7 of this Contract.

1357  O&M BY THE CALIFORNIA DEPARTMENT OF WATER RESOURCES

1358       28.1    (a)      The O&M of a portion of the Project facilities which serve the Contractor,

1359  and responsibility for funding a portion of the costs of such O&M, have been transferred to the

1360  California Department of Water Resources, an Operating Non-Federal Entity by a separate

1361  agreement (14-06-200-9755) between the United States and Operating Non-Federal

1362  Entity California Department of Water Resources.  This separate agreement shall not

1363  interfere with or affect the rights or obligations of the Contractor or the United States

1364  hereunder.

1365            (b)      The Contracting Officer has previously notified the Contractor in writing

1366  that the O&M of a portion of the Project facilities which serve the Contractor has been

1367  transferred to the Operating Non-Federal Entity California Department of Water

1368  Resources, and the Contractor shall pay directly to Operating Non-Federal Entity San

1369  Luis & Delta-Mendota Water Authority, or to any successor approved by the Contracting

1370  Officer under the terms and conditions of the separate agreement between the United

1371  States and Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority,

1372  described in subdivision (a) of Article 28 of this Contract, all rates, charges, or assessments of

1373  any kind, including any assessment for reserve funds, which Operating Non-Federal Entity

1374  California Department of Water Resources, or such successor determines, sets, or establishes for

1375  the O&M of the conveyance and conveyance pumping portion of the Project facilities

1376    operated and maintained by Operating Non-Federal Entity California Department of

1377    Water Resources, or such successor.  Such direct payments to Operating Non-Federal

1378    Entity San Luis & Delta-Mendota Water Authority, or such successor, shall not relieve

1379    the Contractor of its obligation to pay directly to the United States the Contractor's

1380    share of the Project Rates, Charges, and Tiered Pricing Component except to the extent

1381    the Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority collects

1382    payments on behalf of the United States in accordance with the separate agreement

1383    identified in subdivision (a) of Article 28 of this Contract.

1384            (c)     For so long as the O&M of any portion of the Project facilities serving

1385    the Contractor is performed by Operating Non-Federal Entity California Department of

1386    Water Resources, or any successor thereto, the Contracting Officer shall adjust those

1387    components of the Rates for Water Delivered under this Contract representing the cost associated

1388    with the activity being performed by Operating Non-Federal Entity California Department of

1389    Water Resources, or its successor.

1390            (d)     In the event the O&M of the Project facilities operated and maintained by

1391    Operating Non-Federal Entity California Department of Water Resources is re-assumed by the

1392    United States during the term of this Contract, the Contracting Officer shall so notify the

1393    Contractor, in writing, and present to the Contractor a revised Exhibit "B" which shall

1394    include the portion of the Rates and Charges, to be paid by the Contractor for Project

1395    Water under this Contract representing the O&M costs of the portion of such Project

1396    facilities which have been re-assumed.  The Contractor shall, thereafter, in the absence of

1397    written notification from the Contracting Officer to the contrary, pay the Rates, Charges,

Contract No. 14-06-200-495A-IR1-P

1398   and Tiered Pricing Component specified in the revised Exhibit "B" directly to the United

1399   States in compliance with Article 7 of this Contract.

1400                                O&M BY THE CONTRACTOR

1401       28.2   (a)     During the term of this Contract, the Contractor shall act as the Operating

1402   Non-Federal Entity for a portion of the Project facilities which serves the California Department

1403   of Fish and Wildlife (formally referred to as California Department of Fish and Game), the City

1404   of Huron, and the City of Coalinga, including but not limited to the Coalinga Canal System,

1405   which consists in part of the Coalinga Canal and turnouts and Pleasant Valley Pumping Plant.

1406   The Contractor, without expense to the United States, shall care for, operate, and maintain such

1407   portion of the Project facilities for the furnishing of water to the California Department of Fish

1408   and Wildlife, the City of Huron, and the City of Coalinga in full compliance with Federal

1409   Reclamation law and in such manner that they will remain in good and efficient condition;

1410   *Provided, That* the United States shall finance the costs of all major replacements of such

1411   facilities that the Contracting Officer determines are needed; *Provided, further, That* if the

1412   California Department of Fish and Wildlife, the City of Huron, or the City of Coalinga

1413   fails to pay to the Contractor in advance such entity's share of the O&M costs, consistent

1414   with any agreements between the Contractor and the California Department of Fish and

1415   Wildlife, the City of Huron, or the City of Coalinga, respectively, the Contractor shall be

1416   relieved of its obligation to the O&M of such facilities for the benefit of the non-paying entity.

1417       (b)     The Contracting Officer previously notified the California Department of

1418   Fish and Wildlife, the City of Huron, and the City of Coalinga in writing that the O&M of a

1419   portion of the Project facilities which serves the California Department of Fish and

1420   Wildlife, the City of Huron, and the City of Coalinga has been transferred to the Contractor.

Contract No. 14-06-200-495A-IR1-P

1421    Therefore, the California Department of Fish and Wildlife, the City of Huron, and the City of

1422    Coalinga have entered separate agreements with the Contractor providing the terms and

1423    conditions pursuant to which the Contractor will operate and maintain a portion of the

1424    Project facilities which serves the California Department of Fish and Wildlife, the City of

1425    Huron, and the City of Coalinga, including the amount(s) the California Department of

1426    Fish and Wildlife, the City of Huron, and the City of Coalinga are to pay the Contractor

1427    for that service.  Consistent with any such agreements, the California Department of Fish

1428    and Wildlife, the City of Huron, and the City of Coalinga shall pay directly to the

1429    Contractor all rates, charges, or assessments of any kind, including any assessment for

1430    reserve funds, which the Contractor sets or establishes for a portion of the Project facilities which

1431    serves the California Department of Fish and Wildlife, the City of Huron, and the City of

1432    Coalinga and is operated and maintained by the Contractor.  Such direct payments to the

1433    Contractor shall not relieve the Contractor of its obligation to pay directly to the United

1434    States the California Department of Fish and Wildlife, the City of Huron, and the City

1435    of Coalinga its share of the Project Rates, Charges, and Tiered Pricing Component

1436    referred to in this Contract.

1437            (c)    For so long as the O&M for a portion of the Project facilities which serves

1438    the California Department of Fish and Wildlife, the City of Huron, and the City of Coalinga is

1439    performed by the Contractor, the Contracting Officer shall adjust those components of the Rates

1440    for Water Delivered under the Contracts representing the cost associated with the activity being

1441    performed by the Contractor.

1442            (d)    The United States may re-assume O&M for a portion of the Project

1443    facilities which serves the California Department of Fish and Wildlife, the City of Huron, and the

1444   City of Coalinga.  In that event, the Contracting Officer shall so notify the California Department

1445   of Fish and Wildlife, the City of Huron, and the City of Coalinga, in writing, and present to

1446   the Contractor a revised Exhibit "B" which shall include the portion of the Rates and Charges

1447   to be paid by the California Department of Fish and Wildlife, the City of Huron, and the City of

1448   Coalinga for Project Water under this Contract representing the O&M costs for a portion of the

1449   Project facilities which serves the California Department of Fish and Wildlife, the City of

1450   Huron, and the City of Coalinga.  The California Department of Fish and Wildlife, the

1451   City of Huron, and the City of Coalinga shall, thereafter, in the absence of written

1452   notification from the Contracting Officer to the contrary, pay the Rates, Charges, and Tiered

1453   Pricing Component specified in the revised Exhibit "B" directly to the United State in

1454   compliance with Article 7 of their contracts.  The Contractor shall, thereafter, be relieved

1455   of all of its obligations under this Article 28.2.

1456                              PUMPING PLANTS, POWER FOR PUMPING PLANTS

1457        28.3.   (a)     The United States shall furnish and install pumping plants and furnish

1458   the amount of Project power the Contracting Officer determines is necessary to deliver Project

1459   Water to the Contractor from the Delta-Mendota, San Luis, and Coalinga Canals, including the

1460   Pleasant Valley Pumping Plant, at the point(s) of delivery identified pursuant to subdivision

1461   (a) of Article 5 of this Contract at heads and elevations sufficient to irrigate by gravity the

1462   areas within the Contractor's Service Area below 700 feet mean sea level elevation.

