EXHIBIT 18



*Update to Central Valley Project Improvement Act Business Practice Guidelines*
*practices associated with implementing the Central Valley Project Improvement Act ("CVPIA").*

---

For more than five years, the Bureau of Reclamation ("Reclamation") has engaged Central Valley Project ("CVP") water and power contractors, non-governmental organizations, and other interested groups and people in a process to resolve long-standing uncertainties related to the accounting practices associated with implementing the Central Valley Project Improvement Act ("CVPIA"). Many of the issues Reclamation is now addressing through proposed revisions to its Business Practice Guidelines for CVPIA Receipts, Program Accounting, Cost Allocation and Cost Recovery ("Guidelines") have remained unresolved since Reclamation began to implement CVPIA in 1993. Contrary to assertions made by others, these issues were not resolved by the 2003 Expenditures, Credits, And Offsets ("ECO") report or other Reclamation determinations.

One of the key issues Reclamation has sought to resolve in its new Guidelines relates to how CVPIA "receipts" – the funds collected from CVP water and power contractors in the form of fees for implementation of CVPIA – and expenditures are accounted for. Another key issue Reclamation has proposed to address is which CVPIA activities are partially or fully reimbursable by CVP water and power contractors. This is part of what Reclamation refers to as the CVPIA "true-up" and will be finalized in the Guidelines.

In this process Reclamation has considered the court's decision in *NCPA v. United States,* which found that past practices regarding allocation of certain costs to power contractors were not in accordance with the requirements of the CVPIA. As a result, Reclamation has also undertaken an evaluation of its cost allocation process relative to "proportionality", or the allocation of receipts between power and water contractors. The results of this evaluation will also be captured in the new Guidelines.

Reclamation's efforts to update the Guidelines have involved dozens of public workshops, document reviews, and individual stakeholder/interested party meetings since early 2015. Throughout, Reclamation has demonstrated both leadership in confronting challenging and long-standing uncertainties and increasing transparency regarding its process and decision-making. For many stakeholders who partially fund CVPIA implementation, this process has shown Reclamation's staff and leadership to be open and responsive to stakeholder concerns and suggestions.

For example, a number of CVP water contractors raised some concerns that were favorably resolved by Reclamation, including the allocation of costs related to the expenditure of state trust

funds, the allocation of costs under CVPIA Section 3406(b)(1) on non-CVP facilities and streams, and the allocation of costs under Section 3406(b)(21), the state fish screen program.

Reclamation's responsiveness and detailed engagement with its contractors is anticipated to reduce costs for its power and water contractors and their ratepayers by an average of $400,000,000 for program implementation to date.

It should be noted, however, that Reclamation rejected positions asserted by some CVP water contractors, including the position that many CVPIA actions undertaken by Reclamation were for fish and wildlife enhancement, the costs of which would be non-reimbursable.  In addition, CVP water contractors asserted in comments that section 3407 limits the amount Reclamation may collect from water and power contractors to fund actions taken to implement CVPIA.  Reclamation rejected this position too.  Contrary to what CVP water contractors asserted, Reclamation concluded that the limits on the collection of Restoration Fund charges in section 3407 do not limit its other authorities to collect sufficient monies from water and power contractors to recover costs for mandated CVPIA programs.

Like any entity implementing a complex program in which groups with diverse views are interested, Reclamation must contend with competing perspectives.  Reclamation successfully created a balance that is consistent with over one hundred years of Reclamation law.  Westlands understands the challenge Reclamation faced in this process and appreciates Reclamation's work to advance balanced outcomes, consistent with its legal requirements.

Importantly, nothing in the current draft of the Guidelines will affect water supply availability or prevent Reclamation from implementing the provisions of section 3406, including section 3406(d) related to refuge supplies, section 3406(b)(23) related to Trinity River Restoration Program, or section 3406(b)(1) related to the Anadromous Fish Restoration Program.

One of the unique aspects and benefits of the CVPIA program is the incredibly broad set of public benefit objectives which are implemented by Reclamation and backstopped by CVP contractors. This scope provides a forum for a significant amount of joint federal-state actions that benefit the public, but this authority requires a high level of transparency in the development of the obligation plan and its associated costs. While the update to the Guidelines is not yet complete, it is our hope and expectation that the outcome of the process will be a set of operational guidelines and policies for implementing CVPIA that are consistent with the Act and more than a century of Reclamation law.

Westlands is encouraged by the increased transparency and public engagement in CVPIA's accounting that have culminated in Reclamation's proposed update to its Guidelines.  All parties with an interest in how CVPIA is implemented should have a say in the outcome of these processes, and Westlands believes that Reclamation provided ample notice to and opportunities for water and power contractors, non-governmental organization, and other interested groups to comment on proposed revisions to the Guidelines.