EXHIBIT 26

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC 20240

## MEMORANDUM

To:   Secretary

Fr:   Assistant Secretary, Fish & Wildlife and Parks
      Assistant Secretary, Water & Science

GEORGE WALLACE   Digitally signed by GEORGE WALLACE
Date: 2021.01.15 16:49:41 -05'00'

TIMOTHY PETTY   Digitally signed by TIMOTHY PETTY
Date: 2021.01.14 14:45:03 -05'00'

Re:   Central Valley Project Improvement Act Completion under Section 3407(d)(2)(A)

Congress enacted the Central Valley Project Improvement Act[1] (CVPIA or Act) in 1992 in an effort to address long-standing concerns about the Central Valley Project's impact on fish and wildlife. Under section 3407, Congress directed the Secretary to "assess and collect" mitigation and restoration payments and direct them into a Restoration Fund to "carry out the habitat restoration, improvement, and acquisition provisions" of the Act.

Congress never intended these payments to be permanent and, accordingly, mandated that "upon completion of the fish, wildlife, and habitat mitigation and restoration actions mandated under section 3406…, the Secretary shall reduce" the mitigation and restoration charges under the Act.

The question of what completion is and when it must be declared has been asked numerous times over the last 28 years. In 2006, the then-Assistant Secretary for Water and Science directed the Commissioner of Reclamation to undertake a performance review of the CVPIA programs. In response, the Bureau of Reclamation and the U.S. Fish and Wildlife Service issued a somewhat flawed report in 2009 entitled the Central Valley Project Improvement Act Program Activity Report (CPAR).[2] In that report Reclamation and FWS found that "[t]he timeframe for reducing the Restoration Fund is unknown, but can be realistically expected to require many more years." The CPAR suggested that it would be appropriate to review the status of these programs again in 10 years.

In light of this, in 2019 the Solicitor's Office and Reclamation took a fresh look at the status of the restoration activities and at the CPAR's findings on what is required to declare the programs complete as directed in the CVPIA.

Attached for your consideration is a review of the CPAR by the Solicitor's Office. It raises significant questions about the legal conclusions contained in that report about what constitutes

---

[1] Title XXXIV of Pub. L. No. 102-575 (Oct. 30, 1992)
[2] https://www.usbr.gov/mp/cvpia/docs_reports/docs/2009_Final%20CPAR%20Report%208-25-09.pdf (Last visited January 11, 2021)

completion. In particular, this review suggests that the CPAR erred in distinguishing between "annual" and "time-certain" activities in making a determination of completion. The Solicitor's Office review finds that the better reading of the CVPIA would be grounded in the text of the statute, which, among other things, calls for actions to "install," or "operate," or "implement." As such, any analysis to determine completion should simply ask whether the Secretary has taken the specific actions called for in section 3406. Doing so results in a much different finding of the status of these programs.

Also attached is an update by Reclamation (in light of the direction provided by the Solicitor's Office) on the status of the CVPIA programs and whether they have been "completed" as envisioned by Congress. For the most part, this update finds the programs under section 3406 to be complete but raises some concerns.

Based on the information we have reviewed from the Solicitor's Office and Reclamation, it is clear that significant progress has been made in the last 10 years toward implementing the programs required under the CVPIA, and we believe a strong argument can be made that the Office of the Secretary can make a determination of completion and reduce the mitigation and restoration charges as required under the CVPIA. That said, the Reclamation Memorandum raises some questions about the status of the Refuge Water Supply Program under section 3406(d), and we recommend additional review of that program be undertaken prior to making a final determination.[3]

It has also been brought to our attention that a number of Fish and Wildlife Service employees are funded through these restoration payments, and there could be an impact on FWS staffing and agency expertise resulting from a reduction in funding. We recommend that additional information be collected on what the impact would be on FWS staffing and expertise prior to making a determination.

Please let us know if you would like us to conduct further review consistent with the recommendations in this memorandum.

It is important to note that a finding of completion does not mean the end of these important programs. Rather, it simply means the logical evolution of these programs from their implementation phase to a new phase maintaining and continuing them, and Congress was well aware that this new phase would require reduced funding. Water and power customers have made substantial contributions to the funding of these mitigation and restoration programs for almost 30 years (approximately $1.2 billion). The new funding levels are still substantial, and water and power customers will still be obligated to make considerable payments into the Restoration Fund.

**Attachments:**
- Office of the Solicitor Memo on Interpretation of CVPIA Sections 3406 and 3407
- Bureau of Reclamation Memo on Status of CVPIA Programs

---

[3] FWS staff is looking at the possibility of using Land and Water Conservation Fund dollars to purchase water from willing buyers to address concerns about meeting the requirements for Level 4 refuge water under the CVPIA.