EXHIBIT 6

Court of Appeal, Fifth Appellate District
Brian Cotta, Clerk/Executive Officer
Electronically RECEIVED on 12/9/2022 at 1:07:11 PM

Court of Appeal, Fifth Appellate District
Brian Cotta, Clerk/Executive Officer
Electronically FILED on 12/9/2022 by M. McCoy, Deputy Clerk

**F083632**

10.652.02

---

## COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

---

**WESTLANDS WATER DISTRICT, a California Water District,
Plaintiff and Appellant,**

v.

**ALL PERSONS INTERESTED IN THE MATTER OF THE
CONTRACT BETWEEN THE UNITED STATES AND WESTLANDS
WATER DISTRICT PROVIDING FOR PROJECT WATER
SERVICE, SAN LUIS UNIT AND DELTA DIVISION AND
FACILITIES REPAYMENT,**

**Defendants and Respondents.**

---

### DEFENDANTS AND RESPONDENTS
### NORTH COAST RIVERS ALLIANCE, ET AL.'S
### RESPONDENTS' BRIEF

Appeal from Fresno County Superior Court
Case No. 19CECG03887
Honorable D. Tyler Tharpe, Department 501

**\*STEPHAN C. VOLKER (SBN 63093)
ALEXIS E. KRIEG (SBN 254548)
STEPHANIE L. CLARKE (CBN 257961)
JAMEY M.B. VOLKER (CBN 273544)
LAW OFFICES OF STEPHAN C. VOLKER
1633 University Avenue
Berkeley, California 94703
Telephone: (510) 496-0600**

**Attorneys for Defendants and Respondents
NORTH COAST RIVERS ALLIANCE, et al.**

TO BE FILED IN THE COURT OF APPEAL | **APP-008**

| **COURT OF APPEAL** FIFTH **APPELLATE DISTRICT, DIVISION** | COURT OF APPEAL CASE NUMBER:<br>F083632 |
|---|---|

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NUMBER: 63093<br>NAME: Stephan C. Volker<br>FIRM NAME: Law Offices of Stephan C. Volker<br>STREET ADDRESS: 1633 University Ave<br>CITY: Berkeley STATE: CA ZIP CODE: 94703<br>TELEPHONE NO.: (510) 496-0600 FAX NO.: (510) 845-1255<br>E-MAIL ADDRESS: svolker@volkerlaw.com<br>ATTORNEY FOR (name): North Coast Rivers Alliance, et al. | SUPERIOR COURT CASE NUMBER:<br>19CECG03887 |
|---|---|

APPELLANT/
PETITIONER:  Westlands Water District

RESPONDENT/
REAL PARTY IN INTEREST:  North Coast Rivers Alliance, et al.

| **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS** |
|---|
| *(Check one):*  [✗] INITIAL CERTIFICATE  [ ] SUPPLEMENTAL CERTIFICATE |

**Notice: Please read rules 8.208 and 8.488 before completing this form. You may use this form for the initial certificate in an appeal when you file your brief or a prebriefing motion, application, or opposition to such a motion or application in the Court of Appeal, and when you file a petition for an extraordinary writ. You may also use this form as a supplemental certificate when you learn of changed or additional information that must be disclosed.**

1. This form is being submitted on behalf of the following party *(name)*:  Defendants/Appellants North Coast Rivers Alliance, et al.

2. a. [✗] There are no interested entities or persons that must be listed in this certificate under rule 8.208.

   b. [ ] Interested entities or persons required to be listed under rule 8.208 are as follows:

| **Full name of interested<br>entity or person** | **Nature of interest<br>*(Explain):*** |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |

[ ] Continued on attachment 2.

**The undersigned certifies that the above-listed persons or entities (corporations, partnerships, firms, or any other association, but not including government entities or their agencies) have either (1) an ownership interest of 10 percent or more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(e)(2).**

Date: November 28, 2022

Stephan C. Volker
(TYPE OR PRINT NAME)

▶ _(signature)_
(SIGNATURE OF APPELLANT OR ATTORNEY)

Form Approved for Optional Use<br>Judicial Council of California<br>APP-008 [Rev. January 1, 2017] **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS** Cal. Rules of Court, rules 8.208, 8.488<br>www.courts.ca.gov

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTERESTED ENTITIES OR PERSONS** . . . . . . 2

**TABLE OF AUTHORITIES**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**I.**     **INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**II.**     **FACTUAL AND PROCEDURAL BACKGROUND**. . . . . . . . 14

        **A.**     **THE DRAFT CONTRACT WESTLANDS IMPROPERLY SOUGHT TO VALIDATE WOULD LOCK IN EXCESSIVE DIVERSIONS THAT WOULD THREATEN TO EXTIRPATE SALMON, STEELHEAD, STURGEON AND SMELT**. . . . . . . . . . 14

        **B.**     **PROCEDURAL HISTORY**. . . . . . . . . . . . . . . . . . . . . . . . 24

**III.**     **STANDARD OF REVIEW**. . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**IV.**     **ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

        **A.**     **THE SUPERIOR COURT CORRECTLY RULED THAT WESTLANDS' ACTION DOES NOT SATISFY VALIDATION LAW**. . . . . . . . . . . . . . . . . . . . . 27

                **1.**     **WESTLANDS' VALIDATION ACTION DID NOT QUALIFY UNDER WATER CODE SECTION 35855**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

                **2.**     **WESTLANDS' VALIDATION ACTION DID NOT QUALIFY UNDER GOVERNMENT CODE SECTION  53511**. . . . . . . . . . . . . . . . . . . . 35

                **3.**     **WESTLANDS' VALIDATION ACTION FAILED TO QUALIFY UNDER C.C.P. SECTION 860 ET SEQ. BECAUSE ITS PROPOSED CONTRACT LACKED MATERIAL TERMS**. . . . . . . . . . . . . . . . . . . . . . 36

3

**4.**     **WESTLANDS' VALIDATION ACTION FAILED BECAUSE WESTLANDS DID NOT SHOW COMPLIANCE WITH THE BROWN ACT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

**5.**     **SUMMARY**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

**B.**     **THE SUPERIOR COURT CORRECTLY REJECTED WESTLANDS' MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF ITS PREVIOUS MOTION FOR VALIDATION**.. . . . . . . . . . . . . . . . . . . . 46

    **1.**     **CODE OF CIVIL PROCEDURE SECTION 1008 BARRED WESTLANDS' RENEWED MOTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

       **a.**     **Westlands' Motion Was Untimely Because It Did Not Seek Reconsideration Within 10 Days**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

       **b.**     **The Superior Court Ruled Correctly that Westlands Failed to Show New Facts, Circumstances or Law as of the Operative Date of the Resolution It Seeks to Validate: October 15, 2019**. . . . . . . . . . . . . . . . . . . . . . 49

       **c.**     **Westlands Failed to Show Reasonable Diligence**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

    **2.**     **THE VALIDATION SUMMONS AND RECORD CANNOT SUPPORT VALIDATION OF SUBSEQUENT ACTION**. . . . . . . . . . . . . . . . . . . . 58

**C.**     **IN ADDITION TO THE SUPERIOR COURT'S GROUNDS FOR DENIAL, WESTLANDS' CONVERTED CONTRACT CANNOT BE VALIDATED FOR OTHER INDEPENDENT REASONS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

1.  **STATE WATER BOARD APPROVAL HAS NOT BEEN GRANTED**.................... 59

2.  **WESTLANDS FAILED TO COMPLY WITH THE DELTA REFORM ACT**................. 60

3.  **WESTLANDS VIOLATED THE PUBLIC TRUST DOCTRINE**. ...................... 62

4.  **WESTLANDS VIOLATED THE CALIFORNIA ENVIRONMENTAL QUALITY ACT**......... 63

5.  **THE CONVERTED CONTRACT REQUIRES ADDITIONAL COMPLIANCE WITH FEDERAL LAW AND THUS IS NOT RIPE FOR VALIDATION**........................ 64

**V.     CONCLUSION**......................................... 64

**CERTIFICATE OF COMPLIANCE**. ......................... 66

**PROOF OF SERVICE**. ...................................... 67

## <u>TABLE OF AUTHORITIES</u>

### California Cases

*Baldwin v. Home Savings of America*
(1997) 59 Cal.App.4th 1192 . . . . . . . . . . . . . . . . . . . . . . . . . 49, 55, 56

*Blue Mountain Development Co. v. Carville*
(1982) 132 Cal.App.3d 1005 . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Bridges v. Mt. San Jacinto Community College District*
(2017) 14 Cal.App.5th 104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Carlson v. Paradise Unified Sch. Dist.*
(1971) 18 Cal.App.3d 196 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Central Delta Water Agency v. Department of Water Resources*
(2021) 69 Cal.App.5th 170 . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-31

*City of Ontario v. Superior Court*
(1970) 2 Cal.3d 335 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*City of Sacramento v. State Water Resources Control Board*
(1992) 2 Cal.App.4th 960 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*County of Amador v. El Dorado County Water Agency*
(1999) 76 Cal.App.4th 931 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

*Embarcadero Municipal Improvement District v. County*
*of Santa Barbara*
(2001) 88 Cal.App.4th 835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Epstein v. Hollywood Entertainment Dist. II Business*
*Improvement Dist.*
(2001) 87 Cal.App.4th 862 . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 55

*Forrest v. State of Calif. Dept. of Corps.*
(2007) 150 Cal.App.4th 183 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Friedland v. City of Long Beach*
    (1998) 62 Cal.App.4th 835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Garcia v. Hejmadi*
    (1997) 58 Cal.App.4th 674 . . . . . . . . . . . . . . . . . . . . . . . . . 48, 55, 56

*Gikas v. Zolin*
    (1993) 6 Cal.4th 841 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 34

*Gilberd v. AC Transit*
    (1995) 32 Cal.App.4th 1494 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Graydon v. Pasadena Redev. Agency*
    (1980) 104 Cal.App. 3d 631 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Hollywood Park Land Co., LLC v. Golden State Transportation*
    *Financing Corp.*
    (2009) 178 Cal.App.4th 924 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re Angelina E.*
    (2015) 233 Cal.App.4th 583 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Limon v. Circle K Stores Inc.*
    (2022) 84 Cal.App.5th 671 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Los Alamitos Unified School Dist. v. Howard Contracting, Inc.*
    (2014) 229 Cal.App.4th 1222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*McLeod v. Vista Unified  School Dist.*
    (2008) 158 Cal.App.4th 1156 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Morite of Cal. v. Superior Court*
    (1993) 19 Cal.App.4th 485 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*National Audubon Society v. Superior Court*
    (1983) 33 Cal.3d 419 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*New York Times Co. v. Superior Court*
    (2005) 135 Cal.App.4th 206 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*North Coast Rivers Alliance v. Westlands Water District*
    (2014) 227 Cal.App.4th 832 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

*Phillips v. Seely*
    (1974) 43 Cal.App.3d 104. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Planning and Conservation League v. Department of*
    *Water Resources*
    (2000) 83 Cal.App.4th 892. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53, 58

*Poway Royal Mobilehome Owners Assn. v. City of Poway*
    (2007) 149 Cal.App.4th 1460. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*R & B Auto Center, Inc. v. Farmers Group, Inc.*
    (2006) 140 Cal.App.4th 327. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*San Diegans for Open Government v. City of San Diego*
    (2015) 242 Cal.App.4th 416. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*San Francisco Baykeeper, Inc. v. State Lands Com.*
    (2018) 29 Cal.App.5th 562. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*San Joaquin Raptor Rescue Center v. County of Merced*
    (2013) 216 Cal.App.4th 1167. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Santa Clarita Organization for Planning & Environment*
    *v. Castaic Lake Water Agency*
    (2016) 1 Cal.App.5th 1084. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Smith v. Mt. Diablo Unified School District*
    (1976) 56 Cal.App.3d 412. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Tiburon Open Space Committee v. County of Marin*
    (2022) 78 Cal.App.5th 700. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Twin Lock, Inc. v. Superior Court in and for Los Angeles County*
    (1959) 52 Cal.2d 754. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**Federal Cases**

*North Coast Rivers Alliance v. United States Department*
    *of the Interior*
    (E.D.Calif.) Case No. 16-cv-307-LJO-SKO. . . . . . . . . . . . . . . 22, 64

*Pacific Coast Federation of Fishermen's Assns. v. Glaser*
    945 F.3d 1076 (9th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . 64

*Pacific Coast Federation of Fishermen's Associations v.*
    *United States Department of the Interior*
    655 Fed.Appx. 595 (9th Cir. 2016) . . . . . . . . . . . . . . . . . . 15, 16, 17

*U.S. v. Westlands Water District*
    134 F.Supp.2d 1111 (E.D. Cal. 2001). . . . . . . . . . . . . . . . . . . . . . 61

**California Statutes**

Code of Civil Procedure

    § 526a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    §§ 860, et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . 24, 28, 29, 34, 36
    § 861. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 58
    § 861.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52, 58
    § 862. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53
    § 863. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
    § 864. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 29, 31, 53
    § 870(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52
    § 1008. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    § 1008(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48, 49
    § 1008(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47, 57
    § 1008(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
    § 1008(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
    § 1010.6(a)(4)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

