**COURT OF APPEAL - STATE OF CALIFORNIA**
**FIFTH APPELLATE DISTRICT**

Appeal No. F083632 (Consolidated with Case No. F084202)

WESTLANDS WATER DISTRICT, a California Water District,

> Plaintiff and Appellant,

v.

ALL PERSONS INTERESTED IN THE MATTER OF THE CONTRACT BETWEEN THE UNITED STATES AND WESTLANDS WATER DISTRICT PROVIDING FOR PROJECT WATER SERVICE, SAN LUIS UNIT AND DELTA DIVISION AND FACILITIES REPAYMENT,

> Defendants and Respondents.

Appeal from Superior Court of the State of California for the County of Fresno, The Honorable Alan Simpson and The Honorable D. Tyler Tharpe; Superior Court Case No. 19CECG03887

**RESPONDENTS COUNTY OF SAN JOAQUIN, COUNTY OF TRINITY, CENTRAL DELTA WATER AGENCY, AND SOUTH DELTA WATER AGENCY'S BRIEF [CORRECTED]**

Thomas H. Keeling (SBN 114979)
FREEMAN FIRM
A Professional Law Corporation
1818 Grand Canal Blvd., Suite 4
Stockton, California 95207
Telephone: (209) 474-1818
Email: tkeeling@freemanfirm.com
*Attorney for County of San Joaquin and County of Trinity*

Roger B. Moore (SBN 159992)
Law Office of Roger B. Moore
337 17th Street, Suite 211
Oakland, California 94612
Telephone: (510) 548-1401
Email: rbm@landwater.com
*Attorney for County of San Joaquin and County of Trinity*

Kimberly D. Johnson (SBN 191536)
Kirnpreet Kaur (SBN 221369)
Office of the County Counsel
County of San Joaquin
44 N San Joaquin Street, Suite 679
Stockton, California 95202
Telephone: (209) 468-2980
Email: kvirk@sjgov.org
*Attorney for County of San Joaquin*

Margaret E. Long (SBN 227176)
Prentice, Long and Epperson, PC
2240 Court Street
Redding, CA  96001-2528
Telephone: (530) 691-0800
Email: margaret@plelawfirm.com
*Attorney for County of Trinity*

1

S. Dean Ruiz (SBN 213515)
MOHAN HARRIS RUIZ, LLP
3439 Brookside Road, Suite 208
Stockton, California  95219
Telephone: (209) 888-6039
 Email: dean@mohanlaw.net

*Attorney for Central Delta Water*
*Agency and South Delta Water Agency*


### Certificate of Interested Entities or Persons
### (Cal. Rules of Court, rule 8.208)

There are no interested entities and/or persons to list in this certificate (Cal.

Rules of Court, rule 8.208(e)(3)).

Date: November 28, 2022                    FREEMAN FIRM


Thomas H. Keeling

# Table of Contents

Certificate of Interested Entities or Persons .................................................. 2

Table of Contents ................................................................................. 3

Table of Authorities .............................................................................. 4

I.     INTRODUCTION ............................................................................ 7

II.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND ......... 10

III.   STANDARD OF REVIEW ................................................................ 21

IV.    ARGUMENT ................................................................................ 22

   A.     Westlands Mischaracterizes the Scope of Its Validation Action and the Objectives and Requirements of the Validation Statute. .............................. 22

   B.   The Trial Court Correctly Ruled that Westlands' Proposed Converted Contract Was Materially Deficient and Incapable of Validation. ............................... 28

     1.   Westlands' Operative Proposed Converted Contract Was Materially Deficient and Could Not Be Validated. ................................................ 28

     2.   The Proposed Converted Contract Could Not Be Validated Under Water Code section 35855 and Code of Civil Procedure section 864 ..................... 35

     3.   Westlands' Operative Resolution Also Violated the Brown Act. ............. 37

     4.   Westlands Could Not Circumvent Material Deficiencies By Resorting to Post-Authorization Actions. ............................................................ 39

    C.   Westlands' Effort to Evade the Counties' Other Defenses, on Which the Trial Court Could Never Rule, Is Without Merit ....................................41

    1.  Westlands Disingenuously Portrays Further Defenses as Barred, Without Disclosing Adverse Rulings on Other Contested Contracts .......................42

     2.   Westlands' Summons Was Materially Inaccurate and Failed to Notify Foreseeably Interested Parties. ....................................................... 42

     3.   Deficiencies in the Evidentiary Record Prevent a Determination   of Validity. .................................................................................. 45

     4.   Other Meritorious Defenses Remain Unadjudicated ........................... 46

V.     CONCLUSION ............................................................................. 47

CERTIFICATE OF WORD COUNT ............................................................ 49

PROOF OF SERVICE ........................................................................... 50

PROOF OF SERVICE ........................................................................... 52

## Table of Authorities

**Cases**

*Carson Mobilehome Park Owners' Ass'n v. City of Carson* (1983)
    35 Cal.3d 184 ............................................................................ 36
*Central Delta Water Agency v. Department of Water Resources* (2021)
    69 Cal.App.5th 170 .................................................................... 36
*City of Escondido v. Pacific Harmony Grove Development, LLC* (2021)
    68 Cal.App.5th 213 .................................................................... 22
*City of Ontario v. Superior Court* (1970)
    2 Cal.3d 335................................................................................ 46
*Committee for  Responsible Planning v. City of Indian Wells* (1990)
    225 Cal.App.3d 191 ................................................................... 23
*County of Los Angeles v. Nesvig* (1965)
    231 Cal.App.2d 603 ................................................................... 36
*Eiskamp v. Pajaro Valley Water Management Agency* (2012)
    203 Cal.App.4th 97 .................................................................... 41
*Embarcadero Municipal Improvement District v. County of Santa  Barbara* (2001)
    88 Cal.App.4th 781 .................................................................... 22
*Epstein v. Hollywood Entertainment Dist. II Business Improvement Dist.* (2001)
    87 Cal.App.4th 862 .................................................................... 38
*Friedland v. City of Long Beach* (1998)
    62 Cal.App.4th 835 ..........................................................22, 34, 46
*Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017)
    3 Cal.5th 1118 ............................................................................ 36
*Gikas v. Zolin* (1993)
    6 Cal.4th 841............................................................................... 35
*Hollywood Park Land Co. LLC v. Golden State Transportation Financing Corp.*
    (2009)
    178 Cal.App.4th 924.................................................................. 33
*In Re Angelina E* (2015)
    233 Cal.App.3d 583 ................................................................... 27
*Jessup Farms v. Baldwin* (1983)
    33 Cal.3d 639 ............................................................................ 21
*Martinez v. Brownco Construction Co.* (2013)
    56 Cal.4th 1014.......................................................................... 21
*McLeod v. Vista Unified School Dist.* (2008)
    158 Cal.App.4th 1156 ................................................................ 34
*Meaney v. Sacramento Housing & Redevelopment Agency* (1993)
    13 Cal.App.4th 566 .................................................................... 26

*Metropolitan Water Dist. Of Southern Cal. v. Marquardt* (1963)
    59 Cal.2d 159 ……………………………………………………………… 36
*Pacific Coast Federation of Fishermen's Associations v. United States Department of Interior* (9th Cir. 2016)
    655 Fed. Appx. 595………………………………………………………… 25
*Planning and Conservation League v. Department of Water Resources* (2000) 83
    Cal.App.4th 892………………………………………………………39, 42, 43
*Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007)
    149 Cal.App.4th 1460 ……………………………………………………… 26
*Sacramento Chamber of Commerce v. Stephens* (1931)
    212 Cal. 607………………………………………………………………… 36
*San Diego County Water Authority v. Metropolitan Water District of Southern California* (2017)
    12 Cal.App.5th 1124…………………………………………………………22, 33
*Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016)
    1 Cal.App.4th 1084 …………………………………………………………14, 28
*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004)
    121 Cal.App.4th 452………………………………………………………… 21
*Smith v. Mt. Diablo Unified School District* (1976)
    56 Cal.App.3d 412 ………………………………………………………… 36
*Taylor v. Elliott Turbomachinery Co., Inc.* (2009)
    171 Cal.App.4th 564…………………………………………………………22, 43
*Westlands Water Dist. v. U.S. Dept. of Interior*
    376 F.3d 853, 862 (9th Cir. 2004) ………………………………………… 9, 44
*Winograd v. American Broadcasting Co.* (1998)
    68 Cal.App.4th 624 ………………………………………………………… 21

## Statutes

California Code Civ. Proc. § 1008 (b)………………………………………… 18
California Code Civ. Proc. § 860……………………………………………… 43
California Code Civ. Proc. § 861………………………………………28, 41, 43
California Code Civ. Proc. § 861.1 …………………………………… 8, 41, 44
California Code Civ. Proc. § 862………………………………… 8, 28, 34, 42
California Code Civ. Proc. § 864………………………………………30, 34, 42
California Code Civ. Proc. § 870………………………………………… 26, 43
California Code Civ. Proc. § 870(a) ……………………………………26, 34, 42
California Code of Civ. Procedure § 1008(b) …………………………………38, 39
California Code of Civil Procedure § 860, et seq.……………………………… 35
California Gov. Code § 54950, et seq. ………………………………………… 46

