1  CYNTHIA J. LARSEN (SBN 123994)
clarsen@orrick.com
2  JUSTIN GIOVANNETTONE (SBN 293794)
jgiovannettone@orrick.com
3  MARK C. SMITH (SBN 319003)
mark.smith@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
400 Capitol Mall, Suite 3000
5  Sacramento, CA  95814-4497
Telephone:     +1 916 447 9200
6  Facsimile:      +1 916 329 4900

7  DANIEL J. O'HANLON (SBN 122380)
dohanlon@kmtg.com
8  KRONICK, MOSKOVITZ, TIEDEMANN &
GIRARD
9  400 Capitol Mall, 27th Floor
Sacramento, CA  95814
10  Telephone: (916) 321-4500
Facsimile: (916) 321-4555

11

12  Attorneys for Proposed Intervenor-Defendant
Westlands Water District

13                     UNITED STATES DISTRICT COURT

14

15              FOR THE EASTERN DISTRICT OF CALIFORNIA

16

17                           FRESNO DIVISION

18  HOOPA VALLEY TRIBE,                    | Case No. 1:20-cv-01814-JLT-EPG

19           Plaintiff,                     | **DECLARATION OF CYNTHIA J.
                                            | LARSEN IN SUPPORT OF
20        v.                                | WESTLANDS WATER DISTRICT'S
                                            | REPLY IN SUPPORT OF MOTION TO
21  UNITED STATES BUREAU OF                 | INTERVENE AS DEFENDANT**
RECLAMATION; DAVID BERNHARDT, in
22  his official capacity as Secretary of the Interior; | Hearing Date:   December 23, 2022
BRENDA BURMAN, in her official capacity  | Time:           9:00 a.m.
23  as Commissioner of the United States Bureau | Courtroom:      4 – 7th Floor, Fresno
of Reclamation; ERNEST CONANT, in his   | Judge:          Hon. Jennifer L. Thurston
24  official capacity as U.S. Bureau of Reclamation |
California-Great Basin Regional Director; and | Trial Date:     None
25  UNITED STATES DEPARTMENT OF THE       | Action Filed:   August 13, 2020
INTERIOR,
26
27           Defendants.

28

**<u>DECLARATION OF CYNTHIA LARSEN IN SUPPORT OF WESTLANDS WATER DISTRICT'S REPLY IN SUPPORT OF MOTION TO INTERVENE</u>**

I, Cynthia J. Larsen, declare:

1.      I am a partner with Orrick, Herrington & Sutcliffe, LLP ("Orrick"), attorneys for Westlands Water District ("Westlands") in the above-captioned case.  I make this declaration in support of Westlands' Reply in support of Motion to Intervene.  As counsel for Westlands, I am familiar with this case including the facts and the procedural history.  I have personal knowledge of the facts in this declaration, and I could and would testify competently to them under oath if called as a witness.

2.      Attached as **Exhibit 1** to this Declaration is a true and correct copy of the Superior Court of California for the County of Fresno's May 25, 2021 Validation Judgment validating Westlands Repayment Contract No. 14-06-200-7823J-LTR1-P.

3.      Attached as **Exhibit 2** to this Declaration is a true and correct copy of Westlands' Repayment Contract No. 14-06-200-7823J-LTR1-P.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22th day of December 2022, at Sacramento, California.


By:       //s//  *Cynthia J. Larsen*
CYNTHIA J. LARSEN
Attorneys for Intervenor-Defendant
Westlands Water District

# Exhibit 1

[Exempt From Filing Fee
Government Code § 6103]

1  DANIEL J. O'HANLON, State Bar No. 122380
   *dohanlon@kmtg.com*
2  WILLIAM T. CHISUM, State Bar No. 142580
   *wchisum@kmtg.com*
3  KRONICK, MOSKOVITZ, TIEDEMANN & GIRARD
   1331 Garden Highway, 2nd Floor
4  Sacramento, California 95833
   Telephone: (916) 321-4500
5  Facsimile: (916) 321-4555

6  DOUGLAS S. BROWN, State Bar No. 123807
   *dbrown@sycr.com*
7  ALLISON E. BURNS, State Bar No. 198231
   *aburns@sycr.com*
8  STRADLING YOCCA CARLSON & RAUTH
   660 Newport Center Drive, Suite 1600
9  Newport Beach, California 92660
   Telephone: (949) 725-4000
10 Facsimile: (949) 725-4100

11 JON D. RUBIN, State Bar No. 196944
   *jrubin@wwd.ca.gov*
12 General Counsel, Westlands Water District
   P.O. Box 6056
13 Fresno, California 93703
   Telephone: (916) 321-4207
14 Facsimile: (559) 241-6277

15 Attorneys for Plaintiff
   WESTLANDS WATER DISTRICT

16

**FILED**

**MAY 25 2021**

FRESNO COUNTY SUPERIOR COURT
By_____
                    DEPT. 403

RECEIVED
3/3/2021 5:10 PM
FRESNO COUNTY SUPERIOR COURT
By: I. Herrera, Deputy

17             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

18               **COUNTY OF FRESNO, CENTRAL DIVISION**

19

| | |
|---|---|
| 20 WESTLANDS WATER DISTRICT, a California Water District, | Case No. 20CECG03336 |
| 21           Plaintiff, | ~~[PROPOSED]~~ |
| 22       v. | **VALIDATION JUDGMENT** |
| 23 ALL PERSONS INTERESTED IN THE CONTRACT BETWEEN THE UNITED | Assigned for All Purposes to: Hon. Kristi Culver Kapetan, Dept. 403 |
| 24 STATES AND WESTLANDS WATER DISTRICT PROVIDING FOR PROJECT | Date:    March 4, 2021 |
| 25 WATER SERVICE FROM DELTA DIVISION AND FACILITIES | Time:    3:30 p.m. Dept.:    403 - Kapetan |
| 26 REPAYMENT, | |
| 27           Defendants. | Action Filed:    November 13, 2020 Trial:              To Be Determined |
| 28 | |

2022020.2 2010-103

1

VALIDATION JUDGMENT

1   This matter is before the Court on Plaintiff Westlands Water District's ("District") Complaint
2   for Validation Judgment seeking a validation judgment, pursuant to Code of Civil Procedure section
3   860, et seq., as to a contract between the United States and the District providing for Central Valley
4   Project ("CVP" or "Project") water service and facilities repayment.   The specific contract is
5   identified as Contract No. 14-06-200-7823J-LTR1-P, and titled "Contract Between the United States
6   and Westlands Water District Providing for Project Water Service From Delta Division and
7   Facilities Repayment" ("Repayment Contract").

8   On September 15, 2020, the District's Board of Directors, by Resolution No. 124-20,
9   approved and authorized execution and delivery of the Repayment Contract in "substantially the
10   form presented to the Board," and on that basis, authorized the President of the District to execute
11   and deliver the Repayment Contract in substantially the form presented to the District's Board.  The
12   parties subsequently fully executed the Repayment Contract as authorized by Resolution No. 124-
13   20.

14   The District filed this action on November 13, 2020, attaching Resolution No. 124-20 and
15   the fully executed Repayment Contract to its validation complaint.

16   The Court having reviewed the pleadings, the District's Application for Validation
17   Judgment, and the papers and pleadings on file in this action, and good cause appearing therefor,

18   IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

19   1.      That this action is properly brought under Code of Civil Procedure section 860, et
20   seq., Water Code sections 35407, 35408, and 35855, and Government Code section 53510, et seq.,
21   to determine the validity of the proceedings leading to the approval and execution of the Repayment
22   Contract and related proceedings described in the complaint.

23   2.      That the District is a California Water District duly organized and existing under and
24   by virtue of the California Water District Law (Part 1 of Division 13 of the California Water Code,
25   at Section 34000, et seq.) lying within Fresno County and Kings County, State of California, and is
26   a public agency of the State of California.

27   / / /

28   / / /

1    3.    That the District completed publication of its Summons as directed in orders of this

2    Court, pursuant to Code of Civil Procedure section 861 and Government Code section 6063; and

3    that the time for answering the complaint specified in the Summons has since expired.

4    4.    That (a) the District has, and at all times relevant has had, the authority to approve

5    and execute the Repayment Contract under California Water District Law, including Water Code

6    sections 35851 and 35875; (b) the proceedings related to the District's approval and execution of the

7    Repayment Contract were consistent with the District's statutory authority; and (c) the Repayment

8    Contract is in the foregoing specified respects valid under applicable California law and binding

9    upon the District.

10    5.    That except as specified in paragraphs 1 to 4, inclusive, and notwithstanding any

11    contrary inference that might be drawn from the District's validation complaint or Resolution No.

12    124-20, this judgment is not intended to and does not adjudicate, inter alia:

13    (A)    Whether the Repayment Contract complies with any federal laws or

14    regulations;

15    (B)    Whether CVP operations to make water available to the District under the

16    Repayment Contract comply with applicable federal and state laws;

17    (C)    Whether the District is entitled to delivery of any specific amount of CVP

18    water;

19    (D)    Whether any specific quantity of water can be delivered to the District

20    without violating the rights of senior water rights holders, the public trust, or other requirements of

21    law;

22    (E)    Whether the District, the Bureau of Reclamation, or both must take action to

23    address migration of selenium or other contaminants, if any, from the District, and provide a

24    permanent drainage solution under applicable requirements of law;

25    (F)    Whether the District has a higher water rights priority than any other water

26    user, including but not limited to senior water rights claimants, those within the boundaries of Delta

27    agencies and counties, and those served by the Trinity River watershed;

28    / / /

(G)     Whether the Repayment Contract complies with the 1959 Delta Protection Act (Water Code § 12200, et seq.);

(H)     Whether the Repayment Contract complies with the 1992 Delta Protection Act (Pub. Resources Code § 29700, et seq.);

(I)     Whether the Repayment Contract complies with the 2009 Delta Reform Act (Pub. Resources Code § 29700, et seq.; Water Code § 85000, et seq.);

(J)     Whether the Repayment Contract complies with the Watershed Protection Act (Water Code § 11460, et seq.);

(K)     Whether the Repayment Contract complies with the Porter-Cologne Act (Water Code § 13000, et seq.);

(L)     Whether the Repayment Contract complies with the California Endangered Species Act (Fish & G. Code § 2050, et seq.); and

(M)     Whether water deliveries to the District violate prohibitions against unreasonable uses, methods of uses, and methods of diversion of water in article X, section 2, of the California Constitution.

6.     That this judgment shall not make moot, supersede, or serve as a bar to any pending or subsequent action against the Bureau of Reclamation by non-signatories to the Repayment Contract.

7.     That this judgment is not meant to serve as authority or precedent pertaining to any contract or agreement other than the Repayment Contract.

8.     That only as to the matters described in paragraphs 1 to 4, inclusive, pursuant to Code of Civil Procedure section 870, this judgment is and shall be forever binding and conclusive as to all matters herein adjudicated and as to all matters which could have been adjudicated herein against the District and against all other parties to this action.

9.     That only as to the matters described in paragraphs 1 to 4, inclusive, each and every person is hereby permanently enjoined and restrained from instituting any action or proceeding raising any issues as to the validity and binding nature of the Repayment Contract under the laws of

///

1  the State of California as to which this judgment is binding and conclusive pursuant to Code of Civil

2  Procedure section 870.

3      10.    That all parties shall bear their own attorneys' fees and costs.

4

5  DATED: ___5/25/21___

6

7                                    Superior Court Judge

8

# Exhibit 2



# United States Department of the Interior

BUREAU OF RECLAMATION
2800 Cottage Way
Sacramento, CA  95825-1898

IN REPLY REFER TO:

CGB-440
2.2.4.23

SEP 2 8 2020

Board of Directors
Westlands Water District
P.O. Box 6056
Fresno, CA 93703-6056

Subject:   Water Infrastructure Improvements for the Nation Act Contract No. 14-06-200-7823J-
LTR1-P Between the United States and the Westlands Water District Providing for
Project Water Service – Central Valley Project, California

Dear Board of Directors:

Enclosed is an executed original of the subject contract for your records.  The Bureau of
Reclamation appreciates the effort expended by the Westlands Water District and its
representatives relative to this contract.

The exhibit titled, "Repayment Obligation – Current Calculation Under the WIIN Act, Section
4011 (a) (2)", for the Contract Amendment will be finalized on the Effective Date of the
Contract Amendment, in accordance with the Water Infrastructure Improvements for the Nation
Act of 2016 (Public Law 114-322).

If there are any questions, please contact Mr. Stanley Data, Repayment Specialist, at
(916) 978-5246, or sdata@usbr.gov.

Sincerely,

Sheri A. Looper

Sheri A. Looper
Deputy Regional Resources Manager

Enclosure

**INTERIOR REGION 10 • CALIFORNIA–GREAT BASIN**
CALIFORNIA*, NEVADA*, OREGON*
* PARTIAL

Irrigation and M&I
Contract No.14-06-200-7823J-LTR1-P
(Oro Loma Partial Assignment)

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT BETWEEN THE UNITED STATES
AND
WESTLANDS WATER DISTRICT
PROVIDING FOR PROJECT WATER SERVICE
FROM DELTA DIVISION AND FACILITIES REPAYMENT

TABLE OF CONTENTS

| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 2 |
| 1. | Definitions | 6 |
| 2. | Term of Contract – Right to Use of Water | 11 |
| 3. | Water to be Made Available and Delivered to the Contractor | 13 |
| 4. | Time for Delivery of Water | 18 |
| 5. | Point of Diversion and Responsibility for Distribution of Water | 19 |
| 6. | Measurement of Water Within the Contractor's Service Area | 21 |
| 7. | Rates, Method of Payment for Water and Accelerated Repayment of Facilities | 23 |
| 8. | Non-Interest Bearing O&M Deficits | 33 |
| 9. | Sales, Transfers, or Exchanges of Water | 33 |
| 10. | Application of Payments and Adjustments | 34 |
| 11. | Temporary Reductions – Return Flows | 35 |
| 12. | Constraints on the Availability of Water | 36 |
| 13. | Unavoidable Groundwater Percolation | 39 |
| 14. | Compliance with Federal Reclamation Laws | 39 |
| 15. | Protection of Water and Air Quality | 39 |
| 16. | Water Acquired by the Contractor Other Than From the United States | 40 |
| 17. | Opinions and Determinations | 43 |
| 18. | Coordination and Cooperation | 43 |
| 19. | Charges for Delinquent Payments | 45 |
| 20. | Equal Employment Opportunity | 46 |
| 21. | General Obligation – Benefits Conditioned Upon Payment | 47 |
| 22. | Compliance with Civil Rights Laws and Regulations | 48 |
| 23. | Privacy Act Compliance | 48 |

Contract No. 14-06-200-7823J-LTR1-P

Table of Contents – continued

| Article No. | Title | Page No. |
|---|---|---|
| 24. | Contractor to Pay Certain Miscellaneous Costs | 49 |
| 25. | Water Conservation | 50 |
| 26. | Existing or Acquired Water or Water Rights | 51 |
| 27. | Operation and Maintenance by the Operating Non-Federal Entity | 52 |
| 28. | Contingent on Appropriation or Allotment of Funds | 54 |
| 29. | Books, Records, and Reports | 54 |
| 30. | Assignment Limited – Successors and Assigns Obligated | 54 |
| 31. | Severability | 55 |
| 32. | Resolution of Disputes | 56 |
| 33. | Officials Not to Benefit | 56 |
| 34. | Changes in Contractor's Organization and/or Service Area | 56 |
| 35. | Federal Laws | 57 |
| 36. | Reclamation Reform Act of 1982 | 57 |
| 37. | Certification of Nonsegregated Facilities | 58 |
| 38. | Notices | 58 |
| 39. | Medium for Transmitting Payment | 59 |
| 40. | Contract Drafting Considerations | 59 |
| 41. | Confirmation of Contract | 59 |
|  | Signature Page | 60 |

Exhibit A – Map of Contractor's Service Area
Exhibit B – Rates and Charges
Exhibit C – Repayment Obligation

Contract No. 14-06-200-7823J-LTR1-P

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

<u>CONTRACT BETWEEN THE UNITED STATES</u>
<u>AND</u>
<u>WESTLANDS WATER DISTRICT</u>
<u>PROVIDING FOR PROJECT WATER SERVICE</u>
<u>FROM DELTA DIVISION AND FACILITIES REPAYMENT</u>

1    THIS CONTRACT, made this ___ day of _____, 20____, in

2    pursuance generally of the Act of June 17, 1902, (32 Stat. 388), and acts amendatory thereof or

3    supplementary thereto, including but not limited to, the Acts of August 26, 1937 (50 Stat. 844),

4    as amended and supplemented, August 4, 1939 (53 Stat. 1187), as amended and supplemented,

5    July 2, 1956 (70 Stat. 483), June 21, 1963 (77 Stat. 68), October 12, 1982 (96 Stat. 1263),

6    October 27, 1986 (100 Stat. 3050), as amended, Title XXXIV of the Act of October 30, 1992

7    (106 Stat. 4706), as amended, and the Water Infrastructure Improvements for the Nation Act

8    (Public Law (Pub. L.) 114-322, 130 Stat. 1628), Section 4011 (a-d) and (f) ("WIIN Act"), all

9    collectively hereinafter referred to as Federal Reclamation law, between the UNITED STATES

10   OF AMERICA, hereinafter referred to as the United States, represented by the officer executing

11   this Contract, hereinafter referred to as the Contracting Officer, and WESTLANDS WATER

