Thane D. Somerville WSBA #31468 *pro hac vice*
Thomas P. Schlosser WSBA #06276 *pro hac vice*
MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE
811 First Avenue, Suite 218
Seattle, WA 98104
Tel:   206-386-5200
Fax:   206-386-7322
t.somerville@msaj.com
t.schlosser@msaj.com
Attorneys for Plaintiff Hoopa Valley Tribe

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPA VALLEY TRIBE, | ) Civ. No. 1:20-cv-1814-JLT-EPG |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) PLAINTIFF HOOPA VALLEY |
| | ) TRIBE'S REPLY IN SUPPORT OF |
| | ) MOTION FOR PRELIMINARY |
| UNITED STATES BUREAU OF | ) INJUNCTION |
| RECLAMATION; DEBRA ANNE HAALAND, | ) |
| in her official capacity as Secretary of the | ) Date:  January 20, 2023 |
| Interior; MARIA CAMILLE CALIMLIM | ) Time: 9:00 AM |
| TOUTON, in her official capacity as | ) Courtroom:  4 – 7th floor, Fresno |
| Commissioner of the United States Bureau of | ) Hon. Jennifer L. Thurston |
| Reclamation; ERNEST A. CONANT, in his | ) |
| official capacity as United States Bureau of | ) (Request for Telephonic/Virtual |
| Reclamation California-Great Basin Regional | ) appearance at hearing) |
| Director; and UNITED STATES | ) |
| DEPARTMENT OF THE INTERIOR | ) |
| | ) |
| Defendants. | ) |

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION -

### INTRODUCTION

In CVPIA Section 3406(b)(23), Congress acted "to meet Federal trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe."  ECF Dkt. #111-1.  Hoopa is singularly identified in CVPIA § 3406(b)(23) as the reason for, and intended trust beneficiary of, Congress' action.  Congress directed the Secretary of the Interior to develop the permanent instream fishery flow requirements and operating criteria and procedures (OCAP) in consultation with only the Hoopa Valley Tribe.  *Id.*   No other Indian tribe or entity is named.  And Congress further directed that the Secretary could implement those permanent flow requirements and OCAP only if the Secretary and the Hoopa Valley Tribe concurred.  *Id.*  Congress, by express terms of CVPIA § 3406(b)(23) vested Hoopa, and only Hoopa, with this right of concurrence.

Following completion of the Trinity River Flow Study (co-authored by Hoopa), Hoopa concurred and signed the Trinity River Record of Decision (ROD) in 2000 along with Secretary Babbitt to implement the permanent flow requirements and OCAP specified in the ROD.  ECF Dkt. #111-2.  In accordance with CVPIA §3406(b)(23) and the concurrence right vested in Hoopa, there are two (and only two) ROD signatories, the Secretary of the Interior and Hoopa's Chairman. The ROD is effectively a modern-day federal treaty with Hoopa.  Defendants, through the action challenged here, are attempting to violate that treaty and unlawfully terminate the right of concurrence vested in Hoopa by Congress.  This Court must not allow it.

Hoopa is likely to succeed on the merits of its claim that the Defendants are unlawfully violating the concurrence right granted by CVPIA § 3406(b)(23).  Hoopa has also shown likelihood of irreparable harm.  Once the United States releases the water down the Trinity River to implement the WFV Project, that water is gone forever and not available for its intended fishery restoration uses in Spring and Summer.  The ROD, based on decades of scientific study, carefully allocated the limited water available to meet the intended fishery restoration goals.  Defendants' assertion that fish will not be irreparably harmed by removing 60,000 to 220,000 acre-feet of water (approx. 16% to 27% of total annual flow volumes) from available use in

1  Spring/Summer for purposes identified in the ROD defies logic.  Compounding the harm, much

2  of the water will be released before the water year type (e.g., the amount of water estimated to

3  flow into Trinity Reservoir annually) is known.  Hoopa will also suffer irreparable harm from the

4  attempted termination of its right of concurrence.

