**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HOOPA VALLEY TRIBE, | Case No.: 1:20-cv-01814-JLT-EPG |
| Plaintiff, | ORDER HOLDING MOTION FOR PRELIMINARY INJUNCTION IN ABEYANCE, VACATING HEARING, AND CALLING FOR SUPPLEMENTAL BRIEFING |
| v. | |
| UNITED STATES BUREAU OF RELCAMATION, et al., | |
| Defendants. | (Doc. 108) |

This lawsuit concerns management of the Trinity River Division ("TRD") of the federal Central Valley Project ("CVP"). In the operative first amended complaint ("FAC"), the Hoopa Valley Tribe ("Plaintiff" or "Hoopa") advances at several categories of claims. (*See* Doc. 97.) At the core of this lawsuit are allegations that the United States Bureau of Reclamation ("Reclamation") and related federal entities and officials (collectively, "Federal Defendants") violated various provisions of federal law by entering into certain contracts with water users for delivery of water from the CVP. (FAC, ¶¶ 106–118.) In addition, Hoopa alleges that Reclamation has violated "delegated sovereignty" set forth in Section 3406(b)(23) of the of the Central Valley Project Improvement Act ("CVPIA"), Public Law 102-575 (1992), by taking steps to modify the flow regime called for in the 2000 Record of Decision on Trinity River Mainstem Fishery Restoration ("TRROD") without Hoopa's concurrence. (*See, e.g*., FAC, ¶¶168–175.)

On December 16, 2022, Hoopa filed a motion for preliminary injunction ("PI Motion") to

block Reclamation from implementing the challenged changes to the TRROD flow regime. (Doc. 108.) Plaintiff bases its request for injunctive relief on its ninth claim for relief, entitled "Violation of Hoopa's Delegated Sovereignty in CVPIA; Violation of [Administrative Procedure Act (APA)]," which alleges, among other things that "Reclamation has taken action and has threatened to take imminent action, including modifications to flow releases called for in the Trinity River ROD, that fails to honor Hoopa's concurrence rights as provided in CVPIA section 3406(b)(23)." (FAC, ¶ 173.) Hoopa later makes plain in its PI Motion that this allegation is a reference to proposed flow modifications contained within the Trinity River Winter Flow Variability Project ("WFV Project"). (*See* Doc. 108 at 11.) Hoopa's motion indicates that the Trinity Management Council ("TMC"), an advisory body set up by the TRROD, voted in favor of approving the WFV Project on December 7, 2022, and then forwarded that recommendation to Reclamation. (*See id*. at 13.)[1]

Federal Defendants oppose injunctive relief. Though Federal Defendants appear to concede that CVPIA § 3406(b)(23) gave Hoopa concurrence rights in connection with the adoption of the TRROD, (*see* Doc. 118 at 14–15),

Federal Defendants insist that by concurring in the adoption of the TRROD in 2000, Hoopa has likewise consented to the adaptive management protocols established in the TRROD, including the creation of the TMC to act as an advisory board with the power to recommend flow changes. (*See generally* Doc. 118.) Federal Defendants also argue, albeit in a footnote, that the ninth claim for relief is not ripe for review:

> For this Court to have jurisdiction to resolve an Administrative Procedure Act claim, the Plaintiff must be challenging a final agency action. *See Dietary Supplemental Coal., Inc. v. Sullivan*, 978 F.2d 560, 562 (9th Cir. 1992) ("In interpreting the finality requirement, we look to whether the agency action represents the final administrative work. This requirement insures judicial review will not interfere with the agency's decision-making process."). Here, Interior has made no final decision on whether to adopt the recommendation of the Trinity Management Council to implement the Winter Flow Project. Further no determination has been made

---

[1] Hoopa's motion indicates that Defendants were scheduled to implement the WFV as early as December 15, 2022. However, the parties were able to reach an agreement to provide Hoopa with fifteen days' notice of any plans to implement the WFV, thereby avoiding the need for Hoopa to move for a temporary restraining order. (*See* Doc. 108 at 2.)

1
2
> whether such a decision would constitute a final agency action subject to challenge. Therefore, as of the date of this filing, this matter is premature and unripe.

3  (Doc. 118 at 5 n.1.)

