UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPA VALLEY TRIBE,<br><br>          Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU OF RECLAMATION; DEBRA ANNE HAALAND, in her official capacity as Secretary of the Interior; MARIA CAMILLE CALIMLIM TOUTON, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST A. CONANT, in his official capacity as U.S. Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>          Defendants. | Case No. 1:20−cv−01814−JLT-EPG |

## DECLARATION OF STEVE PAVICH

I, Steve Pavich, declare as follows:

1. Mr. Pavich is currently an Economist at the Bureau of Reclamation (Reclamation) and works in the California-Great Basin Region located in Sacramento, California. Mr. Pavich has been at his current Economist position since November 2013.  In this position, he uses his technical expertise and experience to provide support in the areas of cost allocation, cost-benefit analyses, ability-to-pay analyses, and to conduct general economic research and analysis supporting water resource management in the Central Valley Project (CVP). He routinely collaborates with internal staff and key stakeholders on issues related to cost allocation in the CVP and played a key role in the development and implementation of the CVP Final Cost Allocation Study.

2. Between 2010 and 2020, Reclamation undertook the CVP Final Cost Allocation Study which established cost allocation factors for the authorized purposes of the CVP. These allocation factors are used to determine the final repayment obligations for CVP facilities subject to the 2030 repayment deadline established by Public Law 99-546.

3. The capital costs of CVPIA facilities (totaling $340,872,120 as of FY-2013) are not allocated through the CVP Final Cost Allocation Study. The Cost Allocation Study explicitly excludes consideration of those costs:

   *The costs of CVPIA facilities are not allocated through the CAS. The repayment obligations for CVPIA facility costs are directly assigned to reimbursable and non-reimbursable obligations by statute. The sub-allocation of reimbursable costs between Irrigation, M&I, and commercial power users will be determined through a separate process based on the results of the CAS.*

4. The fundamental premise for excluding these costs is that CVPIA is a separate and distinct program that mitigates for the construction and operation of the CVP, but it is not part of the CVP investment subject to the Final Cost Allocation that covers original construction of CVP facilities with a 2030 repayment obligation.

5. As a distinct program, CVPIA maintains its own cost allocation and recovery framework that is based on provisions in the enacting legislation that identifies costs as reimbursable and/or non-reimbursable according to different section of the Act.

6. As stated in the Cost Allocation Study, the suballocation of reimbursable costs will be determined through a separate process, which will be documented as part of the CVPIA Business Practice Guidelines (BPGs) once finalized. Under this approach, the Congressional intent regarding the reimbursability and cost allocation for CVPIA facilities is maintained.

7. Plaintiff alleges that the 2020 CVP Cost Allocation Study improperly applied the separable costs-remaining benefit ("SCRB") method by concluding that fish and wildlife restoration costs should be treated as non-reimbursable joint costs rather than fully reimbursable separable costs. The Plaintiff's claim is factually incorrect. The 2020 CVP Cost Allocation Study did not designate capitalized CVPIA restoration costs as non-reimbursable joint costs rather than fully reimbursable separable costs. Instead, Reclamation excluded CVPIA facilities costs from the 2020 CVP Cost Allocation Study because CVPIA is a separate and distinct program with its own cost allocation and recovery framework which are founded on the reimbursability provisions outlined throughout the CVPIA itself.

8. It would not be appropriate to include CVPIA capital costs in the Cost Allocation Study based on several cost allocation principles underlying the SCRB methodology.

- First, CVPIA does not generate *new* project benefits; instead, CVPIA permits the continued generation of CVP benefits as a required component of project operations.

- Second, CVPIA costs are not separable to any one project purpose; instead, they are considered joint costs or a general cost of operating the CVP, and as such, they have no bearing on the calculation of the joint cost allocation factors that are the focus of the cost allocation process.  As such, it is appropriate to exclude these costs from the SCRB methodology and defer the allocation of these costs to a separate process where the reimbursability provisions outlined in CVPIA can be applied as Congress intended.

9. It should also be noted that the Plaintiff's reference to non-reimbursable joint costs is not plausible.  By definition, joint costs in the Cost Allocation Study are allocated to all authorized purposes of the CVP, including reimbursable and nonreimbursable purposes; the concept of nonreimbursable joint costs does not exist.

10. Plaintiff's claim referencing fully reimbursable separable costs is also misguided. Not all separable costs are reimbursable.  The term separable costs simply means that costs are attributable to any one given purpose of the CVP.  The CVP includes reimbursable purposes (e.g. Water Supply and Power) and nonreimbursable purposes (e.g., Flood Control and Water Quality).  In the CVP, fish and wildlife mitigation costs are considered joint costs as defined in the Cost Allocation Study; therefore, any costs allocated as fish and wildlife mitigation would be partially reimbursable/nonreimbursable (allocated on the basis of joint cost allocation factors).

11. There are CVP facility costs assigned to CVPIA functions in the CVP Final Cost Allocation Study.  These costs are separate and distinct from the CVPIA capital costs ($340,872,120) that are excluded from the Cost Allocation Study.  CVP facility costs reflect the portion of CVP facilities that is required to store and convey CVP water to meet CVPIA requirements and are sub-allocated as part of the water supply purpose.

12. It is important to note that these CVP facilities are authorized under the authorizing legislation for the CVP rather than CVPIA.  Therefore, these costs are allocated and recovered as part of the standard CVP water ratesetting process; these costs are not reflected in the CVPIA accounting framework.

I declare, under penalty of perjury pursuant to 28 U.S.C 1746, that the forgoing is to the best of my knowledge true and correct.

Executed this 12th day of January 2022 in Sacramento County of California.

_____

Steve Pavich