UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPA VALLEY TRIBE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU OF RECLAMATION; DEBRA ANNE HAALAND, in her official capacity as Secretary of the Interior; MARIA CAMILLE CALIMLIM TOUTON, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST A. CONANT, in his official capacity as U.S. Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>    Defendants. | Case No. 1:20−cv−01814−JLT-EPG |

## DECLARATION OF SPENCER WALDEN

I, Spencer Walden, declare as follows:

1. I began my career with the Department of the Interior, Bureau of Reclamation (Reclamation) in May 2017 in the California-Great Basin Region (formerly Mid-Pacific Region) Finance Division as the CVPIA Accountant. In that position I was responsible for accounting for and tracking CVPIA Restoration Fund receipts and expenses. I was involved in the drafting of CVPIA Business Practice Guidelines and the CVPIA True-up. Starting in May 2021, I began working in the California-Great Basin Region's Bay-Delta Office in the CVPIA Division as the Refuge Water Conveyance Program Manager. Currently, my responsibilities include managing refuge water conveyance contracts with several water districts throughout the Central Valley, water accounting and many other program management tasks.

2. The Central Valley Project Restoration Fund was established in the Treasury after CVPIA was signed in October 1992. This fund is its own account in the Treasury separate and distinct from any other Reclamation accounts, including the Reclamation Fund.

3. CVPIA requires certain charges be assessed on CVP water and power contractors. Those charges are: (1) Pre-renewal charges: Section 3404(c)(3), (2) Tiered water charges: Section 3405(a)(1)(C), (3) Water transfer charges: Section 3405(f), (4) Friant surcharge

Section 3406(c)(1) (until Pub. L. 111-11 in 2009), (5) Mitigation and Restoration payments: Section 3407(d)(2)(A), (6) M&I Surcharge: Section 3407(d)(2)(A).  The mitigation and restoration charge is the only charge applicable to CVP power contractors.

4. Reclamation went through a robust public process in 1992 and 1993 to establish Revised Interim Guidelines that describes in specific detail when and how the charges called for in CVPIA are applied to CVP water and power contractors.

5. Over the last 30 years, more than $1.3 Billion dollars has been collected and deposited into the Central Valley Project Restoration Fund from CVP water and power contractors. During that same period, approximately $2.1 Billion dollars has been spent pursuant to the required actions called for in the CVPIA.

6. A majority of the actions required in the CVPIA are operation and maintenance ("O&M"), however, there were some large-scale construction projects required that have been placed in plant-in-service accounts and appear in a separate column on Schedule 1 of the CVP financial statements.  When Reclamation refers to "plant-in-service" it means the costs of an asset that is substantially complete and starts providing intended benefits.  Once construction is substantially complete and costs are transferred from "Asset Under Construction" to the appropriate completed asset account, the costs are referred to as Plant-in-Service.

7. While expenditures pursuant to the CVPIA authority are accounted for in the federal accounting systems of record, for the purposes of allocation and cost recovery they are treated separately from CVP expenses.  That goes for O&M and construction expenses.

8. In 2002 and 2003, Reclamation again undertook a public process to describe the accounting process for CVPIA expenses and resulted in the 2003 Business Practice Guidelines.  The 2003 Guidelines deferred certain actions related to final reimbursability determinations, cost allocation and cost recovery details of CVPIA expenses.  A significant product of those Guidelines is the Expenditures, Credits, and Offsets Report (ECO Report).  The ECO Report details expenses by specific CVPIA authorizations, and the funding source used.

9. When money is deposited into the Central Valley Project Restoration Fund it is cash available for expenditures on CVPIA activities up to the amount appropriated by Congress and in accordance with the Congressionally established formula in Section 3407(a).  Section 3407 describes a specific formula that requires not less than 67% if of the Central Valley Project Restoration Fund be used to carry out the habitat restoration, improvements, and acquisitions sections of the Act and no more than 33% of the Central Valley Project Restoration Fund be used for facility improvements in paragraphs 3406(b)(4)-(6), (10)-(18), and (20)-(22). This includes funding of activities pursuant to Section 3406(b)(23).

