TODD KIM, Assistant Attorney General
Environment & Natural Resources Division

JEFFREY S. THOMAS, Trial Attorney (VA Bar No. 86439)
Natural Resources Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-3553
Facsimile: (202) 305-0506
 jeffrey.thomas2 @usdoj.gov
*Attorneys for Federal Defendants*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPA VALLEY TRIBE,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU OF RECLAMATION; DEBRA ANNE HAALAND, in her official capacity as Secretary of the Interior; MARIA CAMILLE CALIMLIM TOUTON, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST A. CONANT, in his official capacity as U.S. Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR,<br><br>    Defendants. | Case No. 1:20−cv−01814−JLT-EPG |

**FEDERAL DEFENDANTS' RESPONSE TO THE COURT'S JANUARY 11, 2023 ORDER REQUIRING ADDITIONAL BRIEFING ON JUSTICIABILITY**

On January 11, 2023, the Court ordered the parties to file supplemental briefs to address whether Plaintiff's challenge to the Winter Flow Project is a reviewable final agency action that is ripe for adjudication.  ECF No. 124 at 6-7.  Federal Defendants respectfully submit that the Court does not have jurisdiction over Plaintiff's challenge to the Winter Flow Project for at least

two reasons: (1) Plaintiff did not identify a final agency action ripe for adjudication in its First Amended Complaint, ECF No. 97, regarding the Trinity Management Council's recommendation on the Winter Flow Project; and (2) even if Federal Defendants ultimately make a determination to adopt and implement the Winter Flow Project, any such decision would be an operational determination as contemplated by the 2000 Trinity River Record of Decision ("2000 ROD") and therefore would not be a final agency action under the Administrative Procedure Act ("APA").

## I. LEGAL STANDARDS

### A. Ripeness

The Supreme Court requires controversies to be ripe, a concept which is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). Ripeness is "peculiarly a question of timing," *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140 (1974), designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)). Courts should not "issue advisory opinions [] to declare rights in hypothetical cases," but instead are limited to adjudicating "live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Id.* A dispute is ripe in the constitutional sense if it "present[s] concrete legal issues, presented in actual cases, not abstractions." *Colwell v. HHS*, 558 F.3d 1112, 1123 (9th Cir. 2009). A dispute is ripe in the prudential sense if the issues are "fit for judicial decision" and the parties will suffer hardship from "withholding court consideration." *Thomas*, 220 F.3d at 1141.

### B. Final Agency Action

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  The person claiming a right to sue under section 702 "must identify some 'agency action' that affects him in the specified fashion; it is judicial review 'thereof' to which he is entitled."  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990).  Agency action "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  "When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"  *Lujan,* 497 U.S. at 882 (citing 5 U.S.C. § 704).  Per section 704, "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."  5 U.S.C. § 704.  The burden is on the party seeking review under section 702 to identify "circumscribed, discrete agency actions."  *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 62 (2004).  In *Bennett v. Spear*, the Supreme Court established a two-part test to determine when an agency action is considered "final" for purposes of judicial review:

> As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process, ...—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'

520 U.S. 154, 177–78 (1997).

## II.   DISCUSSION

In its January 11th Order, the Court recognized that the "Federal Defendants have yet to adopt (or even to formally indicate an intention to adopt) the WFV Project, which is merely a

3

recommendation of the TMC." ECF No. 24 at 6. The Court further stated that "[b]ecause Federal Defendants have yet to adopt the WFV project, harm is not imminent"; but noted that "[s]hould Federal Defendants decide to adopt and implement the WFV Project, the Court and the parties are already positioned to move quickly toward a resolution of the pending motion." *Id.* The issue the Court has already identified – that no agency action (final or otherwise) existed at the time Plaintiff filed its Amended Complaint or currently exists – is fatal to Plaintiff's ninth claim and its request for injunctive relief.

