EXHIBIT 30

*Letter from Chairman Byron Nelson, Jr., Hoopa Valley Tribe*



**HOOPA VALLEY TRIBAL COUNCIL**
Hoopa Valley Tribe
Post Office Box 1348 Hoopa, California 95546
PH (530) 625-4211 • FX (530) 625-4594
www.hoopa-nsn.gov



Chairman Byron Nelson, Jr.

June 18, 2021

Winter Flow Scoping
C/O TRRP
P.O. Box 1300
Weaverville, CA 96093

**Subject : Hoopa Valley Tribe Comments – Trinity River Restoration Program - Winter Flow Variability Proposed Action**

Winter Flow Scoping Team:

Please find attached comments from the Hoopa Valley Tribe (HVT) regarding the Trinity River Restorations Program's (TRRP) proposed action to modify the existing 2000 Trinity River Record of Decision (ROD) that was concurred in by the HVT and Secretary of Interior Babbitt as required by the Central Valley Project Improvement Act (CVPIA) (PL 102-575). The HVT views the CVPIA, especially Section 3406 b (23), as a contemporary treaty between the United States and HVT and we take any action to modify or diminish the original purpose of the statue very seriously. Accordingly, we submit our comments on TRRP proposed action to shift a portion of the ROD water used for restoration releases to the winter period (i.e. from October 1 through April 1 ).

The TRRP recently published an Environmental Assessment (EA) scoping notice about a "new flow management proposal" for fishery restoration water releases from reservoirs of the Central Valley Project's Trinity River Division (TRD). The proposal would require a change in the flow release hydrographs established for the TRRP pursuant to the HVT's provision of the 1992 CVPIA, P L 102-575 §3406(b)(23)[1] and the 2000 Trinity River ROD. Moreover, the 2000 ROD

---

[1] (23) In order to meet Federal trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe, and to meet the fishery restoration goals of the Act of October 24, 1984, Pub. L. 98-541, provide through the Trinity River Division, for water years 1992 through 1996, an instream release of water to the Trinity River of not less than 340,000 acre-feet per year for the purposes of fishery restoration, propagation, and maintenance and,

    (A) By September 30, 1996, the Secretary, after consultation with the Hoopa Valley Tribe, shall complete the Trinity River Flow Evaluation Study currently being conducted by the U.S. Fish and Wildlife Service under the mandate of the Secretarial Decision of January 14, 1981, in a manner which insures the development of recommendations, based on the best available scientific data, regarding permanent instream fishery flow requirements and Trinity River Division operating criteria and procedures for the restoration and maintenance of the Trinity River fishery; and

June 18, 2021
Page 2

is a solemn agreement between the Secretary and HVT pursuant to the mandate and authority of the CVPIA's HVT provision. Upon the Secretary and HVT reaching that agreement, the HVT provision requires that the instream fishery releases "shall be implemented accordingly." The ROD's flow release hydrographs may not (emphasis added) be changed without HVT concurrence. For the following reasons, HVT does not concur in the proposed modification of ROD flow release hydrographs as currently proposed.

First, Trinity River restoration has four fundamental requirements:

> 1) Meet Federal trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe (Pub. L. 102-575 §3406(b)(23);
>
> 2) Restore Trinity River fish populations to the "levels approximating those which existed immediately before the start of the construction" of the CVP's Trinity River Division (Pub. L. 98-541 §2);
>
> 3) Rehabilitate fish habitats in the Trinity River between Lewiston Dam and Weitchpec (*id.*);
>
> 4) Modernize and otherwise increase the effectiveness of the Trinity River Fish Hatchery (TRH) so that it can best serve its purpose of mitigation of fish habitat loss above Lewiston Dam while not impairing efforts to restore and maintain naturally reproducing anadromous fish stocks within the basin. (Pub. L. 98-541 §2, as amended by Pub. L. 104-142(c) (1996)).

In 2004--seventeen years ago--the Ninth Circuit Court of Appeals wrote:

> Twenty years have passed since Congress passed the first major Act calling for restoration of the Trinity River and rehabilitation of its fish populations, and almost

> (B) Not later than December 31, 1996, the Secretary shall forward the recommendations of the Trinity River Flow Evaluation Study, referred to in subparagraph (A) of this paragraph, to the Committee on Energy and Natural Resources and the Select Committee on Indian Affairs of the Senate and the Committee on Interior and Insular Affairs and the Committee on Merchant Marine and Fisheries of the House of Representatives. <u>If the Secretary and the Hoopa Valley Tribe concur in these recommendations, any increase to the minimum Trinity River instream fishery releases established under this paragraph and the operating criteria and procedures referred to in subparagraph (A) shall be implemented accordingly.</u> If the Hoopa Valley Tribe and the Secretary do not concur, the minimum Trinity River instream fishery releases established under this paragraph shall remain in effect unless increased by an Act of Congress, appropriate judicial decree, or agreement between the Secretary and the Hoopa Valley Tribe. Costs associated with implementation of this paragraph shall be reimbursable as operation and maintenance expenditures pursuant to existing law. (Emphasis added.)

