EXHIBIT 14



**HOOPA VALLEY TRIBAL COUNCIL**
Hoopa Valley Tribe
Post Office Box 1348 Hoopa, California 95546
PH (530) 625-4211 • FX (530) 625-4594
www.hoopa-nsn.gov



Chairman Byron Nelson, Jr.

March 24, 2020

Ernest A. Conant, Regional Director
Bureau of Reclamation, Interior Region 10
2800 Cottage Way
Sacramento, CA 95825-1898

> Re:   Bureau of Reclamation's duty expressly to protect fisheries resources of the
> Hoopa Valley Tribe in proposed repayment contract with Westlands Water
> District

Dear Mr. Conant:

In Contract No. 14-06-200-495A-XXX, the Bureau of Reclamation proposes to use
Section 4011 of the WIIN Act of 2016 to permanently contract with Westlands Water District for
delivery of up to 1,150,000 acre-feet of water annually. We formally objected to this proposed
contract in a letter to you, dated December 16, 2019 (A copy of our letter is enclosed). We have
neither received a response from you nor, to our knowledge have appropriate changes been made
in the proposed contract We are again notifying you of our formal objection to the proposed
contract, and we urge you to use the recent ruling of the Superior Court for Fresno County in
*Westlands Water District v. All Persons Interested,* No. 19CECG03887, as an opportunity to
rectify this omission.

The Hoopa Valley Tribe has long urged inclusion of specific references to CVPIA §
3406(b)(23) and trust responsibility in the contracts. This is a prudent step to avoid future
disputes with this litigious contractor about the applicability of such provisions. Hoopa requests
the Regional Director to include the following language in water delivery contracts:

> All water deliveries pursuant to this Contract are limited by and subordinate to
> the Secretary's fiduciary duty, referred to in Section 3406(b)(23) of the Central
> Valley Project Improvement Act, to meet instream fishery flow requirements and
> operating criteria of the Trinity River Restoration Record of Decision (2000); the
> restoration standards imposed by the 1984 Act referred to in (b)(23), as amended;
> the Interior Solicitor Krulitz's 1979 Grasslands opinion on the priorities of the
> 1955 Trinity Division Act provisos; the Memorandum from Solicitor to Secretary
> (M-37030) re Trinity River Division Authorization's 50,000 Acre-Foot Proviso
> and the 1959 Contract between the Bureau of Reclamation and Humboldt County
> (December 23, 2014); and the Bureau of Reclamation's Record of Decision re

March 24, 2020
Page 2

Long-Term Plan to Protect Adult Salmon in the Lower Klamath River Final
Environmental Impact Statement (2017).

Judge Simpson's ruling in the Superior Court validation action noted above
pointed out that the Water Code authorizes validation of completed contracts, not
proposed ones. He noted that essential terms of the repayment contract are missing, such
as the amount of repayment to be made. The Trinity River provisions we seek are
another essential term.

The Regional Director's ongoing failure to comply with the provisions of CVPIA
§ 3404(c)(1) and (2) jeopardizes our property rights under the law of the Trinity River and the
integrity of the federal government's trust responsibility specifically established for our benefit
in § 3406(b)(23) of the CVPIA and elsewhere. All new CVP contracts, including any pursuant to
the WIIN Act must explicitly incorporate and require Westlands to: (1) comply or not otherwise
interfere with the Secretary's fishery restoration, preservation, and propagation responsibilities
on the Trinity River; and (2) to commit to include in its operation and maintenance payments
pursuant to CVPIA § 3406(b)(23) the costs of Trinity River fishery restoration. The Secretary of
the Interior, in consultation with the Hoopa Valley Tribe and Senator Dianne Feinstein,
determined the annual costs of the restoration program to be $16.4 million (October 2007 price
levels) through construction and $11.2 million (October 2007 price levels) annually thereafter.
*See* https://bit.ly/2rIaDiT. The proposed contract is entirely inadequate to meet this clear
statutory directive.  Now is the time to insert the essential terms that we have proposed.

Thank you for your personal participation and for your consideration.

Sincerely,

HOOPA VALLEY TRIBAL COUNCIL

Byron Nelson Jr., Chairman

cc.    Hon. Brenda Berman



**HOOPA VALLEY TRIBAL COUNCIL**
Hoopa Valley Tribe
Post Office Box 1348 Hoopa, California 95546
PH (530) 625-4211 • FX (530) 625-4594
www.hoopa-nsn.gov



Chairman Byron Nelson, Jr.

