EXHIBIT 28

# United States Department of the Interior

OFFICE OF THE SOLICITOR
Washington, D.C. 20240

IN REPLY REFER TO:

**Attorney-Client Communication. DO NOT DISCLOSE.**

**MEMORANDUM**

JAN 1 4 2021

To: Regional Director, California-Great Basin Region

From: Associate Solicitor, Division of Water Resources

Subject: Interpretation of Central Valley Project Improvement Act Sections 3406 and 3407

    The 1992 Central Valley Project Improvement Act ("CVPIA" or "the Act") put forth a framework to "protect, restore, and enhance fish, wildlife, and associated habitats in the Central Valley and Trinity River basins of California."[1] In support of these ends, the CVPIA amended the 1937 CVP authorizing statute,[2] which required operation of the CVP according to a hierarchy of purposes: "first, for river regulation, improvement of navigation, and flood control; second, for irrigation and domestic uses; and, third, for power." The CVPIA added "fish and wildlife mitigation, protection and restoration" as secondary project purposes,[3] and "fish and wildlife enhancement" as a tertiary project purpose.[4]

    The CVPIA also mandated multiple specific programs and activities to serve these purposes, primarily in section 3406 of the Act. To fund mitigation, protection, restoration, and enhancement actions, the Act created the CVP Restoration Fund,[5] with annual appropriations "up to $50,000,000 per year (October 1992 price levels)"[6] and equal contributions from project water and power beneficiaries.[7] If annual appropriations fall short of $50 million, the CVPIA obligates the Secretary to collect payments from project beneficiaries to the extent of the shortfall, but not to "exceed $30,000,000 (October 1992 price levels) on a three-year rolling average basis."[8] In section 3407(d)(2)(A), the Act reduces those funding levels, however, "upon completion of the fish, wildlife, and habitat mitigation and restoration actions mandated under section 3406." For the $50 million annual funding goal, the Act provides that "the Secretary shall reduce" that amount "to $35,000,000 per year (October 1992 price levels)."[9] It accordingly provides also that

---

[1] Pub. L. No. 102-575, § 3402(a) (Oct. 30, 1992).
[2] Rivers and Harbors Act of 1937, 75 Cong. Ch. 832, § 2, 50 Stat. 844, 850 (Aug. 26, 1937).
[3] CVPIA § 3406(a)(1).
[4] *Id.* § 3406(a)(2).
[5] *Id.* § 3407(a).
[6] *Id.* § 3407(b).
[7] *Id.* § 3407(c)(2).
[8] *Id.* § 3407(d)(2)(A).
[9] *Id.*

1

the Secretary "shall reduce" the water and power users' "annual mitigation and restoration payment ceiling ... to $15,000,000 (October 1992 price levels)."

In its effort to administer the CVPIA and ensure compliance with its statutory obligations, the Bureau of Reclamation posed to the Office of the Solicitor the following four questions concerning interpretation of the Act.

- Are chronologically indeterminate (i.e., ongoing) actions required under section 3406 precluded from being considered complete within the meaning of section 3407(d)(2)(A)?

- Where section 3406 requires the Secretary to "develop and implement" a program, does "completion" occur under section 3407(d)(2)(A) when a program has been developed and implemented, or only when every element in such a program has been implemented?

- Does section 3406(b)(15) require construction of a *permanent* barrier?

- Are the level 4 refuge water supplies required under section 3406(d)(2) "mitigation and restoration" or "enhancement"?

This memorandum answers these questions.

### I. Chronologically indeterminate section 3406 actions may be considered complete within the meaning of section 3407(d)(2)(A) notwithstanding their ongoing nature.

The factual condition precedent to the Secretary's obligation to reduce the Restoration Fund target and the associated contributions ceiling is "completion of the fish, wildlife, and habitat mitigation and restoration actions mandated under section 3406."[10] Although the term "completion" is not defined in the CVPIA,[11] its meaning can be discerned by reference to each of "the fish, wildlife, and habitat mitigation and restoration *actions* mandated under section 3406."

Some of those actions are temporally discrete construction activities. For example, section 3406(b)(6) requires the Secretary to "[i]nstall ... a structural temperature control device at Shasta Dam." Similarly, 3406(b)(11) requires the Secretary to "modify the Keswick Dam Fish Trap" and to "modify the basin below the Keswick Dam spillway." These activities would reasonably be considered complete when, for example, the temperature control device has been installed, or the fish trap or spillway basin modified. In each case, the measure of completion under section 3407(d)(2)(A) is the specific "action[] mandated under section 3406"[12]; i.e., in the foregoing examples, installation or modification.

In other instances, section 3406 requires ongoing actions, often changes to CVP operations. Section 3406(b)(6), to use a preceding example, also requires the Secretary to "operate" the temperature control device and to "implement modifications as needed to assist in

---

[10] *Id.*
[11] *See generally id.* § 3403.
[12] *Id.* § 3407(d)(2)(A).

