Thane D. Somerville WSBA #31468 *pro hac vice*
Thomas P. Schlosser WSBA #06276 *pro hac vice*
MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE
811 First Avenue, Suite 218
Seattle, WA 98104
Tel:    206-386-5200
Fax:    206-386-7322
t.somerville@msaj.com
t.schlosser@msaj.com
Attorneys for Plaintiff Hoopa Valley Tribe

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPA VALLEY TRIBE, | Civ. No. 1:20-cv-1814-JLT-EPG |
| Plaintiff, | |
| v. | MEMORANDUM IN SUPPORT OF PLAINTIFF HOOPA VALLEY TRIBE'S AMENDED MOTION FOR PRELIMINARY INJUNCTION OR, IN THE ALTERNATIVE, TEMPORARY RESTRAINING ORDER |
| UNITED STATES BUREAU OF RECLAMATION; DEBRA ANNE HAALAND, in her official capacity as Secretary of the Interior; MARIA CAMILLE CALIMLIM TOUTON, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST A. CONANT, in his official capacity as United States Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR | Date:  February 13, 2023<br>Time:  9:00 AM<br>Courtroom:   4 – 7th Floor, Fresno<br>Judge:    Hon. Jennifer L. Thurston |
| Defendants. | |

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF PRELIMINARY INJUNCTION OR TRO - i

On February 7, 2023, Plaintiff filed its Second Amended Complaint (SAC). Dkt. #142. Plaintiff's SAC added allegations relating to Defendants' final agency action, on January 30, 2023, to approve the Trinity River Winter Flow Variability (WFV) Project in the absence of seeking or obtaining the concurrence of the Hoopa Valley Tribe.  Hoopa's arguments and supporting evidence relating to Defendants' failure to seek concurrence are on file in this case at Dkt. ##108, 108-1, 109, 109-1, 110, 110-1through 110-5, 111, 111-1through 111-7, 120, 120-1, and 128, all of which are expressly relied on and incorporated by reference herein. Plaintiff's SAC also adds allegations that Defendants failed to comply with NEPA prior to approving the WFV Project, which are addressed in this memorandum.  As with Plaintiff's concurrence claim, Plaintiff is also likely to prevail on its NEPA allegations, providing an additional basis in support of granting Plaintiff's Motion for Preliminary Injunction or, in the alternative, TRO.

## ARGUMENT

NEPA is "our basic national charter for the protection of the environment."  40 C.F.R. § 1500.1(a).  NEPA is "a procedural statute intended to secure environmentally informed decision-making by federal agencies."  *Cal. ex rel. Lockyer v. U.S. Dep't of Agric.*, 575 F.3d 999, 1012 (9th Cir. 2009).  NEPA requires that: (1) agencies take a "hard look" at the environmental impacts of their actions before the actions occur, thereby ensuring "that the agency, in reaching its decision, will have available, and will carefully consider, detailed information concerning significant environmental impacts," and (2) "the relevant information will be made available to the larger audience that may also play a role in both the decision-making process and the implementation of that decision."  *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989).

NEPA requires federal agencies to prepare an Environmental Impact Statement (EIS) for "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  Federal agencies may first prepare an Environmental Assessment (EA) to determine whether the nature and extent of a proposed action's environmental effects requires an

EIS.  40 C.F.R. § 1501.4(b)-(c).  If, following an EA, the agency determines that the proposed action will not have significant effects, the agency must prepare and make publicly available a "finding of no significant impact" (FONSI).  40 C.F.R. § 1501.6(a).  Where "the nature of the proposed action is one without precedent," the agency must make the FONSI available for 30 days before the agency makes its final determination whether to prepare an EIS and before the action may begin.  40 C.F.R. §1501.6(a)(2).

Here, Reclamation started NEPA compliance when the WFV Project was proposed in 2021 but then cancelled and never resumed or completed NEPA.  This is legal error that, in conjunction with the showing of irreparable injury that Plaintiff has made, mandates entry of a preliminary injunction against the WFV Project until NEPA is completed.

