1  Thane D. Somerville WSBA #31468 *pro hac vice*
2  Thomas P. Schlosser WSBA #06276 *pro hac vice*
   MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE
3  811 First Avenue, Suite 218
   Seattle, WA 98104
4  Tel:   206-386-5200
   Fax:   206-386-7322
5  t.somerville@msaj.com
6  t.schlosser@msaj.com
   Attorneys for Plaintiff Hoopa Valley Tribe
7

8                UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  HOOPA VALLEY TRIBE,                  )   Civ. No. 1:20-cv-1814-JLT-EPG
                                         )
12          Plaintiff,                   )
                                         )
13      v.                               )   DECLARATION OF MICHAEL
                                         )   ORCUTT IN SUPPORT OF
14  UNITED STATES BUREAU OF              )   PLAINTIFF'S MOTION FOR
    RECLAMATION; DEBRA ANNE HAALAND,     )   PRELIMINARY INJUNCTION
15  in her official capacity as Secretary of the  )
    Interior; MARIA CAMILLE CALIMLIM     )   Date:  March 20, 2023
16  TOUTON, in her official capacity as  )   Time:  9:00 AM
    Commissioner of the United States Bureau of  )   Courtroom: 4 – 7th floor, Fresno
17  Reclamation; ERNEST A. CONANT, in his  )   Hon. Jennifer L. Thurston
    official capacity as United States Bureau of  )
18  Reclamation California-Great Basin Regional  )
    Director; and UNITED STATES         )
19  DEPARTMENT OF THE INTERIOR          )
                                         )
20                                       )
            Defendants.                  )
21                                       )

22  _____

23

24

25

26

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 1

I, Michael Orcutt state and declare as follows:

1.     I am a fisheries biologist and an enrolled member of the Hoopa Valley Tribe (Tribe). I am presently employed by the Tribe, located on the Hoopa Valley Indian Reservation in Northern California, where I continue my tenure of over 35 years as Director of the Fisheries Department.

2.     In my work with the Hoopa Valley Tribe Fisheries Department, and in my role as Fisheries Director, I am intimately involved and have substantial personal knowledge of fisheries management issues in the Trinity River Basin, including operations of the Trinity River Restoration Program (TRRP) and Trinity Management Council (TMC), and implementation of the 2000 Trinity River Record of Decision (ROD). My professional duties include representing the Hoopa Valley Tribe before state and federal agencies and the U.S. Congress in matters involving restoration of the Trinity River fishery. I also have fished and hunted on the Hoopa Valley Reservation for most of my life and I have witnessed the devastation that the Trinity River Division of the CVP has had on the fishery resources that the Hupa People have depended upon since time immemorial.

3.     On January 30, 2023, Defendants approved the Trinity River Winter Flow Variability (WFV) Project, which will shift and re-allocate substantial amounts of water (60,000 Acre Feet to 220,000 Acre Feet) for release in winter months. This water to be released is currently allocated for fishery restoration releases in Spring/Summer months pursuant to the prescriptions of the ROD which are based on comprehensive scientific analysis in the 1999 Trinity River Flow Evaluation Report (the "Flow Study"). According to Defendants, the WFV Project is scheduled to commence on February 15, 2023.

4.     While the WFV Project, as designed, calls for increased flow releases between December 15 and February 15 of the 2023 water year (known as the "Flow Synchronization Period"), those flow releases did not occur this year because the Defendants did not approve the WFV Project until January 30, 2023 and will not commence implementation until February 15,

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 2

1  2023. Thus, the WFV Project water will now be released as "elevated baseflow" through April

2  15, 2023 according to the letter sent by the TMC on December 9, 2022. Exhibit 1.

3      5.      A TRRP notice issued on or around February 10, 2023 confirms the Defendants

4  will elevate base flows from February 15 through April 15, and also provides detailed daily

5  information about the currently planned flows through March 14. The authorized daily flows are

6  more than double the amount authorized for those dates under the ROD. The notice confirms

7  that "Dam releases are then likely to remain elevated above the 300 cfs baseflow until the spring

8  flow release commences on or around April 15." Exhibit 2.

