Thane D. Somerville WSBA #31468 *pro hac vice*
Thomas P. Schlosser WSBA #06276 *pro hac vice*
MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE
811 First Avenue, Suite 218
Seattle, WA 98104
Tel:   206-386-5200
Fax:   206-386-7322
t.somerville@msaj.com
t.schlosser@msaj.com
Attorneys for Plaintiff Hoopa Valley Tribe

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPA VALLEY TRIBE,<br><br>  Plaintiff,<br><br>  v.<br><br>UNITED STATES BUREAU OF RECLAMATION; DEBRA ANNE HAALAND, in her official capacity as Secretary of the Interior; MARIA CAMILLE CALIMLIM, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST A. CONANT, in his official capacity as United States Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR<br><br>  Defendants. | Civ. No. 1:20-cv-1814-JLT-EPG<br><br>HOOPA VALLEY TRIBE'S STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>Date: June 13, 2023<br>Time: 9:00 AM<br>Courtroom: 4, 7th Floor, Fresno<br>Judge: Hon. Jennifer L. Thurston<br><br>Trial Date: None<br>Date Action Filed: Aug. 13, 2020 |

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 1

STATEMENT OF UNDISPUTED FACTS

1. The Hoopa Valley Tribe (Hoopa) is an Indian entity recognized by and eligible to receive services from the United States Bureau of Indian Affairs. 87 FR 4636 (January 12, 2023).

2. Since time immemorial, Hoopa has maintained a homeland on the Trinity River at its confluence with the Klamath River. The United States established the Hoopa Valley Reservation on approximately 90,000 acres of Hoopa's aboriginal homeland. The United States holds the reservation in trust for Hoopa's benefit.

3. The Klamath River and its largest tributary, the Trinity River, flow through the Hoopa Valley Reservation. Dkt. #142-3

4. The Federal defendants have recognized and confirmed that Hoopa has vested property rights in the fishery resources of the Klamath and Trinity Rivers. *Fishing Rights of the Yurok and Hoopa Valley Tribes*, Opinion M-36979 (January 11, 1993).

5. Opinion M-37003 (January 18, 2001) affirmed the conclusion in Memorandum from Solicitor to Assistant Secretary -- Policy Budget and Administration (November 29, 1988) that an M-Opinion issued by the Solicitor of the Department of the Interior "is binding on all Departmental offices . . ."

6. The Act of August 12, 1955, Public Law 84-386, 69 Stat. 719 (1955 Act), authorized Federal Defendants to construct and operate the Trinity River Division (TRD) of the Central Valley Project (CVP). As authorized, the TRD includes "a major storage reservoir on the Trinity River . . . a conveyance system consisting of tunnels, dams and appurtenant works to transport Trinity River water to the Sacramento River." *Id.* at section 1.

7. The 1955 Act directed the Federal Defendants to integrate and coordinate the operation of the TRD, "from both a financial and operational standpoint, with the operation of other features of the Central Valley Project, as presently authorized or as may in the future be authorized by Act of Congress", subject to the limitations in section 2 of that Act.

8. Section 2 of the 1955 Act includes two provisos affecting the integration and coordination of the TRD with the CVP. The first proviso requires Federal Defendants to establish "appropriate measures for the preservation and propagation of fish and wildlife, including but not limited to, the maintenance of the flow of the Trinity River below the diversion point . . ." (Proviso 1). The second proviso directs that "not less than 50,000 acre-feet shall be released annually from the Trinity Reservoir and made available to Humboldt County and downstream water users." (Proviso 2).

9. The "two provisos in section 2 of the 1955 Act address separate and distinct conditions on the TRD's integration with the CVP. Under the 1955 Act and related permits issued by the State Water Board, Proviso 2 establishes a separate obligation for Reclamation to release water from the TRD to provide for beneficial use by Humboldt County and other downstream users. This obligation is not subsumed within the obligation to release water pursuant to Proviso 1. Accordingly, additional releases from the TRD under Proviso 2 may be required in response to proper requests from Humboldt County or other downstream users." *Trinity River Division Authorization's 50,000 Acre-Foot Proviso and the 1959 Contract between the Bureau of Reclamation and Humboldt County*, Opinion M-37030 at 9 (December 23, 2014).

