TODD KIM, Assistant Attorney General
Environment & Natural Resources Division

JEFFREY S. THOMAS (VA Bar No. 86439)
AMANDA K. RUDAT (ME Bar No. 010329)
Trial Attorneys
Natural Resources Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-3553
Facsimile: (202) 305-0506
jeffrey.thomas2 @usdoj.gov

*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOOPA VALLEY TRIBE, | |
| Plaintiff, | |
| v. | Case No. 1:20−cv−01814−JLT-EPG |
| UNITED STATES BUREAU OF RECLAMATION; DEBRA ANNE HAALAND, in his official capacity as Secretary of the Interior; MARIA CAMILLE CALIMLIM TOUTON, in her official capacity as Commissioner of the United States Bureau of Reclamation; ERNEST A. CONANT, in his official capacity as U.S. Bureau of Reclamation California-Great Basin Regional Director; and UNITED STATES DEPARTMENT OF THE INTERIOR | **REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| Defendants. | |

# TABLE OF CONTENTS

I.      Plaintiff's First Claim Should be Dismissed for Lack of Jurisdiction and for Failure to State a Claim.................................................................................. 1

      A.      The Converted Contract(s) Comply with CVPIA § 3404(c)(2)................. 2

      B.      Section 3404(c) Does Not Apply to Reclamation's Statutorily-Mandated Conversion of Contracts to Allow for Accelerated Repayment of Construction Debt.................................................................. 3

      C.      Plaintiff Has Not Alleged a Concrete, Particularized Injury and Therefore Lacks Standing .......................................................................... 5

II.     Plaintiff's Second Claim, that Federal Defendants Violated NEPA When Converting Contracts Pursuant to the WIIN Act, Should Be Dismissed Because NEPA Was Not Required for the Conversions ....................................... 7

III.    Plaintiff's Claims Relating to the Allocation and Collection of CVPIA Costs (Claims Three Through Five) Should Be Dismissed Because Plaintiff Lacks Standing, Their Claims Are Not Ripe, and They Fail to State a Claim................ 11

IV.     The Court Should Dismiss Plaintiff's Sixth and Seventh Claims Because Neither 43 U.S.C. § 511 nor the Administrative Procedure Act ("APA") Require Federal Defendants to Disclaim Westlands' Unvalidated Contract........ 14

V.      Plaintiff's Eighth Claim Should Be Dismissed Because the CVPIA Completion Memos Have Been Withdrawn and the Voluntary Cessation Exception to Mootness Does Not Apply ............................................................. 17

VI.     Plaintiff's Ninth Claim Should Be Dismissed Because Plaintiff Does Not Have a Right to Concur in Every Management Decision for the Trinity River Division that Could Affect the Trinity River Fishery ................................ 20

     VII.    The Court Should Dismiss Plaintiff's Tenth Claim as Moot................................ 23

CONCLUSION.................................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Cases**

*Alaska Wilderness League v. Jewell*,
   788 F.3d 1212 (9th Cir. 2015) ............................................................................... 8, 9

*All. for the Wild Rockies v. Jewell*,
   No. CV 14-122, 2015 WL 2169043 (D. Mont. May 8, 2015) ................................. 19

*Am. Cargo Transp., Inc. v. United States*,
   625 F.3d 1176 (9th Cir. 2010) ................................................................................ 19

*Bd. of Trustees of Glazing Health & Welfare Trust v. Chambers*,
   941 F.3d 1195 (9th Cir. 2019) ................................................................................ 19

*Brach v. Newsom*,
   38 F.4th 6 (9th Cir. 2022) ................................................................................. 17, 20

*Building & Const. Dep't v. Rockwell Int'l Corp.*,
   7 F.3d 1487 (10th Cir. 1993) ................................................................................. 24

*Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*,
   No. 1:20-cv-00706-DAD-EPG, 2021 WL 600952 (E.D. Cal. Feb. 16, 2021) ........ 15

*City News & Novelty, Inc. v. Waukesha*,
   531 U.S. 278 (2001) ............................................................................................... 17

*Concerned Irrigators v. Belle Fourche Irrigation District*,
   235 F.3d 1139 (8th Cir. 2001) ............................................................................... 15

*Crowley Marine Servs., Inc. v. Maritrans, Inc.*,
   530 F.3d 1169 (9th Cir. 2008) ................................................................................. 8

*Cruper-Weinmann v. Paris Baguette Am., Inc.*,
   235 F. Supp. 3d 570 (S.D.N.Y. 2017) ..................................................................... 6

*Ctr. for Biological Diversity v. Kempthorne*,
   No. C 06-07117, 2008 WL 205253 (N.D. Cal. Jan. 23, 2008) ............................... 18

*Cunha v. IntelliCheck, LLC*,
   254 F. Supp. 3d 1124 (N.D. Cal. 2017) ................................................................... 5

*Dep't of Transp. v. Pub. Citizen*,
   541 U.S. 752 (2004) ................................................................................................. 9

*Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*,
   130 Cal. App. 4th 1078, 31 Cal. Rptr. 3d 43 (2005) ............................................... 7

*Fed. Commc'ns Comm'n v. Prometheus Radio Project*,
   141 S. Ct. 1150 (2021) ........................................................................................... 16

*Fletcher v. United States*,
   116 F.3d 1315 (10th Cir. 1997) ............................................................................. 24

*Jacob v. Biden*,
    542 F. Supp. 3d 938 (N.D. Cal. 2021) ........................................................................... 19, 20

*Kingdomware Techs., Inc. v. United States*,
    579 U.S. 162 (2016) ..................................................................................................... 8

*Martinez v. W. Sacramento*,
    No. 16-cv-02566, 2021 WL 1216532 (E.D. Cal. Mar. 31, 2021) ........................................... 14

*Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982) ..................................................................................................... 17

*Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*,
    794 F. Supp. 2d 39 (D.D.C. 2011) .................................................................................. 24

*Or. Nat. Res. Council v. Keys*,
    No. Civ. 02-3080, 2004 WL 1048168 (D. Or. May 7, 2004) ................................................ 24

*Patel v. Facebook, Inc.*,
    932 F.3d 1264 (9th Cir. 2019) ....................................................................................... 6

*Perez v. Murray*,
    No. 18-cv-01437, 2018 WL 2724241 (N.D. Cal. June 6, 2018) ........................................... 17

*Rainero v. Archon Corp.*,
    844 F.3d 832 (9th Cir. 2016) ......................................................................................... 7

*Redding Rancheria v. Jewell*,
    776 F.3d 706 (9th Cir. 2015) ......................................................................................... 22

*Razaghi v. Razaghi Dev. Co., LLC*,
    No. 2:18-CV-01622-GMN-DJA, 2020 WL 5821829 (D. Nev. Sept. 30, 2020) ........................ 2

*Rio Grande Silvery Minnow v. Bureau of Reclamation*,
    601 F.3d 1096 (10th Cir. 2010) ...................................................................................... 24

*Robins v. Spokeo, Inc.*,
    867 F.3d 1108 (9th Cir. 2017) ..................................................................................... 6, 15