1463                    (b)     With advance approval of the Contracting Officer, the Contractor

1464   may, at its own expense, furnish and install pumping facilities, and related electrical

1465   equipment, to enable it to divert and deliver Project Water from the Delta-Mendota, San

1466   Luis, and Coalinga Canals and the Pleasant Valley Pumping Plant before the United States

Contract No. 14-06-200-495A-IR1-P

1467    furnishes and installs all the pumping plants referred to in subdivision (a) of this Article.

1468    The United States shall furnish the amount of Project power needed to operate such

1469    pumping facilities; *Provided, That* the Contractor maintains an agreement with an entity

1470    to convey such power to such facilities, and the Contractor agrees to pay any and all

1471    charges assessed by that entity for such service.

1472                    (c)    The furnishing of power by the United States shall be in conformance

1473    with operating criteria, rules, and regulations, including the Project use power policy,

1474    established by the Contracting Officer; *Provided, That* any such operating criteria, rules,

1475    and regulations, including the Project use power policy, established by the Contracting

1476    Officer shall not excuse the United States from its obligation under subdivision (a) of this

1477    Article.  Such operating criteria, rules, and regulations shall be developed in cooperation

1478    with the Contractor and shall be based on acceptable irrigation management practices and the

1479    power generation capacity available to the United States for the furnishing of Project Water to

1480    the Contractor.

1481                    (d)    The Contracting Officer or his representative shall at all times have

1482    access to and may inspect and investigate the pumping facilities for the purpose of ascertaining

1483    if they are being kept in safe and proper operating condition.

1484    EXAMINATION, INSPECTION, AND AUDIT OF PROJECT WORKS, RECORDS, AND
1485    REPORTS FOR DETERMINING ADEQUACY OF OPERATION AND MAINTENANCE

1486        29.    (a)    The Contracting Officer may, from time to time, examine the following:
1487    the Contractor's books, records, and reports; the project works being operated by the Contractor;
1488    the adequacy of the operation and maintenance program[s]; the reserve fund; and the water
1489    conservation program including the water conservation fund, if applicable.  Notwithstanding title
1490    ownership, where the United States retains a financial, physical, or liability interest in facilities
1491    either constructed by the United States or with funds provided by the United States, the
1492    Contracting Officer may examine any or all of the project works providing such interest to the
1493    United States.

Contract No. 14-06-200-495A-IR1-P

1494        (b)    The Contracting Officer may, or the Contractor may ask the Contracting
1495   Officer to, conduct special inspections of any project works being operated by the Contractor and
1496   special audits of the Contractor's books and records to ascertain the extent of any operation and
1497   maintenance deficiencies to determine the remedial measures required for their correction and to
1498   assist the Contractor in solving specific problems. Except in an emergency, any special
1499   inspection or audit shall be made only after written notice thereof has been delivered to the
1500   Contractor by the Contracting Officer.

1501        (c)    The Contractor shall provide access to the project works, operate any
1502   mechanical or electrical equipment, and be available to assist in the examination, inspection, or
1503   audit.

1504        (d)    The Contracting Officer shall prepare reports based on the examinations,
1505   inspections, or audits and furnish copies of such reports and any recommendations to the
1506   Contractor.

1507        (e)    The costs incurred by the United States in conducting operation and
1508   maintenance examinations, inspections, and audits and preparing associated reports and
1509   recommendations related to high- and significant-hazard dams and associated facilities shall be
1510   nonreimbursable. Associated facilities include carriage, distribution, and drainage systems;
1511   pumping and pump-generating plants; powerplant structures; tunnels/pipelines; diversion and
1512   storage dams (low-hazard); Type 2 bridges which are Bureau of Reclamation-owned bridges not
1513   located on a public road; regulating reservoirs (low-hazard); fish passage and protective
1514   facilities, including hatcheries; river channelization features; rural/municipal water systems;
1515   desalting and other water treatment plants; maintenance buildings and service yards; facilities
1516   constructed under Federal loan programs (until paid out); and recreation facilities (reserved
1517   works only); and any other facilities as determined by the Contracting Officer.

1518        (f)    (1)    The Contractor shall reimburse the actual cost incurred by the

1519   United States in making O&M examinations, inspections, and audits, and preparing

1520   associated reports and recommendations.

1521        (g)    Expenses incurred by the Contractor, as applicable, in participating in the
1522   operation and maintenance site examination will be borne by the Contractor.

1523        (h)    Requests by the Contractor for consultations, design services, or
1524   modification reviews, and the completion of any operation and maintenance activities identified
1525   in the formal recommendations resulting from the examination (unless otherwise noted) are to be
1526   funded as project operation and maintenance and are reimbursable by the Contractor to the extent
1527   of current project operation and maintenance allocations.

1528        (i)    Site visit special inspections that are beyond the regularly scheduled
1529   operation and maintenance examinations conducted to evaluate particular concerns or problems
1530   and provide assistance relative to any corrective action (either as a follow up to an operation and
1531   maintenance examination or when requested by the Contractor) shall be nonreimbursable.

Contract No. 14-06-200-495A-IR1-P

1532     (j)     The Contracting Officer may provide the State(s) an opportunity to
1533   observe and participate in, at its (their) own expense, the examinations and inspections.  The
1534   State(s) may be provided copies of reports and any recommendations relating to such
1535   examinations and inspections.

1536               CONTINGENT ON APPROPRIATION OR ALLOTMENT OF FUNDS

1537     30.   The expenditure or advance of any money or the performance of any obligation of
1538   the United States under this Contract shall be contingent upon appropriation or allotment
1539   of funds.  Absence of appropriation or allotment of funds shall not relieve the Contractor
1540   from any obligations under this Contract.  No liability shall accrue to the United States in case
1541   funds are not appropriated or allotted.

1542                     BOOKS, RECORDS, AND REPORTS

1543     31.   (a)     The Contractor shall establish and maintain accounts and other books and
1544   records pertaining to administration of the terms and conditions of this Contract, including
1545   the Contractor's financial transactions; water supply data; project operations, maintenance, and
1546   replacement logs; project land and rights-of-way use agreements; the water users' land-use (crop
1547   census), land-ownership, land-leasing, and water-use data; and other matters that the
1548   Contracting Officer may require.  Reports shall be furnished to the Contracting Officer
1549   in such form and on such date or dates as the Contracting Officer may require.  Subject to
1550   applicable Federal laws and regulations, each party to this Contract shall have the right during
1551   office hours to examine and make copies of the other party's books and records relating to
1552   matters covered by this Contract.

1553     (b)     Notwithstanding the provisions of subdivision (a) of this Article, no

1554   books, records, or other information shall be requested from the Contractor by the

1555   Contracting Officer unless such books, records, or information are reasonably related to the

1556   administration or performance of this Contract.  Any such request shall allow the Contractor a

1557   reasonable period of time within which to provide the requested books, records, or

1558   information.

1559     (c)     At such time as the Contractor provides information to the Contracting

1560   Officer pursuant to subdivision (a) of this Article, a copy of such information shall be provided

1561   to the Operating Non-Federal Entity(ies).

1562          ASSIGNMENT LIMITED – SUCCESSORS AND ASSIGNS OBLIGATED

1563     32.     (a)     The provisions of this Contract shall apply to and bind the successors and
1564 assigns of the parties hereto, but no assignment or transfer of this Contract or any right or interest
1565 therein by either party shall be valid until approved in writing by the other party.

1566          (b)     The assignment of any right or interest in this Contract by either party

1567 shall not interfere with the rights or obligations of the other party to this Contract absent the

1568 written concurrence of said other party.

1569          (c)     The Contracting Officer shall not unreasonably condition or withhold

1570 approval of any proposed assignment.