Education Code

    § 15284. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Government Code

§ 53510 et seq.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

§ 53511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 35, 36, 51

§ 54950 *et seq.* ("Brown Act"). . . . . . . . . . . . . . . . . . . . . . . . *passim*

§ 54952.6. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

§ 54954.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

§ 54954.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 43

§ 54954.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

§ 54954.2(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

§ 54954.2(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

§ 54957.5(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Water Code

§ 1700-1707. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

§ 1725-1736. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

§ 13370 *et seq.* ("Porter-Cologne Act"). . . . . . . . . . . . . . . . . . . . 64

§ 35855. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

§ 85000 *et seq.* ("Delta Reform Act"). . . . . . . . . . . . . . . . . . . . . . 60

§ 85021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

§ 85023. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

§ 85054. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

§ 85057.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

§ 85057.5(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

§ 85057.5(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

§ 85057.5(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

§ 85225. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

## Federal Statutes

42 U.S.C.

§ 4321 ("NEPA"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

43 U.S.C.

§ 485h(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Central Valley Project Improvement Act, Public Law No. 102-575,
    108 Stat. 4600 ("CVPIA")
    § 3402(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    § 3402(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    § 3404(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    § 3406(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    § 3406(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19


Water Infrastructure Improvements of the Nation Act,
    Public Law 114-322 (2016) ("WIIN Act")
    § 4011(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    § 4011(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    § 4011(a)(2)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 38, 43
    § 4011(a)(3)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
    § 4012(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**California Regulations**

23 C.C.R.
    § 5001(dd)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

**Federal Regulations**

43 C.F.R.
    § 426.22. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Federal Register**

Federal Register

    55 Fed.Reg. 46515 (Nov. 5, 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    58 Fed.Reg. 12854 (March 5, 1993). . . . . . . . . . . . . . . . . . . . . . . . . . 18
    58 Fed.Reg. 33212 (June 16, 1993). . . . . . . . . . . . . . . . . . . . . . . . . . 18
    59 Fed.Reg. 440 (Jan 4, 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    59 Fed.Reg. 65256 (Dec. 19, 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 18
    63 Fed.Reg. 13397 (March 19, 1998). . . . . . . . . . . . . . . . . . . . . . . . . 18

64 Fed.Reg. 50394 (Sept. 16, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . 18
70 Fed.Reg. 52488 (Sept. 2, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . 18
71 Fed.Reg. 834 (Jan. 5, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
71 Fed.Reg. 17757 (April 7, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 18
74 Fed.Reg. 52300 (Oct. 9, 2009).. . . . . . . . . . . . . . . . . . . . . . . . . . 18
75 Fed.Reg. 17667 (April 7, 2010). . . . . . . . . . . . . . . . . . . . . . . . . . 18
76 Fed.Reg. 66370 (Oct. 26, 2011).. . . . . . . . . . . . . . . . . . . . . . . . . 18
77 Fed.Reg. 69994 (Nov. 21, 2012). . . . . . . . . . . . . . . . . . . . . . . . . 18

## Other Authorities

California Civil Procedure Before Trial (C.E.B. 4th ed., June 2019)
  ("CEB Civil Procedure")

  § 12.136. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The
  Rutter Group 2005) ("Rutter Civil Procedure")

  ¶ 9:324.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
  ¶ 9:328. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

## I.   INTRODUCTION

Answering Defendants and Respondents North Coast Rivers Alliance, Winnemem Wintu Tribe, California Sportfishing Protection Alliance, Institute for Fisheries Resources, Pacific Coast Federation of Fishermen's Associations, and San Francisco Crab Boat Owners Association (collectively, "NCRA") hereby submit their Respondents' Brief.   The Superior Court's Judgment dismissing Plaintiff and Appellant Westlands Water District's ("Westlands'") Validation Action is demonstrably correct on multiple, independent grounds and should be affirmed.  Appellant Westlands Water District's Opening Brief ("Westlands"), by contrast, misapprehends the relevant law, and misstates the operative facts.

The Superior Court correctly ruled – twice, by two different judges – that Westlands improperly sought to validate an incomplete draft contract that lacked essential material terms, omitted all four exhibits, and allowed unrestricted modifications of its terms, depriving not just its Board of Directors, but more importantly the public, of information vitally needed to evaluate and comment on a contract that would pay more than $360,000,000 in public funds for the permanent transfer of scarce public water from the Sacramento-San Joaquin Delta to Westlands for sale to private consumptive users.

Westlands' Opening Brief does not raise any basis for reversing the Superior Court's well-reasoned decisions dismissing Westlands' Validation Action.  Its claim that Water Code section 35855 and Code of Civil Procedure ("C.C.P.") section 864 authorize validation of a materially incomplete contract is contrary to both common sense and settled law and

was properly rejected by the Superior Court.  It fails to disclose that its Complaint for Validation also relied upon Government Code section 53511 as the third basis for validation, an allegation the Superior Court likewise properly rejected because that statute only applies to contracts for indebtedness, not contracts for purchase such as the Conversion Contract whose validation Westlands requested here.  Westlands' further claim that its Board's approval of Resolution No. 119-19 complied with all other applicable laws, such as the Ralph M. Brown Act, is likewise contrary to law and refuted by the facts as carefully recited by the Superior Court.

Therefore Westlands' appeal from the Superior Court's Judgment of Dismissal is without merit and should be rejected.  The compelling reasons for rejecting Westlands' appeal are detailed below.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   THE DRAFT CONTRACT WESTLANDS IMPROPERLY SOUGHT TO VALIDATE WOULD LOCK IN EXCESSIVE DIVERSIONS THAT WOULD THREATEN TO EXTIRPATE SALMON, STEELHEAD, STURGEON AND SMELT

Westlands' Opening Brief ignores the real-world impacts of the incomplete contract its Validation Action sought to preemptively insulate from all legal challenge.  Westlands 12-19.  Its Validation Action does not exist in a vacuum.  There is an ongoing and indeed, worsening ecological crisis unfolding in which Westlands' effort to validate its incomplete draft contract takes center stage.  Westlands, the largest Central Valley Project (CVP) water contractor, brought this action to validate "each and every provision" and "all of the proceedings" leading to approval on October 15, 2019, of a highly controversial draft and incomplete agreement, the so-called "Converted Contract," that would *permanently privatize* a major

14

portion of the *public's* CVP water deliveries.  Appellant's Appendix ("AA"), Vol. 1, pp. 7, 25-195 ("1AA7, 25-295").

Relying on claimed authority available only through December 16, 2021–  a deadline that expired nearly one year ago – under section 4011(a)(1) of the 2016 Water Infrastructure Improvements for the Nation Act ("WIIN Act") (Pub. L. 114-322, 130 Stat. 128), Westlands seeks, retroactively and under a now expired statute, to have its CVP water service contract, currently subject to two-year interim renewal periods (*e.g.*, 2020-2022), convert to a permanent repayment contract that *avoids earlier acreage and pricing restrictions* imposed by Congress.  3AA614.

The vehicle by which Westlands sought to achieve this fundamental transfer of public waters into private ownership is its Board's Resolution 119-19.  1AA25-114.  Resolution 119-19 includes broad claims about past, ongoing and future water uses, and asserts that Westlands met its interim contract duties to the United States Bureau of Reclamation ("Reclamation").  But federal agency approval of Westlands' (and other related) interim contracts has been challenged in several federal court actions that resulted in court rulings that found, contrary to Westlands' claims, violations of federal environmental law as summarized below. 3AA883; *Pacific Coast Federation of Fishermen's Associations v. United States Department of the Interior ("PCFFA v. USDI")*, 655 Fed.Appx. 595 (9th Cir. 2016).

Westlands has for decades received water from the CVP under long-term water service contracts with Reclamation, including one entered into in 1963, with a term of 40 years.  1AA18-19.  In 1992 Congress enacted the Central Valley Project Improvement Act, Public Law No. 102-575, 108 Stat. 4600 ("CVPIA"), to reduce the adverse environmental impacts of CVP

operations.  CVPIA §§ 3402(a)-(b), 3406(b).  The CVPIA limited
Reclamation's authority to enter into new long-term contracts with existing
water contractors.  In order "[t]o address impacts of the Central Valley
Project on fish, wildlife and associated habitat," the CVPIA requires
Reclamation to undertake environmental review – including the preparation
of an Environmental Impact Statement ("EIS") under the National
Environmental Policy Act, 42 U.S.C. section 4321 *et seq*. ("NEPA") –
before any long-term water service contract can be renewed by
Reclamation.  CVPIA §§ 3402(a), 3404(c)(1).

Despite the CVPIA's 1992 mandate, Reclamation never prepared the
required EIS for its delivery of water to Westlands.  Instead, upon
expiration of the prior long-term contracts, Reclamation issued short-term
interim renewal contracts ("IRCs") to Westlands.  1AA19, 214; 2AA432-
498; 4AA883, 917-1031; 8AA2296-2333; 9AA2428.

To do so, Reclamation relied upon a series of superficial
environmental assessments ("EAs") and a perfunctory review by the United
States Fish and Wildlife Service ("Fish and Wildlife" or "FWS"), which
concluded that due to their short term nature, the IRCs' impacts on special
status species would not cause jeopardy.  4AA994, 997; 9AA2429.  It is one
thing to conclude that a two-year extension – taken alone – will not by itself
kill imperiled species that are just barely hanging on.

It is quite something else to claim that reapproving the same two-
year contracts over and over again for decades will not extirpate these
species.  Yet these interim contracts were routinely renewed without the
required preparation of more detailed environmental review. *See*, *e.g.*
*PCFFA v. USDI*, 655 Fed.Appx. 595; 2AA434-514.  Because no agency
ever examined the cumulative impact of decades of routine renewal of these

16

interim contracts ("IRCs"), environmental organizations sued, successfully, to compel compliance with NEPA. On July 25, 2016, the Ninth Circuit Court of Appeals held that Reclamation's approval of them violated NEPA. 2AA327; 9AA2511-2512, 2642; *PCFFA v. USDI*, 655 Fed.Appx. 595.

Westlands' attempt to validate the permanent acquisition that its "Converted Contract" is intended to allow would enable Reclamation, and thereby Westlands, to circumvent the Ninth Circuit's ruling. The public – not to mention the species at risk – would be the losers here. Sadly, the public would not even know what has been lost because, as the Ninth Circuit ruled, required environmental reviews were never done. *PCFFA v. USDI*, 655 Fed.Appx. at 597-600; 3AA883. More importantly, the rule of law would be the ultimate victim, as the Ninth Circuit's ruling would be for naught. *Id.*

Reclamation's superficial interim reviews ignored the increasingly severe *cumulative* impacts of its quarter-century of IRCs. 4AA917-1031; 9AA2429. Neither Westlands nor Reclamation considered alternatives that would reduce the quantity of water diverted to reduce these impacts. 9AA2429. Nor did Reclamation take into account that Westlands' need for water was declining due to land retirement. 9AA2429.

Instead, Reclamation relied on Westlands' misleading claims that it would beneficially apply all water delivered under the contracts to its lands, even as Westlands was retiring thousands of acres from farming, belying its claimed need for this water. 9AA2429. For these reasons – because the IRCs had been used to *avoid* the scrutiny that Congress mandated – the Ninth Circuit declared them unlawful. *PCFFA v. USDI,* 655 Fed.Appx. 595.