California Gov. Code § 54960.1 ........................................................38, 39
California Gov. Code, § 54950, *et seq*. ....................................................... 9
Wat. Code § 35406(b) ........................................................................ 36
Wat. Code § 35851........................................................................... 23
Wat. Code § 35855........................................................................... 34
Wat. Code § 35876........................................................................... 23
Wat. Code § 35877........................................................................... 23
Wat. Code § 35878........................................................................... 23

**Rules**

Cal. Rule of Ct., Rule 8.204 (c)(l) and (c)(3) ............................................ 48

**Treatises**

9 Witkin, *California Procedure* (5th ed. March 2019 Update) ......................... 37

# I.    INTRODUCTION

This Respondents' Brief is jointly submitted by respondents County of San Joaquin, County of Trinity, the Central Delta Water Agency, and the South Delta Water Agency ("Counties," "CDWA/SDWA," and collectively "Public Agencies"). In this direct validation action brought under Code of Civil Procedure section 860, et seq. ("validation statute), Plaintiff Westlands Water District ("Westlands") repeatedly attempted and failed to prevail on the merits of its validation complaint, which sought to validate an extraordinarily broad resolution of its Board of Directors ("Resolution," Appellants' Appendix, Volume 1 [1 AA] 0025-00032) and a materially incomplete contract instrument, the "Converted Contract," which the Resolution purported to approve ("Contract," 1 AA 0033-0086). Westlands also lost other procedural motions and an interlocutory appeal in this Court, which confirmed the timeliness of several answers opposing validation.[1]

Westlands, the largest Central Valley Project (CVP) water contractor, seeks through its validation action to place this Court's imprimatur on its controversial attempt to convert its Water Service Contract with the United States Bureau of Reclamation (Bureau), long subject to two-year interim renewal periods (most recently, 2020-2022), into a permanent Repayment Contract. Beyond applying in

---

[1] The Counties' answer was among those vindicated in this Court's March 9, 2021, ruling, which confirmed the timeliness of three of the four answers opposing validation over Westlands' objection (Cases F081174, F081181, and F081182). See also Westlands' Appellants' Opening Brief [AOB], p. 20, fn.5 (acknowledging Westlands' loss in its interlocutory appeals). CDWA/SDWA filed the fourth answer opposing validation, whose timeliness was never challenged.

perpetuity rather than two-year terms, the Converted Contract would dispense with existing acreage limitations, among other substantial changes.

The Counties and CDWA/SDWA, as well as their constituents and resources, would be among those most directly affected by Westlands' efforts to validate permanent conversion of its massive main CVP contract based on the incomplete and uncertain draft document presented to this Court for validation. The "contract" in Westlands' operative resolution, complaint, and summons is a materially deficient working draft, authorized and sought for validation without even awaiting the end of a federal comment period and other actions needed to resolve pending uncertainties. Nonetheless, the Complaint seeks to foreclose future challenges as to every provision of the Contract and all proceedings leading up to its approval.

The Counties were among four groups of interested party defendants opposed to validation that electronically submitted and served timely answers to Westlands' Complaint by the December 16, 2019, due date listed in Westlands' published summons. (See Code Civ. Proc., §§ 861.1, 862.) The Counties' Response and Answer, which disputed Westlands' case-in-chief and raised eight affirmative defenses, also detailed extensive reasons why Westlands' Converted Contract presented for validation was materially incomplete and unlawful, including but not limited to: uncertainties in contract completion, review, approval, and financing; an uncertain baseline for the Converted Contract; and unresolved drainage and water quality issues. (2 AA 0322-0344.) CDWA/SDWA raised similar concerns and

8

further defenses (2 AA 0296-0311), as did environmental and tribal organizations opposed to validation (2 AA 0312-0321, 0345-0358.)

Westlands' broad resolution and incomplete proposed contract sought for validation therefore raised major concerns for San Joaquin County, where two-thirds of the legal Delta is located, for CDWA/SDWA, also based in the Delta region, and for Trinity County, home to the Trinity River, a critical watershed of origin for the Central Valley Project. (2 AA 2485-2496; see also *Westlands Water Dist. v. U.S. Dept. of Interior*, 376 F.3d 853, 862 (9th Cir. 2004) [operation of the CVP's Trinity Division has "radically altered" the Trinity River environment, "destroying or degrading river habitats that supported once-abundant fish populations"].

As detailed below, most of the Counties' and CDWA/SDWA's responses and defenses to the Complaint did not need to be adjudicated, because Westlands lost its own validation case on the merits. On appeal, Westlands cannot overcome dispositive problems with its validation case. First, the defects first adjudicated on the merits in Judge Simpson's Order Denying Validation, dated March 16, 2020, which rejected contract validation on multiple grounds, continue to apply and prevent validation. The trial court correctly found, and later reconfirmed, that material deficiencies in the proposed contract prevented any determination of validity, that validation cannot be entered under any cited statutory provision, and that Westlands approved its operative Resolution in violation of the Ralph M. Brown Act, Gov. Code, § 54950, *et seq*.

Second, as Judge Tharpe found in an Order Denying Renewed Motion for Validation Judgment, dated October 27, 2021, Westlands failed to demonstrate any new or different facts, circumstances, or law that would justify renewal or reconsideration of its prior motion pursuant to Code of Civil Procedure section 1008. Notably, Westlands' October 2019 authorization date for its Resolution and Contract remained unchanged throughout the litigation. No post-authorization developments could retroactively change the determination already made that that Westlands' proposed Converted Contract could not be validated at the time of authorization. Any contrary rule would flout the statutory purpose of assisting in resolving all questions relating to validation of an authorized contract in a single final judgment.

Lastly, even if the Order had been less definitive, other defects raised earlier but not addressed by Judge Simpson also prevent a validation ruling in Westlands' favor. These include major deficiencies in the summons and evidentiary record, as well as other meritorious defenses the trial court did not need to adjudicate because Westlands fully lost its case-in-chief.

## II.    STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Westlands Water District holds contractual rights to receive water from the federal Central Valley Project ("CVP"), which is operated by the United States Bureau of Reclamation.  (2 AA 372-373; 2 AA 432-593.)

Pursuant to a since-expired provision of federal law, section 4011 of the Water Infrastructure Improvements for the Nation Act (Pub. L. 114-322, 130 Stat. 1628 – the "WIIN Act"), Westlands requested that the Secretary of the Interior

convert Westlands' existing water service contract to a repayment contract.  (2 AA 373; 12 AA 3540-3541.)  Negotiations between Westlands and the U.S. Bureau of Reclamation resulted in Westlands' proposed repayment contract (the "Converted Contract").  (2 AA 231-239; 2 AA 516-593; 3 AA 616-692.)

On October 15, 2019, Westlands' Board adopted Resolution 119-19, which approved and authorized execution of the proposed Converted Contract.  (3 AA 720-724.)

Article 46 of the proposed Converted Contract requires Westlands to secure a court decree "confirming the proceedings on the part of the Contractor for the authorization of the execution of" the Converted Contract.  (2 AA 592; 2 AA 691.) Article 46 also provides that the Converted Contract "shall not be binding on the United States until the Contractor secures a final decree."  (*Ibid*.)

On October 25, 2019, Westlands commenced its validation action in Fresno County Superior Court, seeking to validate "each and every provision" and "all of the proceedings" leading to approval of its Converted Contract.  (Complaint at 1 AA 16-23, exhibits at 1 AA 24-195.)

Based on Westlands' ex parte application (1 AA 196-208), the trial court approved service of the Summons by publication; ordered Westlands to mail or email its own landowners and water users according to its customary notification procedures; and directed Westlands to post the Summons, Converted Contract, Resolution No. 119-19, and the proposed judgment on its website.  (1 AA 218-219.)

Westlands filed an Ex Parte Application to Amend Order and Public Summons on December 10, 2019 (1 AA 231-239), resulting in an order amending the October 30 Order (1 AA 275-276).

On December 16, 2019, the Counties filed their "Verified Response and Answer of Counties of San Joaquin and Trinity to Complaint for Validation" (the "Answer") through an e-filing service approved by the Fresno County Superior Court.  (2 AA 322-344.)  Also on December 16, CDWA/SDWA filed their Answer. (2 AA 296-311.)[2]

On December 30, 2019, Westlands filed a Motion for Validation of Contract and declarations and exhibits in support of its motion (2 AA 359 – 3 AA 880.)    In its motion, Westlands contended that it had authority to enter into the proposed Converted Contract and that its Board lawfully approved the proposed Converted Contract. (3 AA 862-864.)  It advanced arguments in response to defenses based on non-compliance with the California Environmental Quality Act and the 2009 Delta Reform Act (3 AA 865-868).  Westlands also argued that three of the four answers challenging Westlands' approval of the proposed Converted Contract, including the Counties' Answer, were untimely filed and therefore time barred.  (3 AA 868-869.)

The Counties filed an Opposition to Westlands' Motion for Validation, with supporting declarations and a request for judicial notice with exhibits.  (9 AA 2464 –

---

[2] Throughout the proceedings below, the Counties of San Joaquin and Trinity comprised a single set of answering defendants.  Central Delta Water Agency and South Delta Water Agency comprised a separate set of answering defendants.  In this appeal, however, these parties have elected to file a joint brief.