12   DISTRICT, hereinafter referred to as the Contractor, a public agency of the State of California,

13   duly organized, existing, and acting pursuant to the laws thereof;

14        WITNESSETH, That:

Contract No. 14-06-200-7823J-LTR1-P

<div align="center">EXPLANATORY RECITALS</div>

15

16    [1st]    WHEREAS, the United States has constructed and is operating the

17    California Central Valley Project (Project), for diversion, storage, carriage, distribution, and

18    beneficial use, for flood control, irrigation, municipal, domestic, industrial, fish and wildlife

19    mitigation, protection and restoration, generation and distribution of electric energy, salinity

20    control, navigation, and other beneficial uses, of waters of the Sacramento River, the American

21    River, the Trinity River, and the San Joaquin River and their tributaries; and

22    [2nd]    WHEREAS, the United States constructed the Delta-Mendota Canal and

23    related facilities, which will be used in part for the furnishing of water to the Contractor pursuant

24    to the terms of this Contract; and

25    [3rd]    WHEREAS, the rights to Project Water were acquired by the United

26    States pursuant to California law for operation of the Project; and

27    [4th]    WHEREAS, the Oro Loma Water District (District) and the United States

28    entered into Contract No. 14-06-200-7823, as amended, which established terms for the delivery

29    to the District of Project Water from the Delta Division facilities from April 7, 1959 to February

30    28, 1995; and

31    [5th]    WHEREAS, the United States and the District have pursuant to

32    Subsection 3404(c)(1) of the Central Valley Project Improvement Act (CVPIA), subsequently

33    entered into interim renewal contract(s) identified as Contract No. 14-06-200-7823-IR1 and

34    subsequent Interim Renewal Contracts 14-06-200-7823-IR2 through 14-06-200-7823-IR8, which

35    provided for water service to the District from March 1, 1995 through February 28, 2006; and

<div align="center">2</div>

36          [6th]    WHEREAS, the United States and the District entered into a long-term

37    contract identified as Contract No. 14-06-200-7823-LTR1, hereinafter referred to as the Long-

38    Term Contract, which provided for the continued water service to the District following

39    expiration of Contract No. 14-06-200-7823-IR8; and

40          [7th]    WHEREAS, the Contractor and the District executed an agreement on

41    March 1, 2012, to provide for the partial assignment of 4,000 acre-feet of Project Water under

42    the District's Long-Term Contract 14-06-200-7823-LTR1; and

43          [8th]    WHEREAS, the United States and the Contractor entered into Contract

44    No. 14-06-200-7823J as amended, hereinafter referred to as the Existing Contract, which

45    provided the Contractor Project Water from the Project facilities from March 1, 2012, through

46    February 28, 2030, and which was in effect the date the WIIN Act was enacted; and

47          [9th]    WHEREAS, on December 16, 2016, the 114th Congress of the United

48    States of America enacted the WIIN Act; and

49          [10th]   WHEREAS, Section 4011(a)(1) provides that "upon request of the

50    contractor, the Secretary of the Interior shall convert any water service contract in effect on the

51    date of enactment of this subtitle and between the United States and a water users' association

52    [Contractor] to allow for prepayment of the repayment contract pursuant to paragraph (2) under

53    mutually agreeable terms and conditions."; and

54          [11th]   WHEREAS, Section 4011(a)(1) further provides that "the manner of

55    conversion under this paragraph shall be as follows:  (A) Water service contracts that were

56    entered into under section (e) of the Act of August 4, 1939 (53 Stat. 1196), to be converted under

57    this section shall be converted to repayment contracts under section 9(d) of that Act

58 (53 Stat. 1195)”; and "(B) Water service contracts that were entered under subsection (c)(2) of

59 section 9 of the Act of August 4, 1939 (53 Stat. 1194), to be converted under this section shall be

60 converted to a contract under subsection (c)(1) of section 9 of that Act (53 Stat. 1195).”; and

61    [12th]   WHEREAS, Section 4011(a)(4)(C) further provides all contracts entered

62 into pursuant to Section 4011(a)(1), (2), and (3) shall "not modify other water service,

63 repayment, exchange and transfer contractual rights between the water users’ association

64 [Contractor], and the Bureau of Reclamation, or any rights, obligations, or relationships of the

65 water users’ association [Contractor] and their landowners as provided under State law.”; and

66    [13th]   WHEREAS, Section 4011(d)(3) and (4) of the WIIN Act provides that

67 "implementation of the provisions of this subtitle shall not alter…(3) the priority of a water

68 service or repayment contractor to receive water; or (4) except as expressly provided in this

69 section, any obligations under the Federal Reclamation law, including the continuation of

70 Restoration Fund charges pursuant to section 3407(d) (Pub. L. 102-575), of the water service and

71 repayment contractors making prepayments pursuant to this section.”; and

72    [14th]   WHEREAS, upon the request of the Contractor, the WIIN Act directs the

73 Secretary to convert irrigation water service contracts and municipal and industrial (M&I) water

74 service contracts into repayment contracts, amend existing repayment contracts, and allow

75 contractors to prepay their construction cost obligations pursuant to applicable Federal

76 Reclamation law; and

77    [15th]   WHEREAS, the United States has determined that the Contractor has

78 fulfilled all of its obligations under the Existing Contract; and

58 (53 Stat. 1195)”; and "(B) Water service contracts that were entered under subsection (c)(2) of

59 section 9 of the Act of August 4, 1939 (53 Stat. 1194), to be converted under this section shall be

60 converted to a contract under subsection (c)(1) of section 9 of that Act (53 Stat. 1195).”; and

61    [12th]   WHEREAS, Section 4011(a)(4)(C) further provides all contracts entered

62 into pursuant to Section 4011(a)(1), (2), and (3) shall "not modify other water service,

63 repayment, exchange and transfer contractual rights between the water users’ association

64 [Contractor], and the Bureau of Reclamation, or any rights, obligations, or relationships of the

65 water users’ association [Contractor] and their landowners as provided under State law.”; and

66    [13th]   WHEREAS, Section 4011(d)(3) and (4) of the WIIN Act provides that

67 "implementation of the provisions of this subtitle shall not alter…(3) the priority of a water

68 service or repayment contractor to receive water; or (4) except as expressly provided in this

69 section, any obligations under the Federal Reclamation law, including the continuation of

70 Restoration Fund charges pursuant to section 3407(d) (Pub. L. 102-575), of the water service and

71 repayment contractors making prepayments pursuant to this section.”; and

72    [14th]   WHEREAS, upon the request of the Contractor, the WIIN Act directs the

73 Secretary to convert irrigation water service contracts and municipal and industrial (M&I) water

74 service contracts into repayment contracts, amend existing repayment contracts, and allow

75 contractors to prepay their construction cost obligations pursuant to applicable Federal

76 Reclamation law; and

77    [15th]   WHEREAS, the United States has determined that the Contractor has

78 fulfilled all of its obligations under the Existing Contract; and

79        [16th]   WHEREAS, the Contractor has demonstrated to the satisfaction of the

80   Contracting Officer that the Contractor has utilized the Project Water supplies available to it for

81   reasonable and beneficial use and/or has demonstrated future demand for water use such that the

82   Contractor has the capability and expects to utilize fully for reasonable and beneficial use the

83   quantity of Project Water to be made available to it pursuant to this Contract; and

84        [17th]   WHEREAS, water obtained from the Project has been relied upon by

85   urban and agricultural areas within California for more than 50 years, and is considered by the

86   Contractor as an essential portion of its water supply; and

87        [18th]   WHEREAS, the economies of regions within the Project, including the

88   Contractor's, depend upon the continued availability of water, including water service from the

89   Project; and

90        [19th]   WHEREAS, the Secretary intends through coordination, cooperation, and

91   partnerships to pursue measures to improve water supply, water quality, and reliability of the

92   Project for all Project purposes; and

93        [20th]   WHEREAS, the mutual goals of the United States and the Contractor

94   include:  to provide for reliable Project Water supplies; to control costs of those supplies; to

95   achieve repayment of the Project as required by law; to guard reasonably against Project Water

96   shortages; to achieve a reasonable balance among competing demands for use of Project Water;

97   and to comply with all applicable environmental statutes, all consistent with the legal obligations

98   of the United States relative to the Project; and

99        [21st]   WHEREAS, the parties intend by this Contract to maintain a cooperative

100   relationship in order to achieve their mutual goals; and

5

Contract No. 14-06-200-7823J-LTR1-P

101      [22ⁿᵈ]   WHEREAS, the Contractor has utilized or may utilize transfers, contract

102   assignments, rescheduling, and conveyance of Project Water and non-Project water under this

103   Contract as tools to minimize the impacts of a Condition of Shortage and to maximize the

104   beneficial use of water; and

105      [23ʳᵈ]   WHEREAS, the parties desire and intend that this Contract not provide a

106   disincentive to the Contractor in continuing to carry out the beneficial activities set out in the

107   Explanatory Recital immediately above; and

108      [24ᵗʰ]   WHEREAS, the Contracting Officer and the Contractor agree that this

109   Contract complies with Section 4011 of the WIIN Act; and

110      [25ᵗʰ]   WHEREAS, the Contracting Officer and the Contractor agree to amend

111   and convert the Existing Contract pursuant to Section 4011 of the WIIN Act and other Federal

112   Reclamation law on the terms and conditions set forth below.

113      NOW, THEREFORE, in consideration of the mutual and dependent covenants

114   herein contained, it is hereby mutually agreed by the parties hereto as follows:

115                             <u>DEFINITIONS</u>

116      1.      When used herein unless otherwise distinctly expressed, or manifestly

117   incompatible with the intent of the parties as expressed in this Contract, the term:

118      (a)      "Additional Capital Obligation" shall mean construction costs or other

119   capitalized costs incurred after the Effective Date or not reflected in the Existing Capital

120   Obligation as defined herein and in accordance with Section 4011, subsection (a)(2)(B) and

121   (a)(3)(B) of the Water Infrastructure Improvements for the Nation Act (Pub. L. 114-322, 130

122   Stat. 1628) ("WIIN Act");

Contract No. 14-06-200-7823J-LTR1-P

123             (b)      "Calendar Year" shall mean the period January 1 through December 31,

124   both dates inclusive;

125             (c)      "Charges" shall mean the payments required by Federal Reclamation law

126   in addition to the Rates and Tiered Pricing Component specified in this Contract as determined

127   annually by the Contracting Officer pursuant to this Contract;

128             (d)      "Condition of Shortage" shall mean a condition respecting the Project

129   during any Year such that the Contracting Officer is unable to deliver sufficient water to meet the

130   Contract Total;

131             (e)      "Contracting Officer" shall mean the Secretary of the Interior's duly

132   authorized representative acting pursuant to this Contract or applicable Federal Reclamation law

133   or regulation;

134             (f)      "Contract Total" shall mean the maximum amount of water to which the

135   Contractor is entitled under subdivision (a) of Article 3 of this Contract;

136             (g)      "Contractor's Service Area" shall mean the area to which the Contractor is

137   permitted to provide Project Water under this Contract as described in Exhibit "A" attached

138   hereto, which may be modified from time to time in accordance with Article 34 of this Contract

139   without amendment of this Contract;

140             (h)      "CVPIA" shall mean the Central Valley Project Improvement Act, Title

141   XXXIV of the Act of October 30, 1992 (106 Stat. 4706);

142             (i)      "Delta Division Facilities" shall mean those existing and future Project

143   facilities in and south of the Sacramento-San Joaquin Rivers Delta, including, but not limited to,

144   the C.W. "Bill" Jones Pumping Plant, the O'Neill Forebay, the O'Neill Pumping/Generating

Contract No. 14-06-200-7823J-LTR1-P

145    Plant, and the San Luis Reservoir, used to divert, store, and convey water to those Project

146    Contractors entitled to receive water conveyed through the Delta-Mendota Canal;

147              (j)      "Eligible Lands" shall mean all lands to which Irrigation Water may be

148    delivered in accordance with Section 204 of the Reclamation Reform Act of 1982 (96 Stat.

149    1263), as amended;

150              (k)      "Excess Lands" shall mean all lands in excess of the limitations contained

151    in Section 204 of the Reclamation Reform Act of 1982, other than those lands exempt from

152    acreage limitation under Federal Reclamation law;

153              (l)      "Existing Capital Obligation" shall mean the remaining amount of

154    construction costs or other capitalized costs allocable to the Contractor as described in Section

155    4011, subsections (a)(2)(A) and (a)(3)(A) of the WIIN Act, and as identified in the Central

156    Valley Project Irrigation Water Rates and/or Municipal and Industrial Water Rates, respectively,

157    in the Final 2020 Ratebooks, as adjusted to reflect payments not reflected in such schedule.  The

158    Contracting Officer has computed the Existing Capital Obligation and such amount is set forth in

159    Exhibit "C", which is incorporated herein by reference;

160             (m)     "Full Cost Rate" shall mean an annual rate, as determined by the

161    Contracting Officer that shall amortize the expenditures for construction properly allocable to the

162    Project irrigation or M&I functions, as appropriate, of facilities in service including all O&M

163    deficits funded, less payments, over such periods as may be required under Federal Reclamation

164    law, or applicable contract provisions.  Interest will accrue on both the construction expenditures

165    and funded O&M deficits from October 12, 1982, on costs outstanding at that date, or from the

166    date incurred in the case of costs arising subsequent to October 12 1982, and shall be calculated

167   in accordance with subsections 202(3)(B) and (3)(C) of the Reclamation Reform Act of 1982.

168   The Full Cost Rate includes actual operation, maintenance, and replacement costs consistent with

169   Section 426.2 of the Rules and Regulations for the Reclamation Reform Act of 1982;

170                  (n)     "Ineligible Lands" shall mean all lands to which Irrigation Water may not

171   be delivered in accordance with Section 204 of the Reclamation Reform Act of 1982;

172                  (o)     "Irrigation Full Cost Water Rate" shall mean the Full Cost Rate applicable

173   to the delivery of Irrigation Water;

174                  (p)     "Irrigation Water" shall mean the use of Project Water to irrigate lands
175   primarily for the production of commercial agricultural crops or livestock, and domestic and
176   other uses that are incidental thereto;

177                  (q)     "Landholder" shall mean a party that directly or indirectly owns or leases

178   nonexempt land, as provided in 43 CFR 426.2;

179                  (r)     "Municipal and Industrial (M&I) Water" shall mean the use of Project
180   Water for municipal, industrial, and miscellaneous other purposes not falling under the definition
181   of "Irrigation Water" or within another category of water use under an applicable Federal
182   authority;

183                  (s)     "M&I Full Cost Water Rate" shall mean the Full Cost Rate applicable to

184   the delivery of M&I Water;

185                  (t)     "Operation and Maintenance" or "O&M" shall mean normal and

186   reasonable care, control, operation, repair, replacement (other than capital replacement), and

187   maintenance of Project facilities;

188                  (u)     "Operating Non-Federal Entity" shall mean the entity(ies), its (their)

189   successors or assigns, which has (have) the obligation to operate and maintain all or a portion of

190   the Delta Division Facilities pursuant to written agreement(s) with the United States.  When this

191   Contract was entered into, the Operating Non-Federal Entity was the San Luis & Delta-Mendota

192   Water Authority;

193   (v)   "Project" shall mean the Central Valley Project owned by the United

194   States and managed by the Department of the Interior, Bureau of Reclamation;

195   (w)   "Project Contractors" shall mean all parties who have contracts for water

196   service for Project Water from the Project with the United States pursuant to Federal

197   Reclamation law;

198   (x)   "Project Water" shall mean all water that is developed, diverted, stored, or

199   delivered by the Secretary in accordance with the statutes authorizing the Project and in

200   accordance with the terms and conditions of water rights acquired pursuant to California law;

201   (y)   "Rates" shall mean the payments determined annually by the Contracting

202   Officer in accordance with the then-current applicable water ratesetting policies for the Project,

203   as described in subdivision (a) of Article 7 of this Contract;

204   (z)   "Recent Historic Average" shall mean the most recent five- (5) year

205   average of the final forecast of Water Made Available to the Contractor pursuant to this Contract

206   or its preceding contract(s);

207   (aa)   "Repayment Obligation" for Water Delivered as Irrigation Water shall

208   mean the Existing Capital Obligation discounted by ½ of the Treasury rate, which shall be the

209   amount due and payable to the United States, pursuant to Section 4011(a)(2)(A) of the WIIN

210   Act; and for Water Delivered as M&I Water shall mean the amount due and payable to the

211   United States, pursuant to  Section 4011(a)(3)(A) of the WIIN Act;

10

Contract No. 14-06-200-7823J-LTR1-P

212          (bb)     "Secretary" shall mean the Secretary of the Interior, a duly appointed

213    successor, or an authorized representative acting pursuant to any authority of the Secretary and

214    through any agency of the Department of the Interior;

215          (cc)     "Tiered Pricing Component" shall be the incremental amount to be paid

216    for each acre-foot of Water Delivered as described in Article 7 of this Contract and as provided

217    for in Exhibit "B";

218          (dd)     "Water Delivered" or "Delivered Water" shall mean Project Water

219    diverted for use by the Contractor at the point(s) of delivery approved by the Contracting

220    Officer;

221          (ee)     "Water Made Available" shall mean the estimated amount of Project

222    Water that can be delivered to the Contractor for the upcoming Year as declared by the

223    Contracting Officer, pursuant to subdivision (a) of Article 4 of this Contract;

224          (ff)     "Water Scheduled" shall mean Project Water made available to the

225    Contractor for which times and quantities for delivery have been established by the Contractor

226    and Contracting Officer, pursuant to subdivision (b) of Article 4 of this Contract; and

227          (gg)     "Year" shall mean the period from and including March 1 of each

228    Calendar Year through the last day of February of the following Calendar Year.

229                      <u>TERM OF CONTRACT – RIGHT TO USE OF WATER</u>

230    2.     (a)     This Contract shall be effective October 1, 2020, hereinafter known as the

231    "Effective Date", and shall continue so long as the Contractor pays applicable Rates and Charges

Contract No. 14-06-200-7823J-LTR1-P

232    under this Contract, consistent with Section 9(d) or 9(c)(1) of the Act of August 4, 1939 (53 Stat.