5        Both the public interest and equities favor Hoopa.  Congress established in CVPIA §

6  3406(b)(23) that Hoopa's interest and the public interest in protection and restoration of Trinity

7  River fishery resources are one and the same.  Hoopa and its people have been located on the

8  Trinity River and relied on its fishery resources since time immemorial.  Davis Declaration, ECF

9  Dkt. #110.  Protection of the Trinity River and its fishery resource is a sovereign priority of the

10  Hoopa Tribe. *Id.*  Congress ensured that Hoopa's interest, and the public interest, in Trinity River

11  restoration would be forever protected by vesting Hoopa with authority to concur (or withhold

12  concurrence) regarding the permanent flow requirements and OCAP directed by CVPIA §

13  3406(b)(23) and developed and implemented through the ROD.  Because of Hoopa's

14  concurrence right, Defendants may not reallocate water that is intended for specific restoration

15  purposes under the ROD, or otherwise deviate from the ROD as concurred in by Hoopa, unless

16  Hoopa concurs.  The Court should grant Hoopa's motion for preliminary injunction.

17                                   **ARGUMENT**

18     A.  <u>This Matter is Ripe for Review; Action is Imminent on the WFV Project.</u>

19        Defendants argue that this injunction motion is not ripe for review because no final

20  decision has been made to implement the WFV Project.  As the Court noted in its December 23,

21  2022, Minute Order, Defendants have been using a "gotcha implementation strategy" and

22  "hiding the ball as to the timing of its implementation plans."  ECF Dkt. #115.  The federal

23  advisory body Trinity Management Council (TMC) voted in favor of the WFV Project and

24  transmitted its recommendation to Defendants for approval and implementation, which was

25  proposed to commence on December 15.  Although Defendants are on notice of Hoopa's

26  opposition to the WFV Project, Defendants have not sought Hoopa's concurrence.  The only

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 2

apparent reason why the action has not yet commenced is due to Plaintiff's threatened TRO motion (ultimately converted to this preliminary injunction motion) and Defendants' commitment through its attorneys to give Hoopa notice (at least five business days) before a decision is made and further notice (at least ten business days) before implementation.   ECF Dkt. ##111-7; 114; 108-1, pp. 2-3.  If Plaintiff were forced to wait until Defendants gave final approval to implement the WFV flows, the flows could commence implementation before Plaintiff could obtain relief from this Court.  Defendants are poised to approve and implement the WFV Project without obtaining Hoopa concurrence. The threat of harm is imminent, and this motion is ripe for review.

> B. Defendants' Argument That the Creation and Operation of the Trinity Management Council, an Advisory Body, Negates Hoopa's Concurrence Right Delegated by Congress in CVPIA Section 3406(b)(23) Is Wholly Meritless.

Defendants' principal argument on the merits is that the creation and operation of the Trinity Management Council (TMC) pursuant to the ROD negates and terminates Hoopa's concurrence right delegated by Congress in CVPIA § 3406(b)(23).  This argument is a meritless distraction from the actual issue before the Court, which is:  Can the Secretary unilaterally act to modify ROD flows in the absence of Hoopa concurrence required by §3406(b)(23)?  She cannot.

The TMC is merely an advisory body to the Secretary, not a decision-maker.  The TMC can only recommend changes in ROD flows to the Secretary, not approve them.  And pursuant to CVPIA § 3406(b)(23), the Secretary cannot approve a recommendation to modify the ROD absent Hoopa concurrence.  Nothing in the TMC bylaws, the implementation plan, or any other related document negates or takes away Hoopa concurrence rights provided in the statute.  In fact, Section 301 of the TMC bylaws confirms that: "All federal, state, and local agencies and tribes shall retain their existing authorities."  ECF Dkt. #118-1.  Hoopa's concurrence right, provided by CVPIA § 3406(b)(23) is such an existing authority unaffected by the bylaws.

Nor is Hoopa's membership on the TMC inconsistent with its right of concurrence.  The TMC includes representatives from various federal, state, tribal, and local governments with

interests in protection and restoration of the Trinity River resources.  But Hoopa is the only TMC member expressly identified and provided with a right of concurrence by Congress in CVPIA § 3406(b)(23).  Congress expressly acted in § 3406(b)(23) to implement its trust responsibility to the Hoopa Valley Tribe to the exclusion of all other tribes including but not limited to the Yurok Tribe. *San Luis & Delta-Mendota v. Haugrud*, 848 F.3d 1216, 1232 (9th Cir. 2017).  It is true that Hoopa has rights that exceed those of other TMC members; that is exactly what Congress intended when it enacted CVPIA § 3406(b)(23) for the singular benefit of the Hoopa Tribe.

Defendants' response suggests that Hoopa had to choose between a seat on the advisory TMC body or retaining its concurrence right.  Not so.  Given Hoopa's expertise, knowledge, and reserved rights in the Trinity River and its fishery, Hoopa logically has a membership seat on the TMC.  But when it comes to changes to the ROD and its prescribed flows, Hoopa also has a unique right to concur (or withhold concurrence), as provided by statute.  Hoopa thus wears two hats; one as a member of the TMC advisory body and the second as a decider, through exercise of its concurrence authority. Likewise, the Interior Department, through its subordinate agencies, has two seats on the TMC (one seat for Reclamation, and the other for USFWS).  ECF Dkt. #118-1.  Along with its seats on the advisory TMC, the Interior Department acting through the Secretary also has a role as a decider, with Hoopa concurrence. The Secretary need not accept recommendations of the TMC (even though her agencies are voting members); nor does Hoopa have to accept the TMC majority decision (even though it participates as a voting member). There is nothing inconsistent about membership and participation in the TMC with a second role as a decision-maker where that role is defined by statute.  Hoopa serves in both capacities.