4       In response to this ripeness challenge, Hoopa appears to concede that Federal Defendants

5  have yet to formally approve the WFV Project for implementation, but Hoopa nonetheless

6  emphasizes that Federal Defendants have "not sought Hoopa's concurrence" in the Project and

7  have pledged to give Hoopa only fifteen days' notice prior to implementation. (*See* Doc. 120 at

8  3–4 ("Defendants are poised to approve and implement the WFV Project without obtaining

9  Hoopa concurrence.").) Hoopa further points out that the project as proposed by the TMC was

10  supposed to commence December 15, 2022. (*Id*. at 3.) Plaintiff then cursorily argues that this case

11  is ripe because "if Plaintiff were forced to wait until Defendants gave final approval to implement

12  the WFV flows, the flows could commence implementation before Plaintiff could obtain relief

13  from this Court." (*Id*. at 4.)[2] In advancing this argument, Plaintiff fails to discuss the relevant

14  standards, which the Court briefly outlines herein.

15       Before discussing ripeness, it is important to recognize that the Court's jurisdiction to

16  adjudicate the claim upon which the pending motion is based—the ninth cause of action—derives

17  from the APA. Though that claim also relies upon CVPIA § 3406(b)(23), the CVPIA does not

18  itself create a private right of action, so the APA governs judicial review of any claim alleging

19  that the CVPIA was violated. *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*,

20  624 F. Supp. 2d 1197, 1212 (E.D. Cal. 2009), *aff'd sub nom*. *San Luis & Delta-Mendota Water*

21  *Auth. v. United States*, 672 F.3d 676 (9th Cir. 2012). Under section 702 of the APA, "[a] person

22  suffering wrong because of agency action, or adversely affected or aggrieved by agency action

23  within the meaning of the relevant statute, is entitled to judicial review." 5 U.S.C. § 702. "When,

24  _____

[2] In a Minute Order issued December 23, 2022, the Court denied Federal Defendants' request for an extension of
25  time to file its opposition to the pending motion for injunctive relief, in part because Federal Defendants had not
committed to holding off on implementing the Project until the motion was fully briefed. (Doc. 115 ("[T]hough the
26  Government has committed to giving Plaintiff 15-days' notice prior to implementation of proposed flow regime
changes on the Trinity River, this still amounts to a 'gotcha' implementation strategy in the context of litigation.").)
Hoopa cites this Minute Order in support of its ripeness argument, presumably to demonstrate that it would have
27  limited time to pursue injunctive relief even with 15 days' notice. This is unpersuasive. The Court's ruling addressed
an extension request, not a justiciability challenge. Moreover, the Court had no briefing at that time that directly
28  called into question whether Plaintiff's claim is ripe and/or whether Plaintiff is challenging a "final agency action"
for purposes of the APA.

as here, review is sought not pursuant to specific authorization in the substantive statute

. . . the 'agency action' in question must be 'final agency action.'" *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990) (citing 5 U.S.C. § 704)).[3]

"[C]ourts traditionally have been reluctant to apply [injunctive remedies] to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977). The ripeness doctrine prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative polices, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id*. at 148–149.

The relevant ripeness doctrines are not a model of clarity, particularly in APA cases. This is in part because issues of ripeness are "inter-related" with issues of final agency action. *Northcoast Envtl. Ctr. v. Glickman*, 136 F.3d 660, 668 (9th Cir. 1998). Some additional confusion stems from the fact that the ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," *see Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993), and therefore contains "both a constitutional and a prudential component." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). "In assessing the constitutional component, a court must "consider whether the plaintiff[] face[s] 'a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement,' or whether the alleged injury is too "imaginary" or "speculative" to support jurisdiction. *Id*. at 1139 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see also Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003) ("[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry. The question is thus whether the issues presented are

---

[3] As explained below, whether a "final agency action" has been taken is relevant to the ripeness inquiry. But it is also an independent statutory requirement that, in the Ninth Circuit, "has been treated as jurisdictional." *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019). Thus far, the parties have not yet directly addressed the final agency action requirement—at least not insofar as that requirement operates independent of the ripeness inquiry.

1    definite and concrete, not hypothetical or abstract.") (citations omitted).

2         "Prudential considerations of ripeness are discretionary." *Thomas* 220 F.3d at 1142. In

3    evaluating the prudential component of ripeness, courts generally assess 'both the fitness of the

4    issues for judicial decision and the hardship to the parties of withholding court consideration.'"