10. If CVP water and power contractor collections paid into the Central Valley Project Restoration Fund are used on Section 3406(b)(23) activities, the reimbursability of those

costs are offset by the collection of those costs.  Similarly, if other Congressionally Appropriated funds are used on Section 3406(b)(23) any recovery of the reimbursable cost share obligation would be first offset by CVP Restoration Fund collections used for non-reimbursable activities in the CVPIA.

11. The only set of CVPIA costs discussed in this case seems to be the $340,872,120.00 in CVPIA facility costs.  As of the end of fiscal year (FY) 2013, the baseline for the CVP final cost allocation study, total CVPIA Plant in Service costs were $340,872,120.00.  This $340M is spread across several facilities: Red Bluff Fish Passage Program (3406(b)(10), $198M); Shasta Temperature Control Device (3406(b)(6), $87M); Contra Costa Canal Pump and Screen (3406(b)(5), $30M); Keswick Fish Trap Modification (3406(b)(11), $3M); and Refuge Construction Facilities (3406(d)(5), $21M), to name a few.  All these costs are represented on the ECO Report and detailed by funding sources and costs share/reimbursability.  This is separate from the CVP Ratesetting and cost recovery processes.

12.  CVPIA § 3407(b) requires funds paid into the Central Valley Project Restoration Fund by CVP water and power contractors act to offset the reimbursable cost share obligation called for in the CVPIA.  That means that at least some portion of the reimbursable cost share is already satisfied and in order to determine exactly what is left to be repaid, if any, by CVP water and power contractors, a process must be developed to split CVPIA costs between water and power contractors.  Therefore, when Reclamation "recovers" CVPIA costs it is recovering Congressional appropriations spent on CVPIA activities that generate a reimbursable obligation that exceeds the upfront payments Reclamation collects from CVP water and power contractor for the CVPIA Restoration Fund.  When Reclamation recovers Congressional appropriations that exceed CVPIA Restoration Fund payments, that money will be deposited into the United States Treasury's Reclamation Fund, not the CVPIA Restoration Fund.

13. There was a recent effort undertaken by Reclamation that resulted in a draft 2020 Business Practice Guidelines and CVPIA True-Up.  The CVPIA True-up will be the application of the CVPIA Business Practice Guidelines in whatever form they take.  Specifically, the True-Up will be the annual process of implementing whatever reimbursability, cost allocation, and cost recovery procedures are described in the yet to be complete CVPIA Business Practice Guidelines.

14. The draft 2020 Business Practice Guidelines and CVPIA True-Up were part of a very public process over the course of several years.  Over the course of the two years, a team from Reclamation held stakeholder meetings in Sacramento and traveled to several locations throughout the State of California to engage as many stakeholders as possible.  There were also small group meetings with any stakeholder who requested one as well as draft copies of the guidelines widely distributed for stakeholder comments.  The major goals of the True-up was to finalize reimbursability of every CVPIA authorization (specifically those that deferred to existing law and procedures), finalize a process to allocate CVPIA costs, and describe the cost recovery mechanism.

15. As stated above, a majority of the $340M in plant in service have a specific cost share/reimbursability formula.  What is missing, is how to split the main project feature category between CVP water and power contractors.  Determining how to split costs between project purposes, reimbursable and non-reimbursable, was a primary goal for the 2020 Business Practice Guidelines and True-Up, not only for the $340M of construction costs but also for the other $1.66B in CVPIA O&M expenses.

16. As part of the review process, the draft 2020 Business Practice Guidelines were submitted to the Office of Management and Budget (OMB) for regulatory review and were subsequently withdrawn by Interior from OMB.

17. Since their withdrawal, the Bureau of Reclamation has not taken action to implement the draft 2020 Business Practice Guidelines.  They are on hold as discussions still need to take place regarding the treatment of certain costs, including 3406(b)(1) and 3406(b)(23).

I declare, under penalty of perjury pursuant to 28 U.S.C 1746, that the forgoing is to the best of my knowledge true and correct.

Executed this 13th day of January 2022 in Sutter County of California.

_____

Spencer Walden