### A. There was no challengeable final agency action at the time Plaintiff filed its First Amended Complaint

Although Plaintiff's Amended Complaint does not mention the Winter Flow Project by name, it alleges that "Reclamation has taken action and has threatened to take imminent action, including modifications to flow releases called for in the Trinity River ROD, that fails to honor Hoopa's concurrence rights as provided in CVPIA section 3406(b)(23)." ECF No. 97 ¶ 173. Because Reclamation has taken no action on the Winter Flow Project, it appears that Plaintiff meant that the Winter Flow Project was a "threatened" action. However, Plaintiff effectively concedes that Reclamation, and the other Federal Defendants, have taken no action to date. ECF 124 at 3. With no action to challenge, much less a final agency action, Plaintiff has no ripe APA claim. *See Idaho Rivers United v. U.S. Forest Serv.*, No. 1:11-CV-95-BLW, 2013 WL 474851, at *9 (D. Idaho Feb. 7, 2013) (holding that when "the federal defendants have made no decision on the merits" there cannot have been "final agency action to review, as the APA requires"). And because a challengeable final agency action must exist at the time of Plaintiff's filing, Plaintiff's ninth claim cannot later ripen into a justiciable claim. *See Jamul Action Comm. v. Chaudhuri*, No. 213CV01920KJMKJN, 2016 WL 7212758, at *3 (E.D. Cal. Dec. 13, 2016) ("[P]laintiffs must show the requisite 'final agency action' had occurred by the time they filed

4

their second amended complaint, because '[s]ubject matter jurisdiction must exist at the time the action is commenced.'") (quoting *Mamigonian v. Biggs*, 710 F.3d 936, 942 (9th Cir. 2013), abrogated on separate grounds by *Patel v. Garland*, 142 S. Ct. 1614 (2022)).  Because no agency action, much less final agency action, existed when Plaintiff filed its First Amended Complaint, Plaintiff's challenge to the Winter Flow Project must be dismissed for lack of jurisdiction and Plaintiff's Motion for Preliminary Injunction should be denied as moot.

### B.  There has still been no agency determination to this day

Even if Plaintiff were to file a Second Amended Complaint today challenging the Winter Flow Project, that amended pleading would still fail for the same reasons as its First Amended Complaint.  Federal Defendants have not adopted the Trinity Management Council's recommendation to implement the Winter Flow Project, so there is no agency action much less a final agency action that is required by the APA.  *Lujan*, 497 U.S. at 892-93(holding that a challenge to a review program for allowing mining activities was not a ripe, reviewable final agency action because "before the grant of [] a [mining] permit, ... it is impossible to tell where or whether mining activities will occur").

Nonetheless, Federal Defendants recognize that should a determination on the Trinity Management Council's recommendation be made, the issue of whether that determination is a final agency action and justiciable may quickly come before the Court in the form of a Second Amended Complaint and Amended Motion for Preliminary Injunction.  Federal Defendants have provided notice to the Court and parties that they may make a determination on whether to adopt the Trinity Management Council's recommendation in no less than five business days from January 20, 2023.  *See* ECF No. 127.  If the Council's recommendation is adopted, implementation of the Winter Flow Project could proceed in no less than ten business days,

absent a ruling from this Court on Plaintiff's motion for preliminary injunction.  *Id.*  Given how quickly this issue may be presented to the Court, Federal Defendants address below whether the Winter Flow Project, if adopted and implemented, is a final agency action.

### C. Even if the Winter Flow Project is adopted and implemented, that operational decision will not constitute a final agency action within the meaning of the APA

"[T]he CVPIA does not itself create a private right of action, so the APA governs judicial review of any claim alleging that the CVPIA was violated."  ECF No 24 at 3 (citing *San Luis & Delta-Mendota Water Auth. v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1197, 1212 (E.D. Cal. 2009)).  When, as here, "review is sought not pursuant to specific authorization in the substantive statute . . . the 'agency action' in question must be 'final agency action.'"  *Id.* at 4 (quoting *Lujan*, 497 U.S. at 882).  In this case, the adoption and implementation of the Winter Flow Project would be an operational determination that naturally flows from the 2000 ROD.  In other words, the decision to adopt the Winter Flow Project would not be a discrete, final agency action subject to challenge under the APA, but an operational determination that continues to implement the 2000 ROD's provisions.