June 18, 2021
Page 3

another decade has elapsed since Congress set a minimum flow level for the River to force rehabilitative action. Flow increases to the River have been under study by the Department of the Interior since 1981. "[R]estoration of the Trinity River fishery, and the ESA-listed species that inhabit it . . . are unlawfully long overdue."

*Westlands Water Dist. v. U.S. Dep't of Interior*, 376 F.3d 853, 878 (9th Cir. 2002) concluded that "restoration of the Trinity River is unlawfully long overdue, which remains the case. It has been 21 years since the Secretary and Hoopa signed the ROD. To date, many of the fundamental requirements have not been met, and in particular, the continued degraded state of the Trinity River fishery. Urgent action must be taken to remedy this dire situation to the Trinity River fishery..

Second, the TRRP provides for Adaptive Environmental Assessment and Management (AEAM) of the TRRP, including ROD flow release management. The current variability flow release proposal would use ROD flows that are prescribed for specific restoration outcomes as described in the 1999 Trinity River Flow Evaluation Study Final Report (TRFEFR). However, that water is not available for any purpose or use other than the ROD prescription. As proposed, this flow modification proposal is not framed as an adaptive management experiment as intended by the ROD, but appears to be proposed as a long-term or permanent modification of the ROD flow prescription. To modify the ROD flow prescription beyond a year-specific adaptive management experiment must meet a higher bar of scientific justification and an administrative process that includes the HVT's concurrence. We offer recommendations later in our comments on how to meet this higher bar. .

Third, the act that authorized the Central Valley Project's TRD (Pub. L. 84-386 1955) expressly allocated TRD water for use within the basins and further established a priority for TRD water needs in the basin over diversions to the Central Valley. Provisos 1 and 2 of section 2 of identify those uses.

June 18, 2021
Page 4

Proviso 1 establishes a duty on the Secretary of the Interior to use as much TRD water as is needed for the preservation and propagation of fish and wildlife in the Trinity River basin. In establishing the ROD restoration flows, with HVT concurrence, the Secretary did not exhaust his or her authority to use Proviso 1 water for additional fishery preservation and propagation activities. *San Luis & delta-Mendota Water Authority v Haugrud*, 848 F.3d 1216, 1229-1232 (9th Cir. 2017). Additional TRD Proviso 1 water is available for use for the winter flow variability proposal without disturbing the volumes of water dedicated to the ROD. The Secretary simply has to allocate additional water for that purpose.

Proviso 2 establishes a right for the benefit of Humboldt County and downstream water users, which includes HVT, to 50,000 Acre-Feet of TRD water annually. Under acceptable terms and conditions, the beneficiaries of Proviso 2 water could agree to temporary use of that water for the winter variable flow as an AEAM experiment. In the event the AEAM experiment has favorable outcomes, the Secretary then would cease use of Proviso 2 water and allocate a comparable amount of Proviso 1 water over and above ROD flow releases for winter variable flow purposes.

For the foregoing reasons, HVT does not concur in the winter flow variability proposal as currently proposed to the extent that it would use ROD water supplies. If the proposal was modified for use in a single year under a structured AEAM process as described in the ROD and TRFEFR, ideally using Proviso 2 water for the AEAM experiment, the HVT would consider supporting that experiment pending our technical review and concurrence. If ROD water was used for the AEAM experiment, the HVT may be willing to support the proposed experiment provided that the EA analyzes and assures that the moved water volumes would not negatively impact objectives for which that water was originally allocated for in the ROD.

Lastly, if the proposal intends to be a longer-term management change rather than a structured, short-term AEAM experiment, then HVT has identified the following requirements needed for the proposal prior to implementation:.

- Conduct the scientific and administrative process as identified in the ROD and the Implementation Plan (Appendix C of the Final EIS/EIR) to clearly conduct this flow modification effort as a process within the existing ROD;
- Completion of the Flow Synthesis report, including a rigorous scientific peer review to a similar level as conducted by the TRFEFR that meets the "best available science" standard required by the 1992 CVPIA;
- The EA process must conduct a careful and complete evaluation of ecological tradeoffs of moving ROD flows earlier in the year to ensure that ROD management objectives of the original hydrographs are still being met and/or that the overall benefits of the proposed management actions significantly outweigh the potential impacts of moving water from the original ROD hydrographs.
- Once the scientific and NEPA process is completed, conduct an administrative process consistent with the ROD that documents the scientific basis and decision-making process for assessing and implementing the flow management revision, including HVT concurrence.
- Thoroughly monitor and document the effects of the action and evaluate if the predicted benefits were realized. These information would then be used to inform future actions.

June 18, 2021
Page 5

In summary, the HVT is concerned with the chronically impaired Trinity River fishery, and supports the best available science and AEAM to make improvements in ROD flow management to improve the fishery, as long as it is conducted within the framework of the existing ROD and meets the statutory requirements described above. While we realize that these requirements may delay implementation of the flow modification proposal, it is imperative that the science and administrative process is conducted within the framework of the ROD.

Sincerely,

for Byron Nelson Jr.
Chairman, Hoopa Valley Tribe

Cc: Ernest Conant BOR