December 16, 2019

Ernest A. Conant, Regional Director
Bureau of Reclamation, Interior Region 10
2800 Cottage Way
Sacramento, CA 95825-1898

> Re:  Reclamation's duty expressly to protect fisheries resources of the Hoopa Valley
> Tribe in proposed repayment contract with Westlands Water District

Dear Mr. Conant:

In Contract No. 14-06-200-495A-XXX, Reclamation proposes to use section 4011 of the WIIN Act of 2016 to contract permanently with Westlands Water District for delivery of up to 1,150,000 acre-feet of water annually. The proposed contract fails to comply with the CVPIA, particularly sections 3406(b)(23) and 3404(c).

Hoopa has long urged inclusion of specific references to (b)(23) and trust responsibility in the contracts. Our administrative appeal to the Commissioner from Kirk Rodgers' refusal to so act, filed October 23, 2003, has been ignored in interim contracts but the refusal cannot go unchallenged any longer.  Hoopa in 2003 requested the Regional Director to include the following language in water delivery contracts:

> All water deliveries pursuant to this contract are limited by and subordinate to the Secretary's fiduciary duty, referred to in section 3406(b)(23) of the Central Valley Project Improvement Act, to meet instream fishery flow requirements of the Trinity River as specified in the Trinity River Flow Evaluation Final Report (June 1999).

The Regional Director rejected the Tribe's request. This led to Hoopa's 2003 appeal notice and supporting memorandum. See https://bit.ly/38CAUzZ.

Hoopa's concern for compliance with the law is well-founded. The Westlands Water District spent four years seeking to invalidate the 2000 Trinity River Mainstem Fishery Restoration Record of Decision, which our Tribe considers to have the significance of a treaty with the United States. When the 9th Circuit Court of appeals finally rejected Westlands' litigation, it stated that restoration of the Trinity River is unlawfully long overdue. Westlands' actions continue to be a major factor in the delay of restoration. Westlands has also challenged the priorities for use of TRD water to meet additional fishery preservation and propagation obligations established in the Act of August 12, 1955, Public Law 84-386, which authorized the

December 16, 2019
Page 2

Trinity River Division. Those additional obligations were implemented with flow augmentation releases to the lower Klamath River pursuant to a 2017 Record of Decision. That Westlands litigation was not finally concluded until 2017. In addition, the 1955 Act entitles Hoopa to a share of not less than 50,000 acre-feet of TRD water required to be released annually to Humboldt County and downstream users, which includes Hoopa.

The Regional Director's ongoing failure to comply with the provisions of CVPIA § 3404(c)(1) and (2) jeopardizes our property rights under the law of the Trinity River and the integrity of the federal government's trust responsibility specifically established for our benefit in section 3406(b)(23) of the CVPIA. All new CVP contracts, including any pursuant to the WIIN Act must explicitly incorporate and require Westlands to: (1) comply or not otherwise interfere with the Secretary's fishery restoration, preservation and propagation responsibilities on the Trinity River; and (2) to commit to include in its operation and maintenance payments pursuant to CVPIA section 3406(b)(23) the costs of Trinity River fishery restoration. The Secretary of the Interior in consultation with the Hoopa and Senator Dianne Feinstein determined the annual costs of the restoration program to be $16.4 million (October 2007 price levels) through construction and $11.2 million (October 2007 price levels) annually thereafter. See https://bit.ly/2rIaDiT. The proposed contract is entirely inadequate to meet this clear statutory directive.

In denying the Tribe's 2003 request, the Regional Director relied on language which he contends sufficiently incorporates by reference the Bureau's trust obligations regarding the Trinity fishery.  The Regional Director's 2003 letter rejecting the Tribe's request stated:

> Our current proposed contracts contain language that specifically states that they are subject to the provisions of all applicable laws, including the CVPIA.  We do not understand how this language fails to comport with the requirements of the statute or to protect the fishery, as all applicable restoration authorities for the Trinity River fishery—including both section 3406(b)(23) of the CVPIA and the Trinity River Basin Fish and Wildlife Management Act of 1984, as amended— clearly fall within the ambit of the statement.

The Tribe agrees that the 1955 TRD Act, CVPIA and the 1984 Act fall within the category of "all applicable laws."  But falling "within the ambit" of such a generalized reference is wholly inadequate in light of: (1) the unique statutory and trust obligations owed with respect to the Trinity River fishery; and (2) the history of costly and time-consuming litigation in which CVP water service contractors have challenged the Department's authority to restrict water deliveries for the benefit of fishery protection. It is essential that the Bureau act to preclude future controversies with CVP contractors by incorporating clear and explicit provisions affirming the priority of Trinity River fishery releases over diversions to the Central Valley.