2

the Secretary's efforts to control water temperatures." Sections 3406(b)(7) ("[m]eet flow standards and objectives and diversion limits") and (b)(8) ("[m]ake use of short pulses of increased water flows to increase the survival of migrating anadromous fish") likewise require ongoing, annual project operations. Unlike discrete construction activities, these ongoing actions present no clear chronological terminus.

Nevertheless, the analysis remains the same for the two classes of activities, because they are subject to the same statutory standard under section 3407(d)(2)(A)—has the Secretary taken the specific *actions* required under section 3406? If, for example, the Secretary has taken the action that section 3406(b)(6) calls for—to *operate* the temperature control device—that action is complete within the meaning of section 3407(d)(2)(A). So too if the Secretary has *implemented modifications, made use of short pulses of increased water*, or *met flow standards*, each representing the specific action section 3406 requires the Secretary to take. To reach a contrary conclusion requires either reading an ongoing action exception into section 3407(d)(2)(A) or rendering its object impossible to achieve because perpetual actions are never complete.

When Reclamation and the Fish and Wildlife Service last comprehensively reviewed the status of section 3406 activities,[13] they took the former approach. Characterizing ongoing activities as "annual" and others as "time certain,"[14] the agencies concluded that completion must be "based on the completion of all 'time certain' programs, and a showing of some level of ability to continue carrying out 'annual' programs."[15] The agencies did not apply this novel, some-level-of-ability-to-continue-carrying-out standard. Instead, they "assume[d] that funding would continue to be available for [some] annual components," while concluding that funding for others "should be considered in the decision for funding reduction."[16] It left undefined what consideration should be given, except to say it should not be a "determinative factor."[17]

The trouble with this interpretation is that section 3407(d)(2)(A) bears no such complexity or ambiguity. It simply says "completion of the fish, wildlife, and habitat mitigation and restoration actions mandated under section 3406." It does not distinguish between annual actions and time certain ones. Nor does it command some undefined assurance of funding for annual actions before completion can occur, because the CVPIA provides that assurance via the second tier funding levels described in section 3407(d)(2)(A). Rather than stray so far from the statutory text, the better grounded interpretation of completion means implementation of the specific actions required under section 3406, each of which can readily be identified in the statutory text, including those that are ongoing in nature.

---

[13] Bureau of Reclamation & U.S. Fish & Wildlife Service, Central Valley Project Improvement Act Program Activity Review Report (Aug. 25, 2009) (hereinafter "CPAR"), *available at* https://www.usbr.gov/mp/cvpia/docs_reports/docs/2009_Final%20CPAR%20Report%208-25-09.pdf.
[14] *Id.* at 43.
[15] *Id.* at 44.
[16] *Id.* at 55.
[17] *Id.* at 55.

3

II. **Where section 3406 requires the agency to "develop and implement" a program, "completion" occurs under section 3407(d)(2)(A) when the program has been developed and implemented.**

Section 3406 requires in multiple instances that the Secretary "develop" and "implement" a "program." Examples include 3406(b)(1), which requires the Secretary to "[d]evelop … and *implement a program* which makes all reasonable efforts" to support restoration of salmon populations. Others include the obligations to: "[d]evelop and implement a program to eliminate" fish losses caused by project flow fluctuations, section 3406(b)(9); "[d]evelop and implement a continuing program" to restore spawning gravel the Project caused to be lost, section 3406(b)(13); and other slight variations, such as "[e]stablish … a comprehensive program to monitor fish and wildlife resources," section 3406(b)(16).

For these actions, like ongoing ones, the statutory term "completion" must be defined by reference to the specific text describing the actions required by section 3406. Where the statute requires the Secretary to "develop" and "implement" a "program," completion occurs under section 3407(d)(2)(A) when the Secretary has done just that—developed and implemented a program. A "program" means generally "a plan or system under which action may be taken toward a goal."[18] To "develop" a program is to set it forth; make it manifest; to create or produce it.[19] And to "implement" a program is to carry it out; provide instruments for it.[20] Accordingly, where section 3406 requires development and implementation of a program, completion occurs under section 3407(d)(2)(A) when the Secretary has set forth and carried out a system or plan for taking actions toward the specified goal.

The 2009 CVPIA activity review evaluated completion under section 3407(d)(2)(A) based on whether a section 3406 action is an "outcome" or "output" action, in addition to the annual/time certain distinction described above.[21] The review concluded the "output" actions to include those section 3406 actions that "describe[] a specific action to be accomplished."[22] It characterized the program actions as "outcome" provisions that "lack[] specificity as to the actions to be accomplished," unless "the agencies have identified specific actions to achieve the goal," in which case "outcome" actions would instead be treated as "output" actions.[23]

Using these constructs, the 2009 review concluded that the actions required under sections 3406(b)(9), (13), and (16), for example, are "annual" and thus consideration of completion under section 3407(d)(2)(A) to be "N/A."[24] For section the section 3406(b)(1) fish restoration program, the report viewed it as both "Time Certain" and "Annual"; both "Outcome" and "Output" in type; and both "Incomplete" and "Annual."[25] Based on these considerations, it

---

[18] Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary (last visited Dec. 8, 2020).
[19] *Id.*
[20] *Id.*
[21] CPAR at 44.
[22] *Id.*
[23] *Id.*
[24] *Id.* at 48-50.
[25] *Id.* at 45.