Reclamation initiated a NEPA process for the WFV Project on May 18, 2021 by issuing a scoping notice.  Dkt. #142, Exh. 31, [Draft EA, Appendix A].  Reclamation took public comment on the WFV Project pursuant to NEPA from May 18 through June 18, 2021.  *Id.*  In September 2021, Reclamation prepared a Draft EA analyzing the impacts of the WFV Project.  Dkt. #142, Ex. 31.  The Draft EA states that Reclamation prepared it "to meet the requirements of [NEPA]."  *Id.*, p. 1.  The Draft EA evaluated the environmental impacts of the "Proposed Action" which is the WFV Project.  *Id.*  The Draft EA adds: "If there are no significant environmental impacts identified as a result of the analyses, and Reclamation decides to select the Proposed Action [the WFV Project], a Finding of No Significant Impact (FONSI) may be signed to complete the NEPA compliance process."  *Id.*  The WFV Project was not implemented for the 2022 water year (October 1, 2021 – September 30, 2022).  On February 4, 2022, Reclamation published a status report on the EA for the WFV Project stating: "Consideration of this action has been canceled." https://www.usbr.gov/mp/nepa/nepa_project_details.php?Project_ID=50427.

In 2022, Reclamation again proposed to implement the WFV Project for the 2023 water year.  But this time, Reclamation took no steps under NEPA.  Reclamation did not issue any scoping notice, nor prepare a Draft EA.  And, to the extent that Reclamation contends that the

prior scoping and Draft EA could be used to support the WFV Project in the 2023 water year, Reclamation never completed the NEPA process because Reclamation never issued a FONSI as required by 40 C.F.R. § 1501.6(a).

Reclamation's last communication to the general public, regarding the NEPA process for the WFV Project, is Reclamation's notice on its website dated February 4, 2022 that "consideration of this action [the WFV Project] has been cancelled."  Reclamation did not inform the public, through NEPA processes, that it proposed to implement the WFV Project for the 2023 water year.  Nor did Reclamation ever determine, as required by 40 C.F.R. § 1501.6(a), that the proposed action [WFV Project] will not have significant effects.  Since Reclamation did not issue any FONSI, it never completed the NEPA process.  40 C.F.R. § 1501.6(a).

Since Reclamation did not issue any FONSI, Reclamation also did not comply with the public disclosure requirements of 40 C.F.R. §1501.6(a) which require the agency to make the FONSI available to the affected public.  And here, 40 C.F.R. §1501.6(a)(2) also applies because the "nature of the proposed action is one without precedent." Declaration of Michael Orcutt, Dkt. #109, ¶ 9; Third Orcutt Declaration (Feb. 2023).   In such circumstances, the agency must make the FONSI available for public review for 30 days before the agency makes its final determination whether to prepare an environmental impact statement and before the action may begin.  Here, the action must be enjoined because Reclamation did not prepare a FONSI and also, since there was no FONSI, did not comply with the public disclosure and waiting period requirements relating to FONSI issuance.

Beyond these failures, the WFV Project warrants preparation of a full EIS.  An EIS must be prepared for "major Federal actions significantly affecting the quality of the human environment."  42 U.S.C. § 4332(2)(C).  The agency must assess the potentially affected environment and degree of the effects when assessing significance.  40 C.F.R. §1501.3(b).  In considering degree of effects, the agency must consider all:  short and long term effects; beneficial and adverse effects; effects on public health and safety; and effects that would violate

Federal, State, Tribal, or local law protecting the environment.  40 C.F.R. §1501.3(b)(2).  Here, the proposal to shift massive quantities of water that is dedicated to specific fishery protective purposes in Spring/Summer months to other times of the year, and placing the fishery at risk of not having enough water in those Spring/Summer months (because it has been already used in prior winter months), meets the criteria for significance requiring analysis in a full EIS.

Here, not only did Reclamation improperly fail to prepare an EIS relating to the WFV Project, but Reclamation also failed to satisfy any of the preliminary steps leading up to the decision of whether an EIS is required.  Nor did Reclamation issue a FONSI, which is the required documentation of an agency decision not to prepare an EIS.  Because Reclamation has failed to complete the NEPA process (and has arguably failed to conduct any NEPA process for the 2023 water year for the WFV Project), the WFV Project must be enjoined pending compliance with NEPA.

Plaintiff's prior briefing, which it incorporates here by reference has established that irreparable harm will occur if the WFV Project proceeds, because once the water is released it will not be able to be used for its intended purposes in Spring/Summer pursuant to the ROD. There is a defined and limited amount of water available.  Releasing substantial amounts of water (in a manner inconsistent with the ROD concurred in by Hoopa) in winter will necessarily mean far less water available to meet the defined ROD purposes necessary for fish in Spring and Summer.  While a NEPA violation is analyzed under the same standard for injunctions as other types of cases, courts regularly enjoin actions with potentially harmful environmental effects until NEPA review is completed.  Otherwise, unless the status quo is maintained, the purposes of NEPA – to review impacts in advance of taking action – would be lost.  As the Court explained in *Ctr. for Food Safety v. Vilsack*, 753 F. Supp. 2d 1051 (N.D. Cal. 2010):

> "Environmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable. If such injury is sufficiently likely, therefore, the balance of harms will usually favor the issuance of an injunction to protect the environment."