9      6.      The purpose of this declaration is to explain that the WFV Project is an

10  unprecedented action that requires environmental review and public participation under NEPA

11  and that the WFV Project, if not enjoined, will result in irreparable harm to the Trinity River, its

12  fishery, and to the Hoopa Valley Tribe whose people rely on the fish of the Trinity River through

13  exercise of their federal reserved fishing rights. Defendants have often conducted NEPA

14  analysis to evaluate TRRP activities, including those under the ROD. But here, Defendants

15  failed to conduct or complete NEPA analysis related to the WFV Project.

16      7.      The WFV Project is not consistent with the requirements of the ROD or the

17  supporting scientific analysis in the Flow Study. The Hoopa Valley Tribe was a co-author of the

18  Flow Study. The Flow Study recommended a total minimum annual volume of water releases to

19  the Trinity River dependent on water year type but also provided detailed recommendations for

20  specific volumes of releases at specific times of year, along with a discussion of the purpose and

21  benefits of providing those specific volumes at specific times. The Flow Study designed Trinity

22  River Division (TRD) flow release schedules to restore, preserve and propagate natural fish

23  production by reestablishing habitat for the life history stages of anadromous salmonids that

24  inhabit the Trinity River.

25      8.      The Flow Study, upon which the flow schedule in the ROD is based, is a holistic

26  and comprehensive evaluation of the actions necessary to restore fish in the Trinity River, which

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 3

1   was based on decades of scientific review, and which remains the best available comprehensive

2   science regarding fishery restoration flows in the Trinity River.

3          9.     The flow recommendations in the Flow Study were carefully developed by Hoopa

4   and its partner agency, the U.S. Fish and Wildlife Service, to achieve specific management

5   objectives and habitat restoration purposes on the mainstem Trinity River.

6          10.    Specifically, Chapter 8 of the Flow Study (provided to the Court in Dkt. #138-1)

7   explains that the flows recommended in that document and approved in the ROD were carefully

8   designed to meet multiple inter-related management objectives.  The Flow Study allocated the

9   limited available amount of water pursuant to a day-by-day flow schedule to achieve

10  management objectives and to ensure that those objectives were met at all times of the year.

11         11.    Chapter 8 of the Flow Study contains tables that explain the specific management

12  targets, flow purposes, and flow benefits for recommended flows at each day of the year and for

13  each type of water year.   The Flow Study is a carefully balanced analysis designed to maximize

14  benefits with available water at all times of year for different fish species and their life history

15  requirements.

16         12.    The Flow Study allocated all available annual flow amounts in the recommended

17  flow regimes to meet the intended management objectives.

18         13.    In other words, the timing of the flow releases (the time of year in which the

19  releases occur) is of critical importance to the effectiveness of the flows and to meeting the goals

20  and management objectives discussed in the Flow Study.

21         14.    The Flow Study recommendations were adopted in the ROD, which was approved

22  by Secretary of the Interior Bruce Babbitt and which the Hoopa Valley Tribe concurred in,

23  through the signature of its Chairman Duane Sherman on December 19, 2000.

24         15.    The ROD, pursuant to the recommendations in the Flow Study, sets a uniform

25  base flow of 300 cubic feet per second (cfs) across all water years for the time period of October

26  16 through April 1.

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 4

16.     Since approval of the ROD, there has been no change to winter base flows prescribed in ROD. Until now, the Bureau of Reclamation has strictly adhered to the October 16 through April 1 ROD flow schedule.  To be clear, there has never been any modification or alteration of winter base flows since ROD implementation began.

17.     ROD TRD flow releases for each water year (October 1 to September 30 annually) are limited to a long term annual average water budget. That budget is further limited by predicted annual hydrology. Annual hydrology estimates are based on California Department of Water Resources Bulletin 160. The ROD has five annual hydrological categories: Extremely Wet, Wet, Normal, Dry, and Critically Dry. The ROD assigns each water year type a volume of TRD water. Pursuant to CVPIA § 3406(b)(23) the ROD used the best available scientific data to quantify and allocate the annual water budget throughout each water year type. The ROD winter TRD base flow allocation is a direct outcome of compliance with the CVPIA's best available scientific data requirement. The ROD winter base flow enables higher flows to meet habitat requirements in Spring and Summer months, after the water-year type is determined.