10. In the 1955 Act, "Congress specifically provided that in-basin flows (in excess of a statutory prescribed minimum) determined by the Secretary to be necessary to meet in-basin needs take precedence over needs to be served by out of basin diversion. See Pub. L. 84-386, § 2. In that case, Congress' usual direction that the Trinity River Division be integrated in the overall CVP, set forth at the beginning of section 2, is expressly modified by and made subject to the provisos that follow giving direction to the Secretary regarding in-basin needs." Opinion M-37030 at 11 citing Memorandum from the Solicitor to the Assistant Secretary – Land and Water Resources, *Proposed Contract with Grasslands Water District* (Dkt. #142-4) at-3-4 (December 7, 1979).

11. The Contract between the United States and Humboldt County (June 19, 1959)

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 3

(1959 Contract) memorializes the right of Humboldt County and downstream water users to beneficial use of Proviso 2 water. The contract meets the requirements of reclamation law and policy, is permanent, cost free to Humboldt County and downstream water users, including the Hoopa Valley Tribe, and has priority over diversion of TRD water to the Central Valley.  Dkt. #142-5.

12. The State of California has issued a permit that includes separate permit conditions authorizing and requiring TRD Proviso 1 and Proviso 2 releases. Opinion M-37030 at 4, 7, 9, 15 and Attachment 4.

13. Hoopa is a downstream water user within the meaning of Proviso 2.

14. Humboldt County deems the Hoopa Valley Tribe, whose reservation is within Humboldt County, to be a "downstream user" within the meaning of the 1955 Act, the 1959 contract between the Federal Defendants and Humboldt County for the water to be made available by Proviso 2. Declaration of Humboldt County Board of Supervisors Chair Ryan Sundberg, August 15, 2013.  Exhibit C.

15. The Trinity River Hatchery was constructed pursuant to the authority of the 1955 Act.  Memorandum to Secretary of the Interior from Director, Fish and Wildlife Service re Fish Protective Facilities, Trinity River Division, Central Valley Project (October 11, 1956), Approved by the Secretary of the Interior January 22, 1957.  Dkt. #172-4.

16. Public Law 98-541, 98 Stat. 2721, an Act to provide for the restoration of the fish and wildlife in the Trinity River Basin, California, and for other purposes (October 24, 1984) (1984 Act) found among other things that "construction of the Trinity River division of the Central Valley project in California . . . has substantially reduced the streamflow in the Trinity River Basin thereby contributing to damage to pools, spawning gravels, and rearing areas and to a drastic reduction in the anadromous fish populations and a decline in the scenic and recreational qualities of such river system." 1984 Act, § 1(1).  The 1984 Act required Federal Defendants to formulate and implement a program to "restore the fish and wildlife populations in

. . . [the Trinity River] basin to the levels approximating those which existed immediately before the start of the construction" of the TRD "and to maintain such levels." 1984 Act, §2(a). The 1984 Act's mandate included "design, construction operation, and maintenance of facilities to (A) rehabilitate fish habitats in the Trinity River between Lewiston Dam and Weitchpec; (B) rehabilitate fish habitats in tributaries of such river below Lewiston Dam and in the south fork of such river; and (C) modernize and otherwise increase the effectiveness of the Trinity River Fish Hatchery. 1984 Act, §2(a)(1). The 1984 Act further directed the "establishment of a procedure to monitor (A) the fish and wildlife stock on a continuing basis, and (B) the effectiveness of the rehabilitation work" and "other activities as the Secretary deems to be necessary to achieve the long-term goal of the program." 1984 Act, §2(a)(2), (3)

17. The Trinity River Basin Fish and Wildlife Management Reauthorization Act, Public Law 104-143, 110 Stat. 1338 (May 15, 1996) (1996 Act) clarified that the 1984 Act's restoration goal for the Trinity River would "be measured not only by returning adult anadromous fish spawners, but by the ability of dependent tribal, commercial, and sport fisheries to participate fully, through enhanced in-river and ocean harvest opportunities, in the benefits of restoration." 1996 Act, § 2.

18. The 1996 Act required Federal Defendants to provide for the modernization and increased effectiveness of the Trinity River Hatchery so that the hatchery "can best serve its purpose of mitigation of fish habitat loss above Lewiston Dam while not impairing efforts to restore and maintain naturally reproducing anadromous fish stocks within the basin." 1996 Act, §3(c).