*San Luis & Delta-Mendota Water Authority v. Haugrud*,
    848 F.3d 1216 (9th Cir. 2017) ....................................................................................... 22

*San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation Dist.*,
    49 F.4th 1242 (9th Cir. 2022) ........................................................................................ 10

*South Carolina v. Catawba Indian Tribe*,
    476 U.S. 498 (1986) ..................................................................................................... 22

*Spokeo v. Robins*,
    136 S.Ct. 1540 (2016) ................................................................................................... 5

*Sze v. INS*,
    153 F.3d 1005 (9th Cir. 1998) ....................................................................................... 17

iii

*Ukeiley v. U.S. Env't Prot. Agency*,
    896 F.3d 1158 (10th Cir. 2018) ............................................................. 16

*United States v. Hovsepian*,
    359 F.3d 1144 (9th Cir. 2004) ............................................................... 17

*United States v. Menasche*,
    348 U.S. 528 (1955) ................................................................................ 13

*Van Patten v. Vertical Fitness Group, LLC*,
    847 F.3d 1037 (9th Cir. 2017) .................................................................. 6

*Wallis v. IndyMac Fed. Bank*,
    717 F. Supp. 2d 1195 (W.D. Wash. 2010) .............................................. 24

*Watkins v. Inv. Retrievers, Inc.*,
    No. 217CV01348KJMCKD, 2018 WL 558833 (E.D. Cal. Jan. 24, 2018) ............. 15

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ................................................................ 19

*Wise v. Portland*,
    539 F. Supp. 3d 1132 (D. Or. 2021) ....................................................... 20

**Statutes**

43 U.S.C. § 485h-1 ....................................................................................... 5

43 U.S.C. § 511 ........................................................................................... 15

*Act of Sept. 3, 1954*,
    Pub. L. No. 83-774, 68 Stat. 1190 (1954) .............................................. 10

*Central Valley Project Improvement Act*,
    Pub. L. No. 102–575, 106 Stat. 4603 (1992) ........................................ 1, 4

*Water Infrastructure Improvements for the Nation Act*,
    Pub. L. No. 114-322, 130 Stat. 1628 (2016) .......................................... 1, 8

**Regulations**

43 C.F.R. 427.1 ........................................................................................... 11

86 Fed. Reg. 7037 (Jan. 20, 2021) ............................................................. 18

Federal Defendants have explained why most of Plaintiff's claims should be dismissed across multiple briefs.  ECF Nos. 19, 26, 125 and 151.  Plaintiff's response in opposition, ECF No. 172, fails to meaningfully address Federal Defendants' arguments for dismissal and instead relies on a series of red herrings in an attempt to muddy the water.  Federal Defendants hereby respond to Plaintiff's arguments and reiterate why many of Plaintiff's claims should be dismissed, while taking care not to reiterate previous arguments already presented to the Court.

## I.      Plaintiff's First Claim Should Be Dismissed for Lack of Jurisdiction and for Failure to State a Claim

Section 3404(c)(2) of the Central Valley Project Improvement Act ("CVPIA") requires the Secretary to "incorporate all requirements imposed by existing law, including provisions of this title, within [] renewed contracts" upon "renewal of any long-term repayment or water service contract providing for the delivery of water from the Central Valley Project."  Pub. L. No. 102–575, § 3404(c)(2).  Plaintiff claims it has been injured because Reclamation converted Westlands' long-term water service contract into a prepayment contract – as required by the Water Infrastructure Improvements for the Nation Act ("WIIN Act"), Pub. L. No. 114-322, § 4011(a), 130 Stat. 1628, 1878 (2016) – without expressly incorporating the 1955 Trinity River Division Central Valley Project Act ("1955 Act"), the Trinity River Basin Fish and Wildlife Management Act of 1984 ("1984 Act"), the Trinity River Basin Fish and Wildlife Management Reauthorization Act of 1995 ("1995 Act"), and the Trinity River Record of Decision ("TRROD").  *See* ECF No. 172 at 23–25.  According to Plaintiff, expressly incorporating these statutes and administrative decisions would give Plaintiff an additional layer of contractual protection beyond the protections provided by the statutes themselves.  *Id.* at 15.

Plaintiff's Section 3404(c)(2) claim should be dismissed for at least three reasons.  The first and easiest reason is that Reclamation complied with Section 3404(c)(2) because the

preexisting long-term contracts already included provisions incorporating federal Reclamation law and the WIIN Act conversion did not modify those terms.  *Compare* Preamble and Art. 14 of Westlands' prior contract, ECF No. 19-3, to the same provisions of Westlands' converted contract, ECF No. 19-2.  Second, Section 3404(c)(2) does not require the incorporation of specific statutes, and even if it did, the provision does not apply to the conversion of water service contracts into prepayment contracts pursuant to the WIIN Act.  And finally, Plaintiff has not identified a concrete, particularized injury beyond the alleged violation of Section 3404(c)(2) itself and therefore its pleadings are insufficient to traverse the jurisdictional threshold.

### A.  The Converted Contract(s) Comply with CVPIA § 3404(c)(2)

Reclamation complied with Section 3404(c)(2) because the water service contracts, as they existed before the WIIN Act conversion, already incorporated existing federal Reclamation law.  Consistent with the WIIIN Act, Reclamation, when converting the water service contracts into prepayment contracts, did not modify the existing incorporation provisions.  For example, Westlands' converted contract (just like the prior water service contract) makes clear in several different places that the parties' agreement is subject to federal and state law.[1]  Article 14 of Westlands' converted contract states that:

> The parties agree that the delivery of Irrigation Water or use of Federal facilities pursuant to this Contract is subject to Federal Reclamation law, including but not limited to, the Reclamation Reform Act of 1982 (43 U.S.C. 390aa *et seq.*), as amended and supplemented, and the rules and regulations promulgated by the Secretary of the Interior under Federal Reclamation Law.

ECF No. 19-2 at 42.  The contract's preamble further defines Federal Reclamation law as:

---

[1] The Court can consider contracts at the motion to dismiss stage without converting the motion to one for summary judgment because the authenticity of the contracts is indisputable and because Plaintiff's Second Amended Complaint ("SAC") references and is dependent upon the contracts.  *See Razaghi v. Razaghi Dev. Co., LLC*, No. 2:18-CV-01622-GMN-DJA, 2020 WL 5821829, at *10 (D. Nev. Sept. 30, 2020).

> [T]he Act of June 17, 1902, (32 Stat. 388), and acts amendatory thereof or supplementary thereto, ***including but not limited to***, the Acts of August 26, 1937 (50 Stat. 844), as amended and supplemented, August 4, 1939 (53 Stat. 1187), as amended and supplemented, July 2, 1956 (70 Stat. 483), June 3 1960 (74 Stat. 156), June 21, 1963 (77 Stat. 68), October 12, 1982 (96 Stat. 1263), October 27, 1986 (100 Stat. 3050), as amended, Title XXXIV of the Act of October 30, 1992 (106 Stat. 4706), as amended, and the Water Infrastructure Improvements for the Nation Act (Public Law (Pub. L.) 114-322, 130 Stat. 1628), Section 4011 (a-d) ("WIIN Act").