1571                              SEVERABILITY

1572     33.     In the event that a person or entity who is neither (i) a party to a Project contract,

1573 nor (ii) a person or entity that receives Project Water from a party to a Project contract, nor (iii)

1574 an association or other form of organization whose primary function is to represent parties to

1575 Project contracts, brings an action in a court of competent jurisdiction challenging the

1576 legality or enforceability of a provision included in this Contract and said person, entity,

1577 association, or organization obtains a final court decision holding that such provision is

1578 legally invalid or unenforceable and the Contractor has not intervened in that lawsuit in

1579 support of the plaintiff(s), the parties to this Contract shall use their best efforts to (i)

1580 within 30 days of the date of such final court decision identify by mutual agreement the

1581 provisions in this Contract which must be revised and (ii) within three months thereafter

1582 promptly agree on the appropriate revision(s).  The time periods specified above may be

1583 extended by mutual agreement of the parties.  Pending the completion of the actions

1584 designated above, to the extent it can do so without violating any applicable provisions of

1585 law, the United States shall continue to make the quantities of Project Water specified in this

64

Contract No. 14-06-200-495A-IR1-P

1613 change, is likely to: (i) result in the use of Project Water contrary to the terms of this Contract;

1614 (ii) impair the ability of the Contractor to pay for Project Water furnished under this Contract or

1615 to pay for any Federally-constructed facilities for which the Contractor is responsible; and (iii)

1616 have an impact on any Project Water rights applications, permits, or licenses. In addition,

1617 the Contracting Officer shall comply with the NEPA and the ESA. The Contractor will

1618 be responsible for all costs incurred by the Contracting Officer in this process, and such

1619 costs will be paid in accordance with Article 24 of this Contract.

1620 FEDERAL LAWS

1621 37.    By entering into this Contract, the Contractor does not waive its rights to contest

1622 the validity or application in connection with the performance of the terms and

1623 conditions of this Contract of any Federal law or regulation; *Provided, That* the

1624 Contractor agrees to comply with the terms and conditions of this Contract unless and

1625 until relief from application of such Federal law or regulation to the implementing

1626 provision of the Contract is granted by a court of competent jurisdiction.

1627 NOTICES

1628 38.    Any notice, demand, or request authorized or required by this Contract shall be
1629 deemed to have been given, on behalf of the Contractor, when mailed, postage prepaid, or
1630 delivered to the Area Manager, South-Central California Area Office, 1243 N Street, Fresno,
1631 California 93721, Bureau of Reclamation, and on behalf of the United States, when mailed,
1632 postage prepaid, or delivered to the Board of Directors of the Westlands Water District, P.O. Box
1633 6056, Fresno, California 93703-6056. The designation of the addressee or the address may be
1634 changed by notice given in the same manner as provided in this Article for other notices.

1635 EMERGENCY RESERVE FUND

1636 39.    (a)    Commencing on June 1, 2020, the Contractor shall accumulate and
1637 maintain a reserve fund or demonstrate to the satisfaction of the Contracting Officer that other
1638 funds are available for use as an emergency reserve fund. The Contractor shall establish and
1639 maintain that emergency reserve fund to meet costs incurred during periods of special stress

Contract No. 14-06-200-495A-IR1-P

caused by damaging droughts, storms, earthquakes, floods, or other emergencies threatening or
causing interruption of water service.

(b)     The Contractor shall accumulate the reserve fund with annual deposits or
investments of not less than $500,000 to a Federally insured, interest- or dividend-bearing
account or in securities guaranteed by the Federal Government: *Provided, That* money in the
reserve fund, including accrued interest, shall be available within a reasonable time to meet
expenses for such purposes as those identified in paragraph (d) herein.  Such annual deposits and
the accumulation of interest to the reserve fund shall continue until the basic amount of
$1,500,000 is accumulated.  Following an emergency expenditure from the fund, the annual
deposits shall continue from the year following the emergency expenditure until the previous
balance is restored.  After the initial amount is accumulated or after the previous balance is
restored, the annual deposits may be discontinued, and the interest earnings shall continue to
accumulate and be retained as part of the reserve fund.

(c)     Upon mutual written agreement between the Contractor and the
Contracting Officer, the basic reserve fund or the accumulated reserve fund may be adjusted to
account for risk and uncertainty stemming from the size and complexity of the project; the size
of the annual operation and maintenance budget; additions to, deletions from, or changes in
project works; and operation and maintenance costs not contemplated when this Contract was
executed.

(d)     The Contractor may make expenditures from the reserve fund only for
meeting routine or recurring operation and maintenance costs incurred during periods of special
stress, as described in paragraph (a) herein; or for meeting unforeseen extraordinary operation
and maintenance costs; or for meeting unusual or extraordinary repair or replacement costs; or
for meeting betterment costs (in situations where recurrence of severe problems can be
eliminated) during periods of special stress.  Proposed expenditures from the fund shall be
submitted to the Contracting Officer in writing for review and written approval prior to
disbursement.  Whenever the reserve fund is reduced below the current balance by expenditures
therefrom, the Contractor shall restore that balance by the accumulation of annual deposits as
specified in paragraph (b) herein.

(e)     During any period in which any of the project works are operated and
maintained by the United States, the Contractor agrees the reserve fund shall be available for like
use by the United States.

(f)     On or before August 1 of each year, the Contractor shall provide a current
statement of the principal and accumulated interest of the reserve fund account to the Contracting
Officer.

## ADMINISTRATION OF FEDERAL PROJECT LANDS

40.     (a)     The lands and interests in lands acquired, withdrawn, or reserved and
needed by the United States for the purposes of care, operation, and maintenance of San Luis
Unit facilities may be used by the Contractor for such purposes.  The Contractor shall ensure that
no unauthorized encroachment occurs on Federal project lands and rights-of-way.  The

Contract No. 14-06-200-495A-IR1-P

Contractor does not have the authority to issue any land-use agreement or grant that conveys an interest in Federal real property, nor to lease or dispose of any interest of the United States.

(b)     The United States retains responsibility for compliance with the National Historic Preservation Act of 1966 (NHPA), and the Native American Graves Protection and Repatriation Act of 1990 (NAGPRA). The Contractor will notify the Contracting Officer and, only when on tribal land, also notify the appropriate tribal official, immediately upon the discovery of any potential historic properties or Native American human remains, funerary objects, sacred objects, or objects of cultural patrimony.

## CONTAMINATION OR POLLUTION OF FEDERAL PROPERTY

41.    (a)     The Contractor shall not allow contamination or pollution of Federal project lands, project waters, or project works of the United States or administered by the United States and for which the Contractor has the responsibility for care, operation, and maintenance by its employees or agents.  The Contractor shall also take reasonable precautions to prevent such contamination or pollution by third parties.

(b)     The Contractor shall comply with all applicable Federal, State, and local laws and regulations and Bureau of Reclamation policies and instructions existing, or hereafter enacted or promulgated, concerning any hazardous material that will be used, produced, transported, stored, released, or disposed of on or in Federal project lands, project waters, or project works.

(c)     "Hazardous material" means (1) any substance falling within the definition of "hazardous substance," "pollutant or contaminant," or "hazardous waste" under the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601(14), (29), and (33)); (2) oil, as defined by the Clean Water Act (33 U.S.C. § 1321(a)) and the Oil Pollution Act (33 U.S.C. § 2701(23)); (3) thermal pollution, refuse, garbage, sewage effluent, industrial waste, mine or mill tailings, mineral salts, pesticides, and other solid waste, and (4) any other substance regulated as hazardous or toxic under Federal, State, local or Tribal law.

(d)     Upon discovery of any event which may or does result in contamination or pollution of Federal project lands, project water, or project works, the Contractor shall immediately undertake all measures necessary to protect public health and the environment, including measures necessary to contain or abate any such contamination or pollution, and shall report such discovery with full details of the actions taken to the Contracting Officer.  Reporting shall be within a reasonable time period but shall not exceed 24 hours from the time of discovery if it is an emergency and the first working day following discovery in the event of a non-emergency.

(e)     If violation of the provisions of this Article occurs and the Contractor does not take immediate corrective action, as determined by the Contracting Officer, the Contractor may be subject to remedies imposed by the Contracting Officer, which may include termination of this Contract.