Because Reclamation and Westlands had evaded compliance with NEPA and the CVPIA, downstream populations of salmon, steelhead and other imperiled fisheries in the Bay-Delta have plummeted toward extinction. *Id.;* 9AA2429-2430. Endangered winter-run Chinook salmon, threatened spring-run Chinook salmon, threatened Central Valley steelhead, threatened green sturgeon, and threatened delta smelt now all face an uphill battle for survival in the face of reduced freshwater flows, increased salinity and turbidty, rising temperatures, reduced dissolved oxygen, and other harmful degradations in water quality and flow.[1] *Id.*

Fall-run  and late fall-run Chinook salmon – the remaining commercially fished Chinook – have likewise declined due to Reclamation's and Westlands' decision to ignore the severe adverse effects

---

[1] 9AA2429-2430, citing the following facts:  NMFS formally designated Sacramento River winter-run Chinook as threatened in 1990 and reclassified them as endangered in 1994.  55 Fed.Reg. 46515 (Nov. 5, 1990); 59 Fed.Reg. 440 (Jan 4, 1994).  NMFS designated their critical habitat in 1993.  58 Fed.Reg. 33212 (June 16, 1993).  In 1999, NMFS designated Central Valley spring-run Chinook as threatened and designated their critical habitat in 2005.  64 Fed.Reg. 50394 (Sept. 16, 1999); 70 Fed.Reg. 52488 (Sept. 2, 2005).  NMFS first listed Central Valley steelhead as threatened in 1998, and clarified that listing in 2006.  63 Fed.Reg. 13397 (March 19, 1998); 71 Fed.Reg. 834 (Jan. 5, 2006).  NMFS designated critical habitat for Central Valley steelhead in 2005.  70 Fed.Reg. 52488 (Sept. 2, 2005).  NMFS listed the Southern Distinct Population Segment ("DPS") of North American green sturgeon as threatened in 2006, and designated their critical habitat in 2009.  71 Fed.Reg. 17757 (April 7, 2006); 74 Fed.Reg. 52300 (Oct. 9, 2009).  FWS determined that delta smelt were threatened in 1993, and designated critical habitat for delta smelt in 1994.  58 Fed.Reg. 12854 (March 5, 1993); 59 Fed.Reg. 65256 (Dec. 19, 1994).  FWS has determined that delta smelt's reclassification as endangered "is warranted but precluded by other higher priority listing actions."  75 Fed.Reg. 17667 (April 7, 2010), *see also* 76 Fed.Reg. 66370 at 66428 (Oct. 26, 2011), 77 Fed.Reg. 69994 at 7048-7049 (Nov. 21, 2012).

of their water diversions.  9AA2429-2430.  These fisheries collapsed because Reclamation ignored its duty to achieve the CVPIA's salmon-doubling goal by 2002.  9AA2430 (citing CVPIA § 3406(b)(1)).  Rather than double salmon as required, Reclamation has allowed salmon populations to accelerate their downward spiral toward extinction.  *Id.*

The collapse of the Delta's salmonid fisheries due to excessive diversions by Westlands and others is well documented.  In June 2009, the National Marine Fisheries Service ("Fisheries Service" or "NMFS") issued a Biological Opinion ("2009 NMFS BiOp") confirming the "precipitous decline" in Sacramento winter-run Chinook in 2007 "that continued in 2008, when less than 3,000 adult fish returned to the upper Sacramento River."  4AA1113; 9AA2430.  It described how Central Valley steelhead have had "a pattern of negative growth rate since the late 1960s . . . [with] no indication that this trend has changed" since 1993.  4AA1141; 9AA2430.  It also confirmed the Southern Distinct Population Segment of North American green sturgeon had "very little production" in 2007 and 2008, and it was "clear that the abundance of the Southern DPS of green sturgeon is declining."  4AA1152.

Westlands and Reclamation have been on notice for more than a decade that their excessive diversions were destroying the Delta's fisheries.  Thirteen years ago – in 2009 – the Fisheries Service warned them that:

> the long-term operations of the CVP and SWP are likely to
> jeopardize the continued existence of Sacramento River
> winter-run Chinook Salmon, Central Valley spring-run
> Chinook salmon, Central Valley steelhead, Southern DPS of
> North American green sturgeon, and Southern Resident Killer
> whales.  The long-term operations of the CVP and SWP are
> likely to destroy or adversely modify critical habitat for

19

> Sacramento River winter-run Chinook salmon, Central Valley
> spring-run Chinook salmon, and Central Valley steelhead.

6AA1610; 9AA2430.  Fish and Wildlife prepared a Biological Opinion that
evaluated the harm caused by these diversions in 2008 ("2008 FWS BiOp").
7AA1882-8AA2294.  It found that "the coordinated operations of the CVP
and SWP, as proposed, are likely to jeopardize the continued existence of
the delta smelt."  8AA2174; 9AA2431.  Delta smelt in 2008 were "at the
lowest level of abundance since monitoring began in 1967."  8AA2174.

The Fisheries Service concurred with Fish and Wildlife that
excessive diversions were wreaking havoc with fish and wildlife
populations.  It pointed out that nearly 60 percent of the natural historical
inflow to Central Valley watersheds and the Delta has been diverted for
human uses.  4AA1167.  It determined that "depleted flows have
contributed to higher temperatures, lower dissolved oxygen . . . levels, and
decreased recruitment of gravel and large woody debris."  4AA1167.  The
Fisheries Service also found that "[w]ater withdrawals, for agricultural and
municipal purposes, have reduced river flows and increased temperatures
during the critical summer months, and in some cases, have been of a
sufficient magnitude to reverse flows in the lower San Joaquin River. . . .
Direct relationships exist between water temperature, water flow, and
juvenile salmonid survival."  4AA1168.  Thus, both federal fisheries
agencies confirmed the existing high volumes of CVP exports are causing
these precipitous fish declines.

Westlands' excessive diversions of public water from the Delta
impact fish and wildlife populations in a second significant, but less
appreciated, way.  In addition to harming fish by reducing Delta outflows,
using CVP water for irrigation on lands within Westlands' service district

exacerbates the existing contamination of the soils, groundwater and surface waters of the San Joaquin Valley and downstream, the Bay-Delta, with salts and other pollutants such as selenium, which is "highly bioaccumulative." 8AA2313; 9AA2431. "[T]here is a hydraulic connection of shallow groundwater contamination originating in Westlands to lands downslope of Westlands that do discharge to surface waters." 8AA2314; 9AA2431.

For this reason, "[d]rainage contamination from Westlands . . . likely contributes to . . . selenium contamination in the . . . San Joaquin River." 4AA997; 8AA2316. In fish, "excessive exposure can lead to selenium toxicity or selenosis and result in death or deformities of fish embryos, fry, or larvae." 8AA2386; 9AA2388. Green sturgeon are "highly sensitive to selenium levels." 4AA1147. "There are longstanding concerns related to mercury and selenium levels in the watershed, Delta, and San Francisco Bay." 7AA2084; 9AA2390. In salmonids, the increase in pollutants – including discharges of shallow groundwater originating under Westlands' service area – "can lead to either acute toxicity, resulting in death . . . [or] when concentrations are lower, to chronic or sublethal effects that reduce the physical health of the organism and lessen its survival over an extended period of time." 4AA1174.

In 2016 Reclamation issued a Record of Decision ("ROD") to implement the reasonable and prudent alternative ("RPA") mandated by the 2009 NMFS BiOp and 2008 FWS BiOp. 8AA2335-2385. But Reclamation's subsequent actions have not implemented that alternative. 9AA2432. Instead, Reclamation's diversions continue to violate water quality standards and cause fish populations to plummet. *Id*. Contrary to Congressional mandates to operate the CVP to restore fisheries,

21

Reclamation has prioritized water deliveries, and never taken the hard look at their impacts on fisheries required by NEPA.

As noted, in 2016, Congress adopted the Water Infrastructure Improvements of the Nation Act, Public Law 114-322 (2016) ("WIIN Act").  *Id.*  It allows water agencies to convert their existing CVP water service contracts to repayment contracts.  WIIN Act § 4011(a).  But it does not exempt Reclamation from its duty to prepare an EIS.  *Id.*  In its briefing in *North Coast Rivers Alliance v. United States Department of the Interior* (E.D.Calif.) Case No. 16-cv-307-LJO-SKO, Reclamation mistakenly claimed the WIIN Act imposes a non-discretionary duty to enter into conversion contracts with Westlands.  *Id.* at 11.  Not so.  The WIIN Act confirms *the obligations of the CVPIA continue to apply to Reclamation's actions*, with the *sole* exception of the "savings provisions for the Stanislaus River predator management program."  WIIN Act § 4012(a)(2).  The WIIN Act gives Reclamation ample discretion to negotiate "mutually agreeable terms and conditions" in converting existing contracts to repayment ones. WIIN Act § 4011(a)(1).

At its October 15, 2019 Board Meeting, Westlands purported to authorize the Converted Contract at issue by adopting Resolution 119-19. 3AA734-820.  But neither Westlands' Board nor the public was provided with the full or final terms of the Converted Contract at that time*.  Id.*  None of the Converted Contract's Exhibits were provided with the Agenda or Staff Report, nor were they provided to the Superior Court as part of Westlands' Validation Action.  2AA516-593; 3AA607-610, 613-702; 9AA2433.  The draft Converted Contract presented for approval was only a "Working Draft" – not a final contract – and it lacked all four of its essential and material Exhibits.  3AA616-692; 9AA2433.

Consequently, when Westlands' Board purported to approve the Converted Contract, its terms were not final.  3AA616-692; 9AA2433. Indeed, they could not have been final, since Reclamation  was required by law to circulate the draft contract for public review and comment, to then consider the public comments thus stimulated and received, and then to make revisions to the contract as necessary to discharge its duty to consider and apply those comments *before* deciding whether, and if so on what terms, to enter into the contract in the first place.  43 U.S.C. § 485h(f); 43 C.F.R. § 426.22.

For these indisputable reasons, on January 8, 2020, Michael P. Jackson, the Reclamation employee responsible for "overseeing and addressing Reclamation's interests . . . within the geographic scope of the [South-Central California Area],"  submitted a sworn declaration to the federal district court stating that "*Reclamation will* consider the public comments [on Westlands' proposed contract] . . .  confer with Westlands, and *make changes to the contract (if any) as appropriate*" before "Reclamation will . . . prepare the contract for execution."  4AA895-896 (emphasis added); 9AA2433.  Consequently, Reclamation was prepared to enter into an additional IRC (and in fact, it subsequently did so) to continue water service to Westlands for the period 2020 to 2022.  4AA896; 9AA2433.

NCRA is vitally concerned that the ecological collapse of the Delta's fish and wildlife, particularly its salmon fisheries, be halted.  Therefore NCRA opposes Westlands' attempt to validate its purported Conversion Contract (and its excessive levels of diversion) with Reclamation. 2AA314-317.  The Verified Answer of NCRA, et al. filed December 17, 2019 ("NCRA Answer") denies Westlands' allegations and raises eight

23

Affirmative Defenses alleging Westlands' violation of numerous environmental laws.  2AA317-318.

## B.   PROCEDURAL HISTORY

Westlands filed its Validation Complaint on October 25, 2019, and Summons was issued five days later.  1AA16-23, 217-224, 227-230. Westlands' Validation Complaint alleged in its first paragraph that:

> "[Westlands] files this action seeking a validation judgment, *pursuant to Code of Civil Procedure section 860, et seq., Water Code section 35855, and Government Code section 53510, et seq*., as to the "Contract Between the United States and Westlands Water District Providing for Project Water Service, San Luis Unit and Delta Division and Facilities Repayment," which the Board of Directors, on October 19, 2019, approved in substantially the form presented to it and authorized its execution and delivery as set forth in Resolution No. 119-19 ('Converted Contract')."

1AA17 (emphasis added).  Of the three statutory bases for validation alleged by Westlands, the two substantive statutes – Water Code section 35855 and Government Code section 53510 et seq. – clearly did not apply because the first may not be used to validate materially incomplete contracts and under settled authority, the second may not be used for purchase contracts, as the Superior Court correctly ruled.  The third statute – C.C.P. section 860 et seq. – is a generic procedural provision that likewise may not be used to validate materially incomplete contracts.

NCRA submitted its Verified Answer for electronic filing by the Superior Court on December 16, 2019 – the last day for filing per the Court's Summons – and served it on Westlands the same day.  2AA312-321.  However, the electronic filing service provider utilized by NCRA's counsel, One Legal, did not provide the Court with the first appearance fee for each of the six jointly answering parties, as the Clerk requires.

3AA812-883, 887.  Therefore those fees were paid the following morning at 9:54 a.m., and the Clerk deemed the Verified Answer to be filed on December 17, 2019, which the Superior Court later ruled to be untimely. 3AA890; 10AA2860.  The latter ruling was subsequently overturned by this Court, which held NCRA's Answer was timely.  18AA5172-5184.

Westlands filed its Motion for Validation ("Validation Motion") on December 30, 2019.  2AA359-361.  NCRA filed its Opposition on January 14, 2020.  9AA2423-2442.   The Superior Court heard the motion on February 27, 2020, and on March 16, 2020 Judge Alan Simpson issued an Order denying the substance of Westlands' Validation Motion but agreeing with Westlands that the answers filed by NCRA and two other parties were untimely.  10AA2857-2865. Westlands did not appeal from Judge Simpson's Order denying Westlands' Validation Motion.  Respondents' Appendix, Volume 1, p. 20 ("1RA20").  Westlands thereby waived immediate appellate review of Judge Simpson's March 16, 2020 Order.

By contrast, NCRA *did* timely seek appellate review of the Order's finding that NCRA's Answer was untimely.  2AA312; 3AA890; 10AA2860.  On March 9, 2021 this Court reversed the Superior Court's March 16, 2020 Order finding NCRA's Answer untimely.  18AA5172-5184.  Remittitur issued May 10, 2021. 1RA28.

In the meantime, on July 27, 2020, Westlands filed its Renewed Motion for Validation of Contract ("Renewed Motion"), which was subject to the strict requirements of C.C.P. section 1008, which governs motions for reconsideration.  10AA2933-2935.  On August 10, 2020 Defendant and Respondent Central Delta Water Agency filed its opposition to Westlands' Renewed Motion, pointing out that it was subject to section 1008 and plainly violated its stringent criteria.  12AA3367-3385.  On August 13,

25

2020, Westlands filed its Reply in Support of Renewed Motion for Validation Judgment.  12AA3402-3415.