10 AA 2700.)  CDWA/SDWA also filed an opposition to Westlands' motion.  (9 AA 2394-2403, 2411-2422.)

Westlands filed a Reply to the Counties' opposition, addressing procedural and substantive issues, reiterating its position that the Counties' Answer was time-barred.  (10 AA 2735-2752.)  Westlands also replied to the CDWA/SDWA opposition.  (10 AA 2723-2734.)

Following Westlands' unsuccessful Ex Parte Motion to advance the hearing date for its pending motion on the merits, which the Counties and CDWA/SDWA opposed (10 AA 2802-2803), Westlands' Motion for Validation was argued on February 27, 2020.  (Reporter's Transcript ["RT"] pp. 6-30.)

On March 16, 2020, the trial court issued its Law and Motion Minute Order adopting its Tentative Ruling as the Order of the Court on Westlands' Motion for Validation (hereinafter, the "March 16 Order").  (10 AA 2859-2865; April 10, 2020 Notice of Entry of Order at 10 AA 2866-2879.)  In the March 16 Order, the trial court denied Westlands' motion on substantive grounds, including the fact that the Converted Contract proposed for validation lacked material terms and was incomplete and that Westlands had failed to establish compliance with the Brown Act in adopting the resolution.  (10 AA 1063-1066, 2872-2875; 20 AA 5757-5760.)[3]

_____

[3] Several copies of the March 16 Order appear in different places within the Appellant's Appendix.  Hereinafter all references to the March 16 Order will be to the copy included in the Judgment entered on March 15, 2022.  (See 20 AA 5749-5768.)  Within that Judgment, the March 16 Order is located at 20 AA 5756-5760.

Quoting from *Santa Clarita Organization for Planning & Environment v. Castaic Lake Water Agency* (2016) 1 Cal.App.4th 1084, 1096, the court explained:

> [Validation proceedings] are definitive because they are in rem proceedings that, once proper constructive notice is given . . . , result in a judgment that is binding . . . against the world, and cannot be collaterally attacked, even on constitutional grounds.

(20 AA 5757.)

The court ruled that as a result of the 1961 amendment to Water Code section 35855, a statute upon which Westlands had relied, a validation proceeding is not available.  (20 AA 5757.)  Referring to Westlands' proposed Converted Contract, the court stated:  "The Legislature did not intend that Courts make such advisory opinions on proposed contracts after 1961.  This contract does not qualify for validation under that statute."  (*Ibid*.)

The court ruled:  "The Converted Contract does not meet such requirements for provisions unrelated to debt because it is a proposed contract, not an executed contract."  (20 AA 5759.)  About the Converted Contract's lack of "material terms," the March 16 Order explains:

> [The draft resolution] states:  "the President of the District is hereby authorized to execute and deliver the Converted Contract in substantially the form attached hereto, with such additional changes and/or modifications as are approved by the President of the District, its General Manager, and its General Counsel."  The resolution itself has that language as well. . . .   Exhibits A, B, C, and D to the Converted Contract are missing from all materials submitted to the Court..  Exhibit D is the repayment page.

> The proposed judgment seeks a ruling that "the Converted Contract is in all respects valid under applicable California Law and binding upon Westlands."  Given that the contact terms, including the

14

> repayment terms, are not certain, and that the contract may be changed
> or modified, validation is not appropriate.  It is not possible to make
> the determinations sought where no final contract is presented for
> validation.
>
> Westlands' Declarant Gutierrez states he does not anticipate any
> major changes, but the validation statutes do not encompass judicial
> approval of incomplete contracts.  Given the estimate for the repayment
> amount over $362,000,000 . . ., the absence of the actual amount and
> payment schedule render the proposed contract lacking in material
> terms and incomplete.

(20 AA 5759.)

 In its March 16 Order, the trial court also addressed the Brown Act issues,

noting as a threshold matter that the "Brown Act issues are raised by Westlands'

request for a judgment that 'all of the proceedings related to the Westlands' approval

of the Converted Contract were in all responses [sic] legal and valid.'" (20 AA

5760.) The March 16 Order explained why conflicts in the evidence presented by

Westlands with respect to the public notice requirements of the Brown Act "render

the evidence of posting unreliable and fail to prove posting was correctly done."  (20

AA 5760.)

The trial court explained that in addition to failing to prove that the Brown

Act's public notice requirements had been met, the evidence submitted by Westlands

was deficient with respect to the agenda packet itself:

> No agenda packet is provided, so it is not possible to determine if the
> packet provided the information necessary to support the meeting.
> Agenda packets must be available to the public.  . . . .  As the
> particular packet is not provided to the Court, the requested finding of
> compliance with the Brown Act cannot be made.

(20 AA 5760.)

Having denied Westlands' motion for validation on the above-referenced grounds, the court did not reach the Counties' additional defenses or other issues raised in the briefing, including objections to the summons and record. (See the Counties' Response and Answer to Westlands' Complaint for Validation, at 2 AA 336-340 and the Counties' Opposition to Westlands' Motion for Validation, at 9 AA 2474-2479.)

In its March 16 Order the trial court also ruled that the answers of all answering parties except CDWA/SDWA had been untimely filed.  (20 AA 5756.)

The Counties appealed that portion of the March 16, 2020, Order.  (See 10 AA 2886-2887.)  During the pendency of that appeal, over Westlands' objection, the underlying action was stayed by court order, as requested by the Counties, CDWA/SDWA, and other answering  parties.  (12 AA 3420-3421.)

On March 9, 2021, this Court issued its Opinion, in which it reversed the trial court's ruling that the Counties' Answer, as well as those of two other groups of responding parties, had been untimely filed.  (See 12 AA 3459; AOB 21-22.)

On September 17, 2021, Westlands filed a "Renewed Motion for Validation Judgment," with voluminous supporting declarations and exhibits.  (12 AA 3485 – 18 AA 1522.)[4]

---

[4] Westlands' September 17, 2021 "Renewed Motion for Validation Judgment" is not to be confused with its July 27, 2020 "Renewed Motion for Validation of Contract" and supporting declarations and exhibits, which are included in Appellant's Appendix at 10 AA 2933 through 12 AA 3294.

Also on September 17, 2021, the Counties filed their Opening Brief in opposition to Westlands' Renewed Motion (18 AA 5219 – 5244.)  CDWA/SDWA also filed an Opening Brief opposing validation (18 AA 5201-5218), supported by a declaration with exhibit (18 AA 5187-5200).

On October 8, 2021, Westlands filed a "Response to Defendants' Opening Briefs," with a supporting Request for Judicial Notice and voluminous exhibits thereto.   (18 AA 5265 – 19 AA 5659.)

Also on October 8, 2021, the Counties filed their "Responsive Brief," which responded to Westlands' Opening Brief in support of validation.  (19 AA 5660 – 20 AA 5682.)  CDWA/SDWA filed a "Reply" Brief in opposition to Westlands' Renewed Motion on October 7, 2021.  (18 AA  5245-5255.)

On October 27, 2021, oral argument on Westlands' September 17, 2021, Renewed Motion for Validation Judgment took place before the Honorable D. Tyler Tharpe (Judge Simpson having retired).  (20 AA 5764.)  Following oral argument, by way of a Law and Motion Minute Order dated October 27, 2021, the court adopted its Tentative Ruling as its final ruling ("October 27 Order).  (20 AA 5763-5768.)[5]

The court's ruling was "[t]o deny plaintiff's renewed motion for a validation judgment, for failure to show any new or different facts, circumstances, or law that

---

[5] As with March 16, 2020, Order, more than one copy of the October 27, 2021, Order is included in Appellant's Appendix.  To avoid confusion, the copy of the October 27, 2021, Order cited hereinafter is the copy included in the Judgment from which this appeal was taken.  The October 27 Order is included at 20 AA 5764-5767.

would justify renewal of its prior motion. (Code Civ. Proc. § 1008, subd. (b).)" (20 AA 5764.)

The court noted that Westlands sought to justify renewal of its motion based on three separate "allegedly new of different facts or circumstances" (20 AA 5765):

> First, Westlands and the Bureau of Reclamation executed the final converted repayment contract on February 28, 2020, the day after the original motion for validation judgment was heard.  Second, Westlands' Board adopted a resolution in June 2021 that confirmed that the executed contract conformed to the authority granted by the Board in its original resolution.  Third, Westlands has now submitted additional evidence regarding its compliance with the Brown Act's requirements prior to the adoption of the original resolution, which addresses Judge Simpson's concerns expressed in his order that the Board had not given adequate notice of the action it intended to take before the Board meeting.

(20 AA 5765.)

The court then explained why "none of plaintiff's purportedly new facts support the motion for renewal" (20 AA 5765):

> The fact that Westlands and the Bureau entered into a final version of the repayment contract **after** the hearing on the motion for validation judgment does not affect the issues pointed out in Judge Simpson's order denying the judgment. As Judge Simpson held, the contract considered by the Board in October 2019 was only a proposed, incomplete contract, because it lacked key terms like the final repayment price and the dates on which repayments would be due.  . . . It was also uncertain and incomplete because the resolution adopted by the Board allowed the President of the Board, the General Manager, and its General Counsel to modify the agreement's terms after it had been approved by the Board. . . .  Although the contract was later finalized and executed by the parties, **the issue before the court** was whether the Board acted properly when it approved the contract in October 2019, not whether the contract was later executed by the parties.  . . .