233    1195) as applicable, and applicable law;

234                (1)    *Provided, That* the Contracting Officer shall not seek to terminate

235    this Contract for failure to fully or timely pay applicable Rates and Charges by the Contactor,

236    unless the Contracting Officer has first provided at least sixty (60) calendar days written notice

237    to the Contractor of such failure to pay and the Contractor has failed to cure such failure to pay,

238    or to diligently commence and maintain full curative payments satisfactory to the Contracting

239    Officer within the sixty (60) calendar days' notice period;

240                (2)    *Provided, further, That* the Contracting Officer shall not seek to

241    suspend making water available or declaring Water Made Available pursuant to this Contract for

242    non-compliance by the Contractor with the terms of this Contract or Federal law, unless the

243    Contracting Officer has first provided at least thirty (30) calendar days written notice to the

244    Contractor and the Contractor has failed to cure such non-compliance, or to diligently commence

245    curative actions satisfactory to the Contracting Officer for a non-compliance that cannot be fully

246    cured within the thirty (30) calendar days' notice period.  If the Contracting Officer has

247    suspended making water available pursuant to this paragraph, upon cure of such non-compliance

248    satisfactory to the to the Contracting Officer, the Contracting Officer shall resume making water

249    available and declaring Water Made Available pursuant to this Contract;

250                (3)    *Provided, further, That* this Contract may be terminated at any

251    time by mutual consent of the parties hereto.

252        (b)    Upon complete payment of the Repayment Obligation by the Contractor,

253    and notwithstanding any Additional Capital Obligation that may later be established, the acreage

Contract No. 14-06-200-7823J-LTR1-P

254    limitations, reporting, and full cost pricing provisions of the Reclamation Reform Act of 1982,

255    and subdivisions (j) Eligible Lands, (k) Excess Lands, and (n) Ineligible Lands, of Article 1 of

256    this Contract shall no longer be applicable.

257            (c)      Notwithstanding any provision of this Contract, the Contractor reserves

258    and shall have all rights and benefits under the Act of July 2, 1956 (70 Stat. 483), to the extent

259    allowed by law.

260            (d)      Notwithstanding any provision of this Contract, the Contractor reserves

261    and shall have all rights and benefits under the Act of June 21, 1963 (77 Stat. 68), to the extent

262    allowed by law.

263    <u>WATER TO BE MADE AVAILABLE AND DELIVERED TO THE CONTRACTOR</u>

264    3.    (a)      During each Year, consistent with all applicable State water rights permits,

265    and licenses, Federal law, and subject to the provisions set forth in Articles 11 and 12 of this

266    Contract, the Contracting Officer shall make available for delivery to the Contractor 4,000 acre-

267    feet of Project Water for irrigation and M&I purposes.  Water Delivered to the Contractor in

268    accordance with this subdivision shall be scheduled and paid for pursuant to the provisions of

269    Articles 4 and 7 of this Contract.

270            (b)      Because the capacity of the Project to deliver Project Water has been

271    constrained in recent years and may be constrained in the future due to many factors including

272    hydrologic conditions and implementation of Federal and State laws, the likelihood of the

273    Contractor actually receiving the amount of Project Water set out in subdivision (a) of this

274    Article in any given Year is uncertain.  The Contracting Officer's modeling referenced in the

275    programmatic environmental impact statement prepared pursuant to Section 3404(c) of the

276   CVPIA projected that the Contract Total set forth in this Contract will not be available to the

277   Contractor in many years.  During the most recent five years prior to execution of Contract No.

278   14-06-200-7823-LTR1, the Recent Historic Average Water Made Available to the District was

279   3,027 acre-feet.  Nothing in this subdivision (b) of this Article shall affect the rights and

280   obligations of the parties under any provision of this Contract.

281          (c)      The Contractor shall utilize the Project Water in accordance with all

282   applicable legal requirements.

283                 (1)      In the event any Project Contractor (other than a Cross Valley

284   Contractor) that receives Project Water through the Delta Division Facilities obtains a

285   contractual agreement that the Contracting Officer shall make Project Water available at a point

286   or points of delivery in or north of the Delta, at the request of the Contractor and upon

287   completion of any required environmental documentation, this Contract shall be amended to

288   provide for deliveries in or north of the Delta on mutually agreeable terms.  Such amendments to

289   this Contract shall be limited solely to those changes made necessary by the addition of such

290   alternate points of delivery in or north of the Delta; *Provided, That* the Contracting Officer's use

291   of the Harvey O. Banks Pumping Plant to deliver Project Water does not trigger this right of

292   amendment.

293          (d)      The Contractor shall make reasonable and beneficial use of all water

294   furnished pursuant to this Contract.  Groundwater recharge programs (direct, indirect, or in lieu),

295   groundwater banking programs, surface water storage programs, and other similar programs

296   utilizing Project Water or other water furnished pursuant to this Contract conducted within the

297   Contractor's Service Area which are consistent with applicable State law and result in use

14

298    consistent with Federal Reclamation law will be allowed; *Provided, That* any direct recharge

299    program(s) is (are) described in the Contractor's water conservation plan submitted pursuant to

300    Article 25 of this Contract; *Provided, further, That* such water conservation plan demonstrates

301    sufficient lawful uses exist in the Contractor's Service Area so that using a long-term average,

302    the quantity of Delivered Water is demonstrated to be reasonable for such uses and in

303    compliance with Federal Reclamation law.  Groundwater recharge programs, groundwater

304    banking programs, surface water storage programs, and other similar programs utilizing Project

305    Water or other water furnished pursuant to this Contract conducted outside the Contractor's

306    Service Area may be permitted upon written approval of the Contracting Officer, which approval

307    will be based upon environmental documentation, Project Water rights, and Project operational

308    concerns.  The Contracting Officer will address such concerns in regulations, policies, or

309    guidelines.

310            (e)    The Contractor shall comply with requirements applicable to the

311    Contractor in biological opinion(s) prepared as a result of a consultation regarding the execution

312    of any water service contract between the Contracting Officer and the Contractor in effect

313    immediately prior to the Effective Date undertaken pursuant to Section 7 of the Endangered

314    Species Act of 1973 (ESA), as amended, that are within the Contractor's legal authority to

315    implement.  The Existing Contract, which evidences in excess of 45 years of diversions for

316    irrigation and/or M&I purposes of the quantities of Project Water provided in subdivision (a) of

317    Article 3 of this Contract, will be considered in developing an appropriate baseline for any

318    required biological assessment(s) prepared pursuant to the ESA, and any other needed

319    environmental review.  Nothing herein shall be construed to prevent the Contractor from

320    challenging or seeking judicial relief in a court of competent jurisdiction with respect to any

321    biological opinion or other environmental documentation referred to in this Article.

322            (f)      Following the declaration of Water Made Available under Article 4 of this

323    Contract, the Contracting Officer will make a determination whether Project Water, or other

324    water available to the Project, can be made available to the Contractor in addition to the Contract

325    Total under this Article during the Year without adversely impacting other Project Contractors.

326    At the request of the Contractor, the Contracting Officer will consult with the Contractor prior to

327    making such a determination.  If the Contracting Officer determines that Project Water, or other

328    water available to the Project, can be made available to the Contractor, the Contracting Officer

329    will announce the availability of such water and shall so notify the Contractor as soon as

330    practical.  The Contracting Officer will thereafter meet with the Contractor and other Project

331    Contractors capable of taking such water to determine the most equitable and efficient allocation

332    of such water.  If the Contractor requests the delivery of any quantity of such water, the

333    Contracting Officer shall make such water available to the Contractor in accordance with

334    applicable statutes, regulations, guidelines, and policies.  Subject to existing long-term

335    contractual commitments, water rights, and operational constraints, long-term Project

336    Contractors shall have a first right to acquire such water, including Project Water made available

337    pursuant to Section 215 of the Reclamation Reform Act of 1982.

338            (g)     The Contractor may request permission to reschedule for use during the

339    subsequent Year some or all of the Water Made Available to the Contractor during the current

340    Year, referred to as "rescheduled water."  The Contractor may request permission to use during

341    the current Year a quantity of Project Water which may be made available by the United States

342    to the Contractor during the subsequent Year referred to as "preuse."  The Contracting Officer's

343    written approval may permit such uses in accordance with applicable statutes, regulations,

344    guidelines, and policies.

345           (h)    The Contractor's right pursuant to Federal Reclamation law and applicable

346    State law to the reasonable and beneficial use of the Water Delivered pursuant to this Contract

347    shall not be disturbed, and this Contract shall continue so long as the Contractor pays applicable

348    Rates and Charges under this Contract consistent with Section 9(d) or 9(c)(1) of the Act of

349    August 4, 1939 (53 Stat. 1195) as applicable, and applicable law.  Nothing in the preceding

350    sentence shall affect the Contracting Officer's ability to impose shortages under Article 11 or

351    subdivision (b) of Article 12 of this Contract.

352           (i)    Project Water furnished to the Contractor pursuant to this Contract may be

353    delivered for purposes other than those described in subdivisions (p) and (r) of Article 1 of this

354    Contract upon written approval by the Contracting Officer in accordance with the terms and

355    conditions of such approval.

356           (j)    The Contracting Officer shall make reasonable efforts to protect the water

357    rights necessary for the Project and to provide the water available under this Contract.  The

358    Contracting Officer shall not object to participation by the Contractor, in the capacity and to the

359    extent permitted by law, in administrative proceedings related to the Project Water rights;

360    *Provided, That* the Contracting Officer retains the right to object to the substance of the

361    Contractor's position in such a proceeding; *Provided, further, That* in such proceedings the

362    Contracting Officer shall recognize the Contractor has a legal right under the terms of this

363    Contract to use Project Water.

Contract No. 14-06-200-7823J-LTR1-P

364                          TIME FOR DELIVERY OF WATER

365         4.      (a)      On or about February 20 each Calendar Year, the Contracting Officer shall

366   announce the Contracting Officer's expected declaration of the Water Made Available.  Such

367   declaration will be expressed in terms of Water Made Available and the Recent Historic Average

368   and will be updated monthly, and more frequently if necessary, based on the then-current

369   operational and hydrologic conditions and a new declaration with changes, if any, to the Water

370   Made Available will be made.  The Contracting Officer shall provide forecasts of Project

371   operations and the basis of the estimate, with relevant supporting information, upon the written

372   request of the Contractor.  Concurrently with the declaration of the Water Made Available, the

373   Contracting Officer shall provide the Contractor with the updated Recent Historic Average.

374                 (b)      On or before each March 1 and at such other times as necessary, the

375   Contractor shall submit to the Contracting Officer a written schedule, satisfactory to the

376   Contracting Officer, showing the monthly quantities of Project Water to be delivered by the

377   United States to the Contractor pursuant to this Contract for the Year commencing on such

378   March 1.  The Contracting Officer shall use all reasonable means to deliver Project Water

379   according to the approved schedule for the Year commencing on such March 1.

380                 (c)      The Contractor shall not schedule Project Water in excess of the quantity

381   of Project Water the Contractor intends to put to reasonable and beneficial use within the

382   Contractor's Service Area or to sell, transfer, or exchange pursuant to Article 9 of this Contract

383   during any Year.

384                 (d)      Subject to the conditions set forth in subdivision (a) of Article 3 of this

385   Contract, the United States shall deliver Project Water to the Contractor in accordance with the

Contract No. 14-06-200-7823J-LTR1-P

386    initial schedule submitted by the Contractor pursuant to subdivision (b) of this Article, or any

387    written revision(s) thereto satisfactory to the Contracting Officer, submitted within a reasonable

388    time prior to the date(s) on which the requested change(s) is/are to be implemented.

389    <u>POINT OF DIVERSION AND RESPONSIBILITY FOR DISTRIBUTION OF WATER</u>

390    5.    (a)    Project Water scheduled pursuant to subdivision (b) of Article 4 of this

391    Contract shall be delivered to the Contractor at a point or points on the Delta-Mendota Canal and

392    any additional point or points of delivery either on Project facilities or another location or

393    locations mutually agreed to in writing by the Contracting Officer and the Contractor.

394    (b)    The Contracting Officer, either directly or indirectly through its written

395    agreements(s) with the Operating Non-Federal Entity(ies), shall make all reasonable efforts to

396    maintain sufficient flows and levels of water in the Project facilities to deliver Project Water to

397    the Contractor at the point or points of delivery established pursuant to subdivision (a) of this

398    Article.

399    (c)    The Contractor shall deliver Irrigation Water in accordance with any

400    applicable land classification provisions of Federal Reclamation law and the associated

401    regulations.  The Contractor shall not deliver Project Water to land outside the Contractor's

402    Service Area unless approved in advance by the Contracting Officer.

403    (d)    All Water Delivered to the Contractor pursuant to this Contract shall be

404    measured and recorded with equipment furnished, installed, operated, and maintained by the

405    Contracting Officer either directly or indirectly through its written agreements(s) with the

406    Operating Non-Federal Entity(ies), unless undertaken by the Contractor with the consent of the

407    Contracting Officer at the point or points of delivery established pursuant to subdivision (a) of

408   this Article.  Upon the request of either party to this Contract, the Contracting Officer shall

409   investigate, or cause to be investigated by the appropriate Operating Non-Federal Entity(ies), the

410   accuracy of such measurements and shall take any necessary steps to adjust any errors appearing

411   therein.  For any period of time when accurate measurements have not been made, the

412   Contracting Officer shall consult with the Contractor and the appropriate Operating Non-Federal

413   Entity(ies), if any, prior to making a final determination of the quantity delivered for that period

414   of time.

415         (e)      Absent a separate contrary written agreement with the Contractor, neither

416   the Contracting Officer nor any Operating Non-Federal Entity(ies) shall be responsible for the

417   control, carriage, handling, use, disposal, or distribution of Water Delivered to the Contractor

418   pursuant to this Contract beyond the point or points of delivery established pursuant to

419   subdivision (a) of this Article.  The Contractor shall indemnify the United States, its officers,

420   employees, agents, and assigns on account of damage or claim of damage of any nature

421   whatsoever for which there is legal responsibility, including property damage, personal injury, or

422   death arising out of or connected with  the control, carriage, handling, use, disposal, or

423   distribution of such Water Delivered beyond such point or points of delivery except for any

424   damage or claim arising out of: (i) acts or omissions of the Contracting Officer or any of its

425   officers, employees, agents, and assigns, including the Operating Non-Federal Entity(ies) with

426   the intent of creating the situation resulting in any damage or claim; (ii) willful misconduct of the

427   Contracting Officer or any of its officers, employees, agents, and assigns, including the

428   Operating Non-Federal Entity(ies); (iii) negligence of the Contracting Officer or any of its

429   officers, employees, agents, and assigns, including the Operating Non-Federal Entity(ies); or (iv)

20

430    a malfunction of facilities owned and/or operated by the United States or the Operating Non-

431    Federal Entity(ies).

432    <u>MEASUREMENT OF WATER WITHIN THE CONTRACTOR'S SERVICE AREA</u>

433    6.    (a)    The Contractor has established a measuring program satisfactory to the

434    Contracting Officer.  The Contractor shall ensure that all surface water delivered for irrigation

435    purposes within the Contractor's Service Area is measured at each agricultural turnout and such

436    water delivered for M&I purposes is measured at each M&I service connection.  The water

437    measuring devices or water measuring methods of comparable effectiveness must be acceptable

438    to the Contracting Officer.  The Contractor shall be responsible for installing, operating,

439    maintaining, and repairing all such measuring devices and implementing all such water

440    measuring methods at no cost to the United States.  The Contractor shall use the information

441    obtained from such water measuring devices or water measuring methods to ensure its proper

442    management of the water; to bill water users for water delivered by the Contractor; and, if

443    applicable, to record water delivered for M&I purposes by customer class as defined in the

444    Contractor's water conservation plan provided for in Article 25 of this Contract.  Nothing herein

445    contained, however, shall preclude the Contractor from establishing and collecting any charges,

446    assessments, or other revenues authorized by California law.  The Contractor shall include a

447    summary of all its annual surface water deliveries in the annual report described in subdivision

448    (c) of Article 25 of this Contract.

449    (b)    To the extent the information has not otherwise been provided, upon

450    execution of this Contract, the Contractor shall provide to the Contracting Officer a written

451    report describing the measurement devices or water measuring methods being used or to be used

452  to implement subdivision (a) of this Article and identifying the agricultural turnouts and the M&I

453  service connections or alternative measurement programs approved by the Contracting Officer,

454  at which such measurement devices or water measuring methods are being used, and, if

455  applicable, identifying the locations at which such devices and/or methods are not yet being used

456  including a time schedule for implementation at such locations.  The Contracting Officer shall

457  advise the Contractor in writing within 60 days as to the adequacy and necessary modifications,

458  if any, of the measuring devices or water measuring methods identified in the Contractor's report

459  and if the Contracting Officer does not respond in such time, they shall be deemed adequate.  If

460  the Contracting Officer notifies the Contractor that the measuring devices or methods are

461  inadequate, the parties shall within 60 days following the Contracting Officer's response,

462  negotiate in good faith the earliest practicable date by which the Contractor shall modify said

463  measuring devices and/or measuring methods as required by the Contracting Officer to ensure

464  compliance with subdivision (a) of this Article.