Defendants, in their response, acknowledge that the TMC is merely an advisory body and that the TMC may only recommend, for the Secretary's approval, changes to ROD flows.  ECF Dkt. #118, p. 12 (stating that ROD established the TMC to "recommend any changes [to the restoration program] to the Secretary"); ECF Dkt. #118, p. 13 (stating that ROD established TMC and vested it with power to "recommend changes to the implementation plan to the

Secretary, including changes to the flow releases"). Thus, they admit the TMC has no power to change ROD flows. Hoopa did not vest the TMC with any authority to change ROD flows when it signed the bylaws. Defendants acknowledge that final authority lies with the Secretary, but Defendants ignore that the Secretary's authority is limited by and subject to Hoopa concurrence.

Defendants also attempt to downplay their current proposal to shift a minimum of 60,000 acre-feet from Spring/Summer to winter months by referring to it as a mere adjustment or refinement within the context of adaptive management. The ROD, concurred in by Hoopa, not only defined the total annual volumes of water, but it also specified daily flow volumes for each day of the year. These flow volumes were based on the specific purposes identified in the Trinity River Flow Study and the decades of science that went into preparing that document. Orcutt Declaration, ECF Dkt. #109. While the ROD and implementation plan discuss possible future adjustments or refinements to daily flow volumes (which would nevertheless be subject to Secretarial approval and Hoopa concurrence), the proposal here is much more than that. This is not simply a proposal to shift some water from one day to another; rather, the WFV proposal here is to wholly re-allocate up to 27% of total annual ROD volumes, release that water for different purposes in an entirely different time of year (and before the water year is even known), and then deprive fish of that water in the Spring/Summer months when it is needed to achieve biological purposes and objectives called for in the Trinity River Flow Study and ROD. The proposed WFV action is no mere refinement in the name of adaptive management; it is wholesale substantive revision of the ROD that Hoopa concurred in. And to be clear, any recommended changes in flow schedule, minor or major, are subject to Secretarial approval and Hoopa concurrence, and cannot be implemented solely by the TMC. Thus, the WFV proposal and its drastic re-allocation of ROD water may not proceed without Hoopa concurrence.[1]

---

[1] Defendants suggest that Hoopa's comment letter dated June 18, 2021 (at ECF Dkt. #110-1) expressed support for the WFV Project if it were limited to one year. That is incorrect, as Hoopa's letter did not support any use of ROD water for this experiment.

While focusing their arguments on the role of the TMC, Defendants never address the actual question:  whether the Secretary may change the ROD flows to which Hoopa concurred in, without Hoopa concurrence.  Congress mandated that the permanent flow requirements and OCAP developed in the Trinity River Flow Study could proceed only with Hoopa concurrence.  Having obtained Hoopa's concurrence in the specific flow regime set forth in the ROD, it would make no sense whatsoever if the Secretary could make unilateral changes to that flow regime without Hoopa's concurrence.  Such unilateral modification of ROD flows by the Secretary is just as impermissible today as it would have been just after the ROD was signed.  *See* ECF Dkt #108-1 (Hoopa motion). Hoopa is likely to prevail on the merits of its argument that the Secretary may not make a wholesale revision of ROD flows, as proposed in the WFV Project, in the absence of Hoopa's concurrence.  Such concurrence is mandated by CVPIA § 3406(b)(23).

C.  <u>Hoopa Will Suffer Irreparable Harm Both Due to Violation of Its Concurrence Rights and Due to the Irretrievable Loss of Water Necessary to Fulfill ROD Functions</u>.

Hoopa's argument of irreparable harm has two parts.  First, it will suffer irreparable harm by Defendants' refusal to recognize and honor its statutory right of concurrence.  Second, it will suffer irreparable harm because the release of water from Lewiston Dam is irretrievable and precludes availability of necessary water in Spring/Summer months as called for by the ROD.[2]

On the first point, Defendants argue that Hoopa alleges harm simply because the statute has been violated.  It is true that Defendants have violated CVPIA § 3406(b)(23).  And this violation eviscerates Hoopa's sovereign right of concurrence in the context of the WFV Project. If an injunction is not granted, the Secretary will proceed with the project.  Any future order confirming Hoopa's right of concurrence will be meaningless in the context of the WFV Project if it proceeds now.  Thus, Hoopa (and its right of concurrence) will be irreparably harmed.