5    *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 779–80 (9th Cir. 2000) (citation

6    omitted).[4] "Under the first prong, 'agency action is fit for review if the issues presented are purely

7    legal and the regulation at issue is a final agency action.'" *Id*. at 780 (citation omitted)). An

8    agency action is considered final if two conditions are met: (1) "the action must mark the

9    consummation of the agency's decisionmaking process," and (2) "the action must be one by

10   which rights or obligations have been determined or from which legal consequences will flow."

11   *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal citations and quotations omitted).

12        "[A]n agency's characterization of its actions as being provisional or advisory is not

13   necessarily dispositive [of finality], and courts consider whether the practical effects of an

14   agency's decision make it a final agency action, regardless of how it is labeled." *Columbia*

15   *Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094–95 (9th Cir. 2014). Certain factors

16   provide "indicia of finality," such as "whether the action amounts to a definitive statement of the

17   agency's position, whether the action has a direct and immediate effect on the day-to-day

18   operations of the party seeking review, and whether immediate compliance with the terms is

19   expected." *Indus. Customers of Nw. Utils. v. Bonneville Power Admin*., 408 F.3d 638, 646 (9th

20   Cir. 2005); *see also Or. Nat. Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 987 (9th Cir.

21   2006) (in evaluating finality courts consider "whether the [action] has the status of law or

22   comparable legal force, and whether immediate compliance with its terms is expected"). The

23   second, "hardship" prong considers whether "irremediabl[e] adverse consequences" would flow

24   from requiring a later challenge. *Washington v. DeVos*, 466 F. Supp. 3d 1151, 1163 (E.D. Wash.

25

26   ───────────────

     [4] In certain circumstances, courts apply a slightly different three-pronged test when evaluating the prudential
     component of ripeness. In *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998), the Supreme Court

27   considered "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention
     would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from

28   further factual development of the issues presented." *See also Cent. Delta Water Agency v. U.S. Fish & Wildlife
     Serv*., 653 F. Supp. 2d 1066, 1083–89 (E.D. Cal. 2009) (applying *Ohio Forestry* test).

1   2020) (citing *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003)).

2            The present record lacks <u>any</u> focused discussion of these standards. Nonetheless, the

3   record contains enough information to cause the Court to be concerned. Federal Defendants have

4   yet to adopt (or even to formally indicate an intention to adopt) the WFV Project, which is merely

5   a *recommendation* of the TMC. In fact, as Plaintiff admits, Reclamation declined to implement

6   the Project in the 2022 water year, which ran from October 1, 2021–September 30, 2022. (*See*

7   Doc. 108 at 20.) The Court has been unable to identify a single case in which injunctive relief was

8   granted under remotely analogous circumstances. As mentioned, the ripeness doctrine cautions

9   against issuing a ruling on the merits of an unripe challenge to agency action. Moreover, it

10  appears that the APA's "final agency action" requirement may independently bar relief at this

11  stage. Finally, because Federal Defendants have yet to adopt the WFV project, harm is not

12  imminent. For all these reasons, the Court believes supplemental briefing is necessary and that

13  proceeding to a hearing as presently scheduled would not be helpful. In the interim, the PI Motion

14  is fully briefed. Should Federal Defendants decide to adopt and implement the WFV Project, the

15  Court and the parties are already positioned to move quickly toward a resolution of the pending

16  motion.[5]

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26

27  [5] To the extent the claim premised upon the WFV Project was not ripe at the time the FAC was filed, the Court
expresses no opinion at this time as to the appropriate procedural approach to presenting a newly ripened claim to the

28  Court.

1    Accordingly,

2        (1)    The hearing on the PI motion, currently set for January 20, 2023, is

3               **VACATED**.

4        (2)    Within **fourteen days** of the date of this order, the parties **SHALL FILE**

5               simultaneous supplemental briefs on the justiciability issues discussed

6               above.[6]

7

8    IT IS SO ORDERED.

9    Dated:   **January 11, 2023**

     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[6] The Court is also cognizant of the fact that a motion to dismiss may be forthcoming. As an alternative to the briefing ordered above, the parties are free to stipulate that the justiciability issues related to the ninth cause of action can be most efficiently addressed in the context of that motion to dismiss.