As noted in Federal Defendants' Response to Plaintiff's Motion for Preliminary Injunction, the 2000 ROD (1) established the Trinity Management Council; (2) directed the Trinity Management Council to "guide overall implementation" of the ROD's restoration measures; (3) adopted "[v]ariable annual instream flows for the Trinity River"; and (4) provided for adaptive management.  ECF No. 118 at 7-11 (quoting the 2000 ROD, ECF No. 111-2).  As indicated in the attached Declaration of Michael Dixon, Executive Director of the Trinity River Restoration Program, the 2000 ROD directed the incorporation of an adaptive management approach to Trinity River restoration to "ensure the proper implementation of the [ROD's] measures, conduct appropriate scientific monitoring and evaluation efforts, and recommend

possible adjustments to the annual flow schedule within the designated flow volumes provided for in this ROD or other measures in order to ensure that the restoration and maintenance of the Trinity River anadromous fishery continues based on the best available scientific information and analysis." *See* 3rd Decl. of Dr. Michael Dixon ¶ 3, attached as Exhibit 1 (quoting 2000 ROD, ECF No. 111-2 at 15).  Further, the 2000 ROD states that "[b]ased on subsequent monitoring and studies guided by the Trinity Management Council, the schedule for releasing water on a daily basis, according to that year's hydrology, may be adjusted, but the annual flow volumes established in [a referenced table] may not be changed." *Id.* (quoting 2000 ROD, ECF No. 111-2 at 12).  Based on the quoted language, the 2000 ROD clearly contemplated an adaptive management process that includes daily flow alterations pursuant to recommendations by the Trinity Management Council, which is exactly what the Winter Flow Project would do, if adopted and implemented.  The Winter Flow Project would not adjust the annual flow volumes established in 2000, which is admittedly prohibited by the 2000 ROD.  *Id.*  Mr. Dixon also points out that the Trinity Management Council meets quarterly and has, since 2000, recommended operational changes—based on a science and monitoring program—for various types of activities including sediment management, watershed restoration, channel rehabilitation, and flows. *Id.* ¶¶ 4-5. The Winter Flow Project is precisely the type of implementation level determination that the 2000 ROD contemplated and is similar to past operational changes recommended by the Trinity Management Council and adopted by Federal Defendants.

"The term 'action' as used in the APA is a term of art that does not include all conduct such as, for example, constructing a building, operating a program, or performing a contract." *Vill. of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186, 193 (4th Cir. 2013). Instead, the APA's "definition of agency action focuses on an agency's determination of rights

7

and obligations." *Id.* (citing *Bennett*, 520 U.S. at 177-78). Rights and obligations are determined when the agency makes a decision on how it will act; not when the agency implements its decision. *Id.* Because the Winter Flow Project (if adopted) would implement actions already contemplated by the 2000 ROD, it would not constitute a "final disposition . . . in a matter, rather than the implementation of a final disposition already made." *Chem. Weapons Working Grp., Inc. (CWWG) v. U.S. Dep't of the Army*, 111 F.3d 1485, 1494 (10th Cir. 1997).

The Fourth Circuit's decision in *Vill. of Bald Head Island* and the Tenth Circuit's decision in *Chem. Weapons Working Grp.* are both instructive. In *Vill. of Bald Head Island*, the Fourth Circuit held that "the implementation of a specific dredging project at a specific coastal site" was not a final agency action but was implementation of a decade-old decision by the U.S. Army Corps of Engineers to periodically dredge and nourish beaches as part of the Wilmington Harbor Project. 714 F.3d at 194. The Fourth Circuit further noted that "by challenging the Corps' ongoing real world physical actions, even at a localized level, the [plaintiff] is essentially 'demand[ing] a general judicial review of the [Corps'] day-to-day operations' in maintaining the channel, the type of review the Supreme Court has explicitly held the APA does not authorize." *Id.* (citation omitted). Similarly, in *Chem. Weapons Working Grp.*, the Tenth Circuit held that the Department of the Army's decision to commence "trial burns" of lethal chemical weapons was not a final agency action because the trial burns merely implemented the agency's prior decision to destroy rather than to store chemical weapons. 111 F.3d at 1494.