At least three separate provision of Section 3404 speak to the subordination of CVP water delivery contracts to fishery restoration requirements.  Section 3404(a)(1) states that, subject to some exceptions not applicable here, the Secretary shall not enter

December 16, 2019
Page 3

into new contracts before "the provisions of subsection 3406(b)-(d) of this title are met."
Section 3404 makes renewal of existing long-term contracts subject to the fish and
wildlife restoration requirements of the CVPIA generally. Subsection 3404(c)(1)
specifically states that the language of renewal contracts "shall incorporate … all other
modifications needed to comply with …provisions of this title." The fishery flow
requirements of the Trinity River established under CVPIA § 3406(b)(23) are
"provisions of this title" that limit supply available to meet contract deliveries.
Accordingly, modification of contract terms is necessary in order to "comply with" the
Trinity restoration requirements.

Section 3404(c)(2) similarly requires that renewal contracts "shall incorporate all
requirements imposed by existing law, including provisions of this title, within such
renewed contracts." Among the "requirements imposed by . . . this title" are the science-
based Flow Evaluation Study results for Trinity River fishery restoration requirements
established at CVPIA § 3406(b)(23). Congress directed that contract language be
modified to reflect the limitations imposed by fishery restoration requirements.

Hoopa has an abiding interest in and demonstrated ability to further the Secretary's
responsibility under the TRD Act, the CVPIA, and other federal statutes to restore, preserve and
propagate the fishery expressly for Hoopa's benefit. The priority for use of TRD water within
the Trinity-Klamath was established by the 1955 Act authorizing construction of the TRD.
Because the TRD is a trans-basin diversion facility, Congress was attentive to the interests in the
Klamath-Trinity basin. Accordingly, although section 2 of the 1955 Act requires integration of
the TRD with the CVP, that instruction was expressly conditioned by Congress' direction that
Interior "adopt appropriate measures to ensure the preservation and propagation of fish and
wildlife" in the Trinity-Klamath Basin. 1955 Act, § 2.

The 1955 Act gives legal priority to Trinity River in-basin water needs, including those
of the Tribe's fishery, over diversions to the Central Valley. See Mem. from Asst. Regional
Solicitor of the Department of the Interior to Regional Director, BOR, Sacramento, 1-2 (Dec. 6,
1973) (1973 Sol. Op.); Mem. from the Solicitor to Assist. Secretary, Land and Water Resources,
Proposed Contract with Grasslands Water District, 3-4 (Dec. 7, 1979) (1979 Sol. Op). This
limits DOI's authority to divert water for allocation to Central Valley contractors and must be
reflected in the contract.

As you know, "agency action unlawfully withheld or unreasonably delayed" will be
addressed by federal courts. While the 16-year delay in addressing our proposed contract
language is unusual for your office, please recall that Hoopa has attempted to engage
Reclamation to review Trinity River Hatchery failures for quite some time as well. We have
been frustrated by Reclamation's neglect to administer Hoopa's self-governance contract
appropriately and Reclamation's failure to review CDFW allegations with Hoopa prior to
deciding to reassume the Coho Program. Mr. Bader's March 13, 2008 promise to "convene
bimonthly meetings focused on solutions," has not been performed. The Statement of Work in
our AFA with Reclamation provides:

December 16, 2019
Page 4

The HVT expected activities are to have an emphasis on Coho production to ensure progressive assumption of the Coho program. This initial task is to launch an effort which shall expand within and across fiscal years culminating in HVT's full assumption of the TRH Coho Program. The role of TRH as mitigation facility for the Trinity River Division shall be emphasized in this full assumption strategy.

The hatchery statement of work was developed jointly and after extensive negotiations with Reclamation. It depended for its success upon Reclamation's full participation in assuring CDFW's cooperation. Instead, Hoopa's contractual rights and trust interests have been devalued and degraded as Reclamation has ignored CVPIA requirements for the proposed Westlands contract and has uncritically accepted harmful representations without conferring with Hoopa.

Thank you for your personal participation and for your consideration.

Sincerely,

HOOPA VALLEY TRIBAL COUNCIL

Oscar Billy, Vice Chairman

Byron Nelson Jr., Chairman


cc.     Hon. Brenda Berman