4

viewed the program in some respects to be outside the scope of 3407(d)(2)(A) and in others to be incomplete because 98 of the 128 actions identified in the program remained themselves to be completed.

Both conclusions were inconsistent with the statute. As explained above, section 3407(d)(2)(A) does not distinguish between annual and time certain actions; it requires completion of all "fish, wildlife, and habitat mitigation and restoration actions mandated under section 3406," irrespective of chronology. Nor does it create categories of outcome and output activities, or allow an expansion of the prerequisites to section 3407(d)(2)(A) by mere agency identification of specific actions in furtherance of general statutory goals. Each of these interpretive constructs distracts from the straightforward focus of the statute—"completion of the fish, wildlife, and habitat mitigation and restoration actions mandated under section 3406." Where section 3406 requires development and implementation of a program, nothing more or less than the specific actions of development and implementation is required to be considered complete within the meaning of section 3407(d)(2)(A).

### III. Section 3406(b)(15) does not require construction of a permanent barrier.

Section 3406(b)(15) requires the Secretary to take the following actions:

> Construct, in cooperation with the State of California and in consultation with local interests, a barrier at the head of Old River in the Sacramento-San Joaquin Delta to be operated on a seasonal basis to increase the survival of young out migrating salmon that are diverted from the San Joaquin River to Central Valley Project and State Water Project pumping plants and in a manner that does not significantly impair the ability of local entities to divert water.

Nothing in this statutory text says the barrier must be permanent. Rather, it requires simply construction of "*a* barrier." In the absence of such limiting language, the statute should not be construed to require a permanent barrier, even though it could allow it. Indeed, the statutory requirement to operate the barrier on a seasonal, rather than annual, basis, coupled with the general notion of "a" barrier, suggests a non-permanent falls entirely within the bounds of the statute. This interpretation finds support also in the requirements to cooperate with the State and to consult with local interests in carrying out the action, both of which suggest the CVPIA did not intend too specific a solution, instead prescribing only seasonal operation and the objective of increasing outmigrating salmon survival.

### IV. The level 4 refuge water supplies required under section 3406(d)(2) may be understood as "enhancement," not "mitigation and restoration."

The CVPIA added to the CVP authorizing statute's hierarchy of project purposes "fish and wildlife mitigation, protection and restoration" at the second tier[26] and "fish and wildlife

---

[26] CVPIA § 3406(a)(1).

5

enhancement" at the third.[27] Although section 3406 supports both tiers of project purposes,[28] section 3407(d)(2)(A) focuses only on completion of actions supporting the secondary purpose, the "mitigation and restoration actions." Presumably, therefore, completion under section 3407(d)(2) relates to a subset of section 3406 activities.

Section 3406(d) provides for the delivery of water to Central Valley wildlife refuges at two different supply levels emanating from a 1989 report.[29] The "Level 2" supplies required under section 3406(d)(1) equal the "current average annual water supply" for each refuge at the time of the 1989 report.[30] The "Level 4" supplies under section 3406(d)(2), by contrast, represent the "supply for optimum habitat management."[31] Level 4 supplies exceed what the report characterized as Level 3, the amount required for "full use of existing [refuge] development."[32] The Act required delivery of the Level 2 supplies upon enactment,[33] while providing for long-term, incremental implementation of Level 4 deliveries and only through "voluntary measures."[34]

The Act does not itself characterize Level 2 or Level 4 as mitigation, restoration, or enhancement. Nevertheless, the 1989 water supply report, which the CVPIA incorporates expressly,[35] supports the conclusion that Level 4 may reasonably be considered "enhancement" because it exceeds even the amount required for "full use of existing development" (i.e., Level 3). This notion of providing water supply in excess of existing conditions parallels the common meaning of "enhancement" ("to increase or improve"),[36] in this case beyond the supplies necessary for existing development. It also tracks the longer term implementation period provide for Level 4 in section 3406(d)(2), ostensibly because enhancement was not as immediate a need as mitigation and restoration.

---

[27] *Id.* § 3406(a)(2).

[28] *See id.* § 3406(b)(1) (providing that "the programs and activities authorized by this section shall, when fully implemented, be deemed to meet the mitigation, protection, restoration, and enhancement purposes established by subsection 3406(a)").

[29] *See id.* § 3403(j); *see also* U.S. Dept. of the Interior, Bureau of Reclamation, *Report on Refuge Water Supply Investigations* (March 1989). The Act also incorporated delivery quantities from another study concerning the San Joaquin basin not relevant to the question at hand.

[30] *Id.* at 1; *see also* Table II-2.

[31] *Id.* at 1.

[32] *Id.*

[33] CVPIA § 3406(d)(1).

[34] *Id.* § 3406(d)(2).

[35] *Id.* § 3403(j).

[36] Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary (last visited Dec. 8, 2020).

6