*Amoco Prod. Co*., 480 U.S. at 545 (1987) (finding injunction was not warranted because the asserted environmental injury was "not at all probable").

Additionally, Plaintiffs have demonstrated significant procedural injury stemming from the NEPA violations. "There is no doubt that the failure to undertake an [environmental review] when required to do so constitutes procedural injury to those affected by the environmental impacts of a project." *See Save Strawberry Canyon v. Dept. of Energy*, 613 F. Supp. 2d 1177, 1187 (N.D. Cal. 2009) (finding that, due to the alleged NEPA violations, the plaintiff was "virtually certain to suffer irreparable procedural injury absent an injunction"). "The NEPA duty is more than a technicality; it is an extremely important statutory requirement to serve the public and the agency before major federal actions occur." *Foundation on Econ. Trends v. Heckler*, 756 F.2d 143, 157, 244 U.S. App. D.C. 122 (D.C. Cir. 1985)  (emphasis in original) (finding that "[i]f plaintiffs succeed on the merits, then the lack of an adequate environmental consideration looms as a serious, immediate, and irreparable injury.").

Failing to conduct the required environmental review and depriving Plaintiffs and the public "of the opportunity to participate in the NEPA process at a time when such participation is required and is calculated to matter" constitutes irreparable harm. *See Save Strawberry Canyon*, 613 F. Supp. 2d at 1189-90 (noting that even if the plaintiff did not receive a preliminary injunction but ultimately wins on the merits, "much of the environmental harm will already have occurred and alternatives will have been foreclosed.")

Here, in addition to the established irreparable harm to the Trinity River and its fishery, and to Hoopa sovereignty, that will occur if the WFV Project goes forward in the absence of Hoopa concurrence, Hoopa will also suffer irreparable injury if the WFV Project goes forward in the absence of NEPA compliance.  *Id.*   Injunctive relief is necessary here.

B.     **Defendants Approval of the WFV Project Is Final Agency Action**.

In their January 25, 2023, supplemental brief (Dkt. #129), Defendants argued that even if the WFV Project was ultimately approved by Reclamation, that approval would not constitute a challengeable final agency action because Reclamation contends the WFV Project is an action implementing the 2000 ROD.  Reclamation's argument is absurd and would mean that any decision or action taken by Reclamation in its implementation of the ROD or administration of the TRRP, no matter how unlawful, would forever be barred from challenge. Reclamation's approval of the WFV Project is plainly final agency action subject to challenge under the APA.

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF PRELIMINARY INJUNCTION OR TRO - 5

1    Defendants do not dispute that the WFV Project could not proceed until it was officially

2    authorized by the Secretary (acting through her delegates, the Regional Directors of Reclamation

3    and USFWS).  And, on January 30, 2023, those Regional Directors (on behalf of the Secretary)

4    did execute final agency action in the form of a letter authorizing the WFV Project to proceed.

5    SAC, Dkt. #142, Exh. 36.  That decision authorized a radical and unprecedented change in how

6    the ROD flow regime would be implemented and is plainly a final agency action under the APA.

7    The U.S. Supreme Court has explained that to be "final agency action" under the APA,

8    two conditions must be met: (1) the action must mark the 'consummation' of the agency's

9    decision making process and must not be of a merely tentative or interlocutory nature, and (2)

10   the action must be (a) one by which rights or obligations have been determined or (b) from

11   which legal consequences flow.  *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (issuance of

12   Biological Opinion under ESA is final agency action under APA).  An action that has "no direct

13   consequences" and serves "more like a tentative recommendation than a final binding

14   determination" is less likely to be deemed final agency action.  *Id.*

15   In the Ninth Circuit, the "core question is whether the agency has completed its decision-

16   making process, and whether the result of that process is one that will directly affect the parties."