18.     The water year type (i.e., extremely wet, wet, normal, dry, critically dry) is not designated until April 1 of each year.  Thus, shifting water that is intended for use after April 1 to earlier winter months presents a significant risk that there will not be sufficient water available for intended fishery purposes in later Spring/Summer months.

19.     The ROD does not provide for supplemental flow releases during the October 16 through April 1 time period.  Accordingly, increasing ROD base flows will decrease flows that the ROD deems necessary for fishery restoration in other times of year.

20.     The WFV Project, which is scheduled to commence on February 15, 2023 would shift substantial amounts of water (60,000 Acre Feet to 220,000 Acre Feet) for use in winter months.  Since the total annual water volumes are fixed, and since all water is allocated to specific purposes, the re-allocation of water to winter months will deprive other months of water

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 5

1  and undermine the management objectives recommended in the Flow Study and approved in the

2  ROD with Hoopa's concurrence.

3      21.   The Defendants' proposed re-direction of 60,000 – 220,000 acre-feet of water

4  from assigned purposes in Spring/Summer months will significantly disrupt and undermine the

5  holistic benefits of the flows called for in the Flow Study and approved in the ROD.

6      22.   The contention that such a significant and substantive revision to the flows

7  prescribed in the ROD could qualify as a mere refinement in the name of adaptive management

8  is incorrect and contradicted by the ROD itself.  Page 12 of the ROD (discussing the flow

9  regime) states: "Based on subsequent monitoring and studies guided by the Trinity Management

10  Council, the schedule for releasing water on a daily basis, *according to that year's hydrology*,

11  may be adjusted but the annual flow volumes established in Table 1 may not be changed."

12  (emphasis added).  In the preceding paragraph, the ROD states that the "annual hydrology

13  (water-year type) [is] determined as of April 1st of each year."  Thus, the ROD itself is clear that

14  no changes to the flow schedule can be made, even in the name of adaptive management, until

15  after April 1 when the year's hydrology type is known.

16      23.   I have been involved in implementation of the TRRP and the workings of the

17  TMC since their inception.  Based on my decades of personal experience, I can report that the

18  WFV Project and its proposed shifting of substantial amounts of water releases from Spring and

19  Summer months to Winter months is without precedent in the history of the TRRP and

20  implementation of the ROD.

21      24.   In my experience, the ROD flow releases have always been implemented

22  consistent with the ROD prescriptions described above (i.e., uniform winter flow of 300 cfs from

23  October 16 to April 1) so that any refinements to annual flow schedules only occur after April 1

24  when the water year type is known.  There have never been modifications to the winter base

25  flows prescribed prior to April 1, until now.  And there never has been a proposal to shift

26

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 6

1  substantial water intended for post-April 1 uses to winter months – foreclosing the availability of

2  water necessary in Spring/Summer.  The WFV Project is a significant modification of the ROD.

3       25.    In contrast to the Flow Study, the WFV Project fails to provide a similarly

4  comprehensive approach and fails to completely evaluate how such flow modifications could

5  result in adverse effects to the Trinity River fishery if full amounts of water called for by the

6  ROD are not available in Spring/Summer.

7       26.    To date, Defendants have not completed NEPA evaluation for the WFV Project.

8  Defendants commenced NEPA in 2021 by issuing a scoping notice and Draft Environmental

9  Assessment but then cancelled action on the WFV Project for the 2022 water year.  On February

10  4, 2022, Reclamation published a status report on the EA for the WFV Project stating:

11  "Consideration of this action has been canceled."[1]  No further NEPA process has occurred for

12  the WFV Project in the 2023 water year.  To my knowledge, Defendants did not issue a Finding

13  of No Significant Impact (FONSI) prior to approval of the WFV Project on January 30, 2023.