19. The Central Valley Project Improvement Act, Public Law 102-575 Title XXXIV, 106 Stat. 4706 (October 30, 1992) (CVPIA) added "mitigation, protection, and restoration of fish and wildlife" as a new and separate primary purpose of the CVP. CVPIA, section 3406(a)

20. CVPIA section 3406(a) amended the priorities established in the Act of August 26, 1937 (chapter 832); 50 Stat. 850) for use of CVP water by giving fish and wildlife mitigation,

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 5

protection and restoration purposes equal priority with irrigation and domestics uses.

21.     CVPIA section 3406(b) established specific fish and wildlife restoration activities and directed the Federal Defendants to implement them.

22.     CVPIA section 3406 specified reimbursement obligations for CVP water and power contractors.

23.     In CVPIA section 3406(b)(23)[1] Congress expressly assumed an actual duty to "meet Federal trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe" and imposed on the Federal Defendants specific duties to provide TRD flow releases for "the purposes of fishery restoration, propagation, and maintenance."

24.     CVPIA section 3406(b)(23)(A) specifically required the Secretary after consultation with Hoopa to complete a "Trinity River Flow Evaluation Study currently being conducted by the United States Fish and Wildlife Service under the mandate of the Secretarial Decision of January 14, 1981, in a manner which insures the development of recommendations, based on the best available scientific data, regarding permanent instream fishery flow requirements and Trinity River Division operating criteria and procedures for the restoration and maintenance of the Trinity River fishery."

25.     CVPIA section 3406(b)(23)(B) specifically directed that if the Secretary and Hoopa "concur in these recommendations, any increase to the minimum Trinity River instream fishery releases . . . and the operating criteria and procedures referred to in subparagraph (A) shall be implemented accordingly."

26.      The Secretary of the Interior and Hoopa concurred in the recommendations regarding permanent instream fishery flow requirements and Trinity River Division operating

---

[1] Section 4010(g)(1)(B) of Pub. L. 114-322, 130 Stat. 1878 (Dec. 16, 2016) amended the CVPIA by striking paragraphs (14) and (18) in subsection 3406(b) and re-designating paragraph (23) as paragraph (21). Because of the extensive legislative, administrative, and judicial record that refers to paragraph (23), Plaintiff continues to refer to it as paragraph (23) for the convenience of the Court and the Parties.

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 6

criteria and procedures for the restoration and maintenance of the Trinity River fishery on December 19, 2000.  Dkt. #142-8.

27.    The last sentence of CVPIA section 3406(b)(23) states, "Costs associated with implementation of this paragraph shall be reimbursable as operation and maintenance expenditures pursuant to existing law."

28.    From enactment of the CVPIA through today's date, Federal Defendants have not established CVP ratesetting policies or included in annual CVP Ratebooks an operation and maintenance cost component per acre-foot for implementing CVPIA section 3406(b)(23). *E.g.* https://www.usbr.gov/mp/cvpwaterrates/ratebooks/irrigation/2023/index.html

29.    Federal Defendants have not otherwise allocated, established rates for, or required reimbursement as operation and maintenance expenditures of the costs associated with implementation of CVPIA section 3406(b)(23).

30.    Federal Defendants adopted "Business Practices Guidelines for Central Valley Project Improvement Act Program Accounting and Cost Recovery" on September 29, 2003, (2003 BPG)  "to memorialize roles, responsibilities, and standard procedures associated with accounting and cost recovery for Central Valley Project Improvement Act Program (Program) activities in compliance with applicable laws, regulations, policies, and standards . . ." https://www.usbr.gov/mp/cvp/docs/bus_prac_guide_cvpia.pdf. By their terms, "[t]hese Guidelines will remain in effect until formally revised or rescinded." *Id.* at 1. Federal Defendants have neither revised nor rescinded the 2003 BPG.

31.    The 2003 BPG define reimbursable costs as "Costs associated with those project purposes required by law to be repaid by project beneficiaries and therefore recovered through water and power rates (i.e., municipal and industrial water, power, and irrigation) or through repayment contracts with water users." *Id*. at 2.