*Id.* at 1 (emphasis added). The preamble makes clear that "Federal Reclamation law" includes the Reclamation Act of 1902 and all other acts that amend or supplement the Act. The preamble then mentions a list of acts that have amended or supplemented the Reclamation Act of 1902, but explicitly states this list is not exhaustive. In fact, Article 14 not only provides that the parties are bound by all Federal Reclamation law, but that they are also bound by the rules and regulations promulgated by the Secretary under Federal Reclamation Law.

Because the contract expressly incorporates "Federal Reclamation law," the contract leaves no doubt that the parties' contract is subject to <u>all</u> Federal Reclamation law, including the 1955, 1984, and 1995 Acts, and the TRROD. The fact that these provisions were not specifically listed in Westlands' contract does not mean that Federal Defendants and Westlands (and other water contractors) did not agree to be bound by them. They did, and they are.

### B. Section 3404(c) Does Not Apply to Reclamation's Statutorily-Mandated Conversion of Contracts to Allow for Accelerated Repayment of Construction Debt

Nothing in the text of the statute supports Plaintiff's argument that incorporation of specific statutes is required, and that a general incorporation is insufficient. All the statute requires is for the Secretary to "incorporate all requirements imposed by existing law" when renewing a long-term water service contract; it does not require the Secretary to specifically delineate all statutes (past, present, and future) that could apply. Pub. L. No. 102–575, §

3404(c)(2).  The fact that the plain text of the statute does not require what Plaintiff says it does is reason enough to dismiss Claim One.

But even if the Court construed Section 3404(c) as requiring the incorporation of specific statutes and found that the Preamble and Article 14 of Westlands' contract was insufficient, Section 3404(c)'s procedures only apply to one action – the renewal of an existing long-term contract for another term.  Here, Plaintiff is not challenging the renewal of a long-term water service contract for another term; it is challenging Reclamation's conversion of Westlands' water service contract into a prepayment contract under the WIIN Act.  *See* ECF No. 172 at 22–23. The procedures for renewing term contracts and converting existing contracts into prepayment contracts are distinct.  Both conversion and prepayment were mandated by Section 4011 of the WIIN Act and could not have taken place absent the WIIN Act, because neither the CVPIA nor any other Reclamation law allowed for the prepayment of the contractors' construction debt (*i.e.*, the construction component).  Plaintiff insists that even though Congress created a new procedure for converting contracts and accelerating the payment of construction debt, it also implicitly intended for Reclamation to comply with Section 3404(c)'s procedures for renewing long-term contracts.  *See* ECF No. 172 at 22–23.  However, Section 3404(c)'s environmental review and incorporation requirements simply do not apply to WIIN Act conversions the same way they apply to the renewal of a contract for another definite term.

Given the weakness of its statutory argument, Plaintiff catastrophizes.  Plaintiff claims that it would be a radical shift in Reclamation law for contractors to receive permanent water supplies without first complying with Section 3404(c)'s environmental review and incorporation procedures.  But Plaintiff makes the WIIN Act sound much more revolutionary than it actually was.  Reclamation law always intended for contractors to repay their portion of the construction

component and for their contracts to then become permanent, subject to payment of ongoing operation and maintenance costs and compliance with federal law.  *See* 43 U.S.C. § 485h-1. Even without the WIIN Act, Westlands' long-term contract would have become permanent the minute it repaid the construction component without being subject to further environmental review or incorporation requirements.  *Id.*  Therefore, the WIIN Act merely accelerated what was going to happen in the natural course.

### C.  Plaintiff Has Not Alleged a Concrete, Particularized Injury and Therefore Lacks Standing

Plaintiff's response narrows its standing argument for its First Claim by conceding that the WIIN Act conversions do not pose an immediate threat to the environment or Hoopa's interests in fish or water because the conversions have not caused a change to water levels.  ECF No. 172 at 15 ("Hoopa does not base its standing on any allegation that the recent contract approvals have yet resulted in a current change to Trinity River water levels.").  Instead, Plaintiff asserts that "CVPIA § 3404(c)(2) requires [Central Valley Project ("CVP")] contracts to bind contractors to the requirements of existing law, such as those that protect Hoopa and the Trinity River today and in years to come [and that] [t]he failure to include the required protective provisions in these now-permanent contracts *removes a layer of contractual protection to which Hoopa is entitled by law*."  *Id.* (emphasis added).  Thus, Plaintiff's only alleged harm is that: (a) Reclamation allegedly failed to comply with Section 3404(c)(2)'s incorporation provision, and (b) Plaintiff was therefore deprived of the benefits of the statute's incorporation provision.

As shown above, Federal Defendants dispute that a statutory violation occurred here; but even if it had, only in certain circumstances could a statutory violation, standing alone, constitute an injury in fact.  *Cunha v. IntelliCheck, LLC*, 254 F. Supp. 3d 1124, 1139 (N.D. Cal. 2017) (citing *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016)).  When deciding whether a

statutory violation causes sufficient injury to confer standing, courts consider: "(1) whether the statutory provisions at issue were established to protect [the plaintiff's] concrete interests (as opposed to purely procedural rights), and if so, (2) whether the specific procedural violations alleged in this case actually harm, or present a material risk of harm to, such interests." *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1270–71 (9th Cir. 2019) (quoting *Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2019); *see also Cruper-Weinmann v. Paris Baguette Am., Inc.*, 235 F. Supp. 3d 570, 574–75 (S.D.N.Y. 2017), *aff'd sub nom.* 861 F.3d 76 (2d Cir. 2017).

Unlike certain privacy and consumer protection statutes[2] – which were passed to protect the public from identifiable injuries like invasion of privacy – Section 3404(c)(2) advances a purely public interest: the reduction of CVP-related litigation.  As Plaintiff has previously admitted, Section 3404(c)(2) "required the affirmative incorporation of the existing legal requirements as contract terms *to avoid disputes regarding application of federal laws to CVP operations*."  ECF No. 25 at 21 (emphasis added).  Because Congress did not pass Section 3404(c)(2) to protect Plaintiff or any other member of the public from specific, individualized injuries, but instead passed the provision to protect the public coffers from CVP litigation, Plaintiff cannot rely on an alleged technical violation of that statute for standing purposes.