Contract No. 14-06-200-495A-IR1-P

1719          (f)    The Contractor shall be liable for any response action or corrective
1720 measure necessary to protect public health and the environment or to restore Federal project
1721 lands, project waters, or project works that are adversely affected as a result of such violation,
1722 and for all costs, penalties or other sanctions that are imposed for violation of any Federal, State,
1723 local, or Tribal laws and regulations concerning hazardous material. At the discretion of the
1724 Contracting Officer, the United States may also terminate this Contract, as a result of such
1725 violation.

1726          (g)    The Contractor shall defend, indemnify, protect and save the United States
1727 harmless from and against any costs, expenses, claims, damages, demands, or other liability
1728 arising from or relating to Contractor's violation of this Article.

1729          (h)    The Bureau of Reclamation agrees to provide information necessary for
1730 the Contractor, using reasonable diligence, to comply with the provisions of this Article.

1731 RECLAMATION REFORM ACT OF 1982

1732    42.    (a)    Upon a Contractor's compliance with and discharge of the Repayment

1733 Obligation pursuant to this Contract, subsections (a) and (b) of Section 213 of the Reclamation

1734 Reform Act of 1982 (96 Stat. 1269) shall apply to affected lands.

1735          (b)    The obligation of a Contractor to pay the Additional Capital Obligation

1736 shall not affect the Contractor's status as having repaid all of the construction costs assignable to

1737 the Contractor or the applicability of subsections (a) and (b) of section 213 of the Reclamation

1738 Reform Act of 1982 (96 Stat. 1269) once the Repayment Obligation is paid.

1739 CERTIFICATION OF NONSEGREGATED FACILITIES

1740    43.    The Contractor hereby certifies that it does not maintain or provide for its
1741 employees any segregated facilities at any of its establishments and that it does not permit its
1742 employees to perform their services at any location under its control where segregated facilities
1743 are maintained. It certifies further that it will not maintain or provide for its employees any
1744 segregated facilities at any of its establishments and that it will not permit its employees to
1745 perform their services at any location under its control where segregated facilities are
1746 maintained. The Contractor agrees that a breach of this certification is a violation of the Equal
1747 Employment Opportunity clause in this Contract. As used in this certification, the term
1748 "segregated facilities" means any waiting rooms, work areas, rest rooms and wash rooms,
1749 restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas,
1750 parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing
1751 facilities provided for employees which are segregated by explicit directive or are in fact
1752 segregated on the basis of race, creed, color, or national origin, because of habit, local custom,
1753 disability, or otherwise. The Contractor further agrees that (except where it has obtained

Contract No. 14-06-200-495A-IR1-P

1754   identical certifications from proposed subcontractors for specific time periods) It will obtain
1755   identical certifications from proposed subcontractors prior to the award of subcontracts
1756   exceeding $10,000 which are not exempt from the provisions of the Equal Employment
1757   Opportunity clause; that it will retain such certifications in its files; and that it will forward the
1758   following notice to such proposed subcontractors (except where the proposed subcontractors
1759   have submitted identical certifications for specific time periods):

1760               NOTICE TO PROSPECTIVE SUBCONTRACTORS OF REQUIREMENT FOR
1761                         CERTIFICATIONS OF NONSEGREGATED FACILITIES

1762   A Certification of Nonsegregated Facilities must be submitted prior to the award of a subcontract
1763   exceeding $10,000 which is not exempt from the provisions of the Equal Employment
1764   Opportunity clause. The certification may be submitted either for each subcontract or for all
1765   subcontracts during a period (i.e., quarterly, semiannually, or annually). Note: The penalty for
1766   making false statements in offers is prescribed in 18 U.S.C. § 1001.

1767                                   PEST MANAGEMENT

1768           44.     (a)     The Contractor is responsible for complying with applicable Federal,
1769   State, and local laws, rules, and regulations related to pest management in performing its
1770   responsibilities under this contract.

1771                   (b)     The Contractor is responsible for effectively avoiding the introduction and
1772   spread of, and for otherwise controlling, undesirable plants and animals, as defined by the
1773   Contracting Officer, on or in Federal project lands, Federal project waters, and Federal project
1774   works for which and to the extent that the Contractor has operation and maintenance
1775   responsibility. The Contractor is responsible for exercising the level of precaution necessary in
1776   meeting this responsibility, including inspecting its vehicles, watercraft, and equipment for
1777   reproductive and vegetative parts, foreign soil, mud, or other debris that may cause the spread of
1778   weeds, invasive species and other pests, and removing such materials before moving its vehicles,
1779   watercraft, and equipment onto any Federal land, into any Federal project facility waters, or out
1780   of any area on Federal project land where work is performed.

1781                   (c)     Where decontamination of the Contractor's vehicles, watercraft, or
1782   equipment is required prior to entering Federal project land or waters, the decontamination shall
1783   be performed by the Contractor at the point of prior use, or at an approved offsite facility able to
1784   process generated cleaning wastes, pursuant to applicable laws, rules, and regulations. Upon the
1785   completion of work, the Contractor will perform any required decontamination within the work
1786   area before moving the vehicles, watercraft, and equipment from Federal project lands and
1787   waters.

1788                   (d)     Programs for the control of undesirable plants and animals on Federal
1789   project lands, and in Federal project waters and Federal project works for which the Contractor
1790   has operation and maintenance responsibility will incorporate Integrated Pest Management
1791   (IPM) concepts and practices. IPM refers to a systematic and environmentally compatible
1792   program to maintain pest populations within economically and environmentally tolerable levels.
1793   In implementing an IPM program, the Contractor will adhere to applicable Federal and State

Contract No. 14-06-200-495A-IR1-P

1794   laws and regulations and Department of the Interior and Bureau of Reclamation policies,
1795   directives, guidelines, and manuals, including but not limited to, the Department of the Interior
1796   Manual, Part 517 *Integrated Pest Management Policy* and Part 609 *Weed Control Program*, the
1797   Plant Protection Act of June 20, 2000 (Pub. L. 106-224), and Executive Order 13112 of February
1798   3, 1999.

1799            MEDIUM FOR TRANSMITTING PAYMENT

1800            45.     (a)     All payments from the Contractor to the United States under this Contract
1801   shall be by the medium requested by the United States on or before the date payment is due.  The
1802   required method of payment may include checks, wire transfers, or other types of payment
1803   specified by the United States.

1804                    (b)     Upon execution of this Contract, the Contractor shall furnish the
1805   Contracting Officer with the Contractor's taxpayer's identification number (TIN).  The purpose
1806   for requiring the Contractor's TIN is for collecting and reporting any delinquent amounts arising
1807   out of the Contractor's relationship with the United States.

1808            CONTRACT DRAFTING CONSIDERATIONS

1809            46.     This amended Contract has been negotiated and reviewed by the parties hereto,
1810   each of whom is sophisticated in the matters to which this amended Contract pertains.  The
1811   double-spaced Articles of this amended Contract have been drafted, negotiated, and reviewed by
1812   the parties, and no one party shall be considered to have drafted the stated Articles.  Single-
1813   spaced Articles are standard Articles pursuant to Bureau of Reclamation policy.

1814            CONFIRMATION OF CONTRACT

1815            47.     Promptly after the execution of this amended Contract, the Contractor will
1816   provide to the Contracting Officer a certified copy of a final decree of a court of competent
1817   jurisdiction in the State of California, confirming the proceedings on the part of the Contractor
1818   for the authorization of the execution of this amended Contract.  This amended Contract shall not
1819   be binding on the United States until the Contractor secures a final decree.

Contract No. 14-06-200-495A-IR1-P

1820          IN WITNESS WHEREOF, the parties hereto have executed this Contract as of the day

1821     and year first above written.