However, before the Superior Court could rule on Westlands' Renewed Motion, the matter was stayed.  12AA3420-3421.  On May 12, 2020, NCRA and the other Defendants whose Answers had been ruled untimely filed a Joint Motion for Stay of Proceedings pending disposition of their appeals.  10AA2900-2922.  On August 19, 2020, the Superior Court adopted its Tentative Ruling "[t]o grant and stay the entire action until determination of the pending appeals."  12AA3420-3422.

Promptly after this Court revested the Superior Court with jurisdiction on May 11, 2021, on May 25, 2021, the Superior Court set the parties' mandatory settlement conference, which was held on July 22, 2021.  12AA3483.  Because this case did not settle, on July 22, 2021 the Superior Court set a merits briefing and hearing schedule.  12AA3483.

On September 17, 2021, NCRA and Westlands filed their respective Opening Merits Briefs, and on October 8, 2021, NCRA and Westlands filed their respective Reply Merits Briefs.  12AA3502-3528; 18AA5131-5186, 5265-5295; 20AA5683-5703.   On October 26, 2021 the Superior Court, per the Honorable D. Tyler Tharpe, issued its Tentative Ruling, and on October 27, 2021 its Final Ruling, denying Westlands' Renewed Motion for Validation.  20AA5704-5710.

Defendants jointly prepared and circulated their proposed Judgment of Dismissal, which the Superior Court signed and filed on March 15, 2022.  20AA5749-5768.  Westlands filed its notice of appeal on March 29, 2022.  20AA5769.

### III.    STANDARD OF REVIEW

Westlands states that "this case presents purely legal questions; there are no disputed facts . . . . [and a]ccordingly, the *de novo* standard of review applies."  Westlands Opening Brief 23.  Westlands is mistaken.  Its appeal presents both legal and factual issues for resolution.  Although it is undisputed that this Court applies a *de novo* standard of review as to legal questions, as to factual issues, the substantial evidence standard of review applies.  *Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1479.

### IV.    ARGUMENT

### A.    THE SUPERIOR COURT CORRECTLY RULED THAT WESTLANDS' ACTION DOES NOT SATISFY VALIDATION LAW

Westlands contends that "[t]he trial court's rulings declining to enter a validation judgment are unsupported by the undisputed facts and by the law."  Westlands 23-24 (capitalization altered).  It is mistaken.  Westlands' Validation Action was properly dismissed because the Superior Court correctly ruled – twice – that the Board Resolution and Conversion Contract that Westlands asks this Court to validate were materially deficient. 10AA2863; 20AA5716.  The Superior Court rejected Westlands' Validation Complaint for five independent and compelling reasons, pointing out that it improperly seeks to validate a draft, unexecuted and facially incomplete contract that omits all four of its exhibits, lacks many material terms, and allows unrestricted modifications of its terms, as detailed below.  *Id*.

27

### 1.   WESTLANDS' VALIDATION ACTION DID NOT QUALIFY UNDER WATER CODE SECTION 35855

Westlands asserts that "Water Code section 35855 . . . explicitly provide[s] for issuance of a validation judgment in circumstances like those presented by this case."  Westlands 24.  Westlands had made the same, erroneous claim in its Validation Complaint, which alleged that Westlands was entitled to validation of its proposed (but materially incomplete) Converted Contract "pursuant to . . . Water Code section 35855" (2AA360), in its Motion for Validation, which similarly claimed that "[t]his Motion is made pursuant to . . . Water Code section 35855" (2AA360), and in its Motion's Memorandum, which likewise claimed that "Water Code section 35855 authorizes Westlands to bring 'an action to determine the validity of any contract' pursuant to Code of Civil Procedure section 860 et seq." (3AA863).  Westlands' reliance on section 35855 is misplaced because neither this statute, nor C.C.P. section 860 et seq., authorizes validation of contracts that lack material terms.

As both Judge Simpson and Judge Tharpe ruled, in 1961 the Legislature amended this statute to remove its reference to "proposed" contract, thus eliminating the primary basis for Westlands' claim that section 35855 allowed validation of incomplete contracts such as the one it seeks to validate here.  10AA2872; 20AA5707-5709.  Judge Simpson explained that "[i]t is a tenet of statutory construction that where the Legislature has chosen to delete a provision, the Court cannot interpret the statute to put it back in."  10AA2872 (citing and quoting *Gikas v. Zolin* (1993) 6 Cal.4th 841, 861).  Judge Simpson therefore concluded, and Judge Tharpe concurred, that "[t]his contract does not qualify for validation under that statute."  10AA2872; 20AA5707-5709.

28

Westlands advances five arguments in support of its claim that the
Superior Court erred in ruling that Westlands' Validation Complaint did not
qualify under Water Code section 35855 or, failing that, under C.C.P.
section 860 et seq.  All fail.  First, it contends the mere fact that the subject
contract is "proposed" does not preclude its validation because "'validation
actions are commonly used to secure a judicial determination that a local
agency's *proposed* issuance of bonds is valid.'"  Westlands 25, quoting
*McLeod v. Vista Unified  School Dist.* (2008) 158 Cal.App. 4th 1156, 1170
(emphasis added by Westlands].  But *McLeod* did not construe Water Code
section 35855.  *McLeod* was a taxpayer action alleging improper waste of
public funds under Education Code section 15284 and C.C.P. section 526a
in which the court interpreted C.C.P. sections 860 and 863.  158
Cal.App.4th at 1160.  Westlands fails to disclose that *McLeod* does not even
mention the primary statute on which Westlands is ostensibly relying –
Water Code section 35855.

Westlands' argument is unpersuasive for other reasons.  It conflates
the impropriety of attempting to validate a draft contract whose *material
terms are incomplete* with an agency's entirely proper request for judicial
validation of its proposal to issue  bonds whose material terms *are* complete
and thus suitable for validation.  Doubling down on its argument, Westlands
points to the fact that for purposes of validation, C.C.P. section 864
expressly provides that "contracts shall be deemed authorized as of the date
of the adoption by the governing body of the public agency of a resolution
or ordinance approving the contract and authorizing its execution"– *i.e.*,
prior to their execution.  Westlands 25 -26.  But again, Westlands ignores
the obvious distinction between an otherwise final and complete bond issue
that requires validation before underwriters may market it and Westlands'

29

draft proposed contract that lacks material elements including all four of its exhibits and allows unrestricted modifications of its terms.

Westlands next argues that the short, 60-day limitations period applicable to validation actions provides a third rationale for allowing validation of draft contracts, as otherwise the short limitations period would lapse before the contract were finalized and executed. Westlands 26, citing *Hollywood Park Land Co., LLC v. Golden State Transportation Financing Corp.* (2009) 178 Cal.App.4th 924, 945-946 and *Graydon v. Pasadena Redev. Agency* (1980) 104 Cal.App. 3d 631, 641 (motion by agency board to authorize execution of contract commences statute of limitations under validation statutes).

But Westlands' interpretation of *Hollywood Park* and *Graydon* to support validation here is nonsensical. That an agency's authorization of an unexecuted contract may trigger the 60-day limitations period obviously highlights the need to make sure a proposed contract is complete before authorizing its execution. However, it does not provide a rationale for excusing validation of a materially incomplete contract. Although *Hollywood Park* and *Graydon* plainly underscore the need to file reverse validation cases promptly after contract authorization, they certainly do not suggest that contracts proposed for validation need not be complete in all material respects. Westlands fails to point to any language in these decisions that implies, let alone states, such a holding. Westlands 26.

Westlands cites two other cases for the identical proposition – that "the period for filing a validation action begins upon approval rather than execution of [the] contract" – but these cases do not avail it because Westlands' reasoning remains flawed. Westlands 27, citing *Central Delta Water Agency v. Department of Water Resources* (2021) 69 Cal.App.5th

170, and *Smith v. Mt. Diablo Unified School District* (1976) 56 Cal.App.3d
412, 415-417.  In both cases the court held, consistent with C.C.P. section
864 and settled validation law, that the challenged contract was deemed "in
existence" for validation purposes when the agency authorized its
execution.  *Id*.  But in neither case did the court imply, let alone express,
agreement with Westlands' quite different claim here that deeming an
unexecuted contract "in existence" so it may be considered for validation
*excuses material omissions* that would otherwise preclude its validation.

Westlands' next argument is that it had to seek validation of a
materially incomplete contract because it could not wait for Reclamation's
review because that agency took more than four months to complete it.
Westlands 26.  But it fails to mention there was no actual need for its
supposed rush to validate an incomplete contract.  Why was this so?
Because it knew Reclamation was *forbidden by federal law* from executing
that draft contract during that four-month period.  Just as Westlands was
precluded from validating that incomplete draft, so too Reclamation was
required to circulate that draft for public review and comment, consider the
comments thus engendered, and revise the draft as appropriate *before*
deciding whether, and if so on what terms, to enter into the contract in the
first place.

Confirming what Westlands already knew, as noted above on
January 8, 2020, the responsible Reclamation official testified that
"Reclamation will consider the public comments [on Westlands' proposed
contract] . . .  confer with Westlands, and *make changes to the contract (if
any) as appropriate*" before "Reclamation will   . . . prepare the contract
for execution."  4AA895-896.  Because Reclamation was powerless to
execute the draft contract before Westlands' extant interim contract was due

to expire, Reclamation simply renewed its existing contract with Westlands to provide water on an interim basis from 2020 to 2022 rather than by permanent sale.  4AA897.

So, there never was any need to get Reclamation's signature right away (something federal law forbade) or even to assure federal water deliveries would not cease (since Westlands knew Reclamation would sign another interim contract  anyway).  Instead, Westlands' real agenda was to quickly ram the contract through under the public's radar – something it very nearly achieved.  But for the Defendants' quick action and the Superior Court's astute analysis of validation law, Westlands would have validated a materially incomplete contract and thereby privatized the delivery each year, in perpetuity, of over one million acre-feet of public water .

Westlands' last argument is that "the trial court failed to apply the plain text of Water Code section 35855 and instead relied upon a misreading of its legislative history."  Westlands 28-31 (capitalization altered).  It is mistaken on both counts.

First, Westlands fails to show that the Superior Court did not apply the plain text of section 35855.  The only language of section 35855 that Westlands quotes is that a water district may bring an action: "to determine the validity of any contract."  Westlands 28.  The Superior Court did exactly that.  It examined Westlands' proposed draft "contract," observed that it was merely a proposed, rather than final, contract, and correctly concluded that it was *not* a "contract" within the meaning of section 35855 because it was incomplete and uncertain as it omitted essential terms and was subject to future change.  10AA2861, 2863.   The Superior Court stated:

> "Given that the contract terms, including repayment terms, are not certain, and that the contract may be changed or modified, validation is not appropriate.  It is not possible to make the determination [of validity] sought where no final contract is presented for validation. [¶] Westlands' Declarant Gutierrez states he does not anticipate any major changes, but *the validation statutes do not encompass judicial approval of incomplete contracts*.  Given the estimate for the repayment amount is over $362,000,000(Ex. 12 to Westlands' Exhibits), *the absence of the actual final amount and payment schedule render the proposed contract lacking in material terms and incomplete.*"

10AA2863 (emphasis added).

As to this first ground for appeal, Westlands utterly fails to carry its burden as the appellant seeking reversal of the Superior Court's Judgment to show error.  Westlands 28-31.  Although Westlands' "Argument" heading claims "[t]he trial court failed to apply the plain text of Water Code section 35855," it fails to show how the Superior Court failed to apply any part of section 35855's "plain text."  *Id.* (capitalization altered).  It fails to show how the Superior Court's rationale was deficient in any other respect. *Id*.  It even fails to set forth the Superior Court's rationale for its ruling.  *Id*. Because Westlands completely fails to discharge its burden as the appellant to show lower court error, its appeal must be denied.  *San Diegans for Open Government v. City of San Diego* (2015) 242 Cal.App.4th 416, 442.

Second, Westlands fails to show that the Superior Court "relied upon a misreading of [section 35855's] legislative history."  Westlands 28 (capitalization altered).  Judge Simpson simply applied a well-accepted principle of statutory construction when he gave effect to the Legislature's amendment of section 35855 in 1961 to remove the term "proposed" from the words "proposed contract."  10AA2861.  As Judge Simpson explained, contemporaneous legislative history shows that this change in the law was

33

deliberate rather than due to oversight or other clerical error. *Id.*, citing the official comments to the 1961 amendment to Water Code section 35855. Accordingly, Judge Simpson correctly reasoned that in the absence of any ambiguity or internal conflict in the statutory language, he was obliged to give this amendment its normal meaning and effect. *Id.*

Judge Simpson buttressed his ruling by reciting the established "tenet of statutory construction that when the Legislature has chosen to delete a provision, the Court cannot interpret the statute to put it back in." *Id.* Judge Simpson correctly quoted and followed the California Supreme Court's admonition that:

> "The rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision."