(20 AA 5765-5766, emphasis in original.)

For the same reasons, the court rejected Westlands' argument that renewal of Westlands' validation motion was justified by its Board's approval of a resolution in June 2021 stating that the executed contract comported with its October 2019 resolution.  Said the court:

> [The June 2021 resolution] does not affect Judge Simpson's conclusion that the contract considered by the Board in October of 2019 was not a complete contract.  Again, Judge Simpson found that the contract considered by the Board in October 2019 was incomplete and uncertain because it lacked key terms like the price of the repayments and when they had to be made, and it was subject to later revision.  The Board's **subsequent** resolution . . . does not cure these deficiencies and does not create the type of new facts or circumstances that would justify renewal or reconsideration of the prior order.  The issue before the court is whether the Board's decision to approve the contract in October 2019 was valid, not whether it later made subsequent resolutions that attempted to cure earlier deficiencies in the draft contract.

(20 AA 5765, emphasis in original.)

With respect to Westlands' argument that in its "renewed" motion it had submitted evidence of its compliance with the Brown Act prior to the October 2019 Board meeting, the court ruled that Westlands had "not shown that it was diligent in presenting this evidence."  (20 AA 5765.)  The "new facts" Westlands pointed to all "occurred in October 2019, long before the hearing on the first motion for validation." (20 AA 5766.)  The court observed:  "Westlands fails to explain why it could not have presented these facts at the time of the original hearing, and it appears that it could have done so, since the evidence was apparently in its possession at that time."  (*Ibid*.)

The court also addressed Westlands' contention that it could not have provided

Brown Act compliance evidence sooner because, according to Westlands, "Judge

Simpson raised the Brown Act issues sua sponte." (20 AA 5766.) Characterizing

Westlands' argument as "somewhat misleading," the court explained:

> Westlands itself alleged in its Complaint and in its original moving
> papers that it had complied with the Brown Act's requirements prior to
> the Board meeting, so the issue had been raised by Westlands itself
> before the hearing. . . . . Also, defendants raised affirmative defenses
> based on the Brown Act, and argued in their oppositions that Westlands
> had failed to give proper notice under the Brown Act. . . .

(20 AA 5766.)

Finally, in its October 27, 2021, Order the court also rejected Westlands'

contention that the court should "grant a validation judgment as to the parts of the

contract that Judge Simpson found were properly the subject of a validation motion."

(20 AA 5766.) The court explained:

> Westlands appears to have misread Judge Simpson's order. The order
> did not find that some portions of the contract could be validated.
> Indeed, it does not appear that it would even be proper to validate only
> parts of the contract, or the Board's decision to approve those portions.
> The order instead found that, while some portions of the contract
> related to repayment of an indebtedness, and thus were potentially
> subject to being validated, the Board's decision nevertheless could not
> be properly validated because it had sought to validate an incomplete,
> uncertain proposed contract. . . . Judge Simpson also found that the
> Board had failed to meet is burden of showing that it complied with the
> Brown Act before it adopted the resolution . . ..

(20 AA 5766-5767.)

On March 15, 2022, following further case management proceedings, the

court signed and filed the Judgment against Westlands and dismissed Westlands'

complaint. (20 AA 5749-5768.)

### III.   STANDARD OF REVIEW

The trial court's application of law to undisputed facts is reviewed de novo. (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018.)

Trial court rulings on disputed factual issues are reviewed under the substantial evidence standard.  "If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed."  (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)  When applying the substantial evidence standard, courts "review the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor . . .."  (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.)  "The substantial evidence standard applies to both express and implied findings of fact made by the superior court in its statement of decision rendered after a nonjury trial."  (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462, citation omitted.)

Where the facts are undisputed but conflicting inferences may be drawn from the facts, appellate review is governed by the rule of conflicting inferences:

> Where different inferences may reasonably be drawn from undisputed evidence, the conclusion of the jury or trial judge must be accepted by the appellate court. . . .   [E]ven though all the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the … trial judge….   In so far as the evidence is subject to opposing inferences, it must upon a review thereof be regarded in the light most favorable to the support of the judgment.

(*Winograd v. American Broadcasting Co., supra*, 68 Cal.App.4th at p. 633, citations

and internal punctuation omitted; 68 Cal.App.4th at p. 634 ["Where the inferences

are conflicting, it is for the trier of fact to resolve the conflict . . . ."].)

> In reviewing mixed questions of law and fact, California appellate courts
>
> . . . defer to the express or implied factual findings of the trial court
> and determine the applicable legal principles de novo. The standard
> which applies to the third step of the [mixed question] analysis,
> applying the law to the facts, depends upon whether factual or legal
> issues predominate. Where … the issue is predominately one of law,
> [California appellate courts] review it de novo.

(*City of Escondido v. Pacific Harmony Grove Development, LLC* (2021) 68

Cal.App.5th 213, 232, citations omitted.)

The Court of Appeal may affirm the trial court's ruling "on any ground

supported by the record." (*Taylor v. Elliott Turbomachinery Co., Inc.* (2009) 171

Cal.App.4th 564, 573, fn. 5.)

## IV.   ARGUMENT

### A. Westlands Mischaracterizes the Scope of Its Validation Action and the Objectives and Requirements of the Validation Statute.

"Validation statutes are designed to 'settle promptly *all* questions about the

validity of a public agency's actions." (*San Diego County Water Authority v.*

*Metropolitan Water District of Southern California* (2017) 12 Cal.App.5th 1124,

1152 (emphasis added); see also *Friedland v. City of Long Beach* (1998) 62

Cal.App.4th 835, 842 ("[t]he text of section 870 and cases which have interpreted

the validation statutes have placed great importance on the need for a single

dispositive final judgment"); *Embarcadero Municipal Improvement District v. County*

*of Santa  Barbara* (2001) 88 Cal.App.4th 781, 789  ("simple and uniform method")

The text of the validation judgment provision, Code of Civil Procedure section 870, and cases interpreting the validation statutes "have placed great importance on the need for a single dispositive final judgment." (*Id.* at 842; see also *Committee for Responsible Planning v. City of Indian Wells* (1990) 225 Cal.App.3d 191, 197-198.)

Leaning heavily on boilerplate presumptions and analogies to far simpler validation proceedings, Westlands' opening brief portrays its action as a benign attempt to confirm its general contracting authority that needed no further procedural rigor or attention to detail. (AOB 23-24, 55-57.) As detailed more thoroughly in section IV.B, *infra*, these benign portrayals cannot overcome the trial court's decisive rejection of its unprecedented attempt to validate a proposed contract with material omitted terms that remained subject to revision in pending federal agency proceedings.

Moreover, Westlands' benign portrayal of its validation action mischaracterizes both its own action and its relationship to the validation statute and other laws. First, while some validation proceedings only involve narrow agency authority questions (cf. AOB 25, 55), that does not accurately describe this action. None of the provisions addressing the District's general contracting authority cited in Westlands' opening brief[6] addresses the conversion of a water supply contract subject to interim renewals to a permanent repayment contract or ever suggest that such

---

[6] See AOB 56 (citing Wat. Code, §§ § 35851, 35876, 35877, 35878).

action can be authorized and validated without providing all the material terms of the latter in its complaint and summons.

Here the only authority specifically authorizing contract conversion of an existing water supply contract subject to interim approvals was section 4011(a)(1) of the 2016 WIIN Act, which required negotiating an agreement with the federal government. The WIIN Act also included a savings provision, section 4012, guarding against interpretations of the Act that would preempt "applicable state law, including applicable state water law," or override other obligations of state and federal law. Yet the Contract Conversion sought by Westlands would make the obligations in its contract, long subject to two-year renewal periods, apply in perpetuity, while removing acreage restrictions and other limits. Moreover, while Westlands' opening brief attempts to rely on documents relating to fulfillment of federal obligations that far postdate the operative contract and resolution presented to this Court for validation (e.g., AOB, p. 19), it also represents that this Court cannot serve as the arbiter of obligations relating to the duties of federal agencies under federal law and would not have the jurisdiction to adjudicate them. (9 AA 2478, 2742; AOB, p. 51.)

Second, the Resolution makes controversial claims about Westlands' past, present, and future water uses that could precipitate conflicts if validated. It asserts that current receipt and delivery of water to Westlands will continue under the Converted Contract, that Westlands' water uses have been and will continue to be "reasonable and beneficial," and that the United States is "obligated" to make 1.15

24

million annual acre-feet of CVP water available to Westlands. The annual amount referenced in Westlands' contract, 1.15 million acre-feet, is "roughly double what the entire City of Los Angeles uses in a year," and is well above what can be reliably delivered. (9 AA 2485, 2493.)  The Resolution asserts Westlands has fulfilled "all of its obligations" under its "Existing Interim Renewal Contract" (9 AA 0030) without addressing criticism of Westlands' and the Bureau's performance under its interim contracts, or litigation relating to interim contracts.[7]

Third, Westlands' proposed Converted Contract omitted substantive terms of the contract text and Exhibits A-D, which were to address such matters as the covered service area, rates and charges, applicable methodology, and repayment obligations. (3 AA 0740, 0742, 0751-0756, 0788.) Westlands' Resolution and Complaint did not disclose that its own staff report characterized the Contract presented for approval in the Resolution as a "draft converted contract" which remained subject to pending proceedings at the Bureau of Reclamation, including the Bureau's release of the "draft" contract "for review and possible comment by interested people and entities." (3 AA 0614; see also 3 AA 0617 ["final draft contract"], 3 AA 0618 ["working draft"]. Without first addressing these material

---

[7] See, e.g., *Pacific Coast Federation of Fishermen's Associations v. United States Department of Interior* (9th Cir. 2016) 655 Fed. Appx. 595 (Environmental Assessment for Westlands' interim contract renewal violated NEPA by erroneously assuming continued renewal, and by failing to meaningfully study an alternative of reducing maximum water quantities).

deficiencies or awaiting outcome of pending public review and comment and federal agency decision-making, Westlands approved the Resolution and filed its Complaint.