465          (c)     All new surface water delivery systems installed within the Contractor's

466  Service Area after the Effective Date shall also comply with the measurement provisions

467  described in subdivision (a) of this Article.

468          (d)     The Contractor shall inform the Contracting Officer and the State of

469  California in writing by April 30 of each Year of the monthly volume of surface water delivered

470  within the Contractor's Service Area during the previous Year.

471          (e)     The Contractor shall inform the Contracting Officer and the Operating

472  Non-Federal Entity(ies) on or before the 20th calendar day of each month of the quantity of

473  Irrigation Water and M&I Water taken during the preceding month.

474     RATES, METHOD OF PAYMENT FOR WATER AND ACCELERATED REPAYMENT OF
475                        FACILITIES

476          7.      (a)      Notwithstanding the Contractor's full prepayment of the Repayment

477    Obligation pursuant to Section 4011, subsection (a)(2)(A) and subsection (a)(3)(A) of the WIIN

478    Act, as set forth in Exhibit "C", and any payments required pursuant to Section 4011, subsection

479    (b) of the WIIN Act, to reflect the adjustment for the final cost allocation as described in this

480    Article, subsection (b), the Contractor's Project construction and other obligations shall be

481    determined in accordance with:  (i) the Secretary's ratesetting policy for Irrigation Water adopted

482    in 1988 and the Secretary's then-existing ratesetting policy for M&I Water, consistent with the

483    WIIN Act; and such ratesetting policies shall be amended, modified, or superseded only through

484    a public notice and comment procedure; (ii) applicable Federal Reclamation law and associated

485    rules and regulations, or policies, and (iii) other applicable provisions of this Contract.  Payments

486    shall be made by cash transaction, electronic funds transfers, or any other mechanism as may be

487    agreed to in writing by the Contractor and the Contracting Officer.  The Rates, Charges, and

488    Tiered Pricing Component applicable to the Contractor upon execution of this Contract are set

489    forth in Exhibit "B", as may be revised annually.

490                (1)      The Contractor shall pay the United States as provided for in this

491    Article of this Contract for all Delivered Water at Rates, Charges, and Tiered Pricing Component

492    in accordance with policies for Irrigation Water and M&I Water.  The Contractor's Rates shall

493    be established to recover its estimated reimbursable costs included in the operation and

494    maintenance component of the Rate and amounts established to recover deficits and other

495    charges, if any, including construction costs as identified in the following subdivisions.

Contract No. 14-06-200-7823J-LTR1-P

496            (2)       In accordance with the WIIN Act, the Contractor's allocable share

497   of Project construction costs will be repaid pursuant to the provisions of this Contract.

498                (A)      The amount due and payable to the United States, pursuant

499   to the WIIN Act, shall be the Repayment Obligation.  The Repayment Obligation has been

500   computed by the Contracting Officer in a manner consistent with the WIIN Act and is set forth

501   as a lump sum payment (M&I and Irrigation) and as four (4) approximately equal annual

502   installments (Irrigation Only) to be repaid no later than three (3) years after the Effective Date as

503   set forth in Exhibit "C".  The Repayment Obligation is due in lump sum by November 30, 2020

504   as provided by the WIIN Act.  The Contractor must provide appropriate notice to the Contracting

505   Officer in writing no later than thirty (30) days prior to the Effective Date, if electing to repay the

506   amount due using the lump sum alternative.  If such notice is not provided by such date, the

507   Contractor shall be deemed to have elected the installment payment alternative, in which case,

508   the first such payment shall be made no later than November 30, 2020.  The second payment

509   shall be made no later than the first anniversary of the first payment date.  The third payment

510   shall be made no later than the second anniversary of the first payment date.  The final payment

511   shall be made no later than October 1, 2023.  If the installment payment option is elected by the

512   Contractor, the Contractor may pre-pay the remaining portion of the Repayment Obligation by

513   giving the Contracting Officer sixty (60) days written notice, in which case, the Contracting

514   Officer shall re-compute the remaining amount due to reflect the pre-payment using the same

515   methodology as was used to compute the initial annual installment payment amount, which is

516   illustrated in Exhibit "C".  Notwithstanding any Additional Capital Obligation that may later be

Contract No. 14-06-200-7823J-LTR1-P

517    established, receipt of the Contractor's payment of the Repayment Obligation to the United

518    States shall fully and permanently satisfy the Existing Capital Obligation.

519                         (B)      Additional Capital Obligations that are not reflected in, the

520    schedules referenced in Exhibit "C" and properly assignable to the Contractor, shall be repaid as

521    prescribed by the WIIN Act without interest except as required by law.  Consistent with Federal

522    Reclamation law, interest shall continue to accrue on the M&I portion of the Additional Capital

523    Obligation assigned to the Contractor until such costs are paid.  Increases or decreases in the

524    Additional Capital Obligation assigned to the Contractor caused solely by annual adjustment of

525    the Additional Capital Obligation assigned to each Project contractor by the Secretary shall not

526    be considered in determining the amounts to be paid pursuant to this subdivision (a)(2)(B),

527    however, will be considered under subdivision (b) of this Article.  A separate agreement shall be

528    established by the Contractor and the Contracting Officer to accomplish repayment of the

529    Additional Capital Obligation assigned to the Contractor within the timeframe prescribed by the

530    WIIN Act, subject to the following:

531                         (1)      If the collective Additional Capital Obligation

532    properly assignable to the contractors exercising conversion under Section 4011 of the WIIN Act

533    is less than five million dollars ($5,000,000), then the portion of such costs properly assignable

534    to the Contractor shall be repaid not more than five (5)-years after the Contracting Officer

535    notifies the Contractor of the Additional Capital Obligation; *Provided, That* the reference to the

536    amount of five million dollars ($5,000,000) shall not be a precedent in any other context.

537                         (2)      If the collective Additional Capital Obligation

538    properly assignable to the contractors exercising conversion under Section 4011 of the WIIN Act

Contract No. 14-06-200-7823J-LTR1-P

539    is equal to or greater than five million dollars ($5,000,000), then the portion of such costs

540    properly assignable to the Contractor shall be repaid as provided by applicable Federal

541    Reclamation law and Project ratesetting policy; *Provided, That* the reference to the amount of

542    five million dollars ($5,000,000) shall not be a precedent in any other context.

543            (b)    In the event that the final cost allocation referenced in Section 4011(b) of

544    the WIIN Act determines that the costs properly assignable to the Contractor are greater than

545    what has been paid by the Contractor, the Contractor shall be obligated to pay the remaining

546    allocated costs.  The term of such additional repayment contract shall be not less than one (1)

547    year and not more than ten (10) years, however, mutually agreeable provisions regarding the rate

548    of repayment of such amount may be developed by the Contractor and Contracting Officer.  In

549    the event that the final cost allocation indicates that the costs properly assignable to the

550    Contractor are less than what the Contractor has paid, the Contracting Officer shall credit such

551    overpayment as an offset against any outstanding or future obligations of the Contractor, with the

552    exception of Restoration Fund charges pursuant to Section 3407(d) of Pub. L. 102-575.

553            (c)    The Contracting Officer shall notify the Contractor of the Rates, Charges,

554    and Tiered Pricing Component as follows:

555            (1)    Prior to July 1 of each Calendar Year, the Contracting Officer shall

556    provide the Contractor an estimate of the Charges for Project Water that will be applied to the

557    period October 1, of the current Calendar Year, through September 30, of the following Calendar

558    Year, and the basis for such estimate.  The Contractor shall be allowed not less than two months

559    to review and comment on such estimates.  On or before September 15 of each Calendar Year,

560    the Contracting Officer shall notify the Contractor in writing of the Charges to be in effect during

561    the period October 1 of the current Calendar Year, through September 30, of the following

562    Calendar Year, and such notification shall revise Exhibit "B."

563                (2)    Prior to October 1 of each Calendar Year, the Contracting Officer

564    shall make available to the Contractor an estimate of the Rates and Tiered Pricing Component

565    for Project Water for the following Year and the computations and cost allocations upon which

566    those Rates are based.  The Contractor shall be allowed not less than two months to review and

567    comment on such computations and cost allocations.  By December 31 of each Calendar Year,

568    the Contracting Officer shall provide the Contractor with the final Rates and Tiered Pricing

569    Component to be in effect for the upcoming Year, and such notification shall revise Exhibit "B."

570                (d)    At the time the Contractor submits the initial schedule for the delivery of

571    Project Water for each Year pursuant to subdivision (b) of Article 4 of this Contract, the

572    Contractor shall make an advance payment to the United States equal to the total amount payable

573    pursuant to the applicable Rate(s) set under subdivision (a) of this Article, for the Project Water

574    scheduled to be delivered pursuant to this Contract during the first two calendar months of the

575    Year.  Before the end of the first month and before the end of each calendar month thereafter, the

576    Contractor shall make an advance payment to the United States, at the Rate(s) set under

577    subdivision (a) of this Article, for the Water Scheduled to be delivered pursuant to this Contract

578    during the second month immediately following.  Adjustments between advance payments for

579    Water Scheduled and payments at Rates due for Water Delivered shall be made before the end of

580    the following month; *Provided, That* any revised schedule submitted by the Contractor pursuant

581    to Article 4 of this Contract which increases the amount of Water Delivered pursuant to this

582    Contract during any month shall be accompanied with appropriate advance payment, at the Rates

583    then in effect, to assure that Project Water is not delivered to the Contractor in advance of such

584    payment.  In any month in which the quantity of Water Delivered to the Contractor pursuant to

585    this Contract equals the quantity of Water Scheduled and paid for by the Contractor, no

586    additional Project Water shall be delivered to the Contractor unless and until an advance

587    payment at the Rates then in effect for such additional Project Water is made.  Final adjustment

588    between the advance payments for the Water Scheduled and payments for the quantities of Water

589    Delivered during each Year pursuant to this Contract shall be made as soon as practicable but no

590    later than April 30th of the following Year, or 60 days after the delivery of Project Water

591    rescheduled under subdivision (g) of Article 3 of this Contract if such water is not delivered by

592    the last day of February.

593            (e)    The Contractor shall also make a payment in addition to the Rate(s) in

594    subdivision (d) of this Article to the United States for Water Delivered, at the Charges and the

595    appropriate Tiered Pricing Component then in effect, before the end of the month following the

596    month of delivery; _Provided, That_ the Contractor may be granted an exception from the Tiered

597    Pricing Component pursuant to subdivision (k)(2) of this Article.  The payments shall be

598    consistent with the quantities of Irrigation Water and M&I Water Delivered as shown in the

599    water delivery report for the subject month prepared by the Operating Non-Federal Entity or, if

600    there is no Operating Non-Federal Entity, by the Contracting Officer.  The water delivery report

601    shall be deemed a bill for the payment of Charges and the applicable Tiered Pricing Component

602    for Water Delivered.  Adjustment for overpayment or underpayment of Charges shall be made

603    through the adjustment of payments due to the United States for Charges for the next month.

604    Any amount to be paid for past due payment of Charges and the Tiered Pricing Component shall

28

Contract No. 14-06-200-7823J-LTR1-P

605     be computed pursuant to Article 19 of this Contract.

606            (f)     The Contractor shall pay for any Water Delivered under subdivision (a),

607     (f), or (g) of Article 3 of this Contract as determined by the Contracting Officer pursuant to

608     applicable statutes, associated regulations, any applicable provisions of guidelines or ratesetting

609     policies; *Provided, That* the Rate for Water Delivered under subdivision (f) of Article 3 of this

610     Contract shall be no more than the otherwise applicable Rate for Irrigation Water or M&I Water

611     under subdivision (a) of this Article.

612            (g)     Payments to be made by the Contractor to the United States under this

613     Contract may be paid from any revenues available to the Contractor.

614            (h)     All revenues received by the United States from the Contractor relating to

615     the delivery of Project Water or the delivery of non-Project water through Project facilities shall

616     be allocated and applied in accordance with Federal Reclamation law and the associated rules or

617     regulations, and the then-current Project ratesetting policies for M&I Water or Irrigation Water.

618            (i)     The Contracting Officer shall keep its accounts pertaining to the

619     administration of the financial terms and conditions of its long-term contracts, in accordance

620     with applicable Federal standards, so as to reflect the application of Project costs and revenues.

621     The Contracting Officer shall, each Year upon request of the Contractor, provide to the

622     Contractor a detailed accounting of all Project and Contractor expense allocations, the

623     disposition of all Project and Contractor revenues, and a summary of all water delivery

624     information. The Contracting Officer and the Contractor shall enter into good faith negotiations

625     to resolve any discrepancies or disputes relating to accountings, reports, or information.

626            (j)     The parties acknowledge and agree that the efficient administration of this

29

Contract No. 14-06-200-7823J-LTR1-P

627    Contract is their mutual goal.  Recognizing that experience has demonstrated that mechanisms,

628    policies, and procedures used for establishing Rates, Charges, and Tiered Pricing Component,

629    and/or for making and allocating payments, other than those set forth in this Article may be in

630    the mutual best interest of the parties, it is expressly agreed that the parties may enter into

631    agreements to modify the mechanisms, policies, and procedures for any of those purposes while

632    this Contract is in effect without amending this Contract.

633    (k)    (1)    Beginning at such time as deliveries of Project Water in a Year

634    exceed 80 percent of the Contract Total, then before the end of the month following the month of

635    delivery the Contractor shall make an additional payment to the United States equal to the

636    applicable Tiered Pricing Component.  The Tiered Pricing Component for the amount of Water

637    Delivered in excess of 80 percent of the Contract Total, but less than or equal to 90 percent of the

638    Contract Total, shall equal one-half of the difference between the Rate established under

639    subdivision (a) of this Article and the Irrigation Full Cost Water Rate or M&I Full Cost Water

640    Rate, whichever is applicable.  The Tiered Pricing Component for the amount of Water

641    Delivered which exceeds 90 percent of the Contract Total shall equal the difference between (i)

642    the Rate established under subdivision (a) of this Article and (ii) the Irrigation Full Cost Water

643    Rate or M&I Full Cost Water Rate, whichever is applicable.  For all Water Delivered pursuant to

644    subdivision (a) of Article 3 of this Contract which is in excess of 80 percent of the Contract

645    Total, this increment shall be deemed to be divided between Irrigation Water and M&I Water in

646    the same proportion as actual deliveries of each bear to the cumulative total Water Delivered.

647    (2)    Subject to the Contracting Officer's written approval, the

648    Contractor may request and receive an exemption from such Tiered Pricing Component for

30

Contract No. 14-06-200-7823J-LTR1-P

649    Project Water delivered to produce a crop which the Contracting Officer determines will provide

650    significant and quantifiable habitat values for waterfowl in fields where the water is used and the

651    crops are produced; *Provided, That* the exemption from the Tiered Pricing Component for

652    Irrigation Water shall apply only if such habitat values can be assured consistent with the

653    purposes of the CVPIA through binding agreements executed with or approved by the

654    Contracting Officer prior to use of such water.

655                (3)    For purposes of determining the applicability of the Tiered Pricing

656    Component pursuant to this Article, Water Delivered shall include Project Water that the

657    Contractor transfers to others but shall not include Project Water transferred to the Contractor,

658    nor shall it include the additional water provided to the Contractor under the provisions of

659    subdivision (f) of Article 3 of this Contract.

660                (l)    For the term of this Contract, Rates applied under the respective

661    ratesetting policies will be established to recover only reimbursable O&M (including any

662    deficits) and capital costs of the Project, as those terms are used in the then-current Project

663    ratesetting policies, and interest, where appropriate, except in instances where a minimum Rate is

664    applicable in accordance with the relevant Project ratesetting policy.  Changes of significance in

665    practices which implement the Contracting Officer's ratesetting policies will not be implemented

666    until the Contracting Officer has provided the Contractor an opportunity to discuss the nature,

667    need, and impact of the proposed change.

668                (m)    Except as provided in subsections 3405(a)(1)(B) and 3405(f) of the

669    CVPIA, the Rates for Project Water transferred by the Contractor shall be the Contractor's Rates,

670    in accordance with the applicable Project ratesetting policy, adjusted upward or downward to

31

Contract No. 14-06-200-7823J-LTR1-P

671    reflect the changed costs, if any, incurred by the Contracting Officer in the delivery of the

672    transferred Project Water to the transferee's point of delivery.  If the Contractor is receiving

673    lower Rates and Charges because of inability to pay and is transferring Project Water to another

674    entity whose Rates and Charges are not adjusted due to inability to pay, the Rates and Charges

675    for transferred Project Water shall not be adjusted to reflect the Contractor's inability to pay.