On the second point, Defendants do not dispute that the WFV Project would shift substantial amounts of water from Spring/Summer months to the Winter, foreclosing the

---

[2]  The arguments in this section are supported by the declarations previously submitted (ECF Dkt. ## 109, 110, 111) and exhibits, as well as the second Orcutt Declaration submitted herewith.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 6

availability and use of such water for the purposes intended by the ROD and the comprehensive Trinity River Flow Study upon which the ROD is based.  Nor do they dispute that this shifting of water will occur before the water year type is even known.  In response, Defendants posit a theory that shifting water in this manner could be beneficial.  But this is speculative, and Defendants discount the risks associated with this experiment of depriving the river of necessary water in Spring/Summer months.  Defendants' proposal to experiment with one aspect of ROD flows in a segmented and compartmentalized manner is a dangerous departure from the holistic evaluation presented in the Trinity River Flow Study that led to the specific flow release schedule approved in the ROD and concurred in by Hoopa.  Depriving the river of water called for in the ROD and Trinity River Flow Study (up to 27% of total annual flow volumes) and allocated for specific fish restoration purposes will result in irreparable harm to fish, the river, and to Hoopa.  Defendants' arguments in opposition are pure speculation that should be rejected.

The Trinity River Flow Study holistically evaluated the needs of the Trinity River fishery and developed recommended flow regimes and release schedules throughout the entire water year for the purpose of achieving specific identified management objectives, including those related to providing habitat, meeting temperature objectives, and facilitating effective migration. See Dkt. #111-3, Ch. 8.  Working with limited water supply, the Flow Study developed a daily flow schedule, with each flow prescription designed to achieve a specific purpose to benefit and promote the restoration of fish in the Trinity River.  *Id*.  The current WFV Project fails to replicate that holistic approach and fails to fully evaluate the possible unintended consequences of the action.  Once Defendants re-allocate water to winter months, it cannot be restored during that water year.  The risk of irreparable harm is not speculative or hypothetical.  If fishery managers learn in real time in Spring/Summer that they made a mistake by releasing water in winter in violation of the ROD, it will be too late.  The necessary water will be unavailable.

Defendants' assertion that fish might benefit from its proposal should also be rejected because, in addition to being speculative, it is based on incomplete data.  The Trinity River

Restoration Program, as approved, is far from complete.  Prescribed habitat restoration and rehabilitation projects remain unfinished.  This is due in part to insufficient federal funding of the program and a failure of the United States to comply with legal mandates related to Trinity River restoration (which will be addressed in this litigation). And while the ROD was executed in 2000, subsequent litigation precluded implementation of the flows until 2005. *Westlands Water District v. U.S. Dep't of Interior*, 376 F.3d 853 (9th Cir. 2004).  As a result, the period of record of implementation of ROD flows is limited and the effectiveness of such flows to achieve their goals has been adversely affected by delays and failures in completing anticipated restoration. Defendants lack sufficient information to support their proposed modification of ROD flows.

There is currently an ongoing and unfinished effort to complete so-called "synthesis reports" that evaluate the TRRP performance.  While those reports could be used to form the basis for a holistic evaluation and future recommendations, that work has not been completed. Allowing the WFV Project to proceed would further deprive fishery managers and scientists of another year of data from implementation of the ROD as it was intended.   Also, Defendants have not completed review under NEPA or the Endangered Species Act regarding the WFV Proposal, which increases the risk of unintended consequences.  All these factors show that Defendants are simply rushing to implement an unsupported, flawed, and dangerous experiment.

Defendants' contention that, if an emergency arises, the Secretary could exercise unilateral authority to release more water to satisfy ROD purposes in Spring/Summer is also wrong - or at least far more complex than Defendants suggest.  While Hoopa has contended that the Secretary could utilize other authorities (such as Proviso 1 of Section 2 of the 1955 Act, Pub. L. No. 84-386, 69 Stat. 719) to implement its WFV Project experiment outside of the confines of the ROD, the Secretary likely lacks authority to release additional water from Lewiston Dam to implement purposes and objectives already defined in the ROD (i.e., to meet needs of fish in Spring/ Summer that are currently provided for in the ROD).  *San Luis & Delta Mendota v.*

*Haugrud*, 848 F.3d 1216, 1231 (9th Cir. 2017).[3]  Nor could the Secretary unilaterally release water under Proviso 2 of §2 of the 1955 Act absent approval from the beneficiaries of that proviso.  The Secretary has never attempted to use those additional authorities to meet ROD purposes.  Any attempt to do so would certainly be challenged by water contractors and mired in litigation.  The Court should not accept Defendants' assertions that they could release additional water if needed to meet ROD purposes in Spring/Summer due to a shortfall caused by the WFV.