The Ninth Circuit has also addressed whether implementation or operation of a prior agency action constitutes a distinct final agency action. *See Wild Fish Conservancy v. Jewell*, 730 F.3d 791 (9th Cir. 2013)); *see also Montana Snowmobile Ass'n v. Wildes*, 103 F. Supp. 2d 1239, 1242 (D. Mont. 2000) (holding that a Forest Service letter stating that snowmobile use was

no longer permitted in two areas of a national forest was not a final agency action because the letter implemented a previously-unenforced decision to close those areas to motorized use), aff'd, 26 F. App'x 762 (9th Cir. 2002).  In *Jewell*, the Ninth Circuit held that closing the gates of a dam at a fish hatchery was an implementation decision instead of a final agency actions because it "constitute[d] day-to-day operations that merely implement operational plans for the [h]atchery.'" 730 F.3d at 802.  Although the Ninth Circuit acknowledged that closing dam gates had "immediate physical consequences," it held that those physical consequences by themselves were insufficient to demonstrate an underlying "agency action" within the meaning of the APA. *Id.* at 801.

Here, like in *Vill. of Bald Head Island*, *Chem. Weapons Working Grp.*, and *Jewell*, Federal Defendants would merely be implementing a decades-old decision that the Trinity Management Council can recommend – based on the best scientific information available to it – an adjustment to daily flows.  This type of operational determination is not a final agency action within the meaning of the APA.[1]

Thus, even if Plaintiff amends its complaint upon a determination by Federal Defendants to adopt and implement the Winter Flow Project, Plaintiff will not be able to meet its burden of establishing that the agency has taken a final agency action.  *See Pac. Coast Fed'n of Fishermen's Ass'n/Inst. for Fisheries Res. v. Gutierrez*, No. 1:06-CV-00245OWWLJO, 2007 WL 1752289, at *7 (E.D. Cal. June 15, 2007) ("Plaintiff's bear the burden of proving the existence of subject matter jurisdiction which here includes 'identifying specific federal conduct

---

[1] Notably, to the extent Plaintiffs would seek to challenge the decisions made by the ROD, they would be time barred.  A six-year statute of limitations applies to APA claims.  *See United States v. Est. of Hage*, 810 F.3d 712, 715 (9th Cir. 2016).

and explaining how it is final agency action . . . .'" (quoting *Colorado Farm Bureau Federation v. United States Forest Service*, 220 F.3d 1171, 1173 (10th Cir. 2000)).

### III. CONCLUSION

Because Plaintiff identified no challengeable final agency action relating to the Winter Flow Project its Amended Complaint, its APA claims challenging the Winter Flow Project must be dismissed and its motion for preliminary injunction must be denied. Additionally, even if Federal Defendants were to adopt and implement the Winter Flow Project, Plaintiff would still not have an APA claim because the Winter Flow Project is an operational, implementation action, not a final agency action within the meaning of the APA.

Respectfully submitted this 25th day of January, 2023,

TODD KIM
Assistant Attorney General

*/s/ J. Scott Thomas*
JEFFREY SCOTT THOMAS
Trial Attorney
U.S. Department of Justice

*Attorneys for Federal Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 25, 2023, I electronically filed **FEDERAL DEFENDANTS' RESPONSE TO THE COURT'S JANUARY 11, 2023 ORDER REQUIRING ADDITIONAL BRIEFING ON JUSTICIABILITY** with the Clerk of Court using the ECF system, which will automatically send email notification to the attorneys of record.

*/s/ J. Scott Thomas*
JEFFREY SCOTT THOMAS