17   *Or. Natural Desert Ass'n v. U.S. Forest Serv.,* 465 F.3d 977, 982 (9th Cir. 2006) [*ONDA*].  "In

18   determining whether an agency's action is final, [the Ninth Circuit] look to whether the action

19   'amounts to a definitive statement of the agency's position' or 'has a direct and immediate effect

20   on the day-to-day operations' of the subject party, or if 'immediate compliance [with the terms]

21   is expected.'"  *Id.*

22   In *ONDA*, the government argued that annual operating instructions [AOIs] issued to

23   grazing permit holders were not final agency action but were merely implementing prior

24   decisions made in issuance of grazing permits. Following issuance of a grazing permit, the

25   government issued AOIs each year following an annual review of current environmental

26   conditions, such as "changes in pasture conditions, new scientific information, new rules that

have been adopted . . . or the extent of the permit holder's compliance with the previous year's AOI." *Id.* at 984.  The Ninth Circuit held that the AOI was final agency action challengeable under the APA as it put into effect the governing instructions for how the authorized grazing would occur during the next calendar year.  *Id.* at 985-86, 990.  The AOI was the final word for that calendar year and had a legal effect on how the grazing would occur under the previously authorized permit.  *Id.*

Here, the January 30 approval decision satisfies both the Supreme Court's test under *Bennett* and the Ninth Circuit's application of that test under *ONDA*.  The January 30 decision represents Reclamation's final word on whether to implement the WFV Project in the absence of the concurrence of the Hoopa Valley Tribe.  It has legal effect both on the TRRP (who, absent the January 30 decision, would not be authorized to implement the WFV Project) and on the Hoopa Valley Tribe who has been unlawfully stripped of its concurrence rights under CVPIA § 3406(b)(23).  Reclamation's January 30 decision was not tentative or interlocutory; rather, on January 30, Reclamation made a final decision to approve and authorize implementation of the TMC recommendation.  While the TMC recommendation was not final agency action, Reclamation's decision to approve that recommendation and authorize the WFV Project is.

The January 30 approval letter "amounts to a definitive statement" of Reclamation's position on the WFV Project.  *ONDA*, 465 F.3d at 982.   It has a "direct and immediate effect on the day-to-day operations" of the TRRP.  *Id.*  Absent the January 30 authorization, the TRRP could not implement the proposed change in flows.  And the January 30 letter likewise has a direct and immediate effect on the Hoopa Valley Tribe by confirming that Reclamation would not seek Hoopa concurrence regarding the WFV Project, thereby negating Hoopa's concurrence rights.  And "immediate compliance [with the terms of the January 30 letter] is expected."  *Id.*

The question of whether a challenged action is final agency action under the APA is to be examined "in a pragmatic way."  *Id.* at 985.  Here, starting with Reclamation's initiation of a NEPA process and preparation of a Draft EA to evaluate its proposed action, to the submission

of the TMC's "recommendation" for final approval by Reclamation, to the Department of Justice's commitment to Hoopa that no action would be taken on the WFV Project until it was approved by Reclamation (Dkt. #111-7), to Reclamation's January 30 letter granting its approval and authorization to the WFV Project – every step and action along the way supports a finding that Reclamation has taken a final agency action within the meaning of the APA.

The cases cited in Defendants' supplemental brief (Dkt. #129), such as *Vill. of Bald Head Island v. U.S. Army Corps of Engineers*, 714 F.3d 186 (4th Cir. 2013); *Chemical Weapons Working Group v. U.S. Dep't of the Army*, 111 F.3d 1485 (10th Cir. 1997) and *Wild Fish Conservancy v. Jewell*, 730 F.3d 791 (9th Cir. 2013) are all inapposite as they did not involve any challengeable decision by the agency (as opposed to just continuing implementation of a prior authorization).  All of those cases are distinguishable from the facts here.  Here, as discussed above, this case involves a challenge to a discrete agency decision, made on January 30, that meets the criteria for final agency action under the APA.

For the reasons herein and in the prior pleadings, briefs, and declarations expressly incorporated herein, the Court should grant Plaintiff's Motion for Preliminary Injunction (or, in the alternative, Temporary Restraining Order).

Dated this 7th day of February, 2023.

MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE

   */s/ Thane D. Somerville*
Thane D. Somerville WSBA #31468
Thomas P. Schlosser WSBA #06276
811 First Avenue, Suite 218
Seattle, WA 98104
Tel:  206-386-5200/Fax:  206-386-7322
t.somerville@msaj.com
t.schlosser@msaj.com
Attorneys for Plaintiff Hoopa Valley Tribe

PLAINTIFF'S MEMORANDUM IN SUPPORT
OF PRELIMINARY INJUNCTION OR TRO - 8

**CERTIFICATE OF SERVICE**

I hereby certify that on February 7, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

                                          */s/ Thane D. Somerville*
                                          Thane D. Somerville