14  No FONSI was disclosed to the public.  And Defendants have not prepared an Environmental

15  Impact Statement.  Nor have Defendants provided any explanation to the public regarding their

16  failure to comply with NEPA prior to approving the WFV Project for the 2023 water year.

17       27.    Defendants have previously maintained that NEPA compliance is required for

18  modifications to flow releases into the Trinity River, even where the purpose of such

19  modifications was to benefit fish.  For example, in 2019, the TRRP rejected a proposal to modify

20  the ROD hydrograph to allow for a small pulse flow in September of that water year on grounds

21  that NEPA review had not occurred.  Although there was compelling evidence suggesting a

22  portion of the annual hydrograph should be reserved for late September to provide for

23  distribution of fall Chinook natural area spawners, Defendants concluded that they did "not

24  believe that it is prudent to deviate from summer baseflow at that time of year until we have

25  conducted further NEPA review."  An April 9, 2019 e-mail from Mike Dixon, TRRP Acting

26

---

[1] https://www.usbr.gov/mp/nepa/nepa_project_details.php?Project_ID=50427.

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 7

1    Executive Director, explaining the need for NEPA review prior to implementing the changed

2    flows is attached as Exhibit 3.  In stark contrast, Defendants have failed to conduct or complete

3    NEPA analysis related to the WFV Project which is a much more profound departure from

4    traditional winter base-flows than was the 2019 example affecting fall-base flows.

5        28.    In another action relating to protection of Trinity River salmonids, but occurring

6    outside of the ROD, Defendants also conducted NEPA compliance and prepared a FONSI prior

7    to changing the timing of prescribed "Flow Augmentation Releases" ("FARS") in order to better

8    protect spring-run Chinook.  The authorized release window for FARS was August 19 to

9    September 19, but Defendants conducted NEPA review prior to implementing releases outside of

10   that window to begin on August 1 of that year.  The FONSI for that action is attached as Exhibit

11   4.

12       29.    Defendants' failure to conduct or complete NEPA analysis is also inconsistent

13   with prior conduct in which Defendants have conducted NEPA analysis and issued FONSIs for

14   TRRP activities, including those under the ROD.  Examples include a FONSI issued by the

15   TRRP on May 3, 2021 regarding the Trinity River Channel Rehabilitation Site:  Oregon Gulch

16   (River Mile 80.9 to 81.7); a FONSI issued by the TRRP on October 8, 2020 regarding the Trinity

17   River Channel Rehabilitation Site:  Chapman Ranch Phase B (River Mile 83.5 – 83.8); a FONSI

18   issued by the TRRP on April 25, 2014 regarding the Trinity River Channel Rehabilitation Site:

19   Lower Junction City (River Mile 78.8 – 79.8); and a FONSI issued by the TRRP on May 24,

20   2013 regarding the Trinity River Channel Rehabilitation Sites:  Douglas City (River Mile 93.6 –

21   94.6) and Lorenz Gulch (River Mile 89.4 – 90.2).  See Exhibits 5 – 8.  These NEPA compliance

22   documents and others are also available on the TRRP DataPort at the following site:

23   https://www.trrp.net/library/?search=fonsi&abstract=1&sort=citation.

24       30.    Environmental analysis of the impacts of the WFV Project is imperative.  For

25   example, removing significant amounts of water in Spring/Summer will likely impair

26   temperature criteria in warmer months, which will impair water quality and harm fish species.

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 8

1   As one example, spring Chinook adults mature and reside in the river from May to September so

2   they will suffer from having less water, and correspondingly warmer water temperatures, in

3   summer months.  A comprehensive analysis is necessary to ensure that unintended consequences

4   do not occur to the detriment of all species of anadromous fish in the Trinity River.

5        31.    The temperature impacts from the WFV Project, and associated water quality

6   impacts, may cause violations of water quality standards under the Clean Water Act.  The Hoopa

7   Valley Tribe has adopted the temperature standards from the ROD in its Clean Water Act water

8   quality control plan for the mainstem Trinity River (Hoopa Valley Tribe, Water Quality Control

9   Plan, Hoopa Valley Indian Reservation, Approved by EPA, 2002).  These standards were

10   designed and put in place to be protective of salmonid species and other ecological resources in

11   the Trinity River.