32.    Because Federal Defendants had "deferred action to recover any Program costs for an unspecified period of time . . . Program costs accumulated in the accounting records and

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 7

were neither allocated nor recovered as required by Reclamation law" as of September 29, 2003. *Id.* at 3.

33. From 2003 to date, CVPIA program activity costs have "accumulated in the Federal Defendants' accounting records and were neither allocated nor recovered as required by reclamation law." *Id.*

34. The 2003 BPG provide that all accounting by Federal Defendants "must conform with Federal Accounting Standards Advisory Board (FASAB) standards and generally accepted accounting principles (GAAP). In particular, FASAB standards, GAAP, and related Federal regulations require that all costs incurred by the United States be either capitalized or expensed according to specific accounting criteria. The accounting treatment is significant to contractors since reimbursable capital costs are recovered over the useful life of the asset and reimbursable expenses are recovered in the year they are incurred." *Id.* at 6.

35. CVPIA section 3407 established a Restoration Fund into which Federal Defendants deposit assessments received from water and power contractors, including Defendant Intervenor Westlands. CVPIA section 3407(b) provides that "[a]ny funds paid into the Restoration Fund by Central Valley Project water and power contractors and which are also used to pay for the projects and facilities set forth in section 3406(b), shall act as an offset against any water and power contractor cost share obligations that are otherwise provided for in this title."

36. Federal Defendants use ratesetting as "a process of calculating water service rates that recover the federal investment in constructing, operating and maintaining the Central Valley Project." https://www.usbr.gov/mp/cvpwaterrates/rate-process/overview.html.

37. Federal Defendants' CVP Ratebooks and Schedules for years 2004 to 2023 are at this link: https://www.usbr.gov/mp/cvpwaterrates/ratebooks/index.html.

38. The Federal Defendants establish CVP irrigation rates pursuant to the CVP Irrigation Ratesetting Policy approved in 1988, four years prior to enactment of the CVPIA. https://www.usbr.gov/mp/cvpwaterrates/rate-process/overview.html. The Federal Defendants'

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 8

published Ratebooks and Schedules do not account for CVPIA reimbursable costs, or specifically for the costs of implementing CVPIA section 3406(b)(23) as reimbursable operation and maintenance expenditures.

39. Public Law 99-546 (October 27, 1986) amended Section 2 of the Act of August 26, 1937 (50 Stat. 850), which reauthorized the CVP, by, among other things, inserting subsection (c)(2): "The Secretary of the Interior is authorized and directed to undertake a cost allocation study of the Central Valley project, including the provisions of this Act, and to implement such allocations no later than January 1, 1988."

40. The Federal Defendants published the Central Valley Project Final Cost Allocation Study (CAS) in January 2020. https://www.usbr.gov/mp/cvp/docs/cvp-final-cost-allocation-study-2020.pdf. Dkt. #142-9.

41. The CAS "was initiated based on direction from Congress in Public Law (P.L.) (sic) 99-546 and the request of water and power contractors for a final CVP cost allocation to firm up account balances and provide sufficient time for financial planning required to ensure full repayment of the CVP costs by 2030. This report provides the background and methodology for the Final Cost Allocation Study (CAS). Reclamation will apply the Final CAS results to current costs and operational conditions that are in effect at the time the annual plant-in-service and operation and maintenance (O&M) allocations are prepared." *Id.* ES-1.

42. The CAS did not allocate accrued CVPIA costs and operational conditions, including reimbursable costs under CVPIA section 3406(b)(23), when it prepared annual plant-in-service and operation and maintenance allocations.

43. While the CAS states that the CVPIA is a "separate program" that authorizes specific fishery restoration, mitigation, and protection that have specific cost recovery assignments, the Federal Defendants have not established a separate CVPIA Ratesetting Process, CVPIA Rates and Schedules, or CVPIA Ratebooks.

44. The CAS categorizes the "separate program" costs as: (1) plant-in-service CVPIA

facilities shown in Schedule No. 1 of the CVP financial statements; 2) CVPIA O&M costs that are recovered in part by payments to the CVPIA Restoration Fund; and (3) costs of CVP facilities (both construction and operation and maintenance that get assigned to CVPIA activities and are recovered through the CVP water ratesetting process. CAS, Dkt. #142-9, at § 5-12. The CAS does not allocate those costs.