Additionally, Plaintiff's alleged injury is not an injury at all.  Plaintiff has already acknowledged that "the United States and contractors would of course remain bound by federal

---

[2] Courts have found that Congress and state legislatures can confer Article III standing when they pass statutes designed to protect citizens from specific injuries.  *See, e.g.*, *Patel*, 932 F.3d at 1271 (finding a technical violation of Illinois's Biometric Information Privacy Act ("BIPA") can support Article III standing); *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1041–43 (9th Cir. 2017) (finding that a violation of the Telephone Consumer Protection Act ("TCPA") can confer Article III standing).  It makes sense that when the legislature identifies a specific injury and legislates to prevent that injury, a violation of that protective statute may constitute an injury-in-fact.

laws such as the 1955 Act and CVPIA § 3406(b)(23) regardless of the contract terms." ECF No. 25 at 21. Given this concession, even if Plaintiff had a right to enforce the contract's terms, the contracts do not remove a "a layer of contractual protection," that could feasibly harm Plaintiff. But in any event, Plaintiff has no right to enforce the contract's terms: it is not a party to any of the challenged water service contracts nor is it a third-party beneficiary to those contracts. *See, e.g.*, *Emerald Bay Cmty. Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1092, 31 Cal. Rptr. 3d 43, 54 (2005) ("[G]enerally, only a party to the contract may sue for breach of the agreement's terms."). Consequently, even if Reclamation had listed all reclamation statutes one-by-one in the contract, Plaintiff would have no right to sue for a <u>breach</u> of those incorporated provisions. Instead, Plaintiff would have to rely on the statutory violation (as opposed to the contractual violation) to sue, which is exactly what it has always been able to do and admits it can continue to do. Because Plaintiff did not lose any rights as a result of Reclamation not expressly incorporating the 1955 Act, the 1984 Act, the 1995 Act, and the TRROD into Westlands' contract, Plaintiff cannot rely on the lack of incorporation to assert a constitutionally cognizable injury.

**II.      Plaintiff's Second Claim, that Federal Defendants Violated NEPA When Converting Contracts Pursuant to the WIIN Act, Should Be Dismissed Because NEPA Was Not Required for the Conversions**

Plaintiff's WIIN Act NEPA claim turns on the plain language of the WIIN Act. *See Rainero v. Archon Corp.*, 844 F.3d 832, 837 (9th Cir. 2016) (noting that issues of statutory interpretation turn on the statute's plain language). Section 4011(a)(2) of the WIIN Act requires the Secretary to convert any water service or repayment contracts into prepayment contracts as follows:

> Upon request of the contractor, the Secretary of the Interior shall convert any water service contract in effect on the date of enactment of this subtitle and

> between the United States and a water users' association to allow for prepayment
> of the repayment contract. . . .

Pub. L. No. 114-322, § 4011(a), 130 Stat. 1628, 1878 (2016).  Congress left no room for

confusion by using the word "shall," which both the Supreme Court and the Ninth Circuit have

consistently interpreted as establishing a compulsory requirement.  *See, e.g.*, *Kingdomware*

*Techs., Inc. v. United States*, 579 U.S. 162, 171 (2016); *Crowley Marine Servs., Inc. v.*

*Maritrans, Inc.*, 530 F.3d 1169, 1177 (9th Cir. 2008).  Congress then supplied specific

procedures for how to implement the mandatory conversion, including how water service

contracts should be converted to prepayment contracts, *see* WIIN Act, § 4011(a)(1)(A) and (B),

and how the Secretary should negotiate the financial terms surrounding accelerated repayment of

original construction debt, *id.* § 4011(a)(2).

The Court should reject Plaintiff's argument that Reclamation could have negotiated

terms that could benefit the environment because Congress vested Reclamation with limited

discretion to negotiate the financial terms of accelerated repayment.  *See* ECF No. 171 at 31.

Section 4011(a)(4) of the WIIN Act curtails any discretion available to Reclamation by imposing

three specific "conditions" on "all contracts" converted pursuant to the Act.  Most importantly,

Section 4011(a)(4)(C) mandates that the WIIN Act contracts shall:

> not modify other *water service*, repayment, exchange and transfer contractual
> rights between the water users' association [Contractor], and the Bureau of
> Reclamation, or any rights, obligations, or relationships of the water users'
> association [Contractor] and their landowners as provided under State law.

WIIN Act, § 4011(a)(4)(C) (emphasis added).  These listed rights, which cannot be modified

through negotiation, encompass all substantive terms of the contract except the terms Congress

expressly authorized to be changed to effectuate accelerated prepayment.  When, as here, an

agency "'has no ability to prevent a certain effect due to its limited statutory authority over the

relevant actions,' the agency '[does] not need to consider the environmental effects arising from'

those actions." *Alaska Wilderness League v. Jewell*, 788 F.3d 1212, 1225 (9th Cir. 2015)

(quoting *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 770 (2004)).  "Even when a major

federal action occurs, [] NEPA remains subject to a 'rule of reason' that frees agencies from

preparing a full EIS on 'the environmental impact of an action it could not refuse to perform.'"

*Id.* (quoting *Pub. Citizen*, 541 U.S. at 769).

   Rather than engaging with Federal Defendants' argument that NEPA is not required here

because of the agency's lack of discretion, Plaintiff makes a series of straw man arguments.

First, Plaintiff argues that NEPA is required because the WIIN Act conversions were major

federal actions.  ECF No. 172 at 27–28.  Even assuming the WIIN Act conversions were major

federal actions, the fact that an agency takes a "major federal action" does not mean NEPA is

required if the agency "has no ability to prevent a certain effect due to its limited statutory

authority over the relevant actions." *Jewell*, 788 F.3d at 1225 (quoting *Pub. Citizen*, 541 U.S. at

770).  Here, NEPA was not required because Reclamation did not have any discretion to

implement substantive terms benefiting the environment as Plaintiff suggests.

   Second, Plaintiff argues that the WIIN Act's savings clause, Section 4012, demonstrates

that NEPA applies to Section 4011(a)'s mandatory contract conversions.  This argument also

misses the point.  Although Section 4012 of the WIIN Act acknowledges that Subtitle J's

provisions – which govern California water law – do not replace or modify existing federal or

state laws, Section 4012 does not require NEPA review for Section 4011(a)'s mandatory contract

conversions.  Neither NEPA nor CVPIA Section 3404(c) apply to the WIIN Act conversions

because (1) NEPA compliance was not mandated because of the compulsory nature of the

conversions; and (2) CVPIA Section 3404(c) is irrelevant to these conversions.  *See supra*

Subparts (I)(B) and (II), at 3-5, 7-9.

Third, Plaintiff argues there is no irreconcilable conflict between Section 4011(a) of the WIIN Act and NEPA and cites to *San Luis Obispo Coastkeeper v. Santa Maria Valley Water Conservation District*, 49 F.4th 1242 (9th Cir. 2022), as an example of why NEPA should apply. ECF No. 172 at 29–30.  But the statutory language of Public Law 774 considered in *San Luis Obispo Coastkeeper* is completely distinguishable from the text of Section 4011(a) of the WIIN Act.  Public Law 774 "authorized" the construction of the Twitchell Dam "for irrigation and conservation of water, flood control, and other purposes" and noted that construction must comply with California law and a 1953 Report of the Secretary of the Interior.  Act of Sept. 3, 1954, Pub. L. No. 83-774, 68 Stat. 1190.  In construing PL 774, the Ninth Circuit found that because the statute "expressly authorizes Twitchell Dam to be operated for 'other purposes' . . . [t]his expansive language reflects a congressional intent to grant the Agencies discretion to operate the dam for a variety of purposes, including to accommodate changed circumstances such as the enactment of new statutes." *San Luis Obispo Coastkeeper*, 49 F.4th at 1246–47.  The expansive and open-ended language used by Congress in PL 774 is distinguishable from the restrictive, compulsory language in Section 4011(a) of the WIIN Act.