1822          APPROVED AS TO LEGAL UNITED STATES OF AMERICA
              FORM AND SUFFICIENCY

              OFFICE OF REGIONAL SOLICITOR
              DEPARTMENT OF THE INTERIOR

1823     By: _____
1824          Regional Director
1825          Interior Region 10: California-Great Basin
1826          Bureau of Reclamation

1827          WESTLANDS WATER DISTRICT
1828

1829     By: _____
1830          President of the Board of Directors

1831     Attest:

1832     By: _____
1833          Secretary of the Board of Directors

72



**Westlands Water District**

Contract No. 14-06-200-495A-IR1-P

Exhibit A

☐ District Boundary
◇ Contractor's Service Area

— BUREAU OF —
RECLAMATION

Date: 1/21/2020
File Name: N:\Districts\Contracts\westlands\Westlands_14_06_200_495_IR1_2020.mxd

Miles
0    5    10

N

805-202-120

Irrigation and M&I
Contract No. 14-06-200-0495-IR1-P

**EXHIBIT B**
**WESTLANDS WATER DISTRICT**
**2020 Rates and Charges**
**(Per Acre-Foot)**

| | Irrigation Water SLC | Irrigation Water Mendota Pool | M&I Water SLC |
|---|---|---|---|
| **COST-OF-SERVICE (COS) RATE** | | | |
| Construction Costs | $0.00 | $0.00 | $0.00 |
| DMC Aqueduct Intertie | $0.00 | $0.00 | |
| O&M Components | | | |
| Water Marketing | $8.97 | $8.97 | $6.12 |
| Storage | $18.01 | $18.01 | $14.99 |
| Credit for other PUE Remittance [1] | ($2.28) | $0.00 | ($1.99) |
| Direct Pumping | | | |
| American Recovery and Reinvestment Act (ARRA) | $0.00 | $0.00 | $0.00 |
| **TOTAL COS RATE** | $24.70 | $26.98 | $19.12 |
| | | | |
| **Project Use Energy Payment [2]** | | | |
| Direct Pumping | $11.35 | $0.00 | $10.46 |
| Other PUE Remittance | $2.28 | $0.00 | $1.99 |
| | | | |
| **IRRIGATION FULL-COST RATE \*** | | | |
| Section 202(3) Rate is applicable to a Qualified Recipient or to a Limited Recipient receiving irrigation water on or before October 1, 1981. | TBD | TBD | |
| Section 205(a)(3) Rate is applicable to a Limited Recipient that did not receive irrigation water on or before October 1, 1981. | TBD | TBD | |
| | | | |
| **M&I FULL-COST RATE** | | | |
| | | | |
| **TIERED PRICING COMPONENTS (In Addition to Total COS Rate Above)** | | | |
| **IRRIGATION \*** | | | |
| Tier 2 Rate: >80% <=90% of Contract Total [Section 202(3) Irrigation Full Cost Rate - Irrigation COS Rate]/2 (Amount to be added to Tier 1 Rate) | TBD | TBD | |
| Tier 3 Rate: >90% of Contract Total [Section 202(3) Irrigation Full Cost Rate - Irrigation COS Rate] (Amount to be added to Tier 1 Rate) | TBD | TBD | |
| **M&I** | | | |
| Tier 2 Rate: >80% <=90% of Contract Total [M&I Full Cost Rate - M&I COS Rate]/2 (Amount to be Added to Tier 1 Rate) | | | $0.00 |
| Tier 3 Rate: >90% of Contract Total [M&I Full Cost Rate - M&I COS Rate] (Amount to Be Added to Tier 1 Rate) | | | $0.00 |
| | | | |
| **CHARGES AND ASSESSMENTS** *(Payments in addition to Rates)* | | | |
| P.L. 102-575 Surcharge (Restoration Fund Payment) [Section 3407(d)(2)(A)] | $10.91 | $10.91 | $21.82 |
| P.L. 106-377 Assessment (Trinity Public Utilities District) [Appendix B, Section 203] | $0.12 | $0.12 | $0.12 |

**EXPLANATORY NOTES**

1  Project Use Energy payment is being remitted to Western Area Power Authority for storage and direct pumping based on the deliveries of a select few contractors  The rates for the select few contractors are reduced as a credit in the O&M rates  All Contractors will ultimately pay for the storage and direct pumping service but as an offset to the amount paid by the select few.

2  Project Use Energy payment is in addition to the Contract Rate and Full-Cost Water Rates.  Refer to the water rate books for more information.

\* For Irrigation water, if construction paid under WIIN Act is paid in lump sum, full cost rates and tier pricing component is not applicable for 2020 water rates.

The CVP M&I Water Shortage Policy per EIS/EIR dated August 2015 and Record of Decision dated November 2015 defines the M&I Historic Use as the average quantity of CVP water put to beneficial use during the last three years of water deliveries, unconstrained (100% allocation) by the availability of CVP water for South of the Delta. Contractor's last three years in acre feet (AF) are revised as follows: 2006 = 2,806 AF, 2011 = 2,570 AF; 2017 = 2,264 AF; which equals a M&I Historic use average quantity of 2,547 AF.

**Additional detail of rate components is available on the Internet at:**
http://www.usbr.gov/mp/cvpwaterrates/ratebooks/index.html

# Exhibit D[@]

### Repayment Obligation - Current Calculation under the WIIN Act, Section 4011 (a) (2)

**Unpaid Construction Cost from the 2020 Water Rate Books\***

Contractor:    **Westlands Water District DD #1**
Facility:    **San Luis Canal (Delta-Mendota Pool and DD#2 provided separate)**
Contract:    **14-06-200-0495A-IR1-P, 14-06-200-7823J-LTR1-P, 14-06-200-8092-IR5-P,**
    **7-07-20-W0055B-IR5-P, 14-06-200-8018B-IR5-P, 14-06-200-3365AB-IR5-P**

| Irrigation Construction Cost (2020 Irrigation Ratebook, Schedule A-2Da and A-2Dc) | Unpaid Cost | Discount |
|---|---|---|
| Construction Cost (Excludes Intertie): | $ 250,171,144 | |
| 2019 Repayment (Estimate) ** | $ 49,813,728 | |
| Adjusted Construction Cost (Excludes Intertie): | $ 200,357,416 | $ 189,837,822 |
| Intertie Construction Cost: | $ 18,005,992 | $ 14,797,371 |
| Total | $ 218,363,408 | $ 204,635,193 |

| If Paid in Installments (Used 20 yr CMT) | Due**** | | |
|---|---|---|---|
| Payment 1 | 6/1/2020 | | $ 52,321,480 |
| Payment 2 | 6/2/2021 | | $ 52,321,480 |
| Payment 3 | 6/2/2022 | | $ 52,321,480 |
| Payment 4 | 6/2/2023 | | $ 52,321,480 |
| Total Installment Payments | | | $ 209,285,920 |

| | |
|---|---|
| 20 yr CMT Rates - 02/20/2020 (to be adjusted to effective date of contract)[@] | 1.810% |
| Discount Rate (1/2 of the Treasury Rate per the WIIN Act, Section 4011(a)(2)(A)) | 0.905% |

| M&I Construction Cost (2020 M&I Ratebook, Sch A-2Ba) | Unpaid Cost |
|---|---|
| Construction Cost: | $ 286,220 |
| 2019 Repayment (Estimate) ** | $ 21,307 |
| Adjusted Construction Cost***: | $ 264,913 |

**Calculation Support:**    Irrigation Lump Sum or First Payment****    6/1/2020
    Days Until the End of the Fiscal Year    121