*Id.,* quoting *Gikas*, 6 Cal.4th at 861. Westlands fails to demonstrate any error in Judge Simpson's decision to follow and apply this established canon of statutory interpretation. Westlands 28-31.

Although Westlands argues that the 1961 amendment of Water Code section 35855 was part of a large-scale revision of related validation statutes to create a uniform scheme under C.C.P. section 860 et seq. (Westlands 28-31), this fact reinforces the normal assumption that this change was deliberate rather than inadvertent. *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 340; *Twin Lock, Inc. v. Superior Court in and for Los Angeles County* (1959) 52 Cal.2d 754, 761. Judge Simpson correctly reasoned that this amendment showed that "[t]he legislature did not intend that courts make such advisory opinions on proposed contracts after 1961." 10AA2861.

34

Ultimately, Westlands' quibbling about whether the Legislature's removal of the word "proposed" from section 35855 does not support reversal because Westlands fundamentally fails to demonstrate any prejudice from the Superior Court's reasonable interpretation of this section's plain language. Westlands does not argue, for example, that but for the Superior Court's interpretation of the Legislature's removal of the word "proposed," Westlands's draft contract would otherwise qualify for validation. Westlands cannot make this showing for the simple reason that, as Judge Simpson explained,

> "[g]iven that the contract terms, including repayment terms, are not certain, and that the contract may be changed or modified, validation is not appropriate. . . .[T]he validation statutes do not encompass *judicial approval of incomplete contracts."*

10AA2863 (emphasis added).

For each of these reasons, Westlands fails to show any basis for reversal of the Superior Court's ruling that its draft contract does not qualify for validation under Water Code section 35855.

## 2. WESTLANDS' VALIDATION ACTION DID NOT QUALIFY UNDER GOVERNMENT CODE SECTION 53511

The primary Superior Court order rejecting Westlands' Validation Action was issued by Judge Simpson as a Tentative Ruling and then adopted as his final Minute Order on March 16, 2020. 10AA2859-2864. After disposing of Westlands' reliance on Water Code section 35855 as discussed above, Judge Simpson then addressed the other substantive ground Westlands advanced as a statutory basis for its requested validation, Government Code section 53511. 10AA2861-2862. Although section 53511did authorize validation of "contracts," Judge Simpson rejected

35

Westlands' reliance on this provision because its reference to "contracts" had been consistently construed by the courts "to reach only those contracts 'that are in the nature of, or directly relate to a public agency's bonds, warrants or other evidences of indebtedness.'" 10AA2861-2862, citing *inter alia Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 843. Therefore Judge Simpson ruled, correctly, that Westlands could not validate its contract to purchase water from Reclamation under this statute, since "[p]urchase contracts are not subject to validation under this statute." 10AA2862, citing *Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.5th 1084, 1099, and *Phillips v. Seely* (1974) 43 Cal.App.3d 104.

Westlands makes no effort to challenge Judge Simpson's ruling correctly rejecting validation under Government Code section 53511, and has therefore forfeited any such contention.  Westlands 24-27; *Limon v. Circle K Stores Inc.* (2022) 84 Cal.App.5th 671.

### 3.  WESTLANDS' VALIDATION ACTION FAILED TO QUALIFY UNDER C.C.P. SECTION 860 ET SEQ. BECAUSE ITS PROPOSED CONTRACT LACKED MATERIAL TERMS

Westlands' proposed Converted Contract cannot qualify for validation under any applicable law because it lacks material terms.  As Judge Simpson explained, "[i]n the Appendix of Evidence submitted by Westlands ('AOE') Vol. II, page 108, paragraph 8, the draft resolution states:  'The President of the District is hereby authorized to execute and deliver the Converted Contract in substantially the form attached hereto, *with such additional changes and/or modifications as are approved by the President of the District, the General Manager, and its General Counsel*.'

The Resolution [of approval] itself has that language as well."  10AA2863 citing AOE at Vol. II, page 144.  Moreover, "Exhibits A, B, C, and D to the Converted Contract are missing from all materials submitted to the Court." *Id*.

Further fatal to Westlands' arguments, the contract's allowance of unspecified "additional changes and/or modifications" is *not* subject to the restriction that the contract be in "substantially the form attached."  Those permissible changes are *completely unrestricted.*

These omissions and unrestricted modifications are material and preclude validation.  As Judge Simpson pointed out, "[g]iven that the contract terms, including repayment terms, are not certain, and that the contract may be changed or modified, validation is not appropriate." *Id*.  "It is not possible to make the determinations [of validation] sought where no final contract is presented for validation." *Id*.  Because "the validation statutes do not encompass judicial approval of incomplete contracts," and the "estimate for the repayment amount is over $362,000,000," Judge Simpson concluded that "the absence of the actual final amount and payment schedule render the proposed contract lacking in material terms and incomplete." *Id.*

Westlands attempts to trivialize its failure to provide the public with the four missing exhibits on the grounds the information was either independently ascertainable or appropriately left to Reclamation to calculate.  Westlands 38-42, citing a 60-year old case, *Metropolitan Water Dist. of Southern Cal. v. Marquardt* ("*Marquardt*") (1963) 59 Cal.2d 159, 195-197.  Its claim does not withstand scrutiny.

Exhibits A-D establish key terms of the Converted Contract and are necessary to understand what Westlands was voting to approve.  Their

omission is not simply a failure to execute the contract. Further, the terms of the Converted Contract are expressly subject to unfettered revision, defying all norms of proper contract drafting.

The Converted Contract indicates that Exhibit D establishes Westlands' existing capital obligation, and incorporates that Exhibit by reference. 2AA528. The amount of Westlands' existing capital obligation is an essential contract term, as the WIIN Act authorizes contract conversion only when Westlands has repaid the outstanding capital obligations on the existing water contracts. WIIN Act § 4011(a)(2)(A). But nowhere in the Converted Contract does Westlands disclose how much money it must pay to Reclamation. *E.g.* 2AA543-544.

Instead of finalizing and publishing the amount of money that Westlands will need to pay under the Converted Contract before voting to approve Resolution 119-19, Westlands instead voted to have its District President, General Manager, and General Counsel finalize these amounts –and unspecified other terms – later, without further public disclosure and comment. 3AA738. Westlands' approval of Resolution 119-19 cannot assent to the terms of Exhibit D when they have not even been disclosed.

Similarly, Exhibit B to the Converted Contract is intended to set the "rates and changes applicable to [Westlands] upon execution," subject to annual revision. 2AA544. Exhibit A depicts the applicable service area, and Exhibit C establishes Westlands' water needs assessment methodology under the Converted Contract. 2AA517. Taken with Exhibit D, these Exhibits establish key elements of the Converted Contract that had never been disclosed to the public, and were not finalized at the time Westlands purportedly voted to authorize the Converted Contract on October 15, 2019. Thus, Westlands has asked this Court to overrule and reverse two

38

Superior Court Judges and deem the Converted Contract valid even though its essential price and other material terms – which go to the heart of the contract's impacts on the public – were not presented to the public.

In addition to these missing terms, the Converted Contract may be modified in other significant ways. Reclamation, in response to public comments submitted through January 8, 2020, had not just discretion but a legal duty to "make changes to the contract (if any) as appropriate." 4AA896. Then, Westlands' administrative staff, through its Director, General Manager, and General Counsel, had discretion to disagree with these terms. 3AA738. Only if Reclamation "and Westlands remain in agreement" would Reclamation prepare the contract for execution. 4AA896. But only after the Converted Contract's final terms are disclosed and approved by the public can there be a meeting of the minds regarding the parties' agreement. Absent these terms, the Converted Contract was neither complete, nor subject to validation. Even worse, as Judge Simpson noted, the contract allowed other, unspecified "additional changes and/or modifications." 10AA2863.

Consequently, it was impossible for the public to fill in these expressly omitted terms, and to accurately foretell "*such additional changes and/or modifications as are approved by the President of the District, the General Manager, and its General Counsel*." 10AA2863. As the party seeking validation, Westlands had the burden of showing that the proposed Converted Contract as adopted in Resolution No. 119-19 provided the public with the information *it* needed to understand and approve the contract's material terms. Both Judge Simpson and Judge Tharpe confirmed this fundamental principle of validation jurisprudence, explaining that "the absence of the actual final amount and payment

39

schedule renders the proposed contract lacking in material terms and incomplete."  10AA2863; 20AA5707.

None of the cases Westlands cites, *Marquardt* included, allowed validation of a contract whose terms are subject to completely unrestricted "additional changes and/or modifications."  10AA2863; 20AA5707.  And none posed such a complete abdication of an agency's duty to inform the public of the essential, material terms of a contract imposing such massive financial obligations, posing such grave unstudied environmental issues, and privatizing much of the world's largest public water project.

### 4. WESTLANDS' VALIDATION ACTION FAILED BECAUSE WESTLANDS DID NOT SHOW COMPLIANCE WITH THE BROWN ACT

Westlands' Validation Complaint affirmatively alleged that:

"On October 15, 2019, at a duly noticed and regular meeting of the District's Board of Directors, the Board of Directors adopted the Resolution.  Prior to this meeting and *in accord with the provisions of the Ralph M. Brown Act*, Government Code section 54950 et seq., the District timely posted and distributed a written agenda for this meeting describing the Board of Directors' intent to consider the adoption of the Resolution, and providing interested parties with the opportunity to review and comment upon the proposed Resolution and Converted Contract."

1AA20.  Westlands repeated this claim of compliance with California's "open meeting law" in its Motion for Validation (2AA360) and supporting Memorandum (3AA863-864).

Having alleged Brown Act compliance to secure the validation judgment sought, Westlands was obliged to provide the Superior Court with evidence establishing the truth of these allegations.  It failed to do so.

Rather than carry its burden of proof as required, Westlands presented an incomplete and inconsistent evidentiary picture of the proceedings that had led up to its Board of Directors' attempted approval of Resolution 119-19, leading the Superior Court to reject its claimed compliance with the Brown Act.  The Superior Court found, contrary to Westlands' allegations, that:

"Brown Act issues are raised by Westlands' request for judgment that 'all of the proceedings related to the Westlands' approval of the Converted Contract were in all responses legal and valid. . . .' (Prop. Judgment, para. 4.)  Government Code sections 54954.1 and 54954.2 set forth certain requirements for public meetings and public notice of such meetings.

The Declaration of Ms. Ormone states that the Agenda was posted on the District's Website on October 10, 2019 for the October 15, 2019 meeting.  But the document itself, which states it is a copy, lists October 9, 2019 as the posting date (See AOE [Westlands' Appendix of Exhibits] 11 at the bottom).  She also states that a revised Agenda was posted on October 10, 2019.  But Exhibit 6 states that the revised agenda was posted earlier, on October 8, 2019. (AOE 17.)  Each document states that it is a copy only, and that the original is signed by the secretary,  but the original is not provided for either one.  The conflicts render the evidence of posting unreliable, and fail to prove posting was correctly done.

For meetings occurring after January 1,  2019, Government Code section 54954.2(a)(2) also requires that such agenda be posted 'on the primary Internet Web site homepage . . . through a prominent, direct link . . . .'  The declaration offered says only that the agenda was posted on the website, but not the specific weblink, and provides no copies of the webpage where it was posted.

No agenda packet is provided, so it is not possible to determine if the packet provided the information necessary to support the meeting.  Agenda packets must be available to the public.  Government Code sections 54954.1 and 54957.5(a).  As  the

particular packet is not provided to the Court, the requested finding of compliance with the Brown Act cannot be made."

10AA2864.

Westlands attacks the Superior Court's well-documented findings, but its arguments are mistaken legally and wrong factually. Westlands 31-38. They are legally incorrect because they rely on the erroneous premise that in a validation proceeding, the burden does not fall on the party seeking validation to affirmatively demonstrate compliance with applicable law. They are factually in error because Westlands ignores the Superior Court's detailed findings, summarized above, that demonstrate that Westlands had failed to carry its burden of proof.

As Judge Simpson explained, the Ralph M. Brown Act, Government Code section 54950, *et seq*. protects informed public decisionmaking. In adopting the Brown Act, the Legislature declared:

> The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

Gov. Code § 54950. "[T]he Brown Act is a remedial statute that must be construed liberally so as to accomplish its purpose." *Epstein v. Hollywood Entertainment Dist. II Business Improvement Dist.* ("*Epstein*") (2001) 87 Cal.App.4th 862, 869. Disclosure under the Brown Act must be made "in some detail so the general public can ascertain the nature of such business." *Carlson v. Paradise Unified Sch. Dist.* (1971) 18 Cal.App.3d 196, 200.