Fourth, validation actions must be decided, not on agencies' future recharacterization, but on the operative complaint and resolution sought for validation, which form the *res* of the validation complaint. Members of the public otherwise run the risk of being unwittingly bound by the "forever binding and conclusive" validation judgment. (Code Civ. Proc., § 870(a).) Here, the Complaint and accompanying prayer for relief are extraordinarily broad. The Complaint seeks to validate the legality and validity of the Resolution, "each and every provision" of the Contract, and all proceedings of the District and its Board of Directors "leading up to and including the making and approval" of the Contract. (1 AA 0021.)  It seeks a "forever binding and conclusive" validation judgment, which would enjoin all future challenges to the Contract, Resolution, and related proceedings on any matter that "could have been adjudicated" against Westlands in this action. (1 AA 0023; see Code Civ. Proc., § 870.)

Finally, none of the authorities cited by Westlands on validation procedure (AOB 23-24, 55-57) supports validation of the materially incomplete proposed contract referenced in its Complaint and Resolution. In *Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, a less demanding validation action involving bond financing related to sale of a mobile home park, the Court rejected one party's unsupported assumption that a motion on the merits was required to be brought by summary judgment but found another deficiency on the

merits because a hearing "did not give the public an adequate opportunity to comment" on low-income housing in accordance with statutory requirements. (*Id*. at p. 1479.)

Similarly in *Meaney v. Sacramento Housing & Redevelopment Agency* (1993) 13 Cal.App.4th 566, 582, another comparatively straightforward matter involving a courthouse construction agreement, the court addressed validation pleading standards in the context of a demurrer, finding that despite lack of merit in certain contentions, leave to amend should have been allowed. (*Id*. at p. 589.) Westlands' appeal, however, is of an adverse judgment denying validation on the merits in a matter that involved neither a demurrer nor an attempt to argue summary judgment procedures are mandatory. The trial court allowed Westlands to adjudicate its motion for validation on the merits twice, in an original and "renewed" motion, only to rule against Westlands both times because Westlands lost its case-in-chief. (20 AA 5749-5768.)

The general presumption in Evidence Code section 664 that an official duty has been "regularly performed" likewise provides Westlands no help against the trial court's detailed discussion of multiple material deficiencies in Westlands' proposed contract sought for validation. *In Re Angelina E* (2015) 233 Cal.App.3d 583, 588, cited by Westlands as "bolster[ing]" its evidence (AOB 24), is inapposite in the face of that demonstration. In that non-validation case, the court noted that "no one contends" that the challenged juvenile commissioner was unqualified and observed

the "total absence of evidence" that the superior court failed to assure their

qualification (*Id.*, p. 588.)

### B. The Trial Court Correctly Ruled that Westlands' Proposed Converted Contract Was Materially Deficient and Incapable of Validation.

#### 1. Westlands' Operative Proposed Converted Contract Was Materially Deficient and Could Not Be Validated.

The March 16 Order that the Converted Contract Westlands approved in its

October 2019 resolution was materially deficient and not "appropriate" for validation

(Order, § 4) defeated, and continues to defeat, Westlands' entire validation claim,

showing it was "not possible" to support a judgment of validity (20 AA 5759.) This

ruling was solidly grounded in an understanding that validation decisions must be

"definitive" when reached. (20 AA 5758 [quoting *Santa Clarita Organization for

Planning & Environment,* 1 Cal.App.5th at p. 1096] (citations omitted).) Actions to

determine validity are "*in rem* proceedings that, once proper constructive notice is

given [Code Civ. Proc.] §§ 861, 862, result in a judgment that is binding…against

the world" and cannot be "collaterally attacked." (20 AA 5758.)

Westlands nonetheless reprises its unsuccessful trial court strategy of

portraying itself as the victim of a technicality, attributing the trial court's refusal to

validate to the contract being "unexecuted" and not containing "every detail" of the

transaction. (AOB, pp. 25-26.) Although the lack of final execution was simply one

contract feature accurately noted in the Court's order, Westlands drastically

oversimplifies the Court's nuanced analysis of the operative contract's multiple material deficiencies. In fact, Judge Simpson noted the following:

(1)     The Resolution and the Contract both state that "the President of the District is hereby authorized to execute and deliver the Converted Contract in substantially the form attached hereto, with such additional changes and/or modifications as are approved by the President of the District, the General Manager, and its General Counsel."  (20 AA 5759.)

(2)     "Exhibits A, B, C, and D to the Converted Contract are missing from all materials submitted to the Court." (20 AA 5759 (noting that Exhibit D is the repayment page).) (*Id.*)

(3)     In light of these material omissions in the Converted Contract, Westlands could not salvage its case for validation even by having its Chief Operating Officer, Jose Gutierrez, state in a declaration that no major changes in the contract were anticipated. Given that the "estimate for the repayment amount is over $362,000,000" the "absence of the actual final amount and payment schedule render the proposed contract lacking in material terms and incomplete." (20 AA 5759.) Furthermore, *"the validation statutes do not encompass judicial approval of incomplete contracts."* (*Id.* (emphasis added).)

(4)     These omissions, including the missing exhibits, are material. They prevent the Court from ruling that the Converted Contract referenced in the Complaint is valid under state law and binding on Westlands. "*[G]iven that the contract terms, including repayment terms, are not certain, and that the contract may*

*be changed or modified, validation is not appropriate." Id. "It is not possible to make the determinations [of validation] sought where no final contract is presented for validation."* (*Id.* (emphasis added).

This holding that Westlands' Contract "lacks material terms" and "validation is not appropriate" remains dispositive. As was the case when the Order issued, the operative date of contract "authorization" claimed by Westlands under Code of Civil Procedure section 864 remains October 15, 2019, and the operative contract remains the materially deficient document attached to the Complaint (1 AA 0115-0198), the only contract disclosed to the public in advance of approving the Resolution.

Moreover, further consideration of the context only reinforces the conclusion that Westlands' Resolution prematurely authorized a materially deficient contract. First, the Converted Contract in Resolution 119-19 is not simply unexecuted; it leaves unresolved staff instructions, lacks payment information, and is missing all four exhibits referenced in the text: Exhibit A (Map of Contractors' Service Area), Exhibit B (Rates and Charges), Exhibit C (Central Valley Project Water Needs Assessment Purpose and Methodology), and Exhibit D (Repayment Obligation). (3 AA 0740, 0742, 0751-0756, 0788.) Westlands' proposed Converted Contract provided only placeholder reference, depriving the public of these important excluded exhibits. Particularly alarming is the omission of Exhibit D, which purports to include analysis of Westlands' repayment obligation, and obscures differing publicly disclosed views of what Westlands would owe under the conversion contract. (9 AA 2568-2569; 9 AA 2490.)

Second, Westlands' own staff report referred to the Contract as a "draft converted contract," and admitted it remained subject to the Bureau of Reclamation's pending review and public comment.  (3 AA 0616; see also 3 AA 0618 ["working draft" contract].)

Third, before finding Westlands' Converted Contract too materially deficient to support validation, Judge Simpson first considered Westlands' detailed contrary argument that the missing exhibits and other incomplete provisions in its authorized contract were immaterial to issues of validity. AOE, ex. 14 [Reporter's Transcript, Vol. 1, 2/27/20, pp. 7-11.]

Fourth, at the hearing before Judge Simpson on Westlands' motion for contract validation, on February 27, 2020, Westlands conceded that in the absence of "further authorization" from its Board, any changes from the contract authorized by the Board on October 15, 2019, would need to be limited to those that were "not material" to the Contract. (*Id*., p. 7.)

Finally, Westlands made the decision to finally authorize its Converted Contract months before the end of the Bureau of Reclamation's public comment period on the same Converted Contract. The comment period lasted until January 8, 2020, months after Westlands approved the Resolution and more than three weeks after the last date for interested parties to answer the validation summons (3 AA 2490; 9 AA 2662-2663.) Filings in federal court cases in early 2020 also confirmed that, months after Westlands authorized its Contract and brought this action, the Bureau understood the contract to remain subject to revision and reserved the

opportunity to "make changes to the contract as appropriate" following review of public comment. (9 AA 2660; 3 AA 2448; see AA 2636-2700 [federal agency status reports].)

The Bureau's public comment period lasted until January 8, 2020--weeks after the deadline Westlands secured for validation answers here--and included many substantive areas of environmental and legal concerns about Westlands' contract never disclosed in Westlands' Board proceedings. (AA 2550-2613.)