676            (n)        Pursuant to the Act of October 27, 1986 (100 Stat. 3050), the Contracting

677    Officer is authorized to adjust determinations of ability to pay every five years.

678            (o)        With respect to the Rates for M&I Water, the Contractor asserts that it is

679    not legally obligated to pay any Project deficits claimed by the United States to have accrued as

680    of the date of this Contract or deficit-related interest charges thereon.  By entering into this

681    Contract, the Contractor does not waive any legal rights or remedies that it may have with

682    respect to such disputed issues.  Notwithstanding the execution of this Contract and payments

683    made hereunder, the Contractor may challenge in the appropriate administrative or judicial

684    forums; (1) the existence, computation, or imposition of any deficit charges accruing during the

685    term of the Existing Contract and any preceding interim renewal contracts, if applicable; (2)

686    interest accruing on any such deficits; (3) the inclusion of any such deficit charges or interest in

687    the Rates; (4) the application by the United States of payments made by the Contractor under its

688    Existing Contract and any preceding interim renewal contracts if applicable; and (5) the

689    application of such payments in the Rates.  The Contracting Officer agrees that the Contractor

690    shall be entitled to the benefit of any administrative or judicial ruling in favor of any Project

691    M&I contractor on any of these issues, and credits for payments heretofore made, provided that

692    the basis for such ruling is applicable to the Contractor.

32

Contract No. 14-06-200-7823J-LTR1-P

693                      NON-INTEREST BEARING O&M DEFICITS

694          8.        The Contractor and the Contracting Officer concur that, as of the Effective Date

695   the Contractor has no non-interest bearing O&M deficits and shall have no further liability

696   therefore.

697                   SALES, TRANSFERS, OR EXCHANGES OF WATER

698          9.        (a)        The right to receive Project Water provided for in this Contract may be

699   sold, transferred, or exchanged to others for reasonable and beneficial uses within the State of

700   California if such sale, transfer, or exchange is authorized by applicable Federal and State laws,

701   and applicable guidelines or regulations then in effect.  No sale, transfer, or exchange of Project

702   Water under this Contract may take place without the prior written approval of the Contracting

703   Officer, except as provided for in subdivision (b) of this Article, and no such sales, transfers, or

704   exchanges shall be approved absent all appropriate environmental documentation, including, but

705   not limited to, documents prepared pursuant to the NEPA and ESA.  Such environmental

706   documentation should include, as appropriate, an analysis of groundwater impacts and economic

707   and social effects, including environmental justice, of the proposed water transfers on both the

708   transferor and transferee.

709          (b)        In order to facilitate efficient water management by means of water

710   transfers of the type historically carried out among Project Contractors located within the same

711   geographical area and to allow the Contractor to participate in an accelerated water transfer

712   program during the term of this Contract, the Contracting Officer shall prepare, as appropriate,

713   all necessary environmental documentation, including, but not limited to, documents prepared

714   pursuant to the NEPA and ESA, analyzing annual transfers within such geographical areas and

33

715  the Contracting Officer shall determine whether such transfers comply with applicable law.

716  Following the completion of the environmental documentation, such transfers addressed in such

717  documentation shall be conducted with advance notice to the Contracting Officer, but shall not

718  require prior written approval by the Contracting Officer.  Such environmental documentation

719  and the Contracting Officer's compliance determination shall be reviewed every five years and

720  updated, as necessary, prior to the expiration of the then existing five (5)-year period.  All

721  subsequent environmental documentation shall include an alternative to evaluate not less than the

722  quantity of Project Water historically transferred within the same geographical area.

723  (c)  For a water transfer to qualify under subdivision (b) of this Article, such

724  water transfer must:  (i) be for irrigation purposes for lands irrigated within the previous three

725  years, for M&I use, groundwater recharge, groundwater banking, or similar groundwater

726  activities, surface water storage, or fish and wildlife resources; not lead to land conversion; and

727  be delivered to established cropland, wildlife refuges, groundwater basins, or M&I use; (ii) occur

728  within a single Year; (iii) occur between a willing seller and a willing buyer; (iv) convey water

729  through existing facilities with no new construction or modifications to facilities and be between

730  existing Project Contractors and/or the Contractor and the United States, Department of the

731  Interior; and (v) comply with all applicable Federal, State, and local or tribal laws and

732  requirements imposed for protection of the environment and Indian Trust Assets, as defined

733  under Federal law.

734  <u>APPLICATION OF PAYMENTS AND ADJUSTMENTS</u>

735  10.  (a)  The amount of any overpayment by the Contractor of the Contractor's

736  O&M, capital, and deficit (if any) obligations for the Year shall be applied first to any current

34

737    liabilities of the Contractor arising out of this Contract then due and payable.  Overpayments of

738    more than $1,000 shall be refunded at the Contractor's request.  In lieu of a refund, any amount

739    of such overpayment, at the option of the Contractor, may be credited against amounts to become

740    due to the United States by the Contractor.  With respect to overpayment, such refund or

741    adjustment shall constitute the sole remedy of the Contractor or anyone having or claiming to

742    have the right to the use of any of the Project Water supply provided for by this Contract.  All

743    credits and refunds of overpayments shall be made within 30 days of the Contracting Officer

744    obtaining direction as to how to credit or refund such overpayment in response to the notice to

745    the Contractor that it has finalized the accounts for the Year in which the overpayment was

746    made.

747            (b)     All advances for miscellaneous costs incurred for work requested by the

748    Contractor pursuant to Article 24 of this Contract shall be adjusted to reflect the actual costs

749    when the work has been completed.  If the advances exceed the actual costs incurred, the

750    difference will be refunded to the Contractor.  If the actual costs exceed the Contractor's

751    advances, the Contractor will be billed for the additional costs pursuant to Article 24 of this

752    Contract.

753                      TEMPORARY REDUCTIONS – RETURN FLOWS

754       11.    (a)     Subject to:  (i) the authorized purposes and priorities of the Project and the

755    requirements of Federal law, and (ii) the obligations of the United States under existing

756    contracts, or renewals thereof, providing for water deliveries from the Project, the Contracting

757    Officer shall make all reasonable efforts to optimize Project Water deliveries to the Contractor as

758    provided in this Contract.

Contract No. 14-06-200-7823J-LTR1-P

759          (b)     The Contracting Officer or Operating Non-Federal Entity(ies) may

760    temporarily discontinue or reduce the quantity of Water Delivered to the Contractor as herein

761    provided for the purposes of investigation, inspection, maintenance, repair, or replacement of any

762    of the Project facilities or any part thereof necessary for the delivery of Project Water to the

763    Contractor, but so far as feasible the Contracting Officer or Operating Non-Federal Entity(ies)

764    will give the Contractor due notice in advance of such temporary discontinuance or reduction,

765    except in case of emergency, in which case no notice need be given; _Provided, That_ the United

766    States shall use its best efforts to avoid any discontinuance or reduction in such service.  Upon

767    resumption of service after such discontinuance or reduction, and if requested by the Contractor,

768    the United States will, if possible, deliver the quantity of Project Water which would have been

769    delivered hereunder in the absence of such discontinuance or reduction.

770          (c)     The United States reserves the right to all seepage and return flow water

771    derived from Water Delivered to the Contractor hereunder which escapes or is discharged

772    beyond the Contractor's Service Area; _Provided, That_ this shall not be construed as claiming for

773    the United States any right to seepage or return flow being put to reasonable and beneficial use

774    pursuant to this Contract within the Contractor's Service Area by the Contractor or those

775    claiming by, through, or under the Contractor.

776                 <u>CONSTRAINTS ON THE AVAILABILITY OF WATER</u>

777     12.    (a)     In its operation of the Project, the Contracting Officer will use all
778    reasonable means to guard against a Condition of Shortage in the quantity of Project Water to be
779    made available to the Contractor pursuant to this Contract.  In the event the Contracting Officer
780    determines that a Condition of Shortage appears probable, the Contracting Officer will notify the
781    Contractor of said determination as soon as practicable.

782          (b)     If there is a Condition of Shortage because of inaccurate runoff forecasting

783    or other similar operational errors affecting the Project; drought and other physical or natural
784    causes beyond the control of the Contracting Officer; or actions taken by the Contracting Officer
785    to meet current and future legal obligations, then, except as provided in subdivision (a) of Article
786    17 of this Contract, no liability shall accrue against the United States or any of its officers,
787    agents, or employees for any damage, direct or indirect, arising therefrom.

788        (c)      In any Year in which there may occur a Condition of Shortage for any of

789    the reasons specified in subdivision (b) of this Article, and subject to subdivision (d) of this

790    Article, the Contracting Officer will first allocate the available Project Water consistent with the

791    Project M&I Water Shortage Policy as finally adopted after environmental review for

792    determining the amount of Project Water Available for delivery to the Project Contractors.

793    Subject to the foregoing allocation, in any year in which there may occur a Condition of

794    Shortage, the Contracting Officer shall then apportion Project Water among the Contractor and

795    others entitled to Project Water from Delta Division Facilities under long-term water service or

796    repayment contracts (or renewals thereof or binding commitments therefore) in force on

797    February 28, 2005, as follows:

798        (1)      The Contracting Officer shall make an initial and subsequent

799    determination as necessary of the total quantity of Project Water estimated to be scheduled or

800    actually scheduled under subdivision (b) of Article 4 of this Contract and under all other interim

801    renewal, long-term water service or repayment contracts then in force for the delivery of Project

802    Water by the United States from Delta Division Facilities during the relevant Year, the quantity

803    so determined being hereinafter referred to as the scheduled total;

804        (2)      A determination shall be made of the total quantity of Project

805    Water that is available for meeting the scheduled total, the quantity so determined being

806    hereinafter referred to as the available supply;

37

Contract No. 14-06-200-7823J-LTR1-P

807               (3)     The total quantity of Project Water estimated to be scheduled or

808   actually scheduled by the Contractor during the relevant Year, under subdivision (b) of Article 4

809   of this Contract, shall be divided by the scheduled total, the quotient thus obtained being

810   hereinafter referred to as the Contractor's proportionate share; and

811               (4)     The available supply shall be multiplied by the Contractor's

812   proportionate share and the result shall be the quantity of Project Water made available by the

813   United States to the Contractor for the relevant Year in accordance with the schedule developed

814   by the Contracting Officer under subdivision (c)(1) of this Article 12, but in no event shall such

815   amount exceed the Contract Total.  In the event the Contracting Officer subsequently determines

816   that the Contracting Officer can increase or needs to decrease the available supply for delivery

817   from Delta Division Facilities to long-term water service and repayment contractors during the

818   relevant Year, such additions or reductions to the available supply shall be apportioned

819   consistent with subparagraphs (1) through (4), inclusive.

820               (d)     By entering into this Contract, the Contractor does not waive any legal

821   rights or remedies it may have to file or participate in any administrative or judicial proceeding

822   contesting:  (i) the sufficiency of the Project M&I Water Shortage Policy; (ii) the substance of

823   such a policy; (iii) the applicability of such a policy; or (iv) the manner in which such policy is

824   implemented in order to allocate Project Water between M&I and irrigation purposes; *Provided,*

825   *That* the Contractor has commenced any such judicial challenge or any administrative procedures

826   necessary to institute any judicial challenge within six months of the policy becoming final.  By

827   agreeing to the foregoing, the Contracting Officer does not waive any legal defenses or remedies

828   that it may have to assert in such a proceeding.  Nothing contained herein shall be interpreted to

829    validate or invalidate the Project M&I Water Shortage Policy.

830    <u>UNAVOIDABLE GROUNDWATER PERCOLATION</u>

831    13.    (a)    To the extent applicable, the Contractor shall not be deemed to have

832    delivered Irrigation Water to Excess Lands or Ineligible Lands within the meaning of this

833    Contract if such lands are irrigated with groundwater that reaches the underground strata as an

834    unavoidable result of the delivery of Irrigation Water by the Contractor to Eligible Lands.

835    (b)    Upon complete payment of the Repayment Obligation by the Contractor,

836    this Article 13 shall no longer be applicable.

837    <u>COMPLIANCE WITH FEDERAL RECLAMATION LAWS</u>

838    14.    The parties agree that the delivery of Irrigation Water or use of Federal facilities
839    pursuant to this Contract is subject to Federal Reclamation law, including but not limited to, the
840    Reclamation Reform Act of 1982 (43 U.S.C. 390aa *et seq*.), as amended and supplemented, and
841    the rules and regulations promulgated by the Secretary of the Interior under Federal Reclamation
842    law.

843    <u>PROTECTION OF WATER AND AIR QUALITY</u>

844    15.    (a)    Omitted

845    (b)    The United States will care for, operate and maintain reserved works in a
846    manner that preserves the quality of the water at the highest level possible as determined by the
847    Contracting Officer.  The United States does not warrant the quality of the water delivered to the
848    Contractor and is under no obligation to furnish or construct water treatment facilities to
849    maintain or improve the quality of water delivered to the Contractor.

850    (c)    The Contractor will comply with all applicable water and air pollution
851    laws and regulations of the United States and the State of California; and will obtain all required
852    permits or licenses from the appropriate Federal, State, or local authorities necessary for the
853    delivery of water by the Contractor; and shall be responsible for compliance with all Federal,
854    State, and local water quality standards applicable to surface and subsurface drainage and/or
855    discharges generated through the use of Federal or Contractor facilities or Project Water
856    provided by the Contractor within its Service Area.

857    (d)    This Article shall not affect or alter any legal obligations of the Secretary
858    to provide drainage or other discharge services.

Contract No. 14-06-200-7823J-LTR1-P

859           (e)     Omitted

860     WATER ACQUIRED BY THE CONTRACTOR OTHER THAN FROM THE UNITED
861                                    STATES

862       16.    (a)     Water or water rights now owned or hereafter acquired by the Contractor

863 other than from the United States and Irrigation Water furnished pursuant to the terms of this

864 Contract may be simultaneously transported through the same distribution facilities of the

865 Contractor subject to the following: (i) if the facilities utilized for commingling Irrigation Water

866 and non-Project water were constructed without funds made available pursuant to Federal

867 Reclamation law, the provisions of Federal Reclamation law will be applicable only to the

868 Landholders of lands which receive Irrigation Water; (ii) the eligibility of land to receive

869 Irrigation Water must be established through the certification requirements as specified in the

870 Acreage Limitation Rules and Regulations (43 CFR Part 426); (iii) the water requirements of

871 Eligible Lands within the Contractor's Service Area can be established and the quantity of

872 Irrigation Water to be utilized is less than or equal to the quantity necessary to irrigate such

873 Eligible Lands; and (iv) if the facilities utilized for commingling Irrigation Water and non-

874 Project water are (were) constructed with funds made available pursuant to Federal Reclamation

875 law, the non-Project water will be subject to the acreage limitation provisions of Federal

876 Reclamation law, unless the Contractor pays to the United States the incremental fee described in

877 43 CFR 426.15. In determining the incremental fee, the Contracting Officer will calculate

878 annually the cost to the Federal Government, including interest, of storing or delivering non-

879 Project water, which for purposes of this Contract shall be determined as follows: The quotient

880 shall be the unpaid distribution system costs divided by the total irrigable acreage within the

881    Contractor's Service Area.  The incremental fee per acre is the mathematical result of such

882    quotient times the interest rate determined using Section 202 (3) of the Act of October 12, 1982

883    (96 Stat.  1263).  Such incremental fee will be charged to each acre of excess or full-cost land

884    within the Contractor's Service Area that receives non-Project water through Federally financed

885    or constructed facilities.  The incremental fee calculation methodology will continue during the

886    term of this Contract absent the promulgation of a contrary Bureau of Reclamation-wide rule,

887    regulation, or policy adopted after the Contractor has been afforded the opportunity to review

888    and comment on the proposed rule, regulation, or policy.  If such rule, regulation, or policy is

889    adopted, it shall supersede this provision.

890            (b)      Water or water rights now owned or hereafter acquired by the Contractor,

891    other than from the United States may be stored, conveyed, and/or diverted through Project

892    facilities, subject to the completion of appropriate environmental documentation, with the

893    approval of the Contracting Officer and the execution of any contract determined by the

894    Contracting Officer to be necessary, consistent with the following provisions:

895            (1)      The Contractor may introduce non-Project water into Project

896    facilities and deliver said water to lands within the Contractor's Service Area, including

897    Ineligible Lands, subject to payment to the United States and/or to any applicable Operating

898    Non-Federal Entity of an appropriate rate as determined by the applicable Project ratesetting

899    policy, the Reclamation Reform Act of 1982, and the Project use power policy, if such Project

900    use power policy is applicable, each as amended, modified, or superseded from time to time.

901            (2)      Delivery of such non-Project water in and through Project facilities

902    shall only be allowed to the extent such deliveries do not:  (i) interfere with other Project

41

903   purposes as determined by the Contracting Officer; (ii) reduce the quantity or quality of water

904   available to other Project Contractors; (iii) interfere with the delivery of contractual water

905   entitlements to any other Project Contractors; or (iv) interfere with the physical maintenance of

906   the Project facilities.

907               (3)      Neither the United States nor the Operating Non-Federal

908   Entity(ies) shall be responsible for control, care, or distribution of the non-Project water before it

909   is introduced into or after it is delivered from the Project facilities.  The Contractor hereby

910   releases and agrees to defend and indemnify the United States and the Operating Non-Federal

911   Entity(ies), and their respective officers, agents, and employees, from any claim for damage to

912   persons or property, direct or indirect, resulting from the act(s) of the Contractor, its officers,

913   employees, agents, or assigns, in (i) extracting or diverting non-Project water from any source, or

914   (ii) diverting such non-Project water into Project facilities.

915               (4)      Diversion of such non-Project water into Project facilities shall be

916   consistent with all applicable laws, and if involving groundwater, consistent with any applicable

917   groundwater management plan for the area from which it was extracted.