In summary, Defendants do not dispute that their proposal is a wholesale revision of the ROD flows that were based on decades of extensive scientific analysis. Defendants do not dispute that their proposal is simply an experiment, which could have unforeseen and unintended consequences.  Given that the ROD flows were carefully calibrated, in a holistic manner, to provide the necessary flows for fish at all times of year within the confines of a limited water supply, it is likely that Defendants' proposal to irretrievably move a minimum of 60,000 acre-feet (and up to 220,000 acre-feet) to winter months will cause irreparable harm to the fishery by depriving the fishery of that critical water in the Spring/Summer months called for in the ROD.

D. <u>The Public Interest and Equities, As Supported by the Concurrence Right Granted in CVPIA Section 3406(b)(23), Favor Hoopa and Issuance of an Injunction</u>.

Defendants incorrectly contend that the public interest and equities supports denial of the injunction because a majority of the TMC recommends approval of the WFV Project.  Here, Congress expressly decided that the Hoopa Valley Tribe would play a permanent role in ensuring protection of the Trinity River and its resources.  Congress was aware, based on the history of destruction caused by Reclamation's development and operation of the Trinity River Division, that a check on the federal government's authority was necessary to ensure that Trinity River restoration proceeded and occurred as Congress expected.  Congress acknowledged that damage in its findings that supported the 1984 Act, Public Law 98-541, 98 Stat. 2721.  The 1984 Act and

---

[3]  The authorities cited at footnote 2 of Defendants' response principally address the Secretary's authority to release water from Lewiston Dam to protect fish in the Lower Klamath River.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 9

its goals are expressly incorporated by reference in CVPIA § 3406(b)(23).

The Hoopa Valley Tribe has federal reserved fishing rights, a federally recognized property interest in the Trinity River fishery, which the federal government has a trust duty to protect. *Parravano v. Babbitt*, 70 F.3d 539 (9th Cir. 1995). Congress, in enacting CVPIA § 3406(b)(23), expressly identified and acted in support of its trust responsibilities to Hoopa. Congress, in granting Hoopa the right of concurrence, ensured that proposals to modify the ROD could not go forward without Hoopa's express consent.  In the context of the ROD and its purpose of restoring the Trinity River fishery, Congress effectively merged the public interest and Hoopa's interest to protect the river and its fish from harm.

Hoopa does not take its concurrence responsibilities, or its responsibilities as a steward of the Trinity River resources, lightly.  Here, Hoopa does not concur in the WFV Project, and its proposed drastic modifications to ROD flows, because the Trinity River Flow Study remains the best available comprehensive and holistic scientific analysis of the needs for fish in the Trinity River.  In contrast, the WFV Project takes a narrow, compartmentalized, and segmented approach that fails to adequately consider unintended consequences resulting from depriving the Trinity River of necessary water in Spring and Summer months – water that has a specific identified purpose in the ROD.  At minimum, more time is necessary for the TRRP to work as designed, and any proposed modifications must be based on holistic and comprehensive analysis.

If allowed to proceed, the WFV Project will cause irreparable harm to the Trinity River fishery, will effectively terminate Hoopa's right of concurrence in conflict with CVPIA § 3406(b)(23) and will, for both of those reasons, conflict with the public interest.  On the other hand, if the WFV Project is enjoined, the ROD will continue to be implemented as intended and allowed to continue working towards the goal of restoration of Trinity River fishery to pre-dam levels.  Both the public interest and equities favor injunction of the WFV Project.

## **CONCLUSION**

Hoopa requests that the Court grant its motion for preliminary injunction.

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 10

1    DATED this 9th day of January, 2023.

2                                    MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE

3                                      _/s/ Thane D. Somerville_____
                                     Thane D. Somerville WSBA #31468
4                                    Thomas P. Schlosser WSBA #06276
5                                    MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE
                                     811 First Avenue, Suite 218
6                                    Seattle, WA 98104
                                     Tel:  206-386-5200/Fax:  206-386-7322
7                                    t.somerville@msaj.com
                                     t.schlosser@msaj.com
8                                    Attorneys for Plaintiff Hoopa Valley Tribe

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

*/s/ Thane D. Somerville*
Thane D. Somerville

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION - 12