12        32.    Defendants claim that the WFV Project will benefit geomorphology and provide

13   related benefits to growth and outmigration of juvenile fish, but geomorphology benefits are hard

14   to determine.  The associated benefits to growth and migration of fish are even harder to

15   determine.  And trying to define and assess any such benefits in a meaningful way after one-year

16   of changes to flows is certainly impossible.  Any attempt to reach a meaningful conclusion about

17   the benefits of flow alterations on the basis of a one-year deviation from those established in the

18   ROD cannot satisfy CVPIA § 3406(b)(23)'s "best available scientific data" standard on which

19   Hoopa and the Secretary concurred in the ROD.

20        33.    In addition, it is premature to consider approval of substantial modifications or

21   revisions to the flow schedule provided in the ROD.  For one reason, the work intended to be

22   performed by the TRRP is far from complete.  Many habitat restoration and rehabilitation

23   projects remain unfinished.  This is due in part to inadequate and declining federal funding of the

24   program as well as the Interior Department's failure to meet its legal obligations related to

25   Trinity River restoration as required by Congress.

26

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 9

34.     Also, although the ROD was executed in 2000 by the Secretary of the Interior and Hoopa's Chairman, implementation of flows did not begin until 2005 due to litigation filed by water and power contractors.  As a result, the period of record of implementation of ROD flows is relatively limited, providing an inadequate timeframe to assess the success or failure of the ROD flows.  The effectiveness of such flows to achieve their goals has been adversely affected by the delays and failures in completing anticipated restoration.

35.     Since the initial proposal of the WFV Project, I have personally repeatedly advised officials of the Department of the Interior and Bureau of Reclamation, and members of the TMC, of Hoopa's objection and non-concurrence with the WFV Project.

36.     Hoopa has informed the Secretary that the WFV Project does not comply with the restoration program requirements in the ROD and has not undergone sufficient scientific and technical review.  There is a lack of data over a sufficiently diverse period of record to reach conclusions on the progress of restoration.  Reports are currently being prepared by federal and tribal scientists and need to go through an interdisciplinary scientific process that will synthesize accumulated information.  The synthesis reports from that process will inform any refinements that may be proposed to the restoration program.

37.     Based on Hoopa's knowledge and experience, Hoopa believes that that the WFV Project will significantly undermine and impair the ROD's goals and objectives by depriving the river of allocated water in Spring and Summer.  Once water is released in winter months under the WFV Project, it will be lost permanently.  If fishery managers determine later in the year that water previously released in winter is necessary to meet management objectives in Spring or Summer, it will be too late.  That water will have already been used.

38.     At the December 7 meeting of the TMC (an advisory body to the Secretary of the Interior), I again voiced Hoopa's opposition and non-concurrence to the WFV Project.  Despite this opposition and Hoopa's non-concurrence, the TMC voted 7-1 in favor of recommending implementation of the WFV Project, commencing in this current water year.

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 10

39.     On December 9, 2022, I received a letter from the Chair of the TMC directed to Defendant Ernest Conant, Reclamation California Great Basin Regional Director and Paul Souza, US Fish and Wildlife Service Regional Director that included the TMC's recommended 2023 flow schedule incorporating the WFV Project.  A true and correct copy of this letter is attached as Exhibit 1.  On January 30, 2023, Defendants approved the TMC recommendation. The January 30 approval letter is filed at Dkt. #142, Exh. 36.

40.     The WFV Project cannot be properly characterized as a mere refinement or adjustment to the flow schedule; rather, it is a wholesale re-allocation of ROD flows and a revision of the ROD itself.  Pursuant to the WFV Project, between 16 – 27% of the entire annual water volume under the ROD will be shifted from summer releases to winter releases depending on water year type.  This equates to a minimum winter release of 60,000 acre-feet in a critically dry year to 220,000 acre-feet in an extremely wet year.  This is an extremely substantial, significant, and dangerous re-allocation and re-purposing of water and it is in conflict with the Flow Study and the ROD.  Since the final water year determination is not known until April 1, releases will be made without having full information about what releases will be necessary or allowable in Spring and Summer months.  Once the water year is known, however, much of the WFV Project releases will already have been made – and that water will no longer be available for its intended purposes in later Spring and Summer months.