45. The CAS states that "treatment of CVPIA costs are (sic) described in Reclamation's Business Practice Guidelines for CVPIA Receipts, Program Accounting, Cost Allocation, and Cost Recovery (BPG)." *Id.*

46. Those BPG do not now exist and did not exist in January 2020 when the Federal Defendants published the CAS.

47. "Executive Order 12866 *Regulatory Planning and Review*, issued by President Clinton on September 30, 1993, establishes and governs the process under which OIRA reviews agency draft and proposed final regulatory actions. The objectives of the Executive Order are to enhance planning and coordination with respect to both new and existing regulations; to reaffirm the primacy of Federal agencies in the regulatory decision-making process; to restore the integrity and legitimacy of regulatory review and oversight; and to make the process more accessible and open to the public. For all significant regulatory actions, the Executive Order requires OIRA review before the actions take effect. On the part of the agencies, Executive Order 12866 requires an analysis of the costs and benefits of rules and, to the extent permitted by law, action only on the basis of a reasoned determination that the benefits justify the costs." https://www.reginfo.gov/public/jsp/Utilities/faq.myjsp

48. Ten months after the Federal Defendants published the CAS in January 2020, on November 5, 2020, pursuant to Executive Order 12866, the Federal Defendants submitted proposed "Business Practice Guidelines for Central Valley Project Improvement Act Receipts, Program Accounting, Cost Allocation, and Cost Recovery" to the Office of Management and Budget's Office of Information and Regulatory Affairs (OIRA). OIRA Docket No.  RIN: 1006-

1  ZA02. OIRA deemed the Guidelines "Economically Significant".

2      49.    On December 9, 2020, Plaintiff participated in an Executive Order 12866 Meeting
3  to object to the proposed Guidelines.
4  https://www.reginfo.gov/public/do/viewEO12866Meeting?viewRule=true&rin=1006-
5  ZA02&meetingId=6351&acronym=1006-DOI/RB; *see also*, Letter to Deputy Regional Director
6  Wilson Orvis from Hoopa Valley Tribe, September 10, 2020.

7      50.    Federal Defendants withdrew the proposed Guidelines prior to completion of
8  OIRA review on February 11, 2021. *Id.*

9      51.    The 2003 BPG remain in effect.

10      52.    The Water Infrastructure Improvements for the Nation Act (WIIN Act), Pub. L.
11  114-322, 130 Stat. 1628 (2016) provides at Section 4011(a) that: "[u]pon the request of the
12  contractor, the Secretary of the Interior shall convert any water service contract in effect on the
13  date of the enactment of this subtitle and between the United States and a water users'
14  association to allow for prepayment of the repayment contract pursuant to paragraph (2) under
15  mutually agreeable terms and conditions."

16      53.    WIIN Act section 4012 ("Savings Language") provides in part that the
17  contracting authority granted to Federal Defendants "shall not be interpreted or implemented in a
18  manner that . . . affects or modifies any obligation under the Central Valley Project Improvement
19  Act (Public Law 102-575; 106 Stat.4706), except for the savings provisions for the Stanislaus
20  River predator management program expressly established by section 11(d) and the provisions in
21  section 11(g)".

22      54.    The WIIN Act expired by its terms on December 16, 2021. WIIN Act § 4013.

23      55.    The Secretary of the Interior delegated authority to convert the contracts to the
24  United States Bureau of Reclamation.

25      56.    Federal Defendants' Reclamation Manual Policy PEC P05 establishes general
26  principles and requirements for water-related contracts and charges.

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 11

https://www.usbr.gov/recman/pec/pec-p05.pdf

57. "Reclamation's water-related contracting program provides water and related project benefits, in addition to recovering reimbursable costs in a manner that is consistent with relevant law. Program activities are conducted in a way that accommodates varying circumstances, changing demands, environmental needs, and Reclamation's obligations to American Indian tribes." *Id.* at PEC P05.1

58. Reclamation Manual Policy PEC P05.2 provides in part that it "applies to all Reclamation personnel involved in water-related contracting activities . . ."

59. Nothing in the WIIN Act or other law supersedes or limits applicability of the Reclamation Manual Policy PEC P05 to contracts converted pursuant to the WIIN Act.