Finally, Plaintiff asserts that Reclamation contradicts its own arguments about the limited discretion it had under Section 4011(a) of the WIIN Act by altering contractual terms that had nothing to do with repayment.  ECF No. 172 at 30–32.  But the three examples Plaintiff gives in its response brief, *see id.* at 32, are all conforming edits that reflect Reclamation's application of the WIIN Act and the conversion of the contract from a renewable, water service contract to a permanent, prepayment contract.  First, the modification of Article 2(a) – which sets a term for the contract and outlines the rights to water use – is an obvious conforming edit that was necessary after the contract was made permanent.  Second, the removal of Article 3(e) (which

was located in Westlands' prior renewable long-term contract) struck a requirement for Endangered Species Act ("ESA") consultation, which makes perfect sense given that the mandatory WIIN Act conversions were not subject to NEPA, Section 3404 of the CVPIA, or consultation under the ESA.[3]  And third, the modification of Article 26(a) was a non-substantive, administrative alteration that conformed the provision's wording to that in Reclamation's policy manual, *see* PEC 10-22, and the corresponding regulation, 43 C.F.R. 427.1.  Notably, the contracts' articles that address delivery of water to the contractors were not changed in any material way.  *Compare* Art. 3 (Water to be Made Available and Delivered to the Contractor); Art. 4 (Time for Delivery of Water); Art. 6 (Measurement of Water Within Contractor's Service Area); Art. 9 (Sales, Transfer or Exchange of Water); and Art. 12 (Constraints on the Availability of Water) of Westlands' Converted Contract, ECF No. 19-2, to the same provisions of its Prior Contract, ECF No. 19-3.  Because Reclamation only made conforming edits to the contract to effectuate conversion and accelerated repayment of construction debt and because none of the substantive water delivery articles were materially changed, the Court should reject Plaintiff's insinuation that because Reclamation made conforming edits based on the WIIN Act's conversion mandate, it contradicted its own legal argument about what could and could not be added or modified.

### III.   Plaintiff's Claims Relating to the Allocation and Collection of CVPIA Costs (Claims Three Through Five) Should Be Dismissed Because Plaintiff Lacks Standing, Their Claims Are Not Ripe, and They Fail to State a Claim

Plaintiff's third through fifth claims can be distilled into one sentence: Plaintiff believes Reclamation forgave $340,000,000 in accrued CVPIA restoration costs when converting

---

[3]  The prepayment contracts are still subject to the ESA and BiOp, *see* ECF No. 19-2, Article 3(e), even though consultation was not required to complete the WIIN Act conversions.

contracts under the WIIN Act.[4]  As already noted in Federal Defendants' opening memorandum, none of Plaintiff's cost claims are ripe, Plaintiff lacks standing to bring them, and they all fail to state a legally viable claim.  ECF No. 151 at 24–28.   Rather than addressing Federal Defendants' arguments as to each claim, Plaintiff's response combines its arguments to no avail.  Federal Defendants will briefly reiterate why none of Plaintiff's restoration cost claims should survive dismissal.

To begin with, Plaintiff relies on its unsupported assertion that the alleged $340,000,000 in accrued restoration costs are CVPIA § 3406(b)(23) costs to justify standing for all of its cost-related claims and to support some of its factual assertions.  ECF No. 172 at 12–13, 17–18, 25, 32–35.  As this Court has already noted, Section 3406(b)(23) does three main things: (1) "provides through the Trinity River Division, for water years 1992 through 1996, an instream release of water to the Trinity River of not less than 340,000 acre-feet per year"; (2) requires "the Secretary, after consultation with the Hoopa Valley Tribe, [to] complete the Trinity River Flow Evaluation Study"; and (3) requires "any increase to the minimum Trinity River instream fishery releases established under this paragraph and the operating criteria and procedures referred to in subparagraph (A) [to] be implemented," if "the Secretary and the Hoopa Valley Tribe concur in these recommendations."  ECF No. 144 at 9–10.  Unlike other provisions of the CVPIA, such as Section 3406(b)(11), Section 3406(b)(23) itself does not contemplate or authorize specific, substantive restoration projects.  Moreover, Section 3406(b)(23) specifies that "[c]osts associated with implementation of this paragraph shall be reimbursable as operation and maintenance

---

[4] Plaintiff's allegation that accrued and future costs were forgiven by the WIIN Act contracts is simply untrue.  Both Reclamation and Westlands agree that the converted contracts still allow for the allocation and collection of accrued and future restoration costs subject to the development of updated Business Practice Guidelines.  *See* ECF No. 151 at 26; *see also* ECF No. 161 at 9.

expenditures *pursuant to existing law*."  Plaintiff completely disregards the emphasized phrase, which further defines the scope of reimbursable costs here and would be unfavored surplusage if it had no meaning whatsoever.  *See, e.g.*, *United States v. Menasche*, 348 U.S. 528, 538-39 (1955).  Therefore, the Court should reject Plaintiff's assertion – without any statutory analysis or other support from legislative history – that all Trinity River restoration costs are reimbursable, period, based on Section 3406(b)(23).

As to Claim Three, Plaintiff does not engage with Federal Defendants' argument that the WIIN Act contract conversions have nothing to do with collection of CVPIA restoration costs. ECF No. 151 at 24.  The WIIN Act – which limited Reclamation's authority to negotiating the prepayment of CVP capital costs – precluded Reclamation from altering any terms relating to the collection of CVPIA restoration costs.  *Id.*  Reclamation could not have violated the WIIN Act by failing to include the updated repayment provisions for accrued and future CVPIA restoration costs because the WIIN Act itself precluded Reclamation from doing just that.  Because Plaintiff is only challenging Reclamation's WIIN Act conversions for failure to include updated payment terms for CVPIA restoration costs and because the WIIN Act did not allow Reclamation to alter any provisions relating to the collection of CVPIA restoration costs, Plaintiff's third claim should be dismissed.[5]

Plaintiff's fourth claim also fails because it only challenges how Reclamation treated CVPIA restoration costs within the 2020 Cost Allocation Study.  Plaintiff effectively concedes that the 2020 Cost Allocation Study ("CAS") did not address CVPIA restoration costs and

---

[5] To the extent Plaintiff's third claim also relies on CVPIA Sections 3404(c)(2) and 3406(b)(23), neither Plaintiff's SAC nor its response to Federal Defendants' motion to dismiss engages in any analysis of the CVPIA to support its claim that the statute compels Reclamation to allocate and collection CVPIA restoration costs before converting contracts pursuant to the WIIN Act.

instead deferred the consideration of those costs to the development of future Business Practice

Guidelines.  ECF No. 172 at 34 (failing to dispute Federal Defendants' argument that "Hoopa's

third claim is not ripe because the CAS deferred CVPIA cost allocation to a later date," but

instead pointing to the WIIN Act conversions as the reason Plaintiff's claim is ripe).  For the

reasons discussed above, Plaintiff cannot rely on a WIIN Act claim to bootstrap its other cost

related arguments because the WIIN Act has nothing to do with the collection of CVPIA

restoration costs.  With the WIIN Act conversions off the table, Plaintiff has not challenged any

ripe, agency action regarding the allocation and collection of CVPIA restoration costs; nor could

it, as the agency specifically deferred consideration of restoration costs to the development of

future Business Practice Guidelines.  *See* ECF No. 151 at 24–25 (showing that Plaintiff is not

challenging the "final administrative work").  Plaintiff's fourth claim should be dismissed

because the Cost Allocation Study had nothing to do with restoration costs and because any

agency decision relating to restoration costs is not ripe.