| | Unpaid Allocated Construction Cost | | | Unpaid Intertie Construction Cost | | | Total |
|---|---|---|---|---|---|---|---|
| Fiscal Yr | Beginning Balance | Straight Line Repayment | Present Value | Beginning Balance | Straight Line Repayment | Present Value | Present Values |
| 2020 | $ 200,357,416 | $ 18,214,311 | $ 17,997,265 | $ 18,005,992 | $ 409,227 | $ 404,351 | $ 18,401,616 |
| 2021 | $ 182,143,106 | $ 18,214,311 | $ 17,889,054 | $ 17,596,765 | $ 409,227 | $ 401,919 | $ 18,290,973 |
| 2022 | $ 163,928,795 | $ 18,214,311 | $ 17,728,610 | $ 17,187,538 | $ 409,227 | $ 398,315 | $ 18,126,924 |
| 2023 | $ 145,714,485 | $ 18,214,311 | $ 17,569,605 | $ 16,778,311 | $ 409,227 | $ 394,742 | $ 17,964,347 |
| 2024 | $ 127,500,174 | $ 18,214,311 | $ 17,412,026 | $ 16,369,084 | $ 409,227 | $ 391,202 | $ 17,803,228 |
| 2025 | $ 109,285,863 | $ 18,214,311 | $ 17,255,860 | $ 15,959,857 | $ 409,227 | $ 387,693 | $ 17,643,554 |
| 2026 | $ 91,071,553 | $ 18,214,311 | $ 17,101,095 | $ 15,550,629 | $ 409,227 | $ 384,216 | $ 17,485,312 |
| 2027 | $ 72,857,242 | $ 18,214,311 | $ 16,947,719 | $ 15,141,402 | $ 409,227 | $ 380,770 | $ 17,328,489 |
| 2028 | $ 54,642,932 | $ 18,214,311 | $ 16,795,717 | $ 14,732,175 | $ 409,227 | $ 377,355 | $ 17,173,072 |
| 2029 | $ 36,428,621 | $ 18,214,311 | $ 16,645,079 | $ 14,322,948 | $ 409,227 | $ 373,971 | $ 17,019,050 |
| 2030 | $ 18,214,311 | $ 18,214,311 | $ 16,495,792 | $ 13,913,721 | $ 409,227 | $ 370,617 | $ 16,866,409 |
| 2031-63 | | | | $ 13,504,494 | $ 13,504,494 | $ 10,532,220 | $ 10,532,220 |
| Total, Lump Sum Payment | | | $ 189,837,822 | | | $ 14,797,371 | $ 204,635,193 |
| Amount of Reduction, Lump Sum | | | $ 10,519,594 | | | $ 3,208,621 | $ 13,728,215 |

\* Costs are assumed to be paid and all charges are assumed to be accurate. If at a later date charges are determined to need
    update, they are still required. Also, unpaid charges are still a requirement under contract.
\*\* 2019 Repayment is based on a conservative estimate. If not sufficient, the remainder will be billed.
\*\*\* Excludes Interest to payment date as Interest will be computed as an annual expense as usual.
\*\*\*\*Contractor has 60 days from the effective date of the contract or installment dates to make payment.
[@]To be updated. The WIIN Act requires us to have a Constant Maturity Treasury rate based on the effective date of the contract.

# Exhibit D[@]

**Repayment Obligation - Current Calculation under the WIIN Act, Section 4011 (a) (2)**

| Unpaid Construction Cost from the 2020 Water Rate Books* |
|---|

Contractor: **Westlands Water District**
Facility: **Delta Mendota Pool (San Luis Canal and DD#2 provided separate)**
Contract: **14-06-200-0495A-IR1-P**

| Irrigation Construction Cost (2020 Irrigation Ratebook, Schedule A-2Ba and A-2Bc) | Unpaid Cost | Discount |
|---|---|---|
| Construction Cost (Excludes Intertie): | $    388,865 | |
| 2019 Repayment (Estimate) ** | $    5,757 | |
| Adjusted Construction Cost (Excludes Intertie): | $    383,108 | $    362,993 |
| Intertie Construction Cost: | $    190,033 | $    156,170 |
| Total | $    573,141 | $    519,163 |

| If Paid in Installments (Used 20 yr CMT) | Due**** | | |
|---|---|---|---|
| Payment 1 | 6/1/2020 | $ | 132,740 |
| Payment 2 | 6/2/2021 | $ | 132,740 |
| Payment 3 | 6/2/2022 | $ | 132,740 |
| Payment 4 | 6/2/2023 | $ | 132,740 |
| Total Installment Payments | | $ | 530,962 |

20 yr CMT Rates - 02/20/2020 (to be adjusted to effective date of contract)[@]   1.810%
Discount Rate (1/2 of the Treasury Rate per the WIIN Act, Section 4011(a)(2)(A))   0.905%

| M&I Construction Cost (2020 M&I Ratebook, Sch A-2Ba) | Unpaid Cost |
|---|---|
| Construction Cost: | $    - |
| 2019 Repayment (Estimate) ** | $    - |
| Adjusted Construction Cost***: | $    - |

**Calculation Support:**   Irrigation Lump Sum or First Payment****   6/1/2020
Days Until the End of the Fiscal Year   121

| | Unpaid Allocated Construction Cost | | | Unpaid Intertie Construction Cost | | | Total |
|---|---|---|---|---|---|---|---|
| Fiscal Yr | Beginning Balance | Straight Line Repayment | Present Value | Beginning Balance | Straight Line Repayment | Present Value | Present Values |
| 2020 | $ 383,108 | $ 34,828 | $ 34,413 | $ 190,033 | $ 4,319 | $ 4,267 | $ 38,680 |
| 2021 | $ 348,280 | $ 34,828 | $ 34,206 | $ 185,714 | $ 4,319 | $ 4,242 | $ 38,448 |
| 2022 | $ 313,452 | $ 34,828 | $ 33,899 | $ 181,395 | $ 4,319 | $ 4,204 | $ 38,103 |
| 2023 | $ 278,624 | $ 34,828 | $ 33,595 | $ 177,076 | $ 4,319 | $ 4,166 | $ 37,761 |
| 2024 | $ 243,796 | $ 34,828 | $ 33,294 | $ 172,757 | $ 4,319 | $ 4,129 | $ 37,423 |
| 2025 | $ 208,968 | $ 34,828 | $ 32,995 | $ 168,438 | $ 4,319 | $ 4,092 | $ 37,087 |
| 2026 | $ 174,140 | $ 34,828 | $ 32,699 | $ 164,119 | $ 4,319 | $ 4,055 | $ 36,754 |
| 2027 | $ 139,312 | $ 34,828 | $ 32,406 | $ 159,800 | $ 4,319 | $ 4,019 | $ 36,425 |
| 2028 | $ 104,484 | $ 34,828 | $ 32,115 | $ 155,482 | $ 4,319 | $ 3,983 | $ 36,098 |
| 2029 | $ 69,656 | $ 34,828 | $ 31,827 | $ 151,163 | $ 4,319 | $ 3,947 | $ 35,774 |
| 2030 | $ 34,828 | $ 34,828 | $ 31,542 | $ 146,844 | $ 4,319 | $ 3,911 | $ 35,453 |
| 2031-63 | | | | $ 142,525 | $ 142,525 | $ 111,156 | $ 111,156 |
| Total, Lump Sum Payment | | | $ 362,993 | | | $ 156,170 | $ 519,163 |
| | | | | | | | |
| Amount of Reduction, Lump Sum | | | $ 20,115 | | | $ 33,863 | $ 53,978 |

* Costs are assumed to be paid and all charges are assumed to be accurate. If at a later date charges are determined to need update, they are still required. Also, unpaid charges are still a requirement under contract.
** 2019 Repayment is based on a conservative estimate. If not sufficient, the remainder will be billed.
*** Excludes Interest to payment date as Interest will be computed as an annual expense as usual.
****Contractor has 60 days from the effective date of the contract or installment dates to make payment.
[@]To be updated. The WIIN Act requires us to have a Constant Maturity Treasury rate based on the effective date of the contract.

Irrigation and M&I
Contract No. 14-06-200-495A-IR1-P

Exhibit C

### Central Valley Project (CVP) Water Needs Assessments Purpose and Methodology

Purpose:

Water needs assessments have been performed for each CVP water contractor eligible to participate in the CVP long-term contract renewal process. These water needs assessments serve three purposes:

Confirm past beneficial use of CVP water;
Provide water demand and supply information under current and future conditions for the environmental documents; and
Provide an estimate of contractor-specific needs for CVP water by the year 2025 to serve as a starting point for discussions regarding contract quantities in the negotiation process.

These three purposes require that the water needs assessments be done for a number of different timeframes.

**Small Contractors exempt from Detailed Water Needs Assessments:**

In order to minimize the informational burdens on CVP water contractors with small amounts of CVP supply under contract, an exemption from the requirement for detailed water needs assessments has been provided to these contractors. The exemption applies to contractors who provide agricultural water to a service area of 2000 irrigable acres, or less, and/or provide urban water now, or in the future, in the amount of 2000 acre-feet annually, or less. A contractor may be exempt from the water needs assessment requirement for its urban water service, but not for its agricultural water service, or vice-a-versa. These contractors are assumed to demonstrate future need if they have beneficially used their CVP supplies in the past.