Despite Government Code section 54954.2's mandate that the public be notified about the item to be considered – and despite voting to authorize Resolution 119-19 – Westlands did not provide the public with Exhibits A-D of the Converted Contract or with a summary of their contents, as discussed above.  Thus, Westlands' public notice regarding the Converted Contract failed to inform the public about the size of the accelerated payment that Westlands is required to make under the WIIN Act for the converted contract, and other essential features of Westlands' payment obligations.  WIIN Act § 4011(a)(2)(A), (a)(3)(A); 2AA543-544.  By excluding Exhibits A through D from the Converted Contract, failing to disclose their material terms in the Agenda, purporting to approve the Converted Contract without disclosing the terms of these Exhibits, and allowing unspecified and unrestricted future changes to the contract, Westlands precluded the informed public decisionmaking required by the Brown Act.  Gov. Code §§ 54950, 54952.6, 54954.2(a), 54954.2(a)(3); *San Joaquin Raptor Rescue Center v. County of Merced* ("*San Joaquin Raptor*") (2013) 216 Cal.App.4th 1167, 1176-1179; 10AA2863-2864.

Worse, by delegating approval of future modifications to the Converted Contract to Westlands' President, General Manager and General Counsel, Westlands has removed the price terms of the Converted Contract from any public scrutiny.  2AA543-544; 3AA738.  This contravenes the public notice requirements of the Brown Act.  *San Joaquin Raptor* at 1176-1179.

Because no validation cases support Westlands' mistaken premise that it carries no evidentiary burden here, it cites cases (1) that do not involve validation, and (2) where the agency's decision was challenged by another party that had the burden of proving the decision was unlawful.

43

Thus, it relies on *Tiburon Open Space Committee v. County of Marin* (2022) 78 Cal.App.5th 700, 771, a case where plaintiffs' CEQA challenge to a county decision failed because plaintiffs did not carry their burden of proving the county had not provided adequate notice; *City of Sacramento v. State Water Resources Control Board* (1992) 2 Cal.App.4th 960, 976, a case where plaintiffs' CEQA challenge to state agencies' annual rice pesticide plan failed because plaintiffs failed to carry their burden of proving the agencies had violated CEQA; *In re Angelina E*. (2015) 233 Cal.App.4th 583, 588, a case involving a challenge by a mother whose parental rights had been terminated to the authority of a commissioner appointed as referee where the mother failed to carry her burden of proving the absence of that authority; and *Bridges v.  Mt. San Jacinto Community College District* (2017) 14 Cal.App.5th 104, 117-118, a CEQA case challenging a district's decision where plaintiffs failed to carry their burden of proving that the district failed to comply with the Brown Act.  Westlands 32-33, 37.

By contrast, here Westlands filed this proceeding affirmatively seeking judicial validation of its proposed draft Converted Contract, and as the party seeking validation, Westlands has the burden of proving its allegations of compliance with validation law and other applicable laws including the Brown Act.  *Los Alamitos Unified School Dist. v. Howard Contracting, Inc.* (2014) 229 Cal.App.4th 1222, 1227.  The Superior Court correctly determined that Westlands failed to carry its burden of proof because it did not prove its allegations.  10AA2860-2864.

Westlands asserts it satisfied some Brown Act requirements (Westlands 34-36), but forgets that as the appellant, it must address its appeal to the Superior Court's rulings against it.  Not once in its Opening

Brief does Westlands provide this Court with Judge Simpson's detailed findings – quoted above – demonstrating that Westlands failed to show its compliance with the Brown Act.  Westlands never directly addresses Judge Simpson's careful analysis of why the evidence Westlands submitted to establish compliance with applicable laws, including the Brown Act, failed to do so.  *Id*.

In particular, Westlands ignores Judge Simpson's determination that Westlands' evidence of the manner and date of posting of its meeting agenda was in conflict, and therefore "render[ed] the evidence of posting unreliable, and fail[ed] to prove posting was correctly done."  10AA2864. Indeed, as Judge Simpson pointed out, "[n]o agenda packet [wa]s provided, so it is not possible to determine if the packet provided the information necessary to support the [Board] meeting."  *Id*.  Consequently, Westlands failed to show compliance with the Brown Act.  *Id*.

### 5.    SUMMARY

In summary, Westlands has failed to overcome the many sound reasons why Judge Simpson ruled that the incomplete, draft Converted Contract cannot be validated.  First, not only is it unexecuted, but more importantly, it is expressly subject to unrestricted, substantive revision.  It leaves unresolved incomplete staff instructions, lacks payment information, and is missing all four exhibits referenced in the text.  *See, e.g.*, 1AA119 (listing missing exhibits), 121, 130 (absent terms), 146-147 (absent terms); RT6:13-14.  Westlands' staff report referred to a "draft converted contract," which still remained subject to Reclamation's pending review and public comment.  3AA614, 616.

Without waiting for insertion of these missing contract provisions and completion of Reclamation's comment period and contract review, Westlands rushed ahead with this premature Validation Action on October 25, 2019.  At the Superior Court's hearing on Westlands' Validation Motion, Westlands argued the missing exhibits and provisions were immaterial to the contract's validity.  RT6:13-8:6.  The answering parties correctly pointed out that the missing information was material, and that its omission could not be lawfully cured by substituting a post-approval version for the October 2019 contract referenced in the approval Resolution, Complaint, and Summons.  RT11:9-12:26; 11AA3050-3053.  Judge Simpson agreed, and as discussed, properly denied Westlands' Validation Motion on five grounds, most significantly that the Converted Contract "lacks material terms" and therefore "validation is "not appropriate."  10AA2862.

Westlands has shown no error by Judge Simpson.

## B.   THE SUPERIOR COURT CORRECTLY REJECTED WESTLANDS' MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF ITS PREVIOUS MOTION FOR VALIDATION.

Four months later, and more than three months too late, on July 27, 2020, Westlands moved the Superior Court to reconsider Judge Simpson's March 16, 2020 Minute Order rejecting its Motion for Validation, but its motion was doubly improper.  10AA2933-2935.  First, Westlands based its Renewed Motion on a post-approval executed document (10AA2943-11AA3030) materially different from the subject Conversion Contract referenced in its Resolution 119-19, Complaint and Summons (1AA17, 19-20, 115-195, 227-229; 3AA734-738).  Second, as shown below, Westlands

46

failed to satisfy the requirements of the reconsideration statute, C.C.P. section 1008.

Westlands' Opening Brief glosses over its reconsideration motion's fatal defects, claiming that the Superior Court's rejection of that motion was yet another judicial error.  Westlands 43-45.  Westlands' argument fails, as the following discussion demonstrates.

### 1.  CODE OF CIVIL PROCEDURE SECTION 1008 BARRED WESTLANDS' RENEWED MOTION

Although styled a "Renewed Motion" for Validation (10AA2933-2935), Westlands' motion was subject to C.C.P. section 1008's exacting standards, as they apply to any "application for an order which was refused in whole or in part."  *Id.*, subds. (a), (b).  Westlands' Renewed Motion was an "application for an order" validating a proposed contract that Judge Simpson's March 16, 2020 Minute Order had already rejected.  10AA2859-2864, 2933-2935.  It seeks a *different* ruling on exactly the *same matter* raised in Westlands' original Validation Motion:  validation of Westlands' Board Resolution 119-19 and its entry into its Converted Contract.  *Id.* "The requirements for a motion for reconsideration 'apply to any motion that asks the judge to decide the *same matter* previously ruled on.'"  *R & B Auto Center, Inc. v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 373, quoting Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2005) ("Rutter Civil Procedure") ¶ 9:324.1, p. 9(1)-103) (original emphasis).  Because both motions concerned the "same matter" and sought the same relief, Westlands' Renewed Motion was plainly subject to the requirements of section 1008.

In reviewing Westlands' Renewed Motion, the Superior Court properly required strict compliance with section 1008's requirements

because they are jurisdictional.  20AA5706-5707, citing *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 688.  The Legislature wrote "[t]his section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions," and "[n]o application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section."  C.C.P. § 1008, subd. (e).

Consequently, "[t]he court exceeds its jurisdiction if it grants reconsideration of a motion that is not based on "new or different facts, circumstances or law" as section 1008 requires.  *Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1498-1503; *Morite of Cal. v. Superior Court* (1993) 19 Cal.App.4th 485, 490-493.  "No judge or court has jurisdiction to hear a motion to reconsider, or the renewal of a motion previously ruled on, that does not comply with C.C.P. [section] 1008, [unless] on its own motion [the court] finds that a change of law warrants doing so.  C.C.P. section 1008(c), (e)."  California Civil Procedure Before Trial (C.E.B. 4th ed., June 2019) ("CEB Civil Procedure") § 12.136.

Westlands' authorities agree.  Westlands 43 (citing *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 213).

### a.   Westlands' Motion Was Untimely Because It Did Not Seek Reconsideration Within 10 Days.

Section 1008, subdivision (a) directs that "any application for an order" under this section must be filed "within 10 days after service upon the party of written notice of entry of the order."  *Id*.  Westlands was served with written notice of Judge Simpson's Final Order denying Westlands' Validation Motion by electronic transmission on April 10, 2020.  10AA2866-2879.  "The 10-day time limit runs from service of notice of

entry of the order. *Forrest v. State of Calif. Dept. of Corps*. (2007) 150 Cal.App.4th 183, 203. Adding two days because service was electronic per C.C.P. section 1010.6, subd. (a)(4)(B), yields a deadline of April 22, 2020. Westlands' filing of its Motion on July 27, 2020 was plainly untimely. 10AA2933.

> **b**. **The Superior Court Ruled Correctly that Westlands Failed to Show New Facts, Circumstances or Law as of the Operative Date of the Resolution It Seeks to Validate: October 15, 2019**.

The core substantive restriction imposed by section 1008 is that a motion for reconsideration must be "based upon new or different facts, circumstances, or law." C.C.P. § 1008, subd. (a). "The legislative intent was to *restrict* motions for reconsideration to circumstances where a party offers the court some fact or circumstance not previously considered, and some *valid* reason for not offering it earlier." Rutter Civil Procedure ¶ 9:328, p. 9(1)-147) (original emphasis). As explained in *Baldwin v. Home Savings of America* (1997) 59 Cal.App.4th 1192,

> "'Public policy requires that pressure be brought upon litigants to use great care in preparing cases for trial and in ascertaining all the facts. A rule which would permit the reopening of cases previously decided because of error or ignorance during the progress of the trial would in large measure vitiate the effects of the rules of res judicata.'"

*Id*. at 1198, *quoting Blue Mountain Development Co. v. Carville* (1982) 132 Cal.App.3d 1005, 1012-1013.

Contrary to the settled law requiring strict compliance with section 1008, Westlands' Renewed Motion brushed aside the first four reasons why Judge Simpson denied its Validation Motion and claimed it was unaware of the fifth reason – its Brown Act violations – until Judge Simpson raised

those violations "*sua sponte*" in his February 26, 2020 Tentative Ruling, precluding Westlands from briefing them previously.  11AA3276.  Judge Tharpe correctly rejected Westlands' argument, stating:

> "The fact that Westlands and the Bureau entered into a final version of the repayment contract after the hearing on the motion for validation judgment does not affect the issues pointed out in Judge Simpson's order denying the judgment. As Judge Simpson held, the contract considered by the Board in October 2019 was only a proposed, incomplete contract, because it lacked key terms like the final repayment price and the dates on which repayments would be due. (See March 16, 2020 Order, p. 5, § 4.) It was also uncertain and incomplete because the resolution adopted by the Board allowed the President of the Board, its General Manager, and its General Counsel to modify the agreement's terms after it had been approved by the Board. (*Ibid*.) Although the contract was later finalized and executed by the parties, *the issue before the court was whether the Board acted properly when it approved the contract in October 2019*, not whether the contract was later executed by the parties. Thus, the fact that the contract was eventually executed by the parties does not constitute the kind of "new fact or circumstance" that would justify renewal of Judge Simpson's order denying the motion for a validation judgment.
>
> Likewise, the fact that the Board approved a resolution in June 2021 stating that the executed contract conformed to the authority granted by the Board's prior resolution does not affect Judge Simpson's conclusion that the contract considered by the Board in October of 2019 was not a complete contract. Again, Judge Simpson found that the contract considered by the Board in October 2019 was incomplete and uncertain because it lacked key terms like the price of the repayments and when they had to be made, and it was subject to later revision. The Board's subsequent resolution that the final contract was consistent with its earlier resolution does not cure these deficiencies, and does not create the type of new facts or circumstances that would

50

justify renewal or reconsideration of the prior order. *The issue before the court is whether the Board's decision to approve the contract in October of 2019 was valid, not whether it later made subsequent resolutions that attempted to cure earlier deficiencies in the draft contract.*"

20AA5707 (emphasis added).

Far from grappling with Judge Tharpe's correct ruling that motions under section 1008 must show how the court's earlier ruling was erroneous when rendered, Westlands' Opening Brief never even acknowledges this core jurisprudential principle. Westlands 43-45. For this reason alone, its appeal must be rejected. Instead, Westlands retreads the same erroneous arguments it advanced below. *Id.* They fail again, for the same reasons.