Commenters raised substantial environmental and legal concerns about the proposed contract, not simply about the crucial missing Exhibit D on repayment obligations cited by Judge Simpson (Order, § 6), but for each of the four exhibits missing from the operative contract in this action. See Exhibit A (Map of Contractors' Service Area), Exhibit B (Rates and Charges), Exhibit C (Central Valley Project Water Needs Assessment Purpose and Methodology), and Exhibit D (Repayment Obligation). (1 AA 0034, 0045, 0062; 3 AA 0740, 0742, 0751, 0750-0755, 0768; 9 AA 2489-2490, 2568-2569 [Comments of Planning and Conservation League, et al., describing substantial public objections pertaining to each of these exhibits].)

Westlands strains after-the-fact in this appeal to have its non-attorney declarants proclaim Exhibit D ministerial and the remainder trivial (AOB 40-42), selectively citing to provisions of federal reclamation law it separately claims this Court cannot adjudicate. That was not information it even felt necessary to share with the public. Moreover, had Westlands not decided to prematurely seek validation

despite a pending federal comment period on the still-pending terms of the proposed contract, it would have been clearer that *each of the omitted exhibits and provisions*, remains the source of substantive disagreement and significant public controversy. (3 AA 0740, 0742, 0751-0756, 0788; 9 AA 2489-2490, 2568-2569; see also 9 AA 2569 ["The public was effectively excluded from the negotiations so there is no ability to comment on this changing aspect of the contract. Further ratepayers and taxpayers are left in the dark regarding final payment obligations and the ability to pay off Westlands' debts"].)

Nothing required Westlands to finally authorize an incomplete draft contract subject to multiple sources of uncertainty. Yet Westlands not only did so; it has refused through the present to take the common-sense action that should have been clear after Judge Simpson denied its motion to validate on the merits: rescinding its premature October 2019 resolution and allowing transparent public consideration of a complete and certain contract. Validation of the materially deficient or incomplete contract—the only one referenced in the complaint and summons—would defeat the purpose of a validation judgment to "promptly settle all questions about the validity of a public agency's actions" (*San Diego County Water Agency v. Metropolitan Water District of Southern California* (2017) 12 Cal.App.5th 1124, 1152; see also *Friedland v. City of Long Beach* (1998) 62 Cal.App.4th 835, 847.)

Cases cited in Westlands' Opening Brief do not even remotely support the notion that a materially deficient or incomplete contract can be lawfully validated under any statute. Rather, Westlands conflates this issue with the distinct principle

that bonds and contracts, if subject to validation proceedings, "shall be deemed to be in existence at the time of authorization." (Code Civ. Proc., § 864.) But the truism that the expedited period for validation actions runs from authorization does not in any way support the validation of a materially incomplete or uncertain contract. Because that foundational uncertainty would thwart the statutory mission to settle all questions on validity in a single judgment, it cannot be equated with a clear and final decision to authorize bonds or contract financing arrangements. (See, e.g., *Hollywood Park Land Co. LLC v. Golden State Transportation Financing Corp.* (2009) 178 Cal.App.4th 924, 945-946 (discussing role of authorization decision under section 864, and noting that plaintiffs "do not allege that the compact bonds are invalid because they are materially different"); *McLeod v. Vista Unified School Dist.* (2008) 158 Cal.App.4th 1156, 1166 (discussing validation in context of bond authorization, and citing *Friedland* on the need for validation to settle all questions about validity).)

In sum, actions must be decided, not on agencies' future recharacterization of their actions, but on the facts, approval and contract as defined in the complaint. Members of the public otherwise run the risk of being unwittingly bound by the "forever binding and conclusive" validation judgment. (Code Civ. Proc., § 870(a).) Westlands' efforts to turn the validation process into a moving target would undermine the public's role in time-sensitive provisions of validation procedure (e.g., Code Civ. Proc., §§ 862, 864). Had it produced a judgment of validity, Westlands' attempt to validate a work-in-progress draft contract subject to material change would

have been incompatible with the central role of a validation action to provide a "single, dispositive" ruling forever identifying and resolving all possible objections. (*Friedland*, 62 Cal.App.4th at p. 842.)

### 2. The Proposed Converted Contract Could Not Be Validated Under Water Code section 35855 and Code of Civil Procedure section 864.

Westlands seeks a validation judgment pursuant to Water Code section 35855, which in pertinent part refers to actions under Code of Civil Procedure section 860, et seq., to determine the validity of "*any contract.*" (Emphasis added.) In the Order, Judge Simpson cogently rejected that premise after carefully examining the history of this provision, holding that Westlands' Contract "does not qualify for validation under that statute." (20 AA 5757.)

A previous iteration of the same statute (Stats. 1953, ch.16, § 1) had allowed water districts to submit "any contract or proposed contract" to the superior court for a determination of validity. However, a 1961 amendment to this law (Stats. 1961, ch. 1529, § 1) deleted the language that had allowed section 35855's use for validation proceedings on a  "proposed contract." *Id.*  This express change is dispositive as to Westlands' attempt at validation. Because the Contract it presented to the Court for validation (Complaint, Ex. B) is merely a proposed contract, validation is unavailable under this provision. (20 AA 5757.) Since it was clear that the 1961 amendment "took out" the term "proposed," the Order held that "the Court cannot interpret the statute to put it back in." (*Id.*) In so concluding, Judge Simpson

observed that "[t]he rejection by the Legislature of a specific provision contained in an act as originally introduced is most persuasive to the conclusion that the act should not be construed to include the omitted provision." (*Gikas v. Zolin* (1993) 6 Cal.4th 841, 861.)

Far from suggesting otherwise, the legislative history materials provided by Westlands (12 AA 3559-3623) confirm this is precisely what occurred. (See, e.g., *id.*, 12 AA 3617-3618 [discussing AB 1465].) Nor do the cherry-picked portions Westlands cites (AOB 29-31) ever suggest otherwise. Indeed, it is unclear why, if at all, Westlands does not believe that the pre- and post-1961 versions of section 35855 would do anything other than exactly what they say.

It appears Westlands' confusion lies elsewhere. As discussed above, Westlands has again mistakenly conflated section 864's reference to contracts being deemed in existence "upon their authorization" with a looser rule that would enable the validation of incomplete or materially uncertain contracts, and thereby undermine the role of validation law in ensuring that "proposed" contracts presented for validation are capable of provide a single, clear determination rather than addressing shifting sands.

Neither section 864 nor any other provision of law supports the validation of a materially incomplete or uncertain contract. Other cases cited by Westlands do not suggest otherwise. See, e.g., *Central Delta Water Agency v. Department of Water Resources* (2021) 69 Cal.App.5th 170; *Smith v. Mt. Diablo Unified School District* (1976) 56 Cal.App.3d 412; *County of Los Angeles v. Nesvig* (1965) 231 Cal.App.2d

603, 616-617; *Sacramento Chamber of Commerce v. Stephens* (1931) 212 Cal. 607;

*Carson Mobilehome Park Owners' Ass'n v. City of Carson* (1983) 35 Cal.3d 184,

190; *Gerawan Farming, Inc. v. Agricultural Labor Relations Bd.* (2017) 3 Cal.5th

1118, 1146-1147; *Metropolitan Water Dist. Of Southern Cal. v. Marquardt* (1963)

59 Cal.2d 159, 195-197.

### 3.     Westlands' Operative Resolution Also Violated the Brown Act.

The March 16 Order considered whether Westlands' Validation Motion should

be denied because Westlands' approval of Resolution 119-19 did not comply with the

public notice provisions of the Brown Act, Government Code section 54950 et al.

(20 AA 5759-5760.) Observing that "'[a]s a remedial statute, the Brown Act must be

construed liberally in favor of openness so as to accomplish its purposes,'" Judge

Simpson examined the materials provided by Westlands and the testimony of its

employee respecting the posting of its public agenda for the October 15, 2019 Board

meeting at which Resolution 119-19 was adopted.  (*Id., quoting* 9 Witkin, *California*

*Procedure* (5th ed. March 2019 Update), "Administrative Procedure," section 18.)

Noting the material absence of the Board's agenda packet and apparent evidentiary

discrepancies that "render[ed] the evidence of posting unreliable," Judge Simpson

ruled that Westlands had failed "to prove posting was correctly done" and therefore

"the requested finding of compliance with the Brown Act cannot be made."  (20 AA

5759-5760.)

The Brown Act requires liberal construction. (See *Epstein v. Hollywood Entertainment Dist. II Business Improvement Dist.* (2001) 87 Cal.App.4th 862, 869.) Although Westlands has attributed these discrepancies to assorted internal errors and oversights, any such errors were its own and not judicial errors. Westlands has not provided any new facts, circumstances, or law to show that Judge Simpson erred in his examination of the facts presented and interpretation of the law that applied. Rather, as confirmed in denying its "renewed" motion, Westlands demonstrated a lack of reasonable diligence addressing straightforward procedural requirements of the Brown Act for its operative October 2019 meeting.  (20 AA 5765-5767.)