918               (5)      After Project purposes are met, as determined by the Contracting

919   Officer, the United States and Project Contractors entitled to Project Water from Delta Division

920   Facilities shall share priority to utilize the remaining capacity of the facilities declared to be

921   available by the Contracting Officer for conveyance and transportation of non-Project water prior

922   to any such remaining capacity being made available to non-Project contractors.  Other Project

923   Contractors shall have a second priority to any remaining capacity of facilities declared to be

924   available by the Contracting Officer for conveyance and transportation of non-Project water prior

925   to any such remaining capacity being made available to non-Project contractors.

926         (c)   Upon complete payment of the Repayment Obligation by the Contractor,

927   subdivision (a) of this Article 16 shall no longer be applicable.

928   <u>OPINIONS AND DETERMINATIONS</u>

929       17.   (a)   Where the terms of this Contract provide for actions to be based upon the

930   opinion or determination of either party to this Contract, said terms shall not be construed as

931   permitting such action to be predicated upon arbitrary, capricious, or unreasonable opinions or

932   determinations.  Both parties, notwithstanding any other provisions of this Contract, expressly

933   reserve the right to seek relief from and appropriate adjustment for any such arbitrary, capricious,

934   or unreasonable opinion or determination.  Each opinion or determination by either party shall be

935   provided in a timely manner.  Nothing in this subdivision (a) of this Article is intended to or shall

936   affect or alter the standard of judicial review applicable under Federal law to any opinion or

937   determination implementing a specific provision of Federal law embodied in statute or

938   regulation.

939         (b)   The Contracting Officer shall have the right to make determinations

940   necessary to administer this Contract that are consistent with the provisions of this Contract, the

941   laws of the United States and of the State of California, and the rules and regulations

942   promulgated by the Secretary.  Such determinations shall be made in consultation with the

943   Contractor to the extent reasonably practicable.

944   <u>COORDINATION AND COOPERATION</u>

945       18.   (a)   In order to further their mutual goals and objectives, the Contracting

946   Officer and the Contractor shall communicate, coordinate, and cooperate with each other, and

43

947    with other affected Project Contractors, in order to improve the O&M of the Project.  The

948    communication, coordination, and cooperation regarding O&M shall include, but not be limited

949    to, any action which will or may materially affect the quantity or quality of Project Water supply,

950    the allocation of Project Water supply, and Project financial matters including, but not limited to,

951    budget issues.  The communication, coordination, and cooperation provided for hereunder shall

952    extend to all provisions of this Contract.  Each party shall retain exclusive decision making

953    authority for all actions, opinions, and determinations to be made by the respective party.

954          (b)    Within 120 days following the Effective Date, the Contractor, other

955    affected Project Contractors, and the Contracting Officer shall arrange to meet with interested

956    Project Contractors to develop a mutually agreeable, written Project-wide process, which may be

957    amended as necessary separate and apart from this Contract.  The goal of this process shall be to

958    provide, to the extent practicable, the means of mutual communication and interaction regarding

959    significant decisions concerning Project O&M on a real-time basis.

960          (c)    In light of the factors referred to in subdivision (b) of Article 3 of this

961    Contract, it is the intent of the Secretary to improve water supply reliability.  To carry out this

962    intent:

963             (1)    The Contracting Officer will, at the request of the Contractor,

964    assist in the development of integrated resource management plans for the Contractor.  Further,

965    the Contracting Officer will, as appropriate, seek authorizations for implementation of

966    partnerships to improve water supply, water quality, and reliability.

967             (2)    The Secretary will, as appropriate, pursue program and project

968    implementation and authorization in coordination with Project Contractors to improve the water

44

969    supply, water quality, and reliability of the Project for all Project purposes.

970                    (3)    The Secretary will coordinate with Project Contractors and the

971    State of California to seek improved water resource management.

972                    (4)    The Secretary will coordinate actions of agencies within the

973    Department of the Interior that may impact the availability of water for Project purposes.

974                    (5)    The Contracting Officer shall periodically, but not less than

975    annually, hold division-level meetings to discuss Project operations, division-level water

976    management activities, and other issues as appropriate.

977            (d)    Without limiting the contractual obligations of the Contracting Officer

978    under the other Articles of this Contract, nothing in this Article shall be construed to limit or

979    constrain the Contracting Officer's ability to communicate, coordinate, and cooperate with the

980    Contractor or other interested stakeholders or to make decisions in a timely fashion as needed to

981    protect health, safety, or the physical integrity of structures or facilities.

982                            CHARGES FOR DELINQUENT PAYMENTS

983    19.    (a)    The Contractor shall be subject to interest, administrative, and penalty
984    charges on delinquent payments.  If a payment is not received by the due date, the Contractor
985    shall pay an interest charge on the delinquent payment for each day the payment is delinquent
986    beyond the due date.  If a payment becomes 60 days delinquent, the Contractor shall pay, in
987    addition to the interest charge, an administrative charge to cover additional costs of billing and
988    processing the delinquent payment.  If a payment is delinquent 90 days or more, the Contractor
989    shall pay, in addition to the interest and administrative charges, a penalty charge for each day the
990    payment is delinquent beyond the due date, based on the remaining balance of the payment due
991    at the rate of 6 percent per year.  The Contractor shall also pay any fees incurred for debt
992    collection services associated with a delinquent payment.

993            (b)    The interest rate charged shall be the greater of either the rate prescribed
994    quarterly in the Federal Register by the Department of the Treasury for application to overdue
995    payments, or the interest rate of 0.5 percent per month.  The interest rate charged will be
996    determined as of the due date and remain fixed for the duration of the delinquent period.

Contract No. 14-06-200-7823J-LTR1-P

997      (c)      When a partial payment on a delinquent account is received, the amount
998   received shall be applied first to the penalty charges, second to the administrative charges, third
999   to the accrued interest, and finally to the overdue payment.

1000                        EQUAL EMPLOYMENT OPPORTUNITY

1001      20.      During the performance of this Contract, the Contractor agrees as follows:

1002      (a)      The Contractor will not discriminate against any employee or applicant for
1003   employment because of race, color, religion, sex, sexual orientation, gender identity, or national
1004   origin.  The Contractor will take affirmative action to ensure that applicants are employed, and
1005   that employees are treated during employment, without regard to their race, color, religion, sex,
1006   sexual orientation, gender identity, or national origin.  Such action shall include, but not be
1007   limited to, the following:  employment, upgrading, demotion, or transfer; recruitment or
1008   recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and
1009   selection for training, including apprenticeship.  The Contractor agrees to post in conspicuous
1010   places, available to employees and applicants for employment, notices to be provided by the
1011   Contracting Officer setting forth the provisions of this nondiscrimination clause.

1012      (b)      The Contractor will, in all solicitations or advertisements for employees
1013   placed by or on behalf of the Contractor, state that all qualified applicants will receive
1014   consideration for employment without regard to race, color, religion, sex, sexual orientation,
1015   gender identity, or national origin.

1016      (c)      The Contractor will not discharge or in any other manner discriminate
1017   against any employee or applicant for employment because such employee or applicant has
1018   inquired about, discussed, or disclosed the compensation of the employee or applicant or another
1019   employee or applicant.  This provision shall not apply to instances in which an employee who
1020   has access to the compensation information of other employees or applicants as part of such
1021   employee's essential job functions discloses the compensation of such other employees or
1022   applicants to individuals who do not otherwise have access to such information, unless such
1023   disclosure is in response to a formal complaint or charge, in furtherance of an investigation,
1024   proceeding, hearing, or action, including an investigation conducted by the employer, or is
1025   consistent with the Contractor's legal duty to furnish information.

1026      (d)      The Contractor will send to each labor union or representative of workers
1027   with which it has a collective bargaining agreement or other contract or understanding, a notice,
1028   to be provided by the Contracting Officer, advising the labor union or workers' representative of
1029   the Contractor's commitments under Section 202 of Executive Order No. 11246 of September
1030   24, 1965, and shall post copies of the notice in conspicuous places available to employees and
1031   applicants for employment.

46

1032     (e)  The Contractor will comply with all provisions of Executive Order No.
1033 11246 of Sept. 24, 1965, and of the rules, regulations, and relevant orders of the Secretary of
1034 Labor.

1035     (f)  The Contractor will furnish all information and reports required by
1036 Executive Order No. 11246 of Sept. 24, 1965, and by the rules, regulations, and orders of the
1037 Secretary of Labor, or pursuant thereto, and will permit access to its books, records, and accounts
1038 by the Contracting Agency and the Secretary of Labor for purposes of investigation to ascertain
1039 compliance with such rules, regulations, and orders.

1040     (g)  In the event of the Contractor's noncompliance with the nondiscrimination
1041 clauses of this Contract or with any of such rules, regulations, or orders, this Contract may be
1042 canceled, terminated, or suspended in whole or in part and the Contractor may be declared
1043 ineligible for further Government contracts in accordance with procedures authorized in
1044 Executive Order No. 11246 of Sept. 24, 1965, and such other sanctions may be imposed and
1045 remedies invoked as provided in Executive Order No. 11246 of Sept. 24, 1965, or by rule,
1046 regulation, or order of the Secretary of Labor, or as otherwise provided by law.

1047     (h)  The Contractor will include the provisions of paragraphs (a) through (g) in
1048 every subcontract or purchase order unless exempted by the rules, regulations, or orders of the
1049 Secretary of Labor issued pursuant to Section 204 of Executive Order No. 11246 of Sept. 24,
1050 1965, so that such provisions will be binding upon each subcontractor or vendor.  The Contractor
1051 will take such action with respect to any subcontract or purchase order as may be directed by the
1052 Secretary of Labor as a means of enforcing such provisions, including sanctions for
1053 noncompliance: _Provided, however, That_ in the event the Contractor becomes involved in, or is
1054 threatened with, litigation with a subcontractor or vendor as a result of such direction, the
1055 Contractor may request the United States to enter into such litigation to protect the interests of
1056 the United States.

1057    <u>GENERAL OBLIGATION – BENEFITS CONDITIONED UPON PAYMENT</u>

1058   21.  (a)  The obligation of the Contractor to pay the United States as provided in
1059 this Contract is a general obligation of the Contractor notwithstanding the manner in which the
1060 obligation may be distributed among the Contractor's water users and notwithstanding the default
1061 of individual water users in their obligation to the Contractor.

1062     (b)  The payment of charges becoming due pursuant to this Contract is a
1063 condition precedent to receiving benefits under this Contract.  The United States shall not make
1064 water available to the Contractor through Project facilities during any period in which the
1065 Contractor is in arrears in the advance payment of water rates due the United States.  The
1066 Contractor shall not deliver water under the terms and conditions of this Contract for lands or
1067 parties that are in arrears in the advance payment of water rates as levied or established by the
1068 Contractor.

Contract No. 14-06-200-7823J-LTR1-P

1069            (c)     With respect to subdivision (b) of this Article, the Contractor shall have no

1070   obligation to require advance payment for water rates which it levies.

1071                 COMPLIANCE WITH CIVIL RIGHTS LAWS AND REGULATIONS

1072      22.   (a)    The Contractor shall comply with Title VI of the Civil Rights Act of 1964
1073   (Pub. L. 88-352; 42 U.S.C. § 2000d), the Rehabilitation Act of 1973 (Pub. L. 93-112, Title V, as
1074   amended; 29 U.S.C. § 791, et seq.), the Age Discrimination Act of 1975 (Pub. L. 94-135, Title
1075   III; 42 U.S.C. 6101, et seq.), Title II of the Americans with Disabilities Act of 1990 (Pub. L.
1076   101-336; 42 U.S.C. § 12131, et seq.), and any other applicable civil rights laws, and with the
1077   applicable implementing regulations and any guidelines imposed by the U.S. Department of the
1078   Interior and/or Bureau of Reclamation.

1079            (b)    These statutes prohibit any person in the United States from being
1080   excluded from participation in, being denied the benefits of, or being otherwise subjected to
1081   discrimination under any program or activity receiving financial assistance from the Bureau of
1082   Reclamation on the grounds of race, color, national origin, disability, or age. By executing this
1083   Contract, the Contractor agrees to immediately take any measures necessary to implement this
1084   obligation, including permitting officials of the United States to inspect premises, programs, and
1085   documents.

1086            (c)     The Contractor makes this Contract in consideration of and for the
1087   purpose of obtaining any and all Federal grants, loans, contracts, property discounts, or other
1088   Federal financial assistance extended after the date hereof to the Contractor by the Bureau of
1089   Reclamation, including installment payments after such date on account of arrangements for
1090   Federal financial assistance which were approved before such date. The Contractor recognizes
1091   and agrees that such Federal assistance will be extended in reliance on the representations and
1092   agreements made in this Article and that the United States reserves the right to seek judicial
1093   enforcement thereof.

1094            (d)    Complaints of discrimination against the Contractor shall be investigated
1095   by the Contracting Officer's Office of Civil Rights.

1096                      PRIVACY ACT COMPLIANCE

1097      23.   (a)    The Contractor shall comply with the Privacy Act of 1974 (Privacy Act)
1098   (5 U.S.C. § 552a) and the Department of the Interior rules and regulations under the Privacy Act
1099   (43 C.F.R. § 2.45, et seq.) in maintaining Landholder certification and reporting records required
1100   to be submitted to the Contractor for compliance with Sections 206, 224(c), and 228 of the
1101   Reclamation Reform Act of 1982 (43 U.S.C. §§ 390ff, 390ww, and 390zz), and pursuant to
1102   43 C.F.R. § 426.18.

48

1103    (b)  With respect to the application and administration of the criminal penalty
1104 provisions of the Privacy Act (5 U.S.C. § 552a(i)), the Contractor and the Contractor's
1105 employees who are responsible for maintaining the certification and reporting records referenced
1106 in paragraph (a) above are considered to be employees of the Department of the Interior.  See
1107 5 U.S.C. § 552a(m).

1108    (c)  The Contracting Officer or a designated representative shall provide the
1109 Contractor with current copies of the Department of the Interior Privacy Act regulations and the
1110 Bureau of Reclamation Federal Register Privacy Act System of Records Notice (Interior/WBR-
1111 31, Acreage Limitation) which govern the maintenance, safeguarding, and disclosure of
1112 information contained in the Landholders' certification and reporting records.

1113    (d)  The Contracting Officer shall designate a full-time employee of the
1114 Bureau of Reclamation to be the System Manager responsible for making decisions on denials
1115 pursuant to 43 C.F.R. §§ 2.61 and 2.64 and amendment requests pursuant to 43 C.F.R. § 2.72.
1116 The Contractor is authorized to grant requests by individuals for access to their own records.

1117    (e)  The Contractor shall forward promptly to the System Manager each
1118 proposed denial of access under 43 C.F.R. § 2.64 and each request for amendment of records
1119 filed under 43 C.F.R. § 2.71; notify the requester accordingly of such referral; and provide the
1120 System Manager with information and records necessary to prepare an appropriate response to
1121 the requester.  These requirements do not apply to individuals seeking access to their own
1122 certification and reporting forms filed with the Contractor pursuant to 43 C.F.R. § 426.18 unless
1123 the requester elects to cite the Privacy Act as an authority for the request.

1124    (f)  Upon complete payment of the Repayment Obligation by the Contractor,

1125 this Article 23 will no longer be applicable.

1126    <u>CONTRACTOR TO PAY CERTAIN MISCELLANEOUS COSTS</u>

1127   24.  In addition to all other payments to be made by the Contractor pursuant to this

1128 Contract, the Contractor shall pay to the United States, within 60 days after receipt of a bill and

1129 detailed statement submitted by the Contracting Officer to the Contractor for such specific items

1130 of direct cost incurred by the United States for work requested by the Contractor associated with

1131 this Contract plus indirect costs in accordance with applicable Bureau of Reclamation policies

1132 and procedures.  All such amounts referred to in this Article shall not exceed the amount agreed

1133   to in writing in advance by the Contractor.  This Article shall not apply to costs for routine

1134   contract administration.

<div align="center">WATER CONSERVATION</div>

1135

1136   25.   (a)   Prior to the delivery of water provided from or conveyed through
1137   Federally constructed or Federally financed facilities pursuant to this Contract, the Contractor
1138   shall develop a water conservation plan, as required by subsection 210(b) of the Reclamation
1139   Reform Act of 1982 and 43 C.F.R. 427.1 (Water Conservation Rules and Regulations).

1140   Additionally, an effective water conservation and efficiency program shall be based on the

1141   Contractor's water conservation plan that has been determined by the Contracting Officer to

1142   meet the conservation and efficiency criteria for evaluating water conservation plans established

1143   under Federal law.  The water conservation and efficiency program shall contain definite water

1144   conservation objectives, appropriate economically feasible water conservation measures, and

1145   time schedules for meeting those objectives.  Continued Project Water delivery pursuant to this

1146   Contract shall be contingent upon the Contractor's continued implementation of such water

1147   conservation program.  In the event the Contractor's water conservation plan or any revised

1148   water conservation plan completed pursuant to subdivision (d) of this Article 25 have not yet

1149   been determined by the Contracting Officer to meet such criteria, due to circumstances which the

1150   Contracting Officer determines are beyond the control of the Contractor, water deliveries shall be

1151   made under this Contract so long as the Contractor diligently works with the Contracting Officer

1152   to obtain such determination at the earliest practicable date, and thereafter the Contractor

1153   immediately begins implementing its water conservation and efficiency program in accordance

1154   with the time schedules therein.