41.     The government's contention that there will be sufficient water to achieve ROD goals in Spring/Summer despite removing 60,000 – 220,000 acre-feet from that time period defies logic and is not supported by scientific analysis in the government's documents.  There is no explanation as to what will happen if fish are suffering unanticipated or unintended consequences from depriving the river of flows called for by the ROD in Spring/Summer.  Once that water is released down the river in the winter months, it is gone and not available for use later in the water year.  A full environmental impact statement is critical here to fully understand and disclose the impacts. At minimum, a statement of the government's findings of no

1  significant impact (if that is what the government has found) and the supporting reasoning for

2  such a finding is required.

3      42.     The contention that the WFV Project's substantial modification in flows is

4  comparable to adaptive management of sediment management or watershed restoration under the

5  ROD is not correct.  Unlike the daily flow schedule prescribed in Appendix B of the ROD, the

6  ROD does not contain comparably detailed prescriptions for the other restoration components

7  like sediment management and watershed restoration.

8      43.     Moreover, as described by the TRRP (https://www.trrp.net/program-

9  structure/adaptive-management/), Adaptive Environmental Assessment and Management (AEAM)

10  is component of the TRRP that provides "interdisciplinary information for developing and testing

11  hypotheses regarding how the river is responding to restoration work undertaken by the TRRP . . .

12  The adaptive management process is systematically repeated through time as management actions

13  are adjusted to benefit the Trinity River and its fisheries."  Hoopa concurred in the AEAM

14  component aspect of the TRRP because of its fundamental scientific importance to the long-term

15  integrity of the TRRP and the fishery restoration outcomes required by Congress and needed by

16  Hoopa. However, a 2017 independent evaluation of Reclamation's performance regarding

17  AEAM (Headwater Corporation. 2017. Final Report – Trinity River Restoration Program)

18  concluded that AEAM has not functioned as planned. Rather than address needed AEAM

19  refinements, Reclamation now uses the appearance of AEAM process to justify the WFV

20  Project.

21      44.     The action at issue here (the WFV Project) is unprecedented and, based on my

22  decades of experience working on implementing the ROD, is not consistent with the ROD.  The

23  WFV Project is a decision by the Department of the Interior/Reclamation to modify the ROD

24  and its prescribed daily flow schedules that are the product of decades of comprehensive

25  scientific analysis.  This action must be evaluated consistent with NEPA requirements.

26

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 12

45.     Based on my decades of experience working for the Hoopa Valley Fisheries Department, including as Fisheries Director, and my specific experience in working with implementation of the ROD and the TRRP, it is my belief that the Hoopa Valley Tribe, the Trinity River, and the long term health of the Trinity River fishery will suffer irreparable harm if the WFV project is not enjoined.   Given the limited amount of water available pursuant to the ROD, implementation of the WFV project will necessarily lower and limit the amount of water available to meet ROD objectives in later months.   Once the water is sent down the river in the winter, it will be lost forever and unavailable for future use for fishery restoration purposes.

46.     Implementation of the WFV Project by the Defendants in this case is scheduled to commence on February 15, 2023 and the elevated base flow releases are scheduled to continue on a daily basis through April 15, 2023.   Thus, time is of the essence.   An injunction is necessary as soon as possible in order to stop the federal Defendants from releasing water down the river pursuant to the WFV Project.   A preliminary injunction issued on or around March 20, 2023, if that is the earliest possible date, would still stop irreparable harm resulting from the elevated flow releases that are scheduled to occur after that date.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

DATED this 13th day of February, 2023.

Michael Orcutt, Fisheries Director

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

I hereby certify that on February 13, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

/s/ Thane D. Somerville
Thane D. Somerville

DECLARATION OF MICHAEL ORCUTT RE
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 14