60. Reclamation Manual Policy PEC P05.3.A(2) provides in part that "Every contract must be executed pursuant to and identify appropriate Federal statutory authority . . ."

61. Reclamation Manual Policy PEC P05.3.A(3) provides in part that "Reclamation contracts must protect the interests of the United States and of the affected Federal projects, including the primary purposes for which they were authorized."

62. Pursuant to CVPIA sections 3402, 3406(a), and 3406(b) mitigation, protection, and restoration of fish and wildlife is a primary purpose for which the CVP is authorized.

63. Reclamation Manual Policy PEC P05.3.D "Public Participation" provides that "Reclamation will notify the public of proposed contract actions", and that "Contract negotiations will be conducted in a manner that provides opportunities for the public to observe and provide meaningful input."

64. The U.S. Bureau of Reclamation has converted dozens of Central Valley Project (CVP) contracts into repayment contracts.  Dkt. #142-12.

65. Two of the converted repayment contracts are held by Defendant-Intervenor Westlands Water District, specifically:  Contract No. 14-06-200-495A-IR1-P (attached hereto as Exhibit A, also at Dkt. #125-2) and Contract No. 14-06-200-7823J-LTR1-P (attached hereto as

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 12

Exhibit B, also at Dkt. #113-2). The Federal Defendants and Defendant Intervenor Westlands executed those contracts on February 28, 2020, and September 28, 2020, respectively.

66. The repayment contracts do not have an expiration date and "continue so long as the Contractor pays applicable Rates and Charges" under the contract, consistent with Section 9(d) or 9(c)(1) of the Act of August 4, 1939 (53 Stat. 1195) as applicable, and other applicable law.

67. The repayment contracts are long-term contracts as defined by the Bureau of Reclamation Manual PEC P05.4.H: "Long-Term Contract. A contract with a term of more than 10 years."

68. CVPIA section 3404(c)(2) provides, "Upon renewal of any long-term repayment or water service contract providing for the delivery of water from the Central Valley Project, the Secretary shall incorporate all requirements imposed by existing law, including the provisions of this title, with such renewed contracts. The Secretary shall also administer all existing, new, and renewed contracts in conformance with the requirements and goals of this title."

69. Prior to execution of Contract No. 14-06-200-495A-IR1-P, Federal Defendants did not provide financial information regarding reimbursement of fish and wildlife mitigation, restoration and protection, including costs associated with implementing CVPIA section 3406(b)(23), including Contract Exhibits B and D, to Plaintiff pursuant to Reclamation Manual Policy PEC P05.3.D "Public Participation".

70. Neither the converted contracts nor their Exhibit B (2020 Rates and Charges) and Exhibit D (Repayment Obligation – Current Calculation under the WIIN act, Section 4011(a)(2)) provide for reimbursement as operation and maintenance expenditures of accrued and future costs to implement CVPIA section 3406(b)(23) to meet Federal Trust responsibilities to protect the fishery resources of the Hoopa Valley Tribe, and to meet the fishery restoration goals of the Act of October 24, 1984, Public Law 98-541

71. The converted contracts do not provide for acceptance by Defendant Intervenor

that the Federal Defendants' authority to divert Trinity Division to the Central Valley is limited by: (1) the Federal Defendants' statutory trust duty to Plaintiff to mitigate, restore, and protect the Trinity River Fishery; (2) the priorities for all Trinity Division water needed for in-basin uses established by statute and confirmed by opinions of the Federal Defendants' Solicitor; (3) the December 19, 2000, Trinity River Mainstem Fishery Restoration Record of Decision; (4) the limits on the Federal Defendants' authority to change the 2000 Record of Decision without the concurrence of the Plaintiff; (4) the April 20, 2019, Long-Term Plan to Protect Adult Salmon in the Lower Klamath River Final Environmental Impact Statement Record of Decision.

72. The converted contracts do not confirm the contractors' obligation to reimburse costs of CVPIA program activities.

73. The converted contracts do not provide for payment of accrued and future reimbursable costs of implementing CVPIA section 3406(b)(23) as operation and maintenance expenditures pursuant to existing law as consideration for the converted contracts.