Plaintiff does not even attempt to rescue its fifth claim.  It does nothing to address

Federal Defendants' argument that Executive Order No. 12866 does not create a cause of action.

ECF No. 151 at 28.  For that reason alone, its fifth claim should be dismissed.  *See Martinez v.*

*W. Sacramento*, No. 16-cv-02566, 2021 WL 1216532, at *6, 8-9 (E.D. Cal. Mar. 31, 2021)

(failure to respond to an argument made in a motion to dismiss amounts to a concession).

IV.   **The Court Should Dismiss Plaintiff's Sixth and Seventh Claims Because Neither**
      **43 U.S.C. § 511 nor the Administrative Procedure Act ("APA") Require Federal**
      **Defendants to Disclaim Westlands' Unvalidated Contract**

Plaintiff's sixth and seventh claims should also be dismissed for several reasons.  To

begin with, Plaintiff's "validation" claims must be dismissed for lack of standing.  Plaintiff has

failed to point to any factual allegation demonstrating it has suffered a concrete, particularized

injury arising from the alleged violation of Section 511.  Its sole justification for why it has

14

standing to pursue Claims Six and Seven is that validation was required and that it is injured if the contract is allowed to proceed without validation.  ECF No. 172 at 12 ("Hoopa has standing to pursue its claims under . . . 43 U.S.C. § 511 as approval of these permanent contracts without . . . state law validation causes direct injury to Hoopa's interests by allowing the permanent contracts to be approved without legal protections that Hoopa is entitled.").  But as noted above, the violation of a statutory procedure by itself cannot establish standing unless "Congress conferred the procedural right to protect a plaintiff's concrete interests and [] the procedural violation presents 'a risk of real harm' to that concrete interest."  *Watkins v. Inv. Retrievers, Inc.*, No. 217CV01348KJMCKD, 2018 WL 558833, at *2 (E.D. Cal. Jan. 24, 2018) (citing *Robins*, 867 F.3d at 1112).  There is no indication from the text of Section 511 that Congress created the validation requirement to protect a concrete interest of Plaintiff; to the contrary, the statute's text suggests that the validation requirement is to protect the United States from fraud in contracting by giving the United States the discretion to void an unvalidated contract.  *See* 43 U.S.C. § 511.  Because Plaintiff has not identified a concrete, particularized injury that was caused by the denial of state-court validation, it cannot establish standing to sue for a violation of Section 511.

In addition to being dismissed for lack of jurisdiction, Plaintiff's sixth and seventh claims should also be dismissed for failure to state a claim.  Neither 43 U.S.C. § 511 nor the APA offer any support to Plaintiff's argument that Federal Defendants must disclaim a water contract that has been denied state court validation.  Plaintiff concedes that "an unvalidated contract is [not] void ab initio," but contends the APA still requires Reclamation to void a contract that is only voidable.  ECF No. 172 at 37.  This Court – consistent with Judge Drozd's decision in *Center for Biological Diversity v. U.S. Bureau of Reclamation*, No. 1:20-cv-00706-DAD-EPG, 2021 WL 600952, at *5–6 (E.D. Cal. Feb. 16, 2021), and the Eighth Circuit's decision in *Concerned*

*Irrigators v. Belle Fourche Irrigation District*, 235 F.3d 1139, 1144 (8th Cir. 2001) – has already found that "[Plaintiff's argument] ignores the distinction between a 'voidable' contract and an 'unenforceable' one–the distinction relied upon in *CBD*, *North Coast*, and *Concerned Irrigators*. . . . [A]bsent any indication that the United States disclaims Westlands' WIIN Act Repayment Contract, that contract creates legally enforceable rights . . . ."  ECF No. 116 at 7.  Plaintiff claims that the Court's earlier ruling is factually distinguishable because Westlands' contract has since been denied validation, but this is a distinction without meaning.  Section 511 does not differentiate contracts that are going through the validation process from contracts that have been denied validation.  Instead, the plain text merely provides that a Reclamation contract may be voided by the United States up until the point it is validated by a court.

Plaintiff claims Reclamation's choice to abide by the Westlands contract is arbitrary and capricious.  ECF No. 172 at 38–39.  But the only agency action Plaintiff points to is a May 28, 2020 letter from Ernest Conant stating that Reclamation intends to honor an already executed contract.  *Id.* at. 39.  While executing a contract or voiding a contract may be a final agency action, continuing to honor an existing contract is not.  But even if Ernest Conant's letter was a final agency action, which it was not, Reclamation is not acting arbitrarily and capriciously by continuing to abide by an existing contract.  *See Fed. Commc'ns Comm'n v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021) (noting the APA's arbitrary-and-capricious standard only "requires that agency action be reasonable and reasonably explained").  Because the contract complies with the plain meaning of Section 511, it is reasonable to continue to abide by it.  *See, e.g.*, *Ukeiley v. U.S. Env't Prot. Agency*, 896 F.3d 1158, 1165 (10th Cir. 2018) ("[S]ince the EPA's Rule complies with the statute's plain meaning, we cannot find its application here arbitrary and capricious.").  Because nothing in Section 511 nor the APA requires Federal

16

Defendants to disclaim Westlands' contract and because Reclamation continues to believe the contract is beneficial as a matter of policy, Reclamation's continued compliance with the contract's terms is not arbitrary and capricious.

**V.     Plaintiff's Eighth Claim Should Be Dismissed Because the CVPIA Completion Memos Have Been Withdrawn and the Voluntary Cessation Exception to Mootness Does Not Apply**

Plaintiff contends that, while its challenge to the withdrawn CVPIA completion memos may be "technically moot," it falls under the voluntary cessation exception to mootness.  ECF No. 172 at 40.  Under this exception, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982).  The voluntary cessation doctrine "traces to the principle that a party should not be able to evade judicial review . . . by temporarily altering questionable behavior." *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022) (quoting *City News & Novelty, Inc. v. Waukesha*, 531 U.S. 278, 284 n.1 (2001)).  Courts in the Ninth Circuit have found that the "voluntary cessation exception applies when (1) there is a voluntary cessation of the allegedly illegal activity; (2) the cessation arises because of the litigation; and (3) there is a reasonable expectation that the alleged wrong will be repeated." *Perez v. Murray*, No. 18-cv-01437, 2018 WL 2724241, at *2 (N.D. Cal. June 6, 2018) (citing *Sze v. INS*, 153 F.3d 1005, 1008 (9th Cir. 1998), *overruled in part on other grounds by United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004)).  The exception does not apply to Plaintiff's eighth claim because the CVPIA completion memos were not withdrawn because of this litigation, and there is no reason to expect that the completion memos will be reissued.