**Past Beneficial Use:**

Originally, Reclamation requested water demand and supply information for the 1979 through 1997 timeframe. Reclamation believes that evaluations of beneficial use, current and future CVP needs based on information for a 19-year period of record, including both wet and dry periods, is a scientifically defendable way of conducting water needs assessments. However, the concerns of the CVP water contractors with respect to the magnitude of the information request persuaded Reclamation to perform the assessments using a representative snapshot year approach, instead. Although less scientifically rigorous, the snapshot year approach appears adequate for cursory evaluations of water needs.

Nineteen Eighty Nine, is the snapshot year chosen to confirm past beneficial use of CVP water for the American, Delta, Contra Costa, Sacramento, and San Felipe regions (refer to the definitions on the next page). This year was chosen because most CVP water contractors received full delivery of their requested water supplies and the total annual precipitation for most CVP regions was in the normal range. Since 1989 was a drought

year in the Friant region, 1996 was the snapshot year selected to calculate past beneficial use for this region. Water Need Assessments for the Stanislaus Region have been deferred pending the resolution of operational issues in the Stanislaus River basin. Some contractors have elected to deviate from the selected snapshot year because of the unavailability of information for that year. Following is a description of the regions:

| | |
|---|---|
| **American:** | American River Division |
| **Delta:** | Delta Division combined with West San Joaquin Division, but not the Contra Costa Unit |
| **Contra Costa:** | Contra Costa Unit |
| **Stanislaus:** | East Side Division |
| **Friant:** | Friant Division combined with Hidden Unit, Buchanan Unit, and Cross Valley Canal |
| **Sacramento:** | Sacramento River Division combined with Trinity River and Shasta Divisions |
| **San Felipe:** | San Felipe Division |

The environmental documentation associated with the CVP long-term contract renewals specifies 1995 as the base year. Therefore, water supply and demand information is indicated on the water needs assessments for the 1995 level of development, if available. In many cases, the information provided to demonstrate past beneficial use is also reasonably representative of 1995 level water supplies and demands.

**Definition of Need for CVP Water Supplies:**

An important function of these assessments is the estimation of year 2025 CVP water needs. The assessments compare all demands and all supplies (including CVP supplies) estimated for the 2025 level of development for a normal hydrologic year. Demands include agricultural, urban and, on occasion, environmental water demands. For these assessments, current CVP contract supplies are set as the maximum annual contractual amount for each water contractor, except in the Friant Division. The Friant Division's Class II contract amounts are based on wet hydrologic year and were reduced to 40% of the contract amount to reflect normal year hydrology. The results are displayed in Column 39 as Unmet Demand. If the number in this column is positive or only slightly negative [1] then the CVP water contractor is deemed to have full future need of the maximum annual CVP supply currently under contract for all year types. Dry year and critically dry year analyses were only performed for urban contractors who did not demonstrate full future need of their CVP contract supply in a normal hydrologic year.

The methodology used to estimate agricultural and urban water demands as well as to estimate the availability of non-CVP supplies is described in the following sections.

---

[1] If the negative amount is within 10% for contracts in excess of 15,000 acre-feet, or within 25% for contracts equal to, or less than, 15,000 acre-feet; the test of full future need of CVP supplies under contract is deemed to be met.

**Agricultural Water Demand:**

Agricultural water demand is defined as the sum of the district's irrigation water demand and the intra-district conveyance losses, where irrigation water demand is the product of the irrigated acreage in a district and the average farm delivery requirement. The farm delivery requirement is defined as the unit amount of water necessary to supply crop water needs in excess of effective precipitation and varies based on crop type, climate, irrigation water quality, soil salinity and irrigation method. The district's irrigation water demand is not necessarily the sum of all the on-farm irrigation water demands because such measures as recycling of intra-district return flows are effective in reducing the overall district irrigation water demand. The assumption for this analysis is that the continued implementation of water use efficiency measures between now and the year 2025 will further reduce the unit amount of water needed to grow crops in the future. Often, it is also assumed that district conveyance losses will decrease in the future. Specifically, district irrigation efficiencies are assumed to increase from an average of 75 percent currently to 85 percent by the year 2025, where district irrigation efficiency is defined as follows:

District Irrigation Efficiency = Supply B Non Recoverable Losses to the District
    Supply

        or

= District's Crop Water Requirement of Applied Water (ETAW) + Recoverable losses
within the District [2]
                District's Irrigation Water Demand

Certain districts, such as those with large elevation differences within their boundaries, have target district irrigation efficiencies of 80 percent.

Estimating Crop Water Requirements

Generally, the CVP water contractors' Water Management Plans provide historical information on crop water requirements. This information was used in the snapshot year analyses to confirm past beneficial use of CVP supplies and to reflect the base condition in the environmental documents.

Reclamation estimated crop water requirements for the year 2025 level of development based on the CVP water contractors' estimates of future crops and acreage planted multiplied by estimates of the farm delivery requirements for each crop. Reclamation staff initially estimated crop water requirements for all regions using evapotranspiration (ET) and effective precipitation (EP) data from several sources: 1) California Department of Water Resources (DWR) Bulletin 160-98, 2) DWR Bulletin 113-3, and 3) Reclamation knowledge and experience. The ET and EP information was tabulated on a Detailed Analysis Unit (DAU) basis and then proportioned to each district based on the district's area in a DAU. The data was then used in combination with other traditional

---

[2] Recoverable loss is defined as water recovered or recoverable by the district or irrigators for reuse.

methodologies for determining crop water requirements to estimate each district's total irrigation water demand in the year 2025.

In February 2000, representatives of the Friant and Delta Region CVP water contractors expressed the following concerns with using this methodology:

The crop water requirements estimated are too low;

The effective precipitation component to meeting crop water requirements is too high for some areas.

In order to address these concerns a number of evaluations were performed.

One analysis compared the agricultural water demand calculations performed by the districts' private consultant and those performed by Reclamation for the water districts in the Delta Region. This analysis indicated that Reclamation's and the consultant's estimation of these water demands on a regional basis is close (within 8%). However, the results of the agricultural water demand determinations diverge as the regional area is broken into sub-regions and especially when the comparison is made at the district level.

A comparison of calculations of ET and EP for alfalfa in the Friant Region using the methodologies of Bulletin 160-98, Reclamation and the Natural Resources Conservation Service (NRCS) indicates that Bulletin 160-98 consistently estimates EP higher than the other two methods at the district level. One reason for this difference appears to be that the Bulletin 160-98 methodology estimates the contribution of rainfall to the soil moisture profile in the non-irrigation season in a different way than the other two methodologies. Similarly, a comparison of ET values shows that the Bulletin 160-98 values are consistently lower than the NRCS values at the district level. This difference is most likely the result of Bulletin 160-98's use of Aactual@ ET values. AActual@ ET is potential ET modified to reflect regional agricultural practices by farmers. The NRCS method uses potential ET values without modification.

Based on discussions with DWR, the affected CVP water contractors and their consultants; Reclamation concluded that the regional agricultural practices taken into account by Bulletin 160-98 may not be reflective of current and/or future practices by the CVP water contractors. For this reason, Reclamation determined that it was more prudent to use potential ET values than the Aactual@ ET values from Bulletin 160-98 in evaluating 2025 crop water requirements for water districts located in the Friant and Delta Regions.

In addition, Reclamation and representatives of the Friant and Delta Region water contractors agreed on a different methodology to estimate EP than the one used in Bulletin 160-98 because of the lack of dependable rainfall. The bulletin assumes rainfall is effective if it can be stored in the soil moisture profile, or directly meet crop water needs during any month. However, in actual practice to effectively manage farm operations, a farmer may need to pre-irrigate one or more fields earlier in the month only to have a major precipitation later in the month, thus reducing the effectiveness of the

4

rainfall during that month.

**Revised Agricultural Water Demand Methodology for the Friant and Delta Regions:**

Following is a description of the revised methodology for estimating ET and EP:

EP is estimated to be 50 percent of long-term average annual rainfall with the exception of citrus EP. For citrus groves, it is estimated that one inch of the initial rainfall is stored before the soil seals over and the runoff begins; then about 10% of the additional rainfall for the season is estimated to be effective.