To recap, Judge Simpson ruled Westlands' Converted Contract could not be validated under either Water Code § 35855 (10AA2861), or Government Code § 53511 (10AA2861-2862). He further ruled: (3) the repayment contract "does not meet [validation] requirements for provisions unrelated to debt because it is a proposed contract, not an executed contract" (10AA2862-2863); (4) the repayment contract could not be validated because the contract's "absence of the actual final amount and payment schedule render the proposed contract lacking in material terms and incomplete," and the "validation statutes do not encompass judicial approval of incomplete contracts" (10AA2863); and (5) validation was not possible because "the requested finding of compliance with the Brown Act [Gov't Code §§ 54950 et seq.] cannot be made" (10AA2863-2864).

Westlands' Renewed Motion presented no *new* facts, circumstances or grounds as to the first three rulings; at most, it repeated a prior attempt to avoid the plain language of section 35855 as explained in the first ruling (11AA3276), and ignored the next two. Consequently, it forfeited any

51

argument that Judge Simpson's first three rulings should be reconsidered under section 1008, let alone shown error in them.

As for Judge Simpson's crucial fourth ruling – that "The Converted Contract Lacks Material Terms"– Westlands repeated Judge Simpson's stated grounds that the "contract terms, including repayment terms, are not certain, and that the contract may be changed or modified."  11AA3277. But Westlands failed to advance any "new facts, circumstances or law" that would support reconsideration of Judge Simpson's well-reasoned conclusion that an incomplete contract that lacks material terms and can be modified cannot be validated under any theory or validation statute. 10AA2863.  Instead, Westlands argued that this fatal flaw in its Complaint for Validation was cured because Westlands *subsequently* finalized the terms of, and executed, its contract.  11AA3277.  It claimed that "[f]inalization and execution of the Contract, since the Court took the original motion under submission, is a new fact and circumstance warranting this renewed motion."  11AA3277.

But just as Westlands  missed the point of Judge Simpson's correct ruling then, it does so again on appeal.  Westlands 43-45.  An *in rem* validation action must be decided based on the facts *set forth in the validation complaint*, and on the notice of the agency's action *thereby given* the public who, absent their prompt challenge, will be bound by the "forever binding and conclusive" validation judgment.  C.C.P. §  870(a). The public's understanding of the effect of the agency's action is necessarily limited to the facts set forth in the complaint and its attached documentation describing the agency action sought to be validated, referenced in the published summons that secures the Court's jurisdiction and prescribes the public's deadline to answer.  C.C.P. §§ 861, 861.1.

Allowing the belated substitution of a materially different contract –
approved at a different Board meeting subsequent to October 15, 2019 – in
this validation action would circumvent the public's right to know what was
being approved when the summons was issued – and the public was thereby
given a short deadline to decide whether to submit opposition – in October
2019. *Planning and Conservation League v. Department of Water
Resources* (2000) 83 Cal.App.4th 892, 925 ("the procedure prescribed by
the validating statute assures due process notice to all interested persons"
and settles validity "once and for all by a single lawsuit").

Westlands ignores the fact that a validation action is acutely time
sensitive and necessarily limited to the facts and circumstances that are
alleged in the validation complaint *at the moment of its authorization*.
C.C.P. § 864.  That filing triggers the short deadline fixed in the summons
for the public to respond.  C.C.P. § 862.  If that filing fails to apprise the
public of the material, final terms of the agency's action for which
validation is sought, then the fundamental (indeed, entire) purpose of the
validation process – to secure a "single, dispositive" ruling forever
identifying and resolving all possible objections – cannot possibly be
achieved.  *Embarcadero Municipal Improvement District v. County of
Santa Barbara* (2001) 88 Cal.App.4th 835, 842.

Consequently, the fact that Westlands took subsequent action in an
attempt to "cure" the original Validation Complaint's fatal lack of material
and certain terms did nothing to remedy the public's lack of *timely* notice as
to those terms.  Therefore it is irrelevant to the sound legal and policy
reasons that animated Judge Simpson's Minute Order.  Accordingly,
Westlands' Renewed Motion provided no basis under section 1008 for

reconsideration of the fourth ground for Judge Simpson's Order, as Judge Tharpe correctly ruled.  20AA5707-5708.

As for Judge Simpson's fifth ruling – that Westlands failed to show compliance with the Brown Act – Westlands claimed below that it had no opportunity to brief its compliance with that Act because no party raised that issue.  It stated:  "[t]he issues of Westlands' Brown Act compliance relating to posting of its notice and agenda, website information, and the availability of the agenda packet were first raised, *sua sponte*, in the Court's tentative ruling, the day before the hearing on Westlands' motion."  11AA32776.  Not so.

Contrary to Westlands' representation, Westlands affirmatively asserted Brown Act compliance in its own Complaint (1AA20, ¶ 18), acknowledging that it played an important role in the proceedings "leading up to" the approval sought to be validated (1AA22, ¶ 4).  Indeed, Westlands' affirmative allegations of Brown Act compliance prompted NCRA's rebuttal thereto in its Answer:

> WWD's approval of Resolution No. 119-19 and the Converted Contract violates the Ralph M. Brown Act, Government Code section 54950, *et seq.*, in that, *inter alia*, *WWD failed to provide adequate public notice of this Resolution and the Converted Contract* before purporting to approve the same because *WWD failed to make publicly available the Exhibits to this Resolution and the Converted Contract whose contents are essential to public understanding* of the substance and impact of said Resolution and Converted Contract.

2AA317, Second Affirmative Defense (emphasis added).  NCRA elaborated on its concerns in its Opposition to Westlands' Motion for Validation filed January 14, 2020.  9AA2436-2437 (noting Westlands

"precluded the informed public decisionmaking required under the Brown Act," and citing *Epstein,* 87 Cal.App.4th at 869 (Brown Act construed "liberally").  Far from being blind-sided by Judge Simpson, Westlands had in its Reply *already* denied NCRA's Brown Act concerns.  10AA2757-2759.

Judge Simpson was not persuaded by Westlands' Reply, and ruled it had failed to show compliance with the Brown Act.  Westlands again failed to persuade Judge Simpson at the February 27, 2020 hearing.  20AA5708.

### c.   Westlands Failed to Show Reasonable Diligence.

Westlands attacks Judge Simpson's finding that it failed to demonstrate reasonable diligence to excuse its failure to include a final and complete contract in its Validation Motion, but undermines its argument by repeating its mistaken claim that its Brown Act violations were "raised *sua sponte* by Judge Simpson."  Westlands 44-45.  As shown, Westlands was not blind-sided by Judge Simpson.

Nor is Westlands correct in implying that section 1008 does not require such a showing.  *Id.*  This requirement was reinforced in 1992 when the Legislature "tightened, not loosened, the requirements of the statute." *Baldwin, supra*, 59 Cal.App.4th 1192, 1199, quoting *Garcia*, 58 Cal.App.4th at 688.  "[T]he legislative history of the 1992 amendments to section 1008 shows that the measure was 'designed "to reduce the number of motions to reconsider and renewals of previous motions heard by judges in this state."'"  *Id., quoting Garcia* at 688.  "Without a diligence requirement the number of times a court could be required to reconsider its prior orders would be limited only by the ability of counsel who belatedly conjure a legal theory different from those previously rejected, which is not

much of a limitation." *Baldwin*, 59 Cal.App.4th at 1199.  Applying this rule, *Garcia* reversed an order granting reconsideration where the order was based on knowledge that the plaintiff had from the outset of the litigation. 58 Cal.App.4th at 689-690.

*Garcia* is on all fours with this case.  From the outset of this proceeding, Westlands knew its omission from its Board Resolution of critical, material exhibits, and conversely, its attempted delegation to staff of unfettered discretion to modify the resolution's terms, rendered that resolution and its proposed contract fatally uncertain.  Judge Simpson properly, and unavoidably, deemed this omission and delegation to be a complete bar to validation.  As his Final Order explained, "the converted contract lacks material terms."  Exhibit 1 at p. 5, ¶ 4 (capitalization altered). "Given that the contract terms, including repayment terms, are not certain, and that the contract may be changed or modified, validation is not appropriate.  It is not possible to make the [validation] determinations sought where no final contract is presented for validation."  *Id*.

Judge Tharpe agreed with NCRA on this critical point, ruling:

> Furthermore, while Westlands claims that it has now provided additional evidence to show it complied with the Brown Act's notice requirements before the October 2019 meeting, *it has not shown that it was diligent in presenting this evidence*. A party moving for reconsideration or renewal must not only show that new facts exist, but it must also explain why it could not have presented those facts earlier. (*Garcia v. Hejmadi, supra*, 58 Cal.App.4th at pp. 688-689.) Here, the "new facts" that Westlands submits in relation to its Brown Act compliance were all events that occurred in October 2019, long before the hearing on the first motion for validation. Westlands fails to explain why it could not have presented these facts at the time of the original hearing, and it

appears that it could have done so, since the evidence was apparently in its possession at that time.

   While Westlands seems to argue that it could not have provided the evidence sooner because Judge Simpson raised the Brown Act issues *sua sponte* in his tentative ruling the day before the hearing, this argument is somewhat misleading. *Westlands itself alleged in its Complaint and in its original moving papers that it had complied with the Brown Act's requirements prior to the Board meeting, so the issue had been raised by Westlands itself before the hearing.* (Complaint, ¶ 18, Memo of Points and Authorities in Support of Validation Judgment, pp. 12-13.) Also, defendants raised affirmative defenses based on the Brown Act, and argued in their oppositions that Westlands had failed to give proper notice under the Brown Act. (See e.g. North Coast Rivers Alliances' Answer, Second Affirmative Defense, and its Opposition, pp. 14-15.) Thus, Westlands cannot claim that it was not on notice that the issue of Brown Act compliance might be raised, and in fact it had affirmatively requested that the court rule that it complied with the Brown Act. Judge Simpson therefore properly addressed the issue of Brown Act compliance in his ruling.

   Consequently, Westlands has failed to satisfy the diligence requirement of Section 1008(b) with regard to the new evidence it has attempted to submit with regard to its compliance with the Brown Act. Since Westlands has failed to point to any new facts, circumstances, or law that would justify renewal of its motion for validation judgment, the court intends to deny the motion for failure to comply with the requirements of Section 1008(b).

20AA5745-5746 (emphasis added).

   Judge Tharpe correctly ruled that Westlands presented no basis for reconsideration of Judge Simpson's denial of validation. *Id.*

**2.   THE VALIDATION SUMMONS AND RECORD CANNOT SUPPORT VALIDATION OF SUBSEQUENT ACTION**

Even if Judge Simpson had not already provided such clear grounds for rejecting the Validation Motion – which of course he did – Westlands' later attempt to substitute its February 2020 executed contract for the October 2019 version actually approved in Resolution 119-19 would create an additional barrier preventing validation.  Westlands 18, citing 21 AA 3543, 13 AA 3831 - 14 AA 3918).  It would undermine reliance on the previously published validation Summons, which provided the basis for the Superior Court's jurisdiction.  C.C.P. §§ 861, 861.1.  The Summons refers only to the October 2019 Contract authorized on October 15, 2019 and referenced in Resolution 119-19; the Superior Court has already ruled that the February 2020 contract is materially different.  Relying on the Summons for the *October* contract to validate the subsequent *February* contract would deny the "due process notice to all interested persons" required under validation law.  *Planning and Conservation League*, 83 Cal.App.4th at 925.

Westlands' appeal, like its "Renewed Motion," impermissibly relies on post-approval documents never considered by its Board nor disclosed to the public in Westlands' October 15, 2019 approval Resolution.  *See, e.g.*, 10AA2943-11AA3030; 11AA3071.

**C.   IN ADDITION TO THE SUPERIOR COURT'S GROUNDS FOR DENIAL, WESTLANDS' CONVERTED CONTRACT CANNOT BE VALIDATED FOR OTHER INDEPENDENT REASONS**

Westlands also challenges the other grounds for denying validation that NCRA advanced below.  All its arguments fail.

58

### 1. STATE WATER BOARD APPROVAL HAS NOT BEEN GRANTED

Westlands asserts that its Converted Contract requires no approval from the State Water Resources Control Board ("Water Board"). Westlands 49-50. Not so. Appropriative Water Right Application 15764 was assigned to Reclamation on October 17, 1960. 2AA520. Application 15764 sought a permit to appropriate water for the CVP from a reach of the San Joaquin River known as the Old River. *Id*. The Water Board, in Decision D-1020, approved application 15764, with various conditions. The Converted Contract conflicts with those conditions.

One justification for entering into the Converted Contract is that, "once the remaining capital obligation is fully satisfied, lands within the contractor's service area are no longer subject to acreage limitation and full cost pricing of water." 3AA614. Thus, it appears that Westlands intends to shift the conditions of water use under the Converted Contract. Yet neither Reclamation nor Westlands has received approval from the Water Board reassigning this permit to Westlands, nor has either party revealed that it must seek approval from the Water Board regarding changes to the *place and type of use allowed* by the Converted Contract, as required by the Water Code. Water Code §§ 1700-1707 (permanent changes), 1725-1736 (temporary changes). Nor has either considered – let alone addressed – the water quality restrictions the Water Board may impose on these changes in the place and type of use. *Id*.