Having failed to document Brown Act compliance in the first motion when it had the opportunity and did not prevail, Westlands mistakenly grounds its new argument in retrospectively developed post-decisional evidence attempting to bolster its provisions. But the operative resolution for which Brown Act compliance is at issue is the same one from October 2019 considered in the first motion to validate. Any errors or deficiencies Westlands made were its own, not the Court's. As correctly found in denying the "renewed" motion, Westlands offered, and still offers, no new facts, circumstances, or law to show that Judge Simpson erred in his examination of the facts presented and interpretation of the law as to Brown Act compliance in 2019.

Furthermore, because Westlands included the Brown Act in its direct validation action, prerequisites for bringing a separate Brown Act challenge (*cf.* Gov. Code § 54960.1) are inapposite. Westlands' failure to provide a materially complete

contract also undermined the public disclosure needed for Brown Act compliance. Any later action taken to cure the original Validation Complaint's fatal lack of material and certain terms cannot remedy the public's lack of notice of those terms.

On appeal, Westlands again argues that it had no opportunity to adequately address Brown Act compliance prior to Judge Simpson's ruling because he raised questions at the February 2020 motion hearing. In fact, Brown Act compliance was needed to support Westlands' case-in- chief, which seeks to validate all the proceedings leading up to approval of the 2019 resolution, and affirmatively asserts Brown Act compliance. (1 AA 0020, 0022.) Westlands also responded to defendants' Brown Act arguments in its reply to the first motion. (10 AA 2728, 2729.)

### 4.   Westlands Could Not Circumvent Material Deficiencies By Resorting to Post-Authorization Actions.

In denying Westlands' "renewed" motion as failing the requirements of Code of Civil Procedure 1008(b), the October 27 order properly rejected attempts by Westlands to conjure post-decisional "evidence" of its own declarants long after the operative contract and resolution. (20 AA 5765-5766.) These included (1) a document claiming to be an "executed" version of Westlands' Converted Contract, approved more than three months after Westlands' operative approval of Resolution 119-19 (2) an entirely new resolution (No. 110- 21), approved by Westlands' Directors *more than a year and a half* after they approved Resolution 119-19. The latter did not rescind the earlier-approved resolution, but retrospectively proclaims the later- approved contract to "not materially affect" the earlier one. Read in

context, the later resolution was clearly designed to undo by the Director's fiat the consequences of Judge Simpson's carefully considered conclusion that the earlier-approved contract "lacks material terms," is "not certain," may be "changed or modified," and is "not appropriate" for validation.

Westlands' continuation of these attempts on appeal for a back door to a validation judgment through Code of Civil Procedure section 1008(b) is dangerously wrong. First, it runs into the same dead end discussed above. Westlands never changed the timing of its operative approval resolution and contract framing its complaint and summons here. The validation statute "assures due process notice to all interested persons" and is meant to settle validity "once and for all by a single lawsuit." *(Planning and Conservation League v. Department of Water Resources* (2000) 83 Cal.App.4th 892, 925.) Fulfillment of these objectives would be thwarted if agencies were given impunity to validate contracts lacking material terms, or to turn their operative approvals sought for validation into moving targets. Such post-hoc actions would also undermine continued reliance on Westlands' published validation summons in this action, which provides the basis for the Court's jurisdiction over interested parties and its deadline for interested parties to file answers. (Code Civ. Proc., §§ 861, 861.1.)

Second, even if they had not been so disconnected from the operative contract and approval, Westlands' "new" facts paradoxically could only have made any difference if Judge Simpson had been wrong about the original contract having *material deficiencies*, which in turn would clearly require reconsideration, not a

40

renewed motion. At the hearing before Judge Simpson on Westlands' motion for contract validation, on February 27, 2020, Westlands conceded that in the absence of "further authorization" from its Board, any changes from the contract authorized by the Board on October 15, 2019, would need to be limited to those that were "*not material*" to the Contract. (Reporter's Transcript, Vol. 1, p. 7.)

Third, at the merits hearing on Westlands' first motion, Judge Simpson heard and considered, but nonetheless rejected, Westlands' detailed argument that the missing exhibits and other incomplete provisions in its authorized contract were immaterial to issues of validity. (*Id.*, pp. 7-11.)

Finally, validation actions must be decided, not an agencies' future recharacterization of their actions, but on the facts, approval and contract as defined in the complaint. Members of the public otherwise run the risk of being unwittingly bound by the "forever binding and conclusive" validation judgment. (Code Civ. Proc., § 870(a).). Under these circumstances, Westlands' efforts to turn the validation process into a slippery moving target would undermine the public's role in time-sensitive provisions of validation procedure (e.g., Code Civ. Proc., §§ 862, 864) and the objective of resolving all possible objectives in a "single, dispositive" ruling forever identifying and resolving all possible objections—cannot possibly be achieved.  (*Friedland*, 62 Cal.App.4th at p. 842.)

### C.    Westlands' Effort to Evade the Counties' Other Defenses, On Which the Trial Court Never Ruled, Is Without Merit.

1.      **Westlands Disingenuously Portrays Further Defenses as Barred, Without Disclosing Adverse Rulings on Other Contested Contracts.**

The Counties and CDWA/SDWA agree with respondent California Water Impact, et al. in rejecting Westlands' cynical and misguided effort (AOB 45-46) to assert a res judicata bar to the adjudication of still-unadjudicated defenses, should that even be necessary. The res judicata principles addressed in cases such as *Eiskamp v. Pajaro Valley Water Management Agency* (2012) 203 Cal.App.4th 97, 106, are entirely off-point here. As further addressed in Counties and CDWA/SDWA's Motion for Judicial Notice, Westlands fails to note that: (1) the issues here under Code of Civil Procedure section 870 could not have been adjudicated in the numerous other *uncontested* proceedings mentioned involving different contract instruments and approvals (including Westlands' Oro Loma contract, which is 287.5 times smaller than the contract at issue here); and (2) Westlands' two distribution districts *lost* contested motions to validate Converted Contracts in Fresno County Superior Court, in orders that expressly rejected a res judicata argument closely resembling the one Westlands advances here.

2.      **Westlands' Summons Was Materially Inaccurate and Failed to Notify Foreseeably Interested Parties.**

A validation action pursuant to section 860 et seq. is an *in rem* proceeding the effect of which is binding on the public agency bringing the action and on all other persons as to the validity of an action of the public agency. (Code Civ. Proc. §§ 860, 870; *Planning and Conservation League,* 83 Cal.App.4th at 921.) For a court to

obtain jurisdiction over a validation action, interested persons must obtain notice of the action pursuant to section 861. (*Id*. at p. 922 (stating jurisdictional requirements of Code Civ. Proc. § 861).)

The Contract Westlands authorized in its October 2019 Resolution and attached to its complaint is the *res* of its validation action. In the event that Westlands attempts to swap out the operative for others that were not disclosed to the public prior to that authorization and not referenced in the Complaint and Summons, it would create further dispositive problems preventing the Court from granting the motion to validate.  Fundamentally, such a substitution would undermine reliance on the previously published validation summons, which provides the basis for the Court's jurisdiction over interested parties as well as the answer date. (Code Civ. Proc. §§ 861, 861.1.) The summons in this action refers only to the contract authorized in October 2019 and referenced in Resolution 119-19. Especially in light of the Order's finding of material deficiencies in that contract, it cannot be substituted out for a materially different document consistently with the requirements of validation law. Relying on the Summons for the October 2019 contract to validate a subsequent and materially different contract would undermine the "due process notice to all interested persons" required under validation law. (*Planning and Conservation League*, 83 Cal.App.4th at 925.)

A further problem with the validation summons here is that it covers an insufficient geographic scope. Ordinarily, section 861 simply requires publication in the county where the action is pending, and "whenever possible" within the agency's

boundaries. However, section 861 also empowers courts to order publication in additional counties and identify other reasonably practicable" steps to provide notice. Moreover, it is essential that "the procedure provided by the validation statute assures due process notice to *all interested persons*," which allows the court to settle validity "once and for all by a single lawsuit." (*Planning and Conservation League*, 83 Cal.App.4th at 892.)

The circumstances here strongly support a requirement to publish within a broader geographic scope. The action to validate the Converted Contract of the CVP's largest contractor addresses a fundamental matter of statewide importance, with foreseeably interested parties throughout the state. The proposed contract would enable Westlands to have the obligations in its CVP contract, currently subject to two-year interim renewal periods, apply in perpetuity.

The contract validation proposed by Westlands would make its contract obligations apply in perpetuity without addressing chronic related problems such as the water baseline and the drainage problem. (3 AA 2490-2495.) Validation on those terms would cause avoidable harm and fundamental problems for San Joaquin County, where two-thirds of the legal Delta is located. (3 AA 2486.)

Much the same is the case for Trinity County, home to the Trinity River, a critical watershed of origin for the CVP. Operation of the CVP's Trinity Division has "radically altered" the Trinity River environment, "destroying or degrading river habitats that supported once-abundant fish populations." (*Westlands Water Dist. v. U.S. Dept. of Interior* (9th Cir. 2004) 76 F.3d 853, 862. Largely due to the scope of

CVP diversions, the Trinity River already faces major difficulties with oversubscribed water claims, which could be perpetuated and deepened by the Converted Contract. (9 AA 2486.) In short, it was eminently foreseeable here that this validation action would affect the interested parties statewide, including but not limited to the Counties and others in the Delta region and the CVP's areas of origin. However, Westlands limited publication of summons to two counties, Fresno and Kings Counties. It is certainly "reasonably practicable" for Westlands, the largest CVP contractor and among the country's most prominent and powerful water agencies, to perfect publication in the San Joaquin and Trinity Counties, as well as other California counties.