<div align="center">50</div>

1155  (b)  Should the amount of M&I Water delivered pursuant to subdivision (a) of

1156  Article 3 of this Contract equal or exceed two thousand (2,000) acre-feet per Year, the

1157  Contractor shall implement the Best Management Practices identified by the time frames issued

1158  by the Mid-Pacific Region's then-existing conservation and efficiency criteria for such M&I

1159  Water unless any such practice is determined by the Contracting Officer to be inappropriate for

1160  the Contractor.

1161  (c)  The Contractor shall submit to the Contracting Officer a report on the

1162  status of its implementation of the water conservation plan on the reporting dates specified in the

1163  then-existing conservation and efficiency criteria established under Federal law.

1164  (d)  At five (5)-year intervals, the Contractor shall revise its water

1165  conservation plan to reflect the then-existing conservation and efficiency criteria for evaluating

1166  water conservation plans established under Federal law and submit such revised water

1167  management plan to the Contracting Officer for review and evaluation.  The Contracting Officer

1168  will then determine if the water conservation plan meets the Bureau of Reclamation's then-

1169  existing conservation and efficiency criteria for evaluating water conservation plans established

1170  under Federal law.

1171  (e)  If the Contractor is engaged in direct groundwater recharge, such activity

1172  shall be described in the Contractor's water conservation plan.

1173  <u>EXISTING OR ACQUIRED WATER OR WATER RIGHTS</u>

1174  26.  Except as specifically provided in Article 16 of this Contract, the provisions of

1175  this Contract shall not be applicable to or affect non-Project water or water rights now owned or

1176  hereafter acquired by the Contractor or any user of such water within the Contractor's Service

51

Contract No. 14-06-200-7823J-LTR1-P

1177 Area.  Any such water shall not be considered Project Water under this Contract.  In addition,

1178 this Contract shall not be construed as limiting or curtailing any rights which the Contractor or

1179 any water user within the Contractor's Service Area acquires or has available under any other

1180 contract pursuant to Federal Reclamation law.

1181  OPERATION AND MAINTENANCE BY THE OPERATING NON-FEDERAL ENTITY

1182   27. (a) The O&M of a portion of the Project facilities which serve the Contractor,

1183 and responsibility for funding a portion of the costs of such O&M, have been transferred to the

1184 San Luis & Delta-Mendota Water Authority, an Operating Non-Federal Entity by separate

1185 agreement (8-07-20-X0354-X) between the United States and Operating Non-Federal Entity San

1186 Luis & Delta-Mendota Water Authority.  That separate agreement shall not interfere with or

1187 affect the rights or obligations of the Contractor or the United States hereunder.

1188   (b) The Contracting Officer has previously notified the Contractor in writing

1189 that the O&M of a portion of the Project facilities which serve the Contractor has been

1190 transferred to the Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority, and

1191 therefore, the Contractor shall pay directly to the Operating Non-Federal Entity San Luis &

1192 Delta-Mendota Water Authority, or to any successor approved by the Contracting Officer under

1193 the terms and conditions of the separate agreement between the United States and the Operating

1194 Non-Federal Entity San Luis & Delta-Mendota Water Authority described in subdivision (a) of

1195 this Article, all rates, charges, or assessments of any kind, including any assessment for reserve

1196 funds, which the Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority or

1197 such successor determines, sets, or establishes for the O&M of the portion of the Project

1198 facilities operated and maintained by the Operating Non-Federal Entity San Luis & Delta-

52

1199    Mendota Water Authority or such successor.  Such direct payments to Operating Non-Federal

1200    Entity San Luis & Delta-Mendota Water Authority or such successor shall not relieve the

1201    Contractor of its obligation to pay directly to the United States the Contractor's share of the

1202    Project Rates, Charges, and Tiered Pricing Component except to the extent the Operating Non-

1203    Federal Entity San Luis & Delta-Mendota Water Authority collects payments on behalf of the

1204    United States in accordance with the separate agreement identified in subdivision (a) of this

1205    Article.

1206            (c)     For so long as the O&M of any portion of the Project facilities serving the

1207    Contractor is performed by Operating Non-Federal Entity San Luis & Delta-Mendota Water

1208    Authority, or any successor thereto, the Contracting Officer shall adjust those components of the

1209    Rates for Water Delivered under this Contract representing the cost associated with the activity

1210    being performed by Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority

1211    or its successor.

1212            (d)     In the event the O&M of the Project facilities operated and maintained by

1213    the Operating Non-Federal Entity San Luis & Delta-Mendota Water Authority is re-assumed by

1214    the United States during the term of this Contract, the Contracting Officer shall so notify the

1215    Contractor, in writing, and present to the Contractor a revised Exhibit "B" which shall include

1216    the portion of the Rates to be paid by the Contractor for Project Water under this Contract

1217    representing the O&M costs of the portion of such Project facilities which have been re-assumed.

1218    The Contractor shall, thereafter, in the absence of written notification from the Contracting

1219    Officer to the contrary, pay the Rates, Charges, and Tiered Pricing Component specified in the

1220    revised Exhibit "B" directly to the United States in compliance with Article 7 of this Contract.

1221 <u>CONTINGENT ON APPROPRIATION OR ALLOTMENT OF FUNDS</u>

1222      28.    The expenditure or advance of any money or the performance of any obligation of
1223 the United States under this Contract shall be contingent upon appropriation or allotment of
1224 funds. Absence of appropriation or allotment of funds shall not relieve the Contractor from any
1225 obligations under this Contract. No liability shall accrue to the United States in case funds are
1226 not appropriated or allotted.

1227 <u>BOOKS, RECORDS, AND REPORTS</u>

1228      29.   (a)    The Contractor shall establish and maintain accounts and other books and
1229 records pertaining to administration of the terms and conditions of this Contract, including the
1230 Contractor's financial transactions; water supply data; project operations, maintenance, and
1231 replacement logs; project land and rights-of-way use agreements; the water users' land-use (crop
1232 census), land-ownership, land-leasing, and water-use data; and other matters that the Contracting
1233 Officer may require. Reports shall be furnished to the Contracting Officer in such form and on
1234 such date or dates as the Contracting Officer may require. Subject to applicable Federal laws
1235 and regulations, each party to this Contract shall have the right during office hours to examine
1236 and make copies of the other party's books and records relating to matters covered by this
1237 Contract.

1238         (b)    Notwithstanding the provisions of subdivision (a) of this Article, no

1239 books, records, or other information shall be requested from the Contractor by the Contracting

1240 Officer unless such books, records, or information are reasonably related to the administration or

1241 performance of this Contract. Any such request shall allow the Contractor a reasonable period of

1242 time within which to provide the requested books, records, or information.

1243         (c)    At such time as the Contractor provides information to the Contracting

1244 Officer pursuant to subdivision (a) of this Article, a copy of such information shall be provided

1245 to the Operating Non-Federal Entity(ies).

1246 <u>ASSIGNMENT LIMITED – SUCCESSORS AND ASSIGNS OBLIGATED</u>

1247      30.   (a)    The provisions of this Contract shall apply to and bind the successors and
1248 assigns of the parties hereto, but no assignment or transfer of this Contract or any right or interest
1249 therein by either party shall be valid until approved in writing by the other party.

54

1250        (b)        The assignment of any right or interest in this Contract by either party

1251 shall not interfere with the rights or obligations of the other party to this Contract absent the

1252 written concurrence of said other party.

1253        (c)        The Contracting Officer shall not unreasonably condition or withhold

1254 approval of any proposed assignment.

1255                                        <u>SEVERABILITY</u>

1256        31.        In the event that a person or entity who is neither (i) a party to a Project contract,

1257 nor (ii) a person or entity that receives Project Water from a party to a Project contract, nor (iii)

1258 an association or other form of organization whose primary function is to represent parties to

1259 Project contracts, brings an action in a court of competent jurisdiction challenging the legality or

1260 enforceability of a provision included in this Contract and said person, entity, association, or

1261 organization obtains a final court decision holding that such provision is legally invalid or

1262 unenforceable and the Contractor has not intervened in that lawsuit in support of the plaintiff(s),

1263 the parties to this Contract shall use their best efforts to (i) within 30 days of the date of such

1264 final court decision identify by mutual agreement the provisions in this Contract which must be

1265 revised and (ii) within three months thereafter promptly agree on the appropriate revision(s).

1266 The time periods specified above may be extended by mutual agreement of the parties.  Pending

1267 the completion of the actions designated above, to the extent it can do so without violating any

1268 applicable provisions of law, the United States shall continue to make the quantities of Project

1269 Water specified in this Contract available to the Contractor pursuant to the provisions of this

1270 Contract which were not found to be legally invalid or unenforceable in the final court decision.

Contract No. 14-06-200-7823J-LTR1-P

|      |                                                                                    |
|------|------------------------------------------------------------------------------------|
| 1271 | <div align="center">RESOLUTION OF DISPUTES</div>                                   |

1272      32.     Should any dispute arise concerning any provisions of this Contract, or the

1273    parties' rights and obligations thereunder, the parties shall meet and confer in an attempt to

1274    resolve the dispute.  Prior to the Contractor commencing any legal action, or the Contracting

1275    Officer referring any matter to the Department of Justice, the party shall provide to the other

1276    party 30 days' written notice of the intent to take such action; *Provided, That* such notice shall

1277    not be required where a delay in commencing an action would prejudice the interests of the party

1278    that intends to file suit.  During the 30-day notice period, the Contractor and the Contracting

1279    Officer shall meet and confer in an attempt to resolve the dispute.  Except as specifically

1280    provided, nothing herein is intended to waive or abridge any right or remedy that the Contractor

1281    or the United States may have.

1282    <div align="center">OFFICIALS NOT TO BENEFIT</div>

1283      33.     No Member of or Delegate to the Congress, Resident Commissioner, or official of
1284    the Contractor shall benefit from this Contract other than as a water user or landowner in the
1285    same manner as other water users or landowners.

1286    <div align="center">CHANGES IN CONTRACTOR'S ORGANIZATION AND/OR SERVICE AREA</div>

1287      34.    (a)     While this Contract is in effect, no change may be made in the
1288    Contractor's Service Area or organization, by inclusion or exclusion of lands or by any other
1289    changes which may affect the respective rights, obligations, privileges, and duties of either the
1290    United States or the Contractor under this Contract, including, but not limited to, dissolution,
1291    consolidation, or merger, except upon the Contracting Officer's written consent.

1292          (b)     Within 30 days of receipt of a request for such a change, the Contracting

1293    Officer will notify the Contractor of any additional information required by the Contracting

1294    Officer for processing said request, and both parties will meet to establish a mutually agreeable

1295    schedule for timely completion of the process.  Such process will analyze whether the proposed

1296    change, is likely to:  (i) result in the use of Project Water contrary to the terms of this Contract;

1297    (ii) impair the ability of the Contractor to pay for Project Water furnished under this Contract or

1298    to pay for any Federally-constructed facilities for which the Contractor is responsible; and (iii)

1299    have an impact on any Project Water rights applications, permits, or licenses.  In addition, the

1300    Contracting Officer shall comply with the NEPA and the ESA.  The Contractor will be

1301    responsible for all costs incurred by the Contracting Officer in this process, and such costs will

1302    be paid in accordance with Article 24 of this Contract.

1303    <center>FEDERAL LAWS</center>

1304        35.    By entering into this Contract, the Contractor does not waive its rights to contest

1305    the validity or application in connection with the performance of the terms and conditions of this

1306    Contract of any Federal law or regulation; *Provided, That* the Contractor agrees to comply with

1307    the terms and conditions of this Contract unless and until relief from application of such Federal

1308    law or regulation to the implementing provision of the Contract is granted by a court of

1309    competent jurisdiction.

1310    <center>RECLAMATION REFORM ACT OF 1982</center>

1311        36.    (a)    Upon a Contractor's compliance with and discharge of the Repayment

1312    Obligation pursuant to this Contract, subsections (a) and (b) of Section 213 of the Reclamation

1313    Reform Act of 1982 (96 Stat. 1269) shall apply to affected lands.

1314        (b)    The obligation of a Contractor to pay the Additional Capital Obligation

1315    shall not affect the Contractor's status as having repaid all of the construction costs assignable to

<center>57</center>

Contract No. 14-06-200-7823J-LTR1-P

1316 the Contractor or the applicability of subsections (a) and (b) of Section 213 of the Reclamation

1317 Reform Act of 1982 (96 Stat. 1269) once the Repayment Obligation is paid.

1318       <u>CERTIFICATION OF NONSEGREGATED FACILITIES</u>

1319    37. The Contractor hereby certifies that it does not maintain or provide for its
1320 employees any segregated facilities at any of its establishments and that it does not permit its
1321 employees to perform their services at any location under its control where segregated facilities
1322 are maintained.  It certifies further that it will not maintain or provide for its employees any
1323 segregated facilities at any of its establishments and that it will not permit its employees to
1324 perform their services at any location under its control where segregated facilities are
1325 maintained.  The Contractor agrees that a breach of this certification is a violation of the Equal
1326 Employment Opportunity clause in this Contract.  As used in this certification, the term
1327 "segregated facilities" means any waiting rooms, work areas, rest rooms and wash rooms,
1328 restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas,
1329 parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing
1330 facilities provided for employees which are segregated by explicit directive or are in fact
1331 segregated on the basis of race, creed, color, or national origin, because of habit, local custom,
1332 disability, or otherwise.  The Contractor further agrees that (except where it has obtained
1333 identical certifications from proposed subcontractors for specific time periods) it will obtain
1334 identical certifications from proposed subcontractors prior to the award of subcontracts
1335 exceeding $10,000 which are not exempt from the provisions of the Equal Employment
1336 Opportunity clause; that it will retain such certifications in its files; and that it will forward the
1337 following notice to such proposed subcontractors (except where the proposed subcontractors
1338 have submitted identical certifications for specific time periods):

1339    NOTICE TO PROSPECTIVE SUBCONTRACTORS OF REQUIREMENT FOR
1340      CERTIFICATIONS OF NONSEGREGATED FACILITIES

1341 A Certification of Nonsegregated Facilities must be submitted prior to the award of a subcontract
1342 exceeding $10,000 which is not exempt from the provisions of the Equal Employment
1343 Opportunity clause.  The certification may be submitted either for each subcontract or for all
1344 subcontracts during a period (i.e., quarterly, semiannually, or annually).  Note: The penalty for
1345 making false statements in offers is prescribed in 18 U.S.C. § 1001.

1346              <u>NOTICES</u>

1347    38. Any notice, demand, or request authorized or required by this Contract shall be
1348 deemed to have been given, on behalf of the Contractor, when mailed, postage prepaid, or
1349 delivered to the Area Manager, South-Central California Area Office, 1243 N Street, Fresno,
1350 California 93721, Bureau of Reclamation, and on behalf of the United States, when mailed,
1351 postage prepaid, or delivered to the Board of Directors of the Westlands Water District, P. O.

1352    Box 6056, Fresno, California 93703-6056.  The designation of the addressee or the address may
1353    be changed by notice given in the same manner as provided in this Article for other notices.

<center>MEDIUM FOR TRANSMITTING PAYMENT</center>

1354

1355        39.     (a)     All payments from the Contractor to the United States under this Contract
1356    shall be by the medium requested by the United States on or before the date payment is due.  The
1357    required method of payment may include checks, wire transfers, or other types of payment
1358    specified by the United States.

1359               (b)     Upon execution of this Contract, the Contractor shall furnish the
1360    Contracting Officer with the Contractor's taxpayer's identification number (TIN).  The purpose
1361    for requiring the Contractor's TIN is for collecting and reporting any delinquent amounts arising
1362    out of the Contractor's relationship with the United States.

<center>CONTRACT DRAFTING CONSIDERATIONS</center>

1363

1364        40.     This amended Contract has been negotiated and reviewed by the parties hereto,
1365    each of whom is sophisticated in the matters to which this amended Contract pertains.  The
1366    double-spaced Articles of this amended Contract have been drafted, negotiated, and reviewed by
1367    the parties, and no one party shall be considered to have drafted the stated Articles.  Single-
1368    spaced Articles are standard Articles pursuant to Bureau of Reclamation policy.

<center>CONFIRMATION OF CONTRACT</center>

1369

1370        41.     Promptly after the execution of this amended Contract, the Contractor will
1371    provide to the Contracting Officer a certified copy of a final decree of a court of competent
1372    jurisdiction in the State of California, confirming the proceedings on the part of the Contractor
1373    for the authorization of the execution of this amended Contract.  This amended Contract shall not
1374    be binding on the United States until the Contractor secures a final decree.

1375

Contract No: 14-06-200-7823J-LTR1-P

1376        IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the

1377    day and year first above written.

1378                                UNITED STATES OF AMERICA


1379    By: _____
1380                                Regional Director
1381                                Interior Region 10: California-Great Basin
1382                                Bureau of Reclamation


1383                                WESTLANDS WATER DISTRICT
1384


1385    By: _____
1386                                President of the Board of Directors

1387    Attest:


1388    By: _____
1389            Secretary of the Board of Directors


60

Contract No. 14-06-200-7823J-LTR1-P

1376        IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the

1377   day and year first above written.

1378                                UNITED STATES OF AMERICA

**APPROVED AS TO LEGAL FORM AND**
**SUFFICIENCY - REVIEWED BY:**
Digitally signed by
BRIAN HUGHES
Date: 2020.09.25
13:32:49 -07'00'

1379  **OFFICE OF THE REGIONAL SOLICITOR**       By: _____
1380  **DEPARTMENT OF THE INTERIOR**
    **TIME STAMP:**  1:37 pm, May 11 2020               Regional Director
1381                                   Interior Region 10: California-Great Basin
1382                                   Bureau of Reclamation

1383                              WESTLANDS WATER DISTRICT
1384  (SEAL)

1385                              By: _____
1386                                   President of the Board of Directors

1387  Attest:

1388  By: _____
1389       Secretary of the Board of Directors

60



**Agreement for Partial Assignment of Oro Loma W.D.
Water Service Contract to Westlands W.D.**

Contract No. 14-06-200-7823J-LTR1-P

Exhibit A

— BUREAU OF —
RECLAMATION

Date: 6/26/2020
File Name: N:\Districts\Contracts\westlands\WestlandsAssignOroLoma_20200626.mxd

□ District Boundary
◇ Contractor's Service Area

0     5     10 Miles

214-202-894

EXHIBIT B
WESTLANDS WATER DISTRICT
(PARTIAL ASSIGNMENT OF ORO LOMA WATER DISTRICT)
2020 Rates and Charges
(Per Acre-Foot)

| | Irrigation | M&I [3] |
|---|---|---|
| | Water | Water |
| | SLC | SLC |
| **COST-OF-SERVICE (COS) RATE** | | |
| Construction Costs | $63.95 | |
| DMC Aqueduct Intertie | $1.15 | |
| O&M Components | | |
| Water Marketing | $8.97 | |
| Storage | $18.01 | |
| Credit for other PUE Remittance [1] | ($2.28) | |
| Direct Pumping | | |
| American Recovery and Reinvestment Act (ARRA) | $0.00 | |
| **TOTAL COS RATE** | **$89.80** | |
| | | |
| **Project Use Energy Payment [2]** | | |
| Direct Pumping | $11.35 | |
| Other PUE Remittance | $2.28 | |
| | | |
| **IRRIGATION FULL-COST RATE** | | |
| Section 202(3) Rate is applicable to a Qualified Recipient or to a Limited Recipient receiving irrigation water on or before October 1, 1981. | TBD | |
| Section 205(a)(3) Rate is applicable to a Limited Recipient that did not receive irrigation water on or before October 1, 1981. | TBD | |
| | | |
| **M&I FULL COST RATE** | | |
| **Above)** | | |
| **IRRIGATION** | | |
| Tier 2 Rate: >80% <=90% of Contract Total [Section 202(3) Irrigation Full Cost Rate - Irrigation COS Rate]/2 (Amount to be added to Tier 1 Rate) | TBD | |
| Tier 3 Rate: >90% of Contract Total [Section 202(3) Irrigation Full Cost Rate - Irrigation COS Rate] (Amount to be added to Tier 1 Rate) | TBD | |
| **M&I** | | |
| Tier 2 Rate: >80% <=90% of Contract Total [M&I Full Cost Rate - M&I COS Rate]/2 (Amount to be Added to Tier 1 Rate) | | |
| Tier 3 Rate: >90% of Contract Total [M&I Full Cost Rate - M&I COS Rate] (Amount to Be Added to Tier 1 Rate) | | |
| | | |
| **CHARGES AND ASSESSMENTS** *(Payments in addition to Rates)* | | |
| P.L. 102-575 Surcharge (Restoration Fund Payment) [Section 3407(d)(2)(A)] | $10.91 | |
| P.L. 106-377 Assessment (Trinity Public Utilities District) [Appendix B, Section 203] | $0.12 | |

**EXPLANATORY NOTES**

1  Project Use Energy payment is being remitted to Western Area Power Authority for storage and direct pumping based on the deliveries of a select few contractors. The rates for the select few contractors are reduced as a credit in the O&M rates. All Contractors will ultimately pay for the storage and direct pumping service but as an offset to the amount paid by the select few.

2  Project Use Energy payment is in addition to the Contract Rate and Full-Cost Water Rates. Refer to the water rate books for more information.

3  The Contractor has not projected any delivery of M&I Water for the 2020 contract year. A temporary M&I Rate will be applied upon any M&I water delivery.

The CVP M&I Water Shortage Policy per EIS/EIR dated August 2015 and Record of Decision dated November 2015 defines the M&I Historic Use as the average quantity of CVP water put to beneficial use during the last three years of water deliveries, unconstrained (100% allocation) by the availability of CVP water for South of the Delta. Contractor's last three years in acre feet (AF) are: 2006 = 0 AF; 2011 = 0 AF; 2017 = 0 AF; equals a M&I Historic use average quantity of 0 AF.

Additional detail of rate components is available on the Internet at:
http://www.usbr.gov/mp/cvpwaterrates/ratebooks/index.html

# Exhibit C

### Repayment Obligation - Current Calculation under the WIIN Act, Section 4011 (a) (2)

| Unpaid Construction Cost from the 2020 Water Rate Books* |
|---|

**Contractor:**      **Westlands Water District from Oro Loma WD**
**Facility:**      **San Luis Canal**
**Contract:**      14-06-200-7823J-LTR1-P

| Irrigation Construction Cost (2020 Irrigation Ratebook, Schedule A-2Ba) | | |
|---|---|---|
| | **Unpaid Cost** | **Discount** |
| Construction Cost | $ 309,069 | |
| 2019 Repayment (Estimate) ** | $ - | |
| Adjusted Construction Cost | $ 309,069 | $ 298,679 |
| Intertie Construction Cost (N/A): | $ 22,245 | $ 19,491 |
| Total | $ 331,314 | $ 318,171 |

| If Paid in Installments (Used 20 yr CMT) | | |
|---|---|---|
| | Due**** | |
| Payment 1 | 10/1/2020 | $ 80,769 |
| Payment 2 | 10/1/2021 | $ 80,769 |
| Payment 3 | 10/1/2022 | $ 80,769 |
| Payment 4 | 10/1/2023 | $ 80,769 |
| Total Installment Payments | | $ 323,077 |

| | |
|---|---|
| 20 yr CMT Rates - 10/01/2020 | 1.230% |
| Discount Rate (1/2 of the Treasury Rate per the WIIN Act, Section 4011(a)(2)(A)) | 0.615% |

| M&I Construction Cost (2020 M&I Ratebook, Sch A-2Ba) | |
|---|---|
| | **Unpaid Cost** |
| Construction Cost: | ~ $ - |
| 2019 Repayment (Estimate) ** | |
| Adjusted Construction Cost***: | $ - |

**Calculation Support:**    Irrigation Lump Sum or First Payment****    10/1/2020
                Days Until the End of the Fiscal Year    364

| | Unpaid Allocated Construction Cost | | | Unpaid Intertie Construction Cost | | | Total |
|---|---|---|---|---|---|---|---|
| Fiscal Yr | Beginning Balance | Straight Line Repayment | Present Value | Beginning Balance | Straight Line Repayment | Present Value | Present Values |
| 2021 | $ 309,069 | $ 30,907 | $ 30,531 | $ 22,245 | $ 517 | $ 511 | $ 31,042 |
| 2022 | $ 278,162 | $ 30,907 | $ 30,530 | $ 21,728 | $ 517 | $ 511 | $ 31,041 |
| 2023 | $ 247,255 | $ 30,907 | $ 30,344 | $ 21,210 | $ 517 | $ 508 | $ 30,851 |
| 2024 | $ 216,348 | $ 30,907 | $ 30,158 | $ 20,693 | $ 517 | $ 505 | $ 30,663 |
| 2025 | $ 185,441 | $ 30,907 | $ 29,974 | $ 20,176 | $ 517 | $ 502 | $ 30,475 |
| 2026 | $ 154,534 | $ 30,907 | $ 29,791 | $ 19,658 | $ 517 | $ 499 | $ 30,289 |
| 2027 | $ 123,627 | $ 30,907 | $ 29,608 | $ 19,141 | $ 517 | $ 496 | $ 30,104 |
| 2028 | $ 92,721 | $ 30,907 | $ 29,427 | $ 18,624 | $ 517 | $ 493 | $ 29,920 |
| 2029 | $ 61,814 | $ 30,907 | $ 29,248 | $ 18,106 | $ 517 | $ 490 | $ 29,737 |
| 2030 | $ 30,907 | $ 30,907 | $ 29,069 | $ 17,589 | $ 517 | $ 487 | $ 29,555 |
| 2031-63 | | | | $ 17,072 | $ 17,072 | $ 14,492 | $ 14,492 |
| Total, Lump Sum Payment | | | $ 298,679 | | | $ 19,491 | $ 318,171 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Amount of Reduction, Lump Sum | | $ 10,389 | | | $ 2,754 | $ 13,143 |

\* Costs are assumed to be paid and all charges are assumed to be accurate.  If at a later date charges are determined to need
   update, they are still required.  Also, unpaid charges are still a requirement under contract.
\*\* 2019 Repayment is based on a conservative estimate.  If not sufficient, the remainder will be billed.
\*\*\* Excludes Interest to payment date as Interest will be computed as an annual expense as usual.
\*\*\*\*Contractor has 60 days from the effective date of the contract or installment dates to make payment.

### RESOLUTION NO. 124-20

### WESTLANDS WATER DISTRICT

### A RESOLUTION OF THE BOARD OF DIRECTORS:

**AUTHORIZING THE FILING OF NOTICES OF STATUTORY EXEMPTION AND CATEGORICAL EXEMPTION FROM THE CALIFORNIA ENVIRONMENTAL QUALITY ACT FOR APPROVAL OF AND AUTHORIZATION TO EXECUTE THE CONTRACT BETWEEN THE UNITED STATES AND WESTLANDS WATER DISTRICT PROVIDING FOR PROJECT WATER SERVICE FROM DELTA DIVISION AND FACILITIES REPAYMENT,**

**AUTHORIZING APPROVAL, EXECUTION, AND DELIVERY OF THE CONTRACT BETWEEN THE UNITED STATES AND WESTLANDS WATER DISTRICT PROVIDING FOR PROJECT WATER SERVICE FROM DELTA DIVISION AND FACILITIES REPAYMENT, AND**

### AUTHORIZING ACTIONS IN FURTHERANCE THEREOF

WHEREAS, the Oro Loma Water District (OLWD) and the United States entered into: Contract No. 14-06-200-7823, which provided for the delivery of Central Valley Project Water to OLWD from the Delta Division facilities from April 7, 1959 to February 28, 1995; interim renewal contracts identified as Contract No. 14-06-200-7823-IR1 through 14-06-200-7823-IR8, which provided for water service to OLWD from March 1, 1995 through February 28, 2006; and a long-term renewal contract identified as Contract No. 14-06-200-7823-LTR1, which provided for the continued water service to OLWD following expiration of Contract No. 14-06-200-7823-IR8.; and

WHEREAS, on March 1, 2012, Westlands Water District and OLWD executed an agreement for the partial assignment of 4,000 acre-feet of Project Water under the OLWD's Long-Term Renewal Contract 14-06-200-7823-LTR1 and the United States and Westlands entered into Contract No. 14-06-200-7823J, which provided for water service from the Project facilities from March 1, 2012, through February 28, 2030; and

WHEREAS, on December 16, 2016, the United States Congress enacted the Water Infrastructure Improvements for the Nation Act (Pub. L. 114-322, 130 Stat. 1628) (WIIN Act); and

WHEREAS, Section 4011(a)(1) of the WIIN Act provides that "upon request of the contractor, the Secretary of the Interior shall convert any water service contract in effect on the date of enactment of this subtitle and between the United States and a water users' association [Contractor] to allow for prepayment of the repayment contract pursuant to paragraph (2) under mutually agreeable terms and conditions."; and

WHEREAS, Section 4011(a)(1) further provides that "the manner of conversion under this paragraph shall be as follows:  (A) Water service contracts that were entered into under section (e) of the Act of August 4, 1939 (53 Stat. 1196), to be converted under this section

shall be converted to repayment contracts under section 9(d) of that Act (53 Stat. 1195)"; and "(B) Water service contracts that were entered under subsection (c)(2) of section 9 of the Act of August 4, 1939 (53 Stat. 1194), to be converted under this section shall be converted to a contract under subsection (c)(1) of section 9 of that Act (53 Stat. 1195)."; and

WHEREAS, Section 4011(a)(4)(C) provides all contracts entered into pursuant to Section 4011(a)(1), (2), and (3) shall "not modify other water service, repayment, exchange and transfer contractual rights between the water users' association [Contractor], and the Bureau of Reclamation, or any rights, obligations, or relationships of the water users' association [Contractor] and their landowners as provided under State law."; and

WHEREAS, Section 4011(d)(3) and (4) of the WIIN Act provides that "implementation of the provisions of this subtitle shall not alter...(3) the priority of a water service or repayment contractor to receive water; or (4) except as expressly provided in this section, any obligations under the Federal Reclamation law, including the continuation of Restoration Fund charges pursuant to section 3407(d) (Pub. L. 102-575), of the water service and repayment contractors making prepayments pursuant to this section."; and

WHEREAS, on or about April 23, 2018, pursuant to WIIN Act, 4011(a)(1), the District requested that the Secretary of the Interior convert Contract No. 14-06-200-7823J to a repayment contract.

WHEREAS, pursuant to and consistent with the WIIN Act, the United States and the District negotiated terms and conditions to convert Contract No. 14-06-200-7823J to a repayment contract, and those terms and conditions are reflected in the attached Converted Contract between the United States and Westlands Water District providing for Project Water Service from Delta Division and Facilities Repayment, which is incorporated herein by this reference (Converted Contract); and

WHEREAS, the Converted Contract also reflects the current standard terms and conditions required by the Reclamation Manual; and

WHEREAS, the Converted Contract continues water service to the District within established parameters, in the same scope and nature of the ongoing Central Valley Project and its existing facilities; and

WHEREAS, the United States has determined that the District has fulfilled all of its obligations under Contract No. 14-06-200-7823J; and

WHEREAS, the District has demonstrated to the satisfaction of the Contracting Officer that the District has utilized the Project Water supplies available to it for reasonable and

2

beneficial use and expects to utilize fully for reasonable and beneficial use the quantity of Project Water to be made available to it pursuant to the Converted Contract; and

WHEREAS, water obtained from the Project has been relied upon by urban and agricultural areas within California for more than 50 years, and is considered by the District as an essential portion of its water supply; and

WHEREAS, the economies of regions within the Project, including the District's, depend upon the continued availability of water, including water service from the Project; and

WHEREAS, it is imperative to the District and its landowners that the District continue water service to lands within the District for beneficial use, and the District therefore proposes to enter into the Converted Contract; and

WHEREAS, under the Converted Contract, ongoing receipt and delivery of water will continue with no expansion of service and no new facilities constructed because the District will deliver the water received under the Converted Contract: (1) to lands within the District's boundaries for beneficial use and that have been in production, and (2) through existing facilities; and

WHEREAS, the District has reviewed the terms and conditions of the Converted Contract and finds the form and content thereof to be acceptable to the District and appropriate for execution; and

WHEREAS, the District maintains in its records copies of contracts, water delivery reports, crop information and other data supporting these factual findings.

NOW, THEREFORE, BE IT AND IT IS HEREBY RESOLVED as follows:

1.  The facts set forth in the recitals above and in the documents referenced therein are true and correct, and the Board so finds and determines.

2.  The Converted Contract will not create any effects specified in Title 14 of the California Code of Regulations, Section 15300.2.

3.  Executing the Converted Contract is statutorily exempt from compliance with the California Environmental Quality Act as provided in the California Public Resources Code and implemented through Title 14 of the California Code of Regulations, Sections 15260 through 15285, with particular reference to Section 15261, because it is merely a continuation of a project approved, funded and fully operated prior to November 23, 1970, and no modification or alteration in the Central Valley Project or the amount of water delivered is proposed.

4. Execution of the Converted Contract is exempt from the California Environmental Quality Act based on its record of proceedings showing that the Converted Contract continues water service to the District within established parameters, in the same scope and nature of the ongoing Central Valley Project and its existing facilities; it involves no increase in existing service; and no new construction, expansion, or any modification to the existing distribution system; nor any change in the source of water to be delivered, or the uses to which such supplies will be put.

5. Execution of the Converted Contract is categorically exempt from compliance with the California Environmental Quality Act as provided in Title 14 of the California Code of Regulations, Section 15300 through 15333, with particular reference to Section 15301, because it merely provides for continued operation of existing facilities.

6. The District shall prepare and file a Notice of Exemption with the Clerks of Fresno and Kings Counties and the Office of Planning and Research (State Clearinghouse) as provided for in Title 14 of the California Code of Regulations, Section 15062(b), in substantially the forms attached hereto as Exhibit A.

7. The Converted Contract in substantially the form presented to the Board and on file with the Secretary is hereby approved.

8. The President of the District is hereby authorized to execute and deliver the Converted Contract in substantially the form attached hereto, with such additional changes and/or modifications as are approved by the President of the District, its General Manager, and its General Counsel.

9. The District's officers, staff, and consultants are authorized and directed to take all additional actions they deem necessary or appropriate in order to carry out the intent of this resolution.

10. A certified copy of this resolution shall be prepared and transmitted by the District's Secretary to the United States Bureau of Reclamation.

Adopted at a regular meeting of the Board of Directors, at Fresno, California, this 15th day of September, 2020.

AYES:        Directors Anderson, Bourdeau, Coelho, Errotabere, Enos, Ferguson, Neves, Nunn and Peracchi

NOES:        None

ABSENT:     None

Bobbie Ormonde, District Secretary