74. The converted contracts do not provide that CVPIA section 3406(a) established a new and separate CVP purpose for fish and wildlife mitigation, protection, and restoration.

75. The converted contracts provide that contractors have fulfilled all contractual obligations under their previous CVP contracts and fulfilled all prepayment obligations. *E.g.*, Recital 14 and Article 7 of Defendant Intervenor Westlands' converted Contract No. 14-06-200-495A-IRI-P.

76. The converted contracts define operation and maintenance costs to exclude costs of implementing CVPIA section 3406(b)(23)'s fishery restoration mandate as operation and maintenance expenditures. *E.g.* Defendant Intervenor Contract No. 14-06-200-495A-IRI-P, Article 1(t) "Operation and Maintenance" or "O&M" shall mean normal and reasonable care, control, operation, repair, replacement (other than capital replacement), and maintenance of Project facilities.

77. The converted contracts require ratesetting to be pursuant to Federal Defendants'

1  ratesetting policy for Irrigation Water adopted in 1988 and the Secretary's then-existing
2  ratesetting policy for M&I Water, both of which preexist and do not account for the
3  reimbursement requirements of the CVPIA, which was enacted in 1992. *E.g.* Defendant
4  Intervenor Westlands' Contract No. 14-06-200-495A-IRI-P, Article 7(a).

5  78. Reclamation did not prepare or issue an Environmental Impact Statement (EIS)
6  on the conversion of these contracts.

7  79. Reclamation did not prepare or issue an Environmental Assessment (EA) on the
8  conversion of these contracts, and has not made a finding of no significant impact or issued a
9  notice of categorical exclusion.

10  80. Reclamation has not published a NEPA notice of intent in the Federal Register
11  with respect to the CVP contracts it converted.

12  81. On December 16, 2019, and on March 24, 2020, Plaintiff wrote to Regional
13  Director Ernest Conant regarding the need to incorporate appropriate provisions of law into the
14  converted contracts, true and correct copies of such letters are in the record at ECF Dkt. #142-13
15  and #142-14.

16  82. In January 2020, the Bureau of Reclamation published the Central Valley Project
17  Final Cost Allocation Study, a true and correct copy of which is in the record at ECF Dkt. #142-
18  9.

19  83. On May 28, 2020, Defendant Ernest Conant wrote a letter to Westlands' General
20  Manager, which is in the record at ECF Dkt. #142-22 and which stated, in part, "Reclamation
21  confirms its understanding that the Repayment Contract [No. 14-06-200-495A-IR1-P] will
22  govern the rights and obligations of the United States and the District after the Repayment
23  Contract's effective date, June 1, 2020, notwithstanding the District's inability to obtain a final
24  decree confirming its proceedings to authorize the execution of this Repayment Contract. *See*,
25  43 U.S.C. § 511.

26  84. On March 15, 2022, the Fresno County Superior Court entered final judgment

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 15

dismissing the complaint for validation filed by Westlands Water District. A copy of the March 15, 2022 judgment (which attaches prior orders in the validation proceeding) is in the record at ECF #142-2.

85. A true and correct copy of the 2000 Trinity River Record of Decision (ROD) is in the record at ECF Dkt. #142-8.

86. On January 30, 2023, Defendants approved the Trinity River Winter Flow Variability Project. A true and correct copy of the approval decision letter is found in the record at ECF Dkt. #142-36.

87. A true and correct copy of December 9, 2022 TMC recommendation letter regarding the WFV Project is found in the record at ECF Dkt. #109-1.

88. Defendants did not issue a Finding of No Significant Impact nor an Environmental Impact Statement pursuant to NEPA prior to approving the WFV Project.

89. Defendants did not obtain the concurrence of the Hoopa Valley Tribe prior to approving the WFV Project.

Dated this 17th day of April 2023.

MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE

*/s/ Thane D. Somerville*
Thane D. Somerville
Thomas P. Schlosser
811 First Avenue, Suite 218
Seattle, WA 98104
Tel: 206-386-5200
t.somerville@msaj.com
t.schlosser@msaj.com
Attorneys for Hoopa Valley Tribe

PLAINTIFF'S STATEMENT OF
UNDISPUTED FACTS - 16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such to the attorneys of record.

                                              */s/ Thane D. Somerville*
                                              Thane D. Somerville