After President Biden took office, he issued an Executive Order directing agency heads to "immediately review all existing regulations, orders, guidance documents, policies, and any

other similar agency actions [] promulgated, issued, or adopted between January 20, 2017, and January 20, 2021[.]"  Exec. Order No. 13990, 86 Fed. Reg. 7037, 7037 (Jan. 20, 2021).  In performing that review, Interior's Deputy Solicitor for Water Resources rescinded the Associate Solicitor's memorandum providing the legal analysis underlying the other completion memos on June 11, 2021, noting that the "[Completion] Memorandum [was] not reflective of necessary Departmental collaboration and decision-making regarding important fish and wildlife restoration decisions."  *See* June 11, 2021 Memorandum Rescinding January 14, 2021 Memorandum, attached as Ex. A.  Secretary Haaland subsequently withdrew former Secretary Bernhardt's concurrence memorandum as well as all underlying memoranda.  ECF No. 125-9.  Plaintiff did not challenge the completion memos until they filed their First Amended Complaint in October 2021, more than four months after the Deputy Solicitor's recission memorandum was issued.  *Compare* ECF No. 1 (original Complaint) and ECF No. 97 (First Amended Complaint).  Additionally, neither the Deputy Solicitor's memorandum nor Secretary Haaland's memorandum made any mention of the Hoopa Valley Tribe or litigation generally.  The withdrawal of the completion memos thus cannot be attributed to this suit, and the voluntary cessation exception does not apply.  *See Ctr. for Biological Diversity v. Kempthorne*, No. C 06-07117, 2008 WL 205253, at *9 (N.D. Cal. Jan. 23, 2008) (holding that the voluntary cessation exception did not apply where the agency "had been working on preparing initial drafts of" rules plaintiffs argued the agency had failed to promptly issue "a few months before [the] suit was filed"); *All. for the Wild Rockies v. Jewell*, No. CV 14-122, 2015 WL 2169043, at *3 (D. Mont. May 8, 2015).

　　There is also no basis to expect that the CVPIA completion memos will be reinstated.  In determining whether withdrawal of a challenged policy makes a claim moot, courts have considered a number of factors, including whether the language changing policy is "broad in

scope and unequivocal in tone," whether it addresses "all of the objectionable measures" the plaintiff complains of, how long the policy has been in place, and whether the government has reengaged in the challenged conduct. *White v. Lee*, 227 F.3d 1214, 1243-1244 (9th Cir. 2000). Additionally, courts "treat the voluntary cessation of challenged conduct by government officials 'with more solicitude . . . than similar action by private parties.'" *Bd. of Trustees of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1198 (9th Cir. 2019) (en banc) (quoting *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010)).

The withdrawal of the CVPIA completion memos "represents a permanent policy shift by a new Presidential Administration, not a temporary change that the administration will refute once this litigation has concluded." *Jacob v. Biden*, 542 F. Supp. 3d 938, 953 (N.D. Cal. 2021). Secretary Haaland's withdrawal of the concurrence memos was "broad in scope and unequivocal in tone" and addressed "all of the objectionable measures" Plaintiff complains of in its eighth claim. *Lee*, 227 F.3d at 1243. The Secretary's memorandum made clear that challenged CVPIA completion memos "are invalid and have no further force or effect," that she disagreed with the reasoning underlying the memos, and that Interior officials are "to take no further action" on former Secretary Bernhardt's concurrence memorandum. ECF No. 125-9 at 2. While former Secretary Bernhardt's concurrence memorandum was withdrawn relatively recently, the legal analysis underlying the completion memos has been withdrawn for nearly two years. Interior's affirmative actions to continue restoration of the Trinity River during that time show the withdrawal of the completion memos was "not a temporary move to sidestep [this] litigation." *Brach*, 38 F.4th at 13; *see also Jacob*, 542 F. Supp. 3d at 954 (dismissing challenge as moot where government "ha[d] implemented the recission of the challenged policies" and progress was being made under new policy).

19

Because the "mere *possibility*" that a future administration may issue findings similar to

those in the withdrawn completion memoranda "is too remote to save" Plaintiff's claim, the

Court should dismiss Plaintiff's eighth claim as moot.  *See Brach*, 38 F.4th at 9 (emphasis in

original); *see also Wise v. Portland*, 539 F. Supp. 3d 1132, 1146 (D. Or. 2021) (dismissing claim

as moot in part because "President Biden revoked [an] Executive Order in its entirety" and

"[t]here [was] no basis in the record . . . to suggest the Executive Order [would] be reinstated in

the future").

### VI.   Plaintiff's Ninth Claim Should Be Dismissed Because Plaintiff Does Not Have a Right to Concur in Every Management Decision for the Trinity River Division that Could Affect the Trinity River Fishery

Plaintiff claims it has a permanent right to concur "in all decisions involving

Reclamation's management of the Trinity River Division [("TRD")] operation and maintenance

that affect Hoopa's fishery and its timely restoration to pre-project levels of abundance."  SAC ¶

197.  Plaintiff admits that this could implicate the TRD's "integration with other units and

divisions of the CVP."  *Id.* at 64.  The Court correctly rejected this wide-reaching claim in

denying Plaintiff's first preliminary injunction motion.  ECF No. 144.  Federal Defendants do

not dispute that Section 3406(b)(23) of the CVPIA gave Plaintiff a right to concur or not in the

Flow Study's recommendations in 2000.  But as explained in Federal Defendant's motion to

dismiss, a permanent right to concur in "*all decisions*" made in managing the TRD, and

potentially beyond the TRD, that could affect Plaintiff's fishery cannot be found in the text of the

CVPIA. [6]  SAC ¶ 197 (emphasis added).

---

[6] Plaintiff's response shifts focus to whether Reclamation would need Hoopa's concurrence to make wholesale alterations to the TRROD, which is a significant recharacterization of the claim Plaintiff actually makes in its SAC.  Plaintiff has not identified a final agency action altering the TRROD and questions that would be raised by such a situation are not before the Court.

As previously discussed, this Court already recognized that Section 3406(b)(23) is limited to doing three primary things. *See supra* Part III, at 13. After Plaintiff and the Secretary concurred in the Flow Study's recommendations, which were implemented through the TRROD, the statute did not provide Plaintiff with a continuing right to veto management decisions made under the procedures in the TRROD. *Id.* Therefore, as a factual matter, Section 3406(b)(23) did not give Plaintiff a right to veto the Winter Flow Project ("WFP"). Section 3406(b)(23) also does not give Plaintiff a right to concur in matters entirely outside the Flow Study and TRROD, such as the WIIN Act contract conversions. *See* ECF No. 144 ("Hoopa was given the right to 'concur in these recommendations.' The 'these recommendations' language is a direct and unambiguous reference to the anticipated recommendations of the Flow Study, which was discussed in detail in the immediately preceding paragraph.") (citation omitted).

In a strained attempt to read more into Section 3406(b)(23) than actually exists, Plaintiff argues Congress intended to delegate the Tribe sovereignty to manage Trinity River restoration. *See* ECF No. 172 at 43–44. But Plaintiff makes no attempt to meaningfully engage with Federal Defendants' arguments on this point. *Id.* Again, Federal Defendants do not dispute that Congress can delegate certain authority to Indian Tribes. But as discussed above, the plain text of CVPIA Section 3406(b)(23) provides no support for Plaintiff's argument that Congress intended to give it permanent authority to concur in "all decisions" Reclamation makes that could affect the Trinity River Fish Hatchery. Plaintiff also does not confront the fact that the activities it seeks to exercise authority over occur and impact thousands of people well outside its reservation, which cuts against its argument that Congress delegated it sweeping authority over the TRD and potentially other divisions of the CVP.

Finally, to the extent Plaintiff continues to argue that the Indian canons of construction should be used to find that it has a right to concur "in all decisions involving Reclamation's management of the [TRD] operation and maintenance that affect Hoopa's fishery and its timely restoration," SAC ¶ 197, the canons are not applicable.  *See* ECF No. 172 at 50.  In holding Plaintiff was unlikely to succeed on its claim that it had a right to concur in decisions made under the TRROD, the Court found that Section 3406 contained what "appear[ed] at th[at] stage to be unambiguous statutory language."  ECF No. 144 at 16.  Because the statute is unambiguous, the Indian canons are inapplicable.  *South Carolina v. Catawba Indian Tribe*, 476 U.S. 498, 506 (1986).

The Court should also hesitate to apply the Indian canons given that Plaintiff is not the only tribe with an interest in the management of the TRD.  *Redding Rancheria v. Jewell*, 776 F.3d 706, 713 (9th Cir. 2015).  In its response, Plaintiff makes the conclusory assertion that CVPIA § 3406(b)(23) does not "implicate the interests of multiple Indian tribes" and that its alleged concurrence right would not "adversely affect the interests of any other Indian tribe." ECF No. 172 at 44.  These assertions are belied by the record.  The water of the Trinity River joins the Klamath River downstream of the TRD and then "flows approximately forty-four additional miles down the lower Klamath," which "bisects the Yurok Reservation."  *San Luis & Delta-Mendota Water Authority v. Haugrud*, 848 F.3d 1216, 1221 (9th Cir. 2017).  As noted previously, Plaintiff has no sovereignty over lands, resources, or members of the Yurok Tribe, who – like Plaintiff – have substantial interests in the Trinity River and its fishery resources, or of other Californians outside of Plaintiff's reservation who may be affected by TRD management.  *See* ECF No. 125 at 41 n.9.  Moreover, the Yurok Tribe is a member of the Trinity Management Council and voted to implement the WFP.  Under Plaintiff's interpretation of

Section 3406(b)(23), Plaintiff could unilaterally veto the WFP, notwithstanding the views and votes of the Yurok Tribe and other members of the Trinity Management Council.  *See* ECF No. 118-2 at 1-2, 10.  Because interpreting Section 3406(b)(23) in favor of tribal interests is not as simple as interpreting it in favor of Plaintiff, the Indian canons would not mandate adoption of Plaintiff's interpretation even if the statute was ambiguous (which it is not).

### VII.    The Court Should Dismiss Plaintiff's Tenth Claim as Moot

Plaintiff's Tenth Claim should be dismissed as moot because Federal Defendants are already in the process of taking the actions Plaintiff alleges have been unlawfully withheld. Plaintiff alleges Reclamation has failed to meet a "statutory obligation to design, construct, operate and maintain facilities to modernize and otherwise increase the effectiveness of the Trinity River Fish Hatchery[,]" and that this failure constitutes "agency action unlawfully withheld or unreasonably delayed under the APA."[7]  SAC ¶ 207.  However, Reclamation is actively working to modernize the Hatchery, including: (1) completing an infrastructure technical review; (2) securing $2.75 million in funding for preliminary upgrades; and (3) requesting approximately another $65 million to be spent on modernizing the Hatchery.  Decl. of Donald Bader ¶¶ 4, 6, ECF No. 125-11; Decl. of Donald Bader, March 6, 2023 ¶ 2, ECF No. 151-1.  An action the agency has already taken cannot sustain an unreasonable delay claim, and actions for declaratory judgment are not exempt from this basic mootness principle.  *Nat'l Parks Conservation Ass'n v. U.S. Dep't of the Interior*, 794 F. Supp. 2d 39, 40, 44-46 (D.D.C. 2011).

---

[7] As stated in Federal Defendant's motion to dismiss, Federal Defendants do not concede that the 1984 Act or 1996 Act provide a basis for a claim alleging agency action has been unlawfully withheld or unreasonably delayed under the APA.

Even if the Court finds Reclamation's voluntary and active steps towards restoring the Trinity River Hatchery are not strictly moot, Claim Ten should still be dismissed under the prudential mootness doctrine. *Wallis v. IndyMac Fed. Bank*, 717 F. Supp. 2d 1195, 1198-99 (W.D. Wash. 2010) (dismissing a case as prudential moot and noting that "[i]n some instances where a claim is not technically moot, the controversy will nonetheless be 'so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" (quoting *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997)); *see also Or. Nat. Res. Council v. Keys*, No. Civ. 02-3080, 2004 WL 1048168, at *10 (D. Or. May 7, 2004) ("[A] court should decline to grant declaratory or injunctive relief in cases where the government has already changed or is in the process of changing its policies or where it appears that any repetition of the action is unlikely." (citing *Building & Const. Dep't v. Rockwell Int'l Corp.*, 7 F.3d 1487, 1492 (10th Cir. 1993))), *report and recommendation adopted*, 2004 WL 1048168 (D. Or. June 29, 2004).  Plaintiff has not alleged Reclamation is going to abandon restoration efforts after securing millions of dollars and requesting tens of millions of additional dollars to restore the Trinity River Fish Hatchery. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1122 (10th Cir. 2010) (discussing how the unlikelihood of returning to past policies or practices should factor into the prudential mootness analysis).  In light of these considerations, it would be within the Court's discretion to dismiss Plaintiff's tenth claim even if the Court found the claim was not technically moot within the meaning of Article III.

## CONCLUSION

For all these reasons and those expressed in prior motion to dismiss briefing (ECF Nos. 19, 26, 125 and 151), Federal Defendants respectfully request that the Court grant their motion to dismiss Plaintiff's Second Amended Complaint, ECF No. 151.

Respectfully submitted this 8th day of May, 2023,

TODD KIM
Assistant Attorney General

*/s/ J. Scott Thomas*
JEFFREY SCOTT THOMAS
AMANDA K. RUDAT
Trial Attorneys
U.S. Department of Justice

*Attorneys for Federal Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2023, I electronically filed the **FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS** with the Clerk of Court using the ECF system, which will automatically send email notification to the attorneys of record.

*/s/ J. Scott Thomas*
JEFFREY SCOTT THOMAS