ET is determined using California Irrigation Management Information System (CIMIS) potential ET data and crop coefficients supplied by the University of California Cooperative Extension.

No change was made to the ET and EP determinations for the CVP water contractors in the other regions because these regions are located in areas of higher precipitation not as sensitive to the issues raised in the comparative analyses.

**Urban Water Demand:**

Urban water demand is defined as the sum of residential, nonresidential and distribution system demands. The components of residential demand include indoor and outdoor demand. Originally, information on residential and a portion of nonresidential demand was requested in terms of these two components; however, most CVP water contractors were unable to provide the information in that format. Therefore, the information request was revised to a combined figure for indoor and outdoor use. Nonresidential demand includes commercial, institutional and industrial demands. Distribution system demands consist of unaccounted beneficial use and distribution system losses where:

Unaccounted beneficial use includes water for such uses as fire fighting, mainline flushing, storm drain flushing, sewer and street cleaning, construction site use, water quality testing and other testing.

Distribution system losses accounts for water lost because of leaks in storage and distribution systems, evaporation, illegal connections, and water theft.

Projected M&I water demand will be influenced over time by many factors, including future land use changes, population shifts, and improvements in residential and distribution system efficiencies over time. As is the case for agricultural water demands, the methodology assumes that the implementation of water conservation measures in the next 25 years will increase the efficiency of urban water use and reduce unit M&I water demands. Specifically, the average per capita usage is assumed to decrease from 5% to 14% depending on the location in the state.

**Non-CVP Water Supplies:**

Non-CVP water supplies can include groundwater including the conjunctive use of surface and groundwater, State Water Project (SWP) supplies, local surface water supplies, recycled water, inter-district return flows and water transfers. The methodology considers water transfers a beneficial use of water. Water transfers are, therefore, included in the 2025 level assessments if there is evidence of a commitment by both parties to engage in the transfer in this timeframe.

Average values for SWP and local surface supplies are used in the 2025 level assessments unless the analysis is for dry or critical year conditions. Often the source of information is the 10-year average surface water supply from the contractor's Water Management Plan. If there is an indication that surface water supplies will decrease in the future because of increased upstream diversions or increased environmental requirements, the surface water supply is reduced to reflect these considerations in the 2025 level assessment.

Where available, groundwater safe yields are used to estimate future groundwater pumping. Safe yield is defined as the amount of groundwater a district can pump on a long-term average and not cause the long-term decline of groundwater levels leading to excessive depths for pumping or leading to degradation of groundwater quality. A safe yield value is the result of a complex interaction between many factors; a change in any one of the factors can have an impact on the value obtained from safe yield computations. The main factors involved in safe yield computations can include, but are not limited to, water supply, consumptive use, losses to the system, and water quality. Adding to the complexity of the analysis is that many, if not most, of the factors involved in a safe yield computation are time dependent, and have both short-term and long-term trends--which may be quite different. If a safe yield analysis is not available for the contractors' groundwater resources, groundwater pumping and recharge, if applicable, is estimated from historical information for the 2025 level assessments.

Originally, groundwater pumping for the Friant Region was estimated based on historical estimates of groundwater pumping for 1996 from the water contractors' Water Management Plans. During the February 2000 discussions with representatives of the Friant Region water contractors, the issue of groundwater was raised. Specifically, Reclamation was requested to evaluate the possibility of using the original safe yields estimated by Reclamation as the supply available from groundwater in the 2025 level assessments. Reclamation agreed to investigate the use of these original safe yields because the original safe yields were developed for ultimate buildout and included CVP groundwater recharge. Following is a summary of the analysis performed to estimate groundwater pumping for the Friant Region in the 2025 level assessments:

**Analysis of Groundwater Pumping in the Friant Region:**

Groundwater technical studies were conducted by Reclamation in the 1940's and 1950's to characterize the geohydrology, groundwater occurrence and groundwater conditions in

6

each district, and to determine each district's safe yield. Prior to the delivery of CVP water supplies, farmers irrigated mainly with groundwater, although some local surface water sources were also used. Because recharge of groundwater could not keep pace with the use of water primarily for agricultural purposes, groundwater levels had declined in many areas, and groundwater overdraft was common throughout the region.

A review of Reclamation's original safe yields for the Friant Region shows that these safe yield estimates are generally less than the estimated amounts of groundwater pumping for 1996. Reclamation's original safe yield estimates are also generally less than the updated safe yield estimates performed by Reclamation for some of the districts in the early 1990's. However, the 1990's safe yield estimates are considered preliminary numbers and were never adopted by Reclamation nor accepted by the Friant water contractors. Historical estimates of groundwater pumping indicate that these water contractors are pumping groundwater in excess of the original safe yields.

The groundwater pumping in excess of safe yield has resulted in the continued decline in the groundwater tables underlying most of the districts. A review of hundreds of individual well hydrographs shows that this increase in pumping has not been supported by the aquifer. Most districts are still experiencing declining groundwater levels since the inception of CVP deliveries. With the exception of five districts (Delano Earlimart, Exeter, Lindmore, Lindsay-Strathmore and Orange Cove), cumulative groundwater storage has decreased in the remaining 19 Friant districts since the CVP began importing water into those districts. The five districts that show overall rises in groundwater storage change have unique geohydrologic conditions and were evaluated individually to determine appropriate levels of groundwater pumping for the 2025 level assessments. From the analysis performed, it can be concluded that CVP deliveries since 1986, as evidenced by a continuous decline in storage from 1986 to 1992, have not been sufficient to maintain reasonably stable groundwater levels, nor have CVP deliveries supported an increase in groundwater levels in wet years under the conjunctive use operations practiced by most districts. Safe yield pumping in combination with surface water supplies should have sustained or raised groundwater levels to some stable level. However, historical groundwater pumping has been higher than the safe yield values. In addition, unforeseen factors in the original safe yield analysis such as the magnitude of groundwater use by non-district entities primarily for urban needs within the boundaries of the district, the magnitude of groundwater and surface water use by adjacent districts, changes in the type of crops, droughts and reductions in CVP water deliveries may render even the original safe yield values as too high. However, the unavailability of critical information and the lack of time to perform an analysis make the determination of new safe yields for the Friant Region infeasible at this time. Therefore, Reclamation concurs that the original safe yields are appropriate to depict groundwater pumping in the 2025 level assessments for the Friant Region.

Sources of Information

The Water Management Plans that most water districts have prepared in response to the mandates of the Central Valley Project Improvement Act and the Reclamation Reform

7

Act provide information on agricultural, urban and environmental water demands as well as on water supplies available to meet these demands. In most cases, these plans depict information for a representative year, although some plans provide a number of years of historical information as well as projections for the future. Fortunately, the representative year for many of these plans is either 1989, or 1996. The water contractors were asked to verify that information contained in these plans may be used to calculate past beneficial use and/or to depict current conditions for the purposes of the environmental documentation. In addition, the agricultural water contractors were requested to provide projections of types of crops planted, irrigated acres and amounts and types of non-CVP water supplies for the year 2025. Similarly, the urban water contractors were asked to provide population projections, projections of nonresidential water demand and amounts and types of non-CVP water supplies for the year 2025.

Other sources of information included DWR Bulletin 160-98, DWR Bulletin 113-3, CIMIS information, crop coefficients from various sources, Reclamation's annual crop reports, the January 2000 Water Forum Agreements for the American River, Reclamation's groundwater safe yield studies and miscellaneous planning and environmental documents.

STATE OF CALIFORNIA        )
                           )ss
COUNTY OF FRESNO           )

I, Bobbie Ormonde, do hereby certify that I am the duly appointed, qualified and acting District Secretary of Westlands Water District, a public district organized under the laws of the State of California with its offices at Fresno, California; that Resolution No. 119-19 was duly and regularly adopted by the Board of Directors of Westlands Water District serving as said Board of Directors duly called and held on the 15th of October 2019, at the offices of said Westlands Water District at which a quorum of said Directors was present and acting; and that said Resolution is still in full force and effect.

IN WITNESS WHEREOF, I have hereunto set my hand and seal as District Secretary of said District this 24th day of February, 2020.



Bobbie Ormonde, District Secretary
Westlands Water District