59

## 2.   WESTLANDS FAILED TO COMPLY WITH THE DELTA REFORM ACT

Westlands asserts its compliance with the Sacramento-San Joaquin Delta Reform Act of 2009 ("Delta Reform Act"), Water Code section 85000 *et seq*.  Westlands 50-51.  Not so.  Westlands' Converted Contract constitutes a "covered action" within the meaning of Water Code section 85057.5.  Thus, Westlands was required to adopt a written certification of the Converted Contract's consistency with the Delta Stewardship Council's Delta Plan, but Westlands has failed to do so.  Water Code § 85225.

The Delta Reform Act establishes co-equal goals for managing the Delta.  It states that "'[c]oequal goals' means the two goals of providing a more reliable water supply for California and protecting, restoring, and enhancing the Delta ecosystem."  Water Code § 85054.  The Legislature determined that

> The policy of the State of California is to *reduce reliance on the Delta* in meeting California's future water supply needs through a statewide strategy of investing in improved regional supplies, conservation, and water use efficiency.  Each region that depends on water from the Delta watershed shall improve its regional self-reliance for water through investment in water use efficiency, water recycling, advanced water technologies, local and regional water supply projects, and improved regional coordination of local and regional water supply efforts.

Water Code § 85021 (emphasis added).

Westlands claims the Converted Contract is not subject to the Delta Reform Act for two reasons.  Westlands 50-51.  First, it argues that "water made available to Westlands under the Converted Contract may only be used in its service area, in Fresno and Kings counties," and not "within the

60

boundaries of the Delta and Suisun Marsh."  *Id.*, *citing* Water Code §
85057.5(a)(1).  But the Delta Reform Act's protections are triggered by
where the  *impacts* of Westlands' actions occur.  Westlands' Converted
Contract allows diversion of water *from* the Delta, in quantities – up to 1.2
million acre feet annually – that conflict with the Act's policies of
"protecting, restoring and enhancing the Delta ecosystem," and of *reducing*
– rather than increasing – reliance upon the Delta in meeting water supply
needs.

Second, Westlands argues its diversions are exempted by section
85057.5(b)(2), which excludes "[r]outine maintenance and operation of the
. . . Central Valley Project" from the definition of "covered action."
Westlands 51.  But the permanent privatization of much of the CVP's
deliveries is neither "routine" nor "maintenance."  It substantially increases
reliance on diversions from the Delta, and thus poses a "reasonable
possibility" it will "have a significant impact on achievement of one or both
of the [Act's] coequal goals . . . ."  Water Code § 85057.5(a)(4); 23 C.C.R.
§ 5001(dd)(4).

Additionally, after repayment obligations are met, the Converted
Contract removes the acreage limitations and full-cost pricing requirements
that would otherwise apply.   3AA613; *U.S. v. Westlands Water District*,
134 F.Supp.2d at 1117 -1119.  This change allows individual landowners
within the service area to apply CVP water to more land at lower cost, thus
enabling these users to increase their dependence upon CVP deliveries, and
otherwise inducing additional demand for water.  Therefore the Converted
Contract increases the likelihood that landowners will *increase* – not reduce
– reliance upon the Delta for irrigation water, and collectively hinder

attainment of the goals of protecting, restoring and enhancing the Delta ecosystem.  Accordingly, the Converted Contract is a "covered action."

Westlands' failure to prepare a "written certification of consistency with detailed findings as to whether the covered action is consistent with the Delta Plan" as required by section 85225 renders its approval of Resolution 119-19 invalid.

### 3.  WESTLANDS VIOLATED THE PUBLIC TRUST DOCTRINE

Westlands argues its diversions from the Delta are exempt from the Public Trust Doctrine.  Westlands 46-49.  Not so.  The doctrine mandates that "before state . . . agencies approve" actions that may harm public trust resources, they consider the potential impact "upon interests protected by the public trust, and attempt, so far as feasible, to avoid or minimize any harm to those interests."  *National Audubon Society v. Superior Court* (1983) 33 Cal.3d 419, 426.  In approving Resolution 119-19, Westlands had an "affirmative dut[y] to take the trust into account and protect public trust uses whenever feasible."  *San Francisco Baykeeper, Inc. v. State Lands Com.* (2018) 29 Cal.App.5th 562, 571.  Westlands failed to do so.

Westlands raises four arguments.  All fail.  First it argues it has no duty under the doctrine because only the State Water Board does.  Wrong.  All "agencies" whose approvals impact public trust resources must comply. *National Audubon*, 33 Cal.3d at 426.

Second and third, Westlands contends the Converted Contract is merely a financial document with no impacts on how Reclamation operates the CVP.  Westlands 47-48.  Wrong again.  As noted, it increases reliance on Delta diversions, and relaxes acreage and pricing restrictions on

irrigation.  Therefore it affects the quantity of freshwater diverted from the Delta, impacting its trust resources.

Last, Westlands asserts the Water Board already fully protects the Delta's trust resources.  Wrong again.  The Legislature adopted the Delta Reform Act, and declared the Public Trust Doctrine the "foundation" for Delta management, because the State Water Board was not adequately protecting the Delta.  Water Code § 85023.

### 4.   WESTLANDS VIOLATED THE CALIFORNIA ENVIRONMENTAL QUALITY ACT

Westlands contends it fulfilled its obligations under CEQA because it filed notices of exemption with Fresno and Kings counties, and the Governor's Office, and the Converted Contract has no environmental impacts..  Westlands 52-54.  Wrong again.  Because the Converted Contract's terms were not disclosed when it filed its notices and are subject to modification, they were materially defective and premature, and did not trigger any limitations periods.  *County of Amador v. El Dorado County Water Agency* (1999) 76 Cal.App.4th 931, 962-965.

Further, because the Converted Contract increases reliance on Delta diversions and relaxes acreage and full-cost pricing limitations on deliveries as noted, it poses environmental impacts.  Westlands' reliance upon *North Coast Rivers Alliance v. Westlands Water District* (2014) 227 Cal.App.4th 832 overlooks this important distinction.  Westlands 54.  The environmental impacts of this change must be studied in a CEQA document.  Because it has not done so,  Westlands has violated CEQA.

**5.  THE CONVERTED CONTRACT REQUIRES ADDITIONAL COMPLIANCE WITH FEDERAL LAW, AND THUS IS NOT RIPE FOR VALIDATION**

As noted, Westlands' attempt to validate the Converted Contract before Reclamation' review was complete improperly placed the proverbial cart before the horse.  Until Reclamation responded to public comment on the contract and brought any proposed changes back to Westlands for concurrence, the Converted Contract was subject to material alteration and thus too uncertain to be validated.  Moreover, Reclamation's authority to enter into the contract is itself subject to ongoing federal court reviews, including *North Coast Rivers Alliance v. United States Department of the Interior,* Civ. No. 16-cv-307-DAD-SKO (E.D. Cal.), in which violations of both NEPA and Reclamation Law are alleged.

Westlands" Opening Brief likewise ignores its duty to comply with federal law, including the Clean Water Act, as water delivered under the Converted Contract will likely discharge pollutants into the San Luis Drain without the discharge permit that Act requires.  *Pacific Coast Federation of Fishermen's Assns. v. Glaser*, 945 F.3d 1076 (9th Cir. 2019); Water Code § 13370 *et seq.* (requiring compliance with the NPDES permit program). This discharge may be exacerbated by the Converted Contract's removal of the acreage limitations and full-cost pricing requirements currently applicable.  Westlands should have obtained this required NPDES permit before approving Resolution 119-19.

## V.   CONCLUSION

For these reasons, Westlands' appeal is without merit.  The Converted Contract is invalid because its terms are incomplete and

64

uncertain, its approval was premature, and its authorization was contrary to applicable law.

Dated:  November 28, 2022                 Respectfully submitted,

                                    _/s/  Stephan C. Volker_
                                    STEPHAN C. VOLKER
                                    Attorneys for Defendants and
                                    Respondents NORTH COAST RIVERS
                                    ALLIANCE, et al.

**CERTIFICATE OF COMPLIANCE**

DEFENDANTS AND RESPONDENTS NORTH COAST RIVERS

ALLIANCE, ET AL.'S RESPONDENTS' BRIEF, pursuant to Rule 8.74(b)

and Rule 8.204(c)(1) of the California Rules of Court, is in 13-point

proportional type and contains 13,981 words, as counted by WordPerfect

X7, the word processing software used to prepare this brief.

Dated:  November 28, 2022

<div style="text-align: center; margin-left: 40%;">

*s/   STEPHAN C. VOLKER*

STEPHAN C. VOLKER
Attorney for Defendants and Respondents
NORTH COAST RIVERS ALLIANCE, et al.

</div>

**PROOF OF SERVICE**

I am a citizen of the United States of America; I am over the age of 18 years and not a party to the within entitled action; my business address is 1633 University Avenue, Berkeley, CA 94703.  On November 28, 2022, I served a true copy of the following document entitled:

**DEFENDANTS AND RESPONDENTS NORTH COAST
RIVERS ALLIANCE, ET AL.'S RESPONDENTS' BRIEF**

in the above-captioned matter on each of the persons listed below via:

(1) the TrueFiling e-service process on the Fifth District Court of Appeal website as for:

**Attorneys for Plaintiff and Appellant Westlands Water District**
Daniel J. O'Hanlon
dohanlon@kmtg.com
William T. Chisum
wchisum@kmtg.com
Carissa M. Beecham
cbeecham@kmtg.com
Terri Whitman
twhitman@kmtg.com
Sherry Ramirez
sramirez@kmtg.com
Debbie Clark
dclark@kmtg.com
KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
1331 Garden Highway, 2nd Floor
Sacramento, CA 95833

**Attorneys for Plaintiff and Appellant Westlands Water District**
Douglas S. Brown
dbrown@stradlinglaw.com
Allison E. Burns
Aburns@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660

Jon D. Rubin, General Counsel
jrubin@wwd.ca.gov
WESTLANDS WATER DISTRICT
P.O. Box 6056
Fresno, CA 93703

**Attorneys for Defendant and Respondent Center for Biological Diversity**
John Buse
jbuse@biologicaldiversity.org
Arunah Prabhala
aprabhala@biologicaldiversity.org
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612

**Attorneys for Defendants and Respondents Central Delta Water Agency and South Delta Water Agency**
S. Dean Ruiz
dean@mohanlaw.net
MOHAN, HARRIS, RUIZ, & RUBINO, LLP
3439 Brookside Road, Suite 208
Stockton, CA 95219

**Attorneys for Defendants South Delta Water Agency**
John H. Herrick
jherrlaw@aol.com
LAW OFFICE OF JOHN H. HERRICK
1806 W. Kettleman Lane, Suite L
Lodi, CA 95242

**Attorneys for Defendants and Respondents California Water Impact Network, AquAlliance, California Indian Water Commission, and Planning and Conservation League**
Adam Keats
adam@keatslaw.org
LAW OFFICE OF ADAM KEATS
303 Sacramento Street, Second Floor
San Francisco, CA 94111

**Attorneys for Defendants and Respondents Central Delta Water Agency and South Delta Water Agency**
Dante John Nomellini
ngmplcs@pacbell.net
Dante John Nomellini, Jr.
dantejr@pacbell.net
NOMELLINI, GRILLI & McDANIEL
235 East Weber Avenue
Stockton, CA 95202

**Attorneys for Defendants and Respondents County of San Joaquin and County of Trinity**
Roger B. Moore
rbm@landwater.com
LAW OFFICE OF ROGER B. MOORE
337 17th Street, Suite 211
Oakland, CA 94612

| | |
|---|---|
| **Attorneys for Defendants and Respondents County of San Joaquin and County of Trinity** | **Attorneys for Defendant and Respondent County of San Joaquin** |
| Thomas H. Keeling | Kimberly D. Johnson |
| tkeeling@freemanfirm.com | kijohnson@sjgov.org |
| FREEMAN FIRM | Kirin Virk |
| 1818 Grand Canal Boulevard, Suite 4 | kvirk@sjgov.org |
| Stockton, CA 95207 | Office of the County Counsel |
| | COUNTY OF SAN JOAQUIN |
| | 44 N. San Joaquin Street, Suite 679 |
| | Stockton, CA 95202 |

| | |
|---|---|
| **Attorneys for Defendant and Respondent County of Trinity** | California Supreme Court (via TrueFiling) |
| Margaret E. Long | |
| margaret@plelawfirm.com | |
| PRENTICE, LONG AND EPPERSON, PC | |
| 2240 Court Street | |
| Redding, CA 96001-2528 | |

and (2) by arranging for a true copy of said document to be placed in a prepaid envelope for collection and deposit in the United States mail at Berkeley, California addressed to:

Hon. D. Tyler Tharpe, Dept. 501
Fresno County Superior Court
B. F. Sisk Courthouse
1130 O Street
Fresno, CA 93721-2220

      I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 28, 2022 at Berkeley, California.

            *s/  Alexis E. Krieg*
            Alexis E. Krieg