For similar reasons, Westlands' agenda, physically posted only at Westlands' Fresno office, was not of sufficient geographic scope to meet the requirements of the Brown Act, Gov. Code, § 54950, et seq.

### 3.    Deficiencies in the Evidentiary Record Prevent a Determination of Validity.

Replacing the October 2019 Contract framing this validation action with some other post-approval document executed later would also ensure that the already-problematic evidentiary record in this action could not support validation. It would also leave other unresolved discrepancies. Notably, no "record" has ever been introduced or certified in this action.  Although Westlands concedes having requested its contract conversion in April 2018, and Westlands' controversial Converted Contract arose out of years of intense negotiation Westlands' "appendix"

45

conspicuously lacks documents before October 2019, despite the "more than 40" negotiation sessions Westlands itself mentions in passing. (AOB 13.)

Of the documents noted in Westlands declarations, many consist only of Westlands' past, present and proposed CVP contracts, the Resolution, and a reproduction of a published court case that Westlands, in its Motion, believes to support its position.

Second, Westlands' declarations and exhibits, from two non-attorney Westlands staffers (respectively, Chief Operating Officer Jose Gutierrez, who asserts his professional background is in engineering, and Balbina Ormonde, a Deputy General Manager and Secretary) very clearly do not amount to the "record." Neither declarant even asserts that the referenced documents amount to a complete record of administrative proceedings, much less a complete evidentiary record sufficient to adjudicate a judgment addressing Westlands' case-in-chief and all defenses raised by answering parties. In the very unlikely event that Westlands' validation action overcomes the fatal deficiencies noted above, including the trial court's five grounds for denying Westlands' motions to validate on the merits, the state of the current evidentiary record could not support a judgment of validity

### 4.    Other Meritorious Defenses Remain Unadjudicated.

The Counties and CDWA/SDWA agree with respondents NCRA, et al. that Westlands also cannot achieve validation due to problems under (1) the Delta Reform Act; (2) the Public Trust Doctrine; (3) failure to secure State Board approval; and (4) failure to comply with federal laws.

Westlands asserts without foundation that affirmative defenses are based on a misapprehension about the scope of validation. But validation actions have long rejected determinations of validity where governing legal requirements are not satisfied. (See *City of Ontario v. Superior Court* (1970) 2 Cal.3d 335, 344.) The broad reach of Code of Civil Procedure section 870, which deems validation judgments "forever binding and conclusive, as to all matters therein adjudicated or which at that time could have been adjudicated, against the agency and against all other persons," compels validation defendants to protect their interests in potential future proceedings. (*Friedland*, 62 Cal.App.4th at 844-45.)

## V.   CONCLUSION

For the foregoing reasons, the Court should fully affirm the March 15, 2022 judgment of the Fresno County Superior Court against Westlands and for the Counties and CDWA/SDWA (AA 5749-5768), dismissing Westlands' Complaint for validation judgment, and directing that Westlands take nothing by its Complaint.

Date: November 28, 2022                    FREEMAN FIRM

_____
Thomas H. Keeling
ATTORNEY FOR COUNTY OF SAN JOAQUIN AND
COUNTY OF TRINITY

LAW OFFICE OF ROGER B. MOORE

_____
Roger B. Moore
ATTORNEY FOR COUNTY OF SAN JOAQUIN AND
COUNTY OF TRINITY

MOHAN HARRIS RUIZ LLP

S. Dean Ruiz
ATTORNEY FOR CENTRAL DELTA WATER AGENCY
AND SOUTH DELTA WATER AGENCY

## CERTIFICATE OF WORD COUNT

I, Roger B. Moore , hereby certify that, according to the word count produced by the computer program used to prepare this Respondents' Brief, the brief, including footnotes, has 11581 words, excluding tables, cover information, this Certificate of Word Count, and signature blocks. (Cal. Rule of Ct., rule 8.204, subds. (c)(l) and (c)(3).)

Date: November 28, 2022

LAW OFFICE OF ROGER B. MOORE

_____

Roger B. Moore
ATTORNEY FOR COUNTY OF SAN JOAQUIN AND
COUNTY OF TRINITY

## PROOF OF SERVICE

I hereby certify that I am a citizen of the United States, over the age of eighteen years, and not a party to this action.  My business address is 337 17th Street, Suite 211 Oakland, California 94612.  On November 28, 2022, I served the foregoing document:

**RESPONDENTS' BRIEF**

√      **Via Electronic Submission, per CRC 8.44(c) and 8.212:**
I forwarded a true and correct copy of the within documents electronically, via TrueFiling, addressed as set forth below.

| | |
|---|---|
| DANIEL J. O'HANLON<br>WILLIAM T. CHISUM<br>CARISSA M. BEECHAM<br>KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD<br>400 Capitol Mall, 27TH Floor<br>Sacramento, CA  95814<br>dohanlon@kmtg.com<br>wchisum@kmtg.com<br>cbeecham@kmtg.com<br>twhitman@kmtg.com<br>sramirez@kmtg.com<br>dclark@kmtg.com | *Attorneys for Westlands Water District* |
| ALLISON E. BURNS<br>DOUGLAS S. BROWN<br>SEAN D. WILLET<br>STRADLING YOCCA CARLSON & RAUTH<br>660 Newport Center Drive, Suite 1600<br>Newport Beach, CA  92660<br>dbrown@sycr.com<br>dpalmer@sycr.com | *Attorneys for Westlands Water District* |
| JON D. RUBIN<br>General Counsel, Westlands Water District<br>400 Capitol Mall, 28th Floor<br>Sacramento, CA  95814<br>jrubin@wwd.ca.gov | *Attorneys for Westlands Water District* |

The acts described above were undertaken and completed in Alameda County on November 28, 2022.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 28, 2022, at Oakland, California.

ROGER B. MOORE

## <u>PROOF OF SERVICE</u>

I hereby certify that I am a citizen of the United States, over the age of eighteen years, and not a party to this action.  My business address is 337 17ᵗʰ Street, Suite 211 Oakland, California 94612.  On November 28, 2022, I served the foregoing document:

**RESPONDENTS' BRIEF**

√      **<u>Service by United States Mail:</u>**

by placing a true copy thereof enclosed in a sealed envelope or package with postage thereon fully prepaid in a box or receptacle designated by my employer for collection and processing of correspondence for mailing with the United States Postal Service, addressed as set forth below.

Fresno County Superior Court
1100 Van Ness Avenue
Fresno, CA  93724-0002

The acts described above were undertaken and completed in Alameda County on November 28, 2022.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 28, 2022, at Oakland, California.

_____

ROGER B. MOORE

## PROOF OF SERVICE

I hereby certify that I am a citizen of the United States, over the age of eighteen years, and not a party to this action.  My business address is 337 17th Street, Suite 211 Oakland, California 94612.  On December 2, 2022, I served the foregoing document:

**RESPONDENTS' BRIEF [CORRECTED]**

√      **Via Electronic Submission, per CRC 8.44(c) and 8.212:**
I forwarded a true and correct copy of the within documents electronically, via TrueFiling, addressed as set forth below.

| | |
|---|---|
| DANIEL J. O'HANLON<br>WILLIAM T. CHISUM<br>CARISSA M. BEECHAM<br>KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD<br>400 Capitol Mall, 27TH Floor<br>Sacramento, CA  95814<br>dohanlon@kmtg.com<br>wchisum@kmtg.com<br>cbeecham@kmtg.com<br>twhitman@kmtg.com<br>sramirez@kmtg.com<br>dclark@kmtg.com | *Attorneys for Westlands Water District* |
| ALLISON E. BURNS<br>DOUGLAS S. BROWN<br>SEAN D. WILLET<br>STRADLING YOCCA CARLSON & RAUTH<br>660 Newport Center Drive, Suite 1600<br>Newport Beach, CA  92660<br>dbrown@sycr.com<br>dpalmer@sycr.com | *Attorneys for Westlands Water District* |
| JON D. RUBIN<br>General Counsel, Westlands Water District<br>400 Capitol Mall, 28th Floor<br>Sacramento, CA  95814<br>jrubin@wwd.ca.gov | *Attorneys for Westlands Water District* |

The acts described above were undertaken and completed in Alameda County on December 2, 2022.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on December 2, 2022, at Oakland, California.

_____
ROGER B. MOORE

## PROOF OF SERVICE

I hereby certify that I am a citizen of the United States, over the age of eighteen years, and not a party to this action.  My business address is 337 17th Street, Suite 211 Oakland, California 94612.  On December 2, 2022, I served the foregoing document:

**RESPONDENTS' BRIEF [CORRECTED]**

√       **Service by United States Mail:**
 by placing a true copy thereof enclosed in a sealed envelope or package with postage thereon fully prepaid in a box or receptacle designated by my employer for collection and processing of correspondence for mailing with the United States Postal Service, addressed as set forth below.

Fresno County Superior Court
1100 Van Ness Avenue
Fresno, CA  93724-0002

The acts described above were undertaken and completed in Alameda County on December 2, 2022.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on December 2, 2022, at Oakland, California.